IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EARL HAYES,

                           Plaintiff,          Civil Action No.
                                               9:11-CV-1271(GLS/DEP)

        v.

GARY HERB, *et. al*,

                           Defendants.
_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

EARL HAYES, *Pro Se*
07-A-4800
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          LAURA A. SPRAGUE, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Earl Hayes, a New York State prison inmate, has commenced this action against five New York State Department of Corrections and Community Supervision ("DOCCS") employees, alleging the deprivation of his civil rights pursuant to 42 U.S.C. § 1983. Generally, in his complaint, plaintiff alleges that defendants conspired to, and did, retaliate against him for filing a grievance against them at the facility in which he was confined at the relevant times.

Currently pending before the court is a motion brought by defendants requesting the entry of summary judgment based upon several grounds, and additionally seeking revocation of plaintiff's *in forma pauperis* ("IFP") status in light of his previous accumulation of three strikes pursuant to 28 U.S.C. § 1915(g). For the reasons set forth below, I recommend that plaintiff's IFP status remain intact, but that the defendants' motion for summary judgment be granted on the basis that the plaintiff failed to exhaust his administrative remedies prior to commencing this action.

I.    BACKGROUND[1]

Plaintiff is a New York State prison inmate currently being held in the custody of the DOCCS.  *See generally* Dkt. No. 1.  Although he is now incarcerated at the Sing Sing Correctional Facility, at the times relevant to his claims in this action he was confined in the Hale Creek Correctional Facility ("Hale Creek"), located in Johnstown, New York.  *Id.*  According to publically available information, inmates located at Hale Creek and who otherwise qualify are enrolled in a Comprehensive Alcohol and Substance Abuse Treatment ("CASAT") program.  Department of Corrections and Community Supervision, Substance Abuse Treatment Services, http://www.doccs.ny.gov/ProgramServices/substanceabuse.html#casat (last visited Dec. 9, 2013).

Plaintiff was transferred into Hale Creek in August 2009.  Dkt. No. 30-12 at 17.  On or about February 6, 2010, he filed a grievance complaining of the conduct of Gary Herb, a corrections officer stationed at the facility and a named defendant in this action.  *Id.* at 11, 18-19.  In his grievance, plaintiff complained that defendant Herb "started coming up with things that didn't make any . . . sense," and that he "seemed . . . like

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

he was abusing his authority." *Id.* at 18. According to plaintiff, shortly after he filed the grievance, he met with Victor Soto, a corrections sergeant also stationed at Hale Creek and a defendant in this action, to discuss plaintiff's allegations. *Id.* at 11, 19. During that meeting, defendant Soto indicated to plaintiff that he would speak with defendant Herb concerning his behavior. *Id.* at 36-37. Believing that defendant Soto was sincere in his intent to resolve the situation, plaintiff voluntarily withdrew his grievance against defendant Herb. *Id.*

Approximately one month after meeting with defendant Soto, on March 8, 2010, plaintiff received a misbehavior report from defendant Herb. Dkt. No. 1 at 4; Dkt. No. 30-12 at 19; Dkt. No. 30-20 at 7. A disciplinary hearing was subsequently conducted on March 9, 2010, to address the charges set forth in the misbehavior report. Dkt. No. 1 at 5; Dkt. No. 30-12 at 19-20. At that hearing, plaintiff denied the allegations against him, but called no witnesses and presented no evidence. *Id.* At the conclusion of the hearing, Hayes was found guilty, and ordered to serve twenty days in keeplock confinement.[2] Dkt. No. 1 at 5; Dkt. No. 30-12 at 20; Dkt. No. 30-14 at 9.

---

[2] "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene,* No. 95-CV-1765,

Because Hale Creek does not have keeplock facilities, on the same day that he was sanctioned, plaintiff was transferred into the Marcy Correctional Facility ("Marcy"), located in Marcy, New York. Dkt. No. 1 at 5; Dkt. No. 30-12 at 20-21. At plaintiff's deposition, he testified that immediately after the disciplinary hearing, but before he was transferred, defendant Soto told plaintiff not to "ever cross his officers," intimating that defendant Herb had issued the misbehavior report against plaintiff in retaliation for plaintiff filing a grievance against defendant Herb. Dkt. No. 1 at 7; Dkt. No. 30-12 at 48-49.

In or about October 2009, plaintiff received notice that his merit time allowance had been granted because he had obtained an "Alcohol and Substance Abuse . . . certificate and because [he] had successfully completed at least six (6) months of vocational training." *Id.* at 5 (quotation marks omitted). As a result, in January 2010, plaintiff appeared before the parole board for merit parole release consideration. *Id.* The parole board approved plaintiff for merit parole, and his release date was set for May 17, 2010. *Id.* On March 10, 2010, however, plaintiff received

---

1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

a "Merit Time Determination Notice," which indicated that his merit time allowance had been denied. Dkt. No. 1 at 5, 7. That notice, which plaintiff received immediately following his disciplinary hearing regarding the misbehavior report issued by defendant Soto and which is the subject of this litigation, effectively rescinded the parole board's merit parole approval of plaintiff's early release. *Id.*

Plaintiff's complaint alleges that defendants Herb and Soto conspired, through the issuance of the misbehavior report, to have his parole rescinded as a result of the grievance plaintiff filed in February 2009 against defendant Herb. *See generally* Dkt. No. 1. In support of this contention, plaintiff further alleges that, before he was placed in the transport vehicle to Marcy to serve his keeplock sanction, defendant Soto

> looked at [plaintiff], smirked, and told him, 'Never file a grievance against an officer, especially here at Hale Creek. You will always lose. I will always back my officers over an inmate, no matter what. You need to learn a lesson. I made sure that you will not be going home any time soon.'

*Id.*

Unrelated to plaintiff's claims regarding retaliation and conspiracy to retaliate, plaintiff alleges that defendants Herb and Soto conspired to violate his equal protection rights under the Fourteenth Amendment. Dkt. No. 1 at 10. In support of that claim, plaintiff has identified four fellow

inmates confined at Hale Creek who received misbehavior reports, yet were released on parole on their merit parole dates.  Dkt. No. 30-12 at 51-54.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on October 26, 2011, by the filing of a complaint and an accompanying application to proceed IFP.  Dkt. Nos. 1, 2.  Although only the claims asserted against defendants Herb and Soto remain in the case, plaintiff's complaint also named three other defendants, including Brian Fischer, the DOCCS Commissioner; Kenneth Perlman, a DOCCS Deputy Commissioner; and John Doe, an unidentified DOCCS employee.  Dkt. No. 1 at 2.  On January 23, 2012, Chief District Judge Gary L. Sharpe issued a decision and order granting plaintiff's motion to proceed IFP, but dismissing defendants Fischer and Perlman from the action without leave to replead.  *See generally* Dkt. No. 7.

Liberally construed, plaintiff's complaint asserts First Amendment retaliation and conspiracy to retaliate claims arising from allegations that defendants Herb and Soto issued a misbehavior report to Hayes in retaliation for his filing of a grievance against defendant Herb.  Dkt. No. 1 at 10.  Plaintiff also asserts Fourteenth Amendment equal protection and conspiracy to violate his equal protection rights claims arising from

allegations that other inmates who were found guilty of equal or more severe disciplinary infractions while at Hale Creek did not have their merit time parole approval rescinded. *Id.*; Dkt. No. 30-12 at 51-54.

On March 20, 2013, defendants Herb and Soto filed a motion for summary judgment seeking dismissal of plaintiff's complaint on various grounds, including plaintiff's alleged failure to exhaust available administrative remedies before filing suit. *See generally* Dkt. No. 30-1. In their motion, defendants additionally request that plaintiff's IFP status be revoked, arguing that he must first pay the requisite filing fee before proceeding further because he has accumulated three strikes under 28 U.S.C. § 1915(g), and therefore cannot qualify for IFP status. Plaintiff has responded in opposition, addressing only defendants' exhaustion argument. *See generally* Dkt. No. 37.

On March 6, 2013, plaintiff filed a motion for leave to amend his complaint. Dkt. No. 26. In that motion, he seeks to substitute Lieutenant Horton for defendant John Doe, and to purportedly "amplify[y] and clarif[y] the causes of action." *Id.* at ¶¶ 2, 4. Defendants have responded in opposition to this motion, generally arguing that any amendment is moot in light of the fact that plaintiff's complaint is subject to dismissal for the

reasons stated in their papers supporting their motion for summary judgment.  *See generally* Dkt. No. 32.

Both defendants' motion for summary judgment, as well as plaintiff's motion for leave to amend, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Plaintiff's IFP Status

In their motion for summary judgment, defendants first contend that the court should revoke plaintiff's IFP status because, prior to commencing this action, plaintiff had accumulated three strikes within the meaning of 28 U.S.C. § 1915(g).  Dkt. No. 30-1 at 7-9.  As was noted above, plaintiff has not responded to this argument.  *See generally* Dkt. No. 32.

1.    Legal Standard Governing IFP

When a civil action is commenced in a federal district court, the statutory filing fee, set at $350 at the time plaintiff filed this action, must ordinarily be paid.[3]  28 U.S.C. §§ 1915(a).  Although a court is authorized

---

[3]    Effective May 1, 2013, the Judicial Conference increased the fee for commencing an action in a federal district court from $350 to $400 by adding a $50 administrative fee.  Because plaintiff commenced this action prior to the effective date of this increase, the filing fee in this case remains $350.

to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee, 28 U.S.C. § 1915(a)(1), section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury

28 U.S.C. § 1915(g).  The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007) (citing *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997)); *accord*, *Gill v. Pidlychak*, No. 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and recommendation by* Treece, M.J.).[4]  The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has accumulated three strikes to engage in the same cost-benefit analysis before filing suit as other civil litigants engage in – that is, the provision forces inmates to assess whether the result sought to be achieved justifies

---

[4]    All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff.

the payment of the filing fee in advance, rather than in installments as provided under 28 U.S.C. § 1915(b). *Tafari*, 473 F.3d at 443.

The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari*, 473 F.3d at 442 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). *Id.* To determine whether a dismissal satisfies the failure-to-state-a-claim prong of section 1915, courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance. *Tafari*, 473 F.3d at 442. The question of whether the dismissal of a prior action constitutes a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such presents a question for the court. *Id.*

### 2. Analysis

In this case, defendants argue that plaintiff had accumulated three strikes prior to filing this action, and thus his IFP status should be revoked and the action dismissed unless he advances the required filing fee in full. Dkt. No. 30-1 at 7-9. Defendants have identified the following four cases filed by plaintiff in which, they maintain, Hayes accrued at least one strike for purposes of section 1915(g): (1) *Hayes v. Doe*, No. 99-CV-3961 (S.D.N.Y. filed June 1, 1999) ("*Hayes I*"); (2) *Hayes v. O'Connor*, No. 04-CV-7264 (S.D.N.Y. filed Sept. 13, 2004) ("*Hayes II*"); (3) *Hayes v. United*

*States of America*, No. 08-CV-6525 (S.D.N.Y. filed July 23, 2008) ("*Hayes III*"); and (4) *Hayes v. Cannick*, No. 09-CV-7608 (S.D.N.Y. filed Sept. 1, 2009) ("*Hayes IV*").

      i.     <u>*Hayes I*</u>

Defendants contend that plaintiff accumulated a strike in *Hayes I*, for purposes of section 1915(g), because the action was dismissed for failure to prosecute.  Dkt. No. 30-1 at 7 (citing *Guarneri v. Wood*, No. 08-CV-0792, 2011 WL 4592209 (N.D.N.Y. Sept. 2, 2011) (Homer, M.J.)).  Assuming that this particular action was, in fact, filed by plaintiff,[5] I nonetheless reject defendants' argument that its dismissal constitutes a strike under section 1915(g), and in that respect, I respectfully decline to follow *Guarneri* for substantially the same three reasons cited in my report issued in a previous case, which was adopted by Chief Judge Sharpe in

---

[5]      The plaintiff in *Hayes I* is identified as "Earl Hayes," residing at a private residence.  *Hayes I*, No. 99-CV-3961, Docket Sheet.  Although the docket sheet indicates that it is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983, no New York State DIN is noted for the plaintiff.  *Id.*  In addition, presumably due to the age of the case, the docket sheet is comprised only of docket entries from staff in the clerk's office, rather than the actual filings by the parties and court.  *Id.*  Accordingly, I am unable to verify that the plaintiff in *Hayes I* is the same person as the plaintiff in this case now before the court.  In their memorandum, defendants state that "[t]here are 3 men named 'Earl Hayes' on the record in the DOCCS system.  Of those, only the plaintiff was incarcerated at the time of filing and released shortly after filing, which coincides with the change of address to a private residence."  Dkt. No. 30-1 at 7 n.1.  Although plaintiff has not disputed this assertion in his response opposing defendants' motion for summary judgment, I note that defendants have failed to submit any evidence to support their position, including, for example, an affidavit from an appropriate person within the DOCCS who could verify this information.  *See generally* Dkt. No. 30.

November of this year.  *See Herring v. Tabor*, No. 12-CV-1739, 2013 WL 6173775, at *6-7 (N.D.N.Y. Nov. 20, 2013) (Sharpe, J., *adopting report and recommendation by* Peebles, M.J.).  First, the court in *Guarneri* found that the plaintiff's dismissed action at issue – the potential third strike – for failure to prosecute counted as a strike because, at the time the action was dismissed, the plaintiff had "filed a complaint, four notices rejecting proposed amended complaints, an amended complaint, and multiple letter requests over the course of four years before the case was ultimately dismissed for failure to prosecute."  *Guarneri*, 2011 WL 4592209, at *10. The court in *Guarneri* commented that the dismissed action "was not a temporarily infected case with remediable procedural or jurisdictional flaws but one close to Congress' intended policy behind the three-strike provision to prevent the tide of egregiously meritless lawsuits."  *Id.* (quotation marks and alterations omitted) (citing *Tafari*, 473 F.3d at 443). The circumstances surrounding the district court's dismissal of *Hayes I*, however, are materially different.  Indeed, it appears from the docket sheet that the case was initially dismissed for failure to prosecute as a result of plaintiff's failure to appear at a court ordered conference.  *Hayes I*, No. 99-CV-3961, Dkt. Nos. 10, 11.  Although the case was reopened at a later date, District Judge John G. Koeltl dismissed the action for a second time,

on the defendants' motion, due to plaintiff's failure to prosecute.  *Hayes I*, No. 99-CV-3961, Dkt. Nos. 18-21.  There is nothing in the sparse docket sheet of *Hayes I* indicating that it was dismissed for the reasons specifically outlined in section 1915(g).  Simply stated, I do not find anything in the docket sheet from *Hayes I* to suggest that plaintiff's complaint in the action was frivolous, malicious, or failed to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).

I note, moreover, that although *Guarneri* relied, in part, on *Bermudez v. Rossi*, No. 07-CV-0367, 2008 WL 619170 (N.D.N.Y. Mar. 3, 2008) (Kahn, J.), in finding that a previous dismissal based on a failure to comply with a court order may constitute a strike, the *Bermudez* court explicitly determined that the previous action at issue in that case was "essentially" dismissed for failure to state a claim upon which relief could be granted. *Bermudez*, 2008 WL 619170, at *3.  Accordingly, to the extent that *Guarneri* relied on *Bermudez* for support of the proposition that a dismissal for failure to prosecute constitutes a strike, that reliance appears to have been misplaced.

Finally, the question of whether a dismissal for failure to prosecute or comply with a court order constitutes a strike under section 1915(g) has not been addressed by the Second Circuit.  Several district courts within

the circuit, however, have concluded that such a dismissal does not qualify as a strike.  *See, e.g., Justice v. Merchant*, No. 12-CV-5103, 2012 WL 6061000, at *1 (E.D.N.Y. Dec. 5, 2012) ("Disimissals based on a plaintiff's failure to prosecute do not count as strikes." (citing cases)); *Johnson v. Truedo*, No. 11-CV-0627, 2012 WL 3054114, at *4 (N.D.N.Y. June 15, 2012) (Homer, M.J.), *report and recommendation adopted by* 2012 WL 3062293 (N.D.N.Y. July 26, 2012 (Hurd, J.) ("[D]efendants have failed to demonstrate that the dismissal . . . was for failing to state a claim rather than for failing to prosecute or to comply with a court order, neither of which would constitute a 'strike' under [section] 1915(g)."); *Toliver v. Perri*, No. 10-CV-3165, 2011 WL 43461, at *2 (S.D.N.Y. Jan. 6, 2011) ("While the Second Circuit has not addressed whether a dismissal for failure to prosecute counts as a strike, this and other courts in this Circuit have declined to find that such a dismissal constitutes a strike." (citing cases)).[6]

---

[6]     At least two other circuits have also ruled that an action dismissed for failure to prosecute does not constitute a strike under section 1915(g).  *Torns v. Miss. Dep't of Corrs.*, 317 F. App'x 403, 404 (5th Cir. 2009); *Butler v. Dep't of Justice*, 492 F.3d 440, 443 (D. D.C. 2007); *but see O'Neal v. Price*, 531 F.3d 1146, 115 (9th Cir. 2008) (construing a district court's dismissal of an action "during the screening process for a reason enumerated in [28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2)(B) or 42 U.S.C. § 1997e(c)]" as a strike, "even if the district court styles such dismissal as denial of the prisoner's application to file the action without prepayment of the full filing fee").

ii.    *Hayes II*

Turning to *Hayes II*, defendants urge that the district court's dismissal of that action due to plaintiff's failure to timely serve the defendants under Rule 4(m) of the Federal Rules of Civil Procedure constitutes a strike for purposes of section 1915(g).  Dkt. No. 30-1 at 8.  In support of that contention, defendants rely on *Mullins v. Pramsteller*, No. 08-CV-0038, 2008 WL 4822241 (W.D. Mich. Nov. 3, 2008) and *Wright v. Ozmint*, No. 07-CV-2515, 2008 WL 4542915 (D. S.C. Oct. 7, 2008).  *Id.* Once again, I disagree with defendants.  As an initial matter, it is far from clear that either *Mullins* or *Wright* stand for the proposition that a dismissal for failing to timely serve under Rule 4(m) constitutes a strike.  In *Mullins*, the district court dismissed the plaintiff's action based on two separate grounds: (1) the plaintiff's failure to exhaust administrative remedies before filing suit against three of the four defendants, and (2) the plaintiff's failure to serve the fourth defendant pursuant to Rule 4(m).  *Mullins*, 2008 WL 482241, at *2.  The court then explicitly stated, "This dismissal shall count as a STRIKE for purposes of 28 U.S.C.§ 1915(g)."  *Id.*  It is unclear, however, whether the district court considered the dismissal as constituting a strike because of the plaintiff's failure to exhaust, his failure to timely effect service, or some combination of both.  *Id.*  Similarly,

although the district court in *Wright* held that the dismissal in that case should count as a strike against the plaintiff, it is not clear from either the magistrate judge's report or the district judge's order adopting that report whether the dismissal constitutes a strike because (1) the complaint failed to state a claim upon which relief could be granted, (2) defendants were entitled to qualified immunity, or (3) some defendants were not served – all of which were cited by the court as reasons for the dismissal. *Wright*, 2008 WL 4542915 at *1, 5-6.

In any event, it should be noted that courts in this circuit have held that a dismissal for failing to effectuate service of process does not count as a strike under section 1915(g). *See, e.g., Chavis v. Curlee*, No. 06-CV-0049, 2008 WL 508694, at *4 (N.D.N.Y. Feb. 21, 2008) (Kahn, J.) ("I note that I do not read 42 U.S.C. § 1915(g), or the cases applying it, as suggesting that a dismissal solely because of . . . a failure to serve . . . constitutes a dismissal for frivolousness, maliciousness or failure to state a claim. Failures . . . to serve are failures based on something other than the four corners of a plaintiff's complaint – which is essentially the only thing looked at when determining frivolousness, maliciousness and failure to state a claim."). I agree with the rationale expressed in *Chavis*, and

accordingly find that *Hayes II* does not constitute a strike against plaintiff for section 1915(g) purposes.

### iii.    *Hayes III*

Defendants next argue that *Hayes III* represents a strike pursuant to section 1915(g) in light of the district court's order, issued on June 29, 2009, dismissing the case based on the plaintiff's filing of the complaint outside the applicable statute of limitations.  Dkt. No. 30-1 at 7-8 (citing *Kelly v. City of Dallas*, 288 F. App'x 993 (5th Cir. 2008)).  Although I agree that a dismissal based on untimeliness may constitute a strike under section 1915(g), *see, e.g., Palmer v. N.Y.S. Dep't of Corr. Greehaven*, No. 06-V-2873, 2007 WL 4258230, at *6 (S.D.N.Y. Dec. 4, 2007), *aff'd* 342 F. App'x 654 (2d Cir. 2009), *Hayes III* does not count as a strike in this case because the defendants' motion predicating the dismissal was one for summary judgment.  *Hayes III*, No. 08-CV-6525, Dkt. Nos. 19, 20, 23. Courts in this circuit have routinely held that a dismissal at the summary judgment stage generally does not count as strike for purposes of section 1915(g).  *See Martin v. Wallis*, No. 07-CV-0175, 2008 WL 3471864, at *4 (D. Vt. Aug. 12, 2008) ("[C]ourts have also held that a case decided at summary judgment generally does not qualify for a strike under [section] 1915."); *Lewis v. Healy*, No. 08-CV-0148, 2008 WL 5157194, at *5 n.6

(N.D.N.Y. Dec. 8, 2008) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.) (finding that one of the plaintiff's previous dismissals "likely does not qualify as a strike since [his] claims were dismissed on motion for summary judgment, rather than based upon a failure to state a claim upon which relief may be granted"); *Ramsey v. Goord*, No. 05-CV-0047A, 2007 WL 1199573, at *2 (W.D.N.Y. Apr. 19, 2007) ("Moreover, a dismissal on summary judgment is generally not considered within the parameters of the three-strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a claim.").  Indeed, in granting the defendant's motion for summary judgment, the court in *Hayes III* relied on evidence outside the pleadings, which eliminates any doubt that the dismissal could be construed as one for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and expressly provided for in section 1915(g).  *Hayes III*, No. 08-CV-6525, Dkt. Nos. 19, 20, 23.  Accordingly, I conclude *Hayes III* does not constitute a strike under section 1915(g).

iv.    *Hayes IV*

Finally, defendants argue that *Hayes IV* counts as two strikes against plaintiff in light of the district court's dismissal of plaintiff's complaint in the case based on its failure to state a claim upon which relief

may be granted, and the Second Circuit's subsequent dismissal of plaintiff's appeal of that dismissal. Dkt. No. 30-1 at 8 (citing *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010)). In *Hayes IV*, now-Chief District Judge Loretta A. Preska issued an order on September 1, 2009, granting plaintiff's motion to proceed IFP, but dismissing the complaint because it "fail[ed] to state a claim on which relief may be granted and/or assert[ed] claims against defendants who are immune from suit." *Hayes IV*, No. 09-CV-7608, Dkt. No. 3. That dismissal clearly constitutes a strike for purposes of section 1915(g), and represents plaintiff's first strike. Despite Judge Preska's certification pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from her order dismissing the case "would not be taken in good faith," *id.*, plaintiff nevertheless appealed the decision to the Second Circuit, *Hayes IV*, No. 09-CV-7608, Dkt. No. 5. The Second Circuit subsequently dismissed the appeal on September 5, 2010, "because it lacks an arguable basis in law or fact," thereby constituting plaintiff's second strike. *See Chavis*, 618 F.3d at 165 ("[A]n incarcerated plaintiff incurs two strikes when a complaint and a subsequent appeal are independently dismissed for grounds listed in [section] 1915(g)."); *accord, Mills v. Fischer*, 645 F.3d 176, 177 n.1 (2d Cir. 2011).

In summary, because I conclude that the plaintiff had accumulated only two strikes prior to filing this action, I recommend that defendant's request to revoke plaintiff's IFP status be denied.

### B.  Exhaustion of Available Administrative Remedies

In support of their motion for summary judgment, defendants contend that plaintiff's complaint is ripe for dismissal at this juncture based upon his failure to exhaust the available administrative remedies prior to commencing suit.  Dkt. No. 30-1 at 9-12.  In response, plaintiff admits that he did not exhaust before filing this action, but argues that he should be excused from the requirement because he was informed by multiple persons, including DOCCS employees, that he could not file a grievance regarding his retaliation allegations against the defendants.  Dkt. No. 37 at 1-2.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is . . . mandatory. Prisoners must now exhaust all 'available' remedies[.]"); *Hargrove v. Riley,* No. 04-CV-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Bock*, 549 U.S. 199*,* 212 (2007). In the event the defendant establishes that the inmate plaintiff failed "to fully complete[] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal. *Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural

rules." *Woodford*, 548 U.S. at 95; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).[7]

In accordance with the PLRA, the DOCCS has made a grievance procedure, called the Inmate Grievance Program ("IGP"), available to inmates. It is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson*, No. 96-CV-5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). Embodied in 7 N.Y.C.R.R. § 701, the IGP requires that an inmate first file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. *Id.* A representative of the facility's inmate grievance resolution committee ("IGRC") has up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

---

[7]     While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision.  *Id.* at § 701.5(c).  The superintendent must issue a written decision within a certain number of days of receipt of the grievant's appeal.[8]  *Id.* at § 701.5(c)(i), (ii).

The third and final step of the IGP involves an appeal to the CORC, which must be taken within seven days after receipt of the superintendent's written decision.  *Id.* at § 701.5(d)(1)(i).  The CORC is required to render a written decision within thirty days of receipt of the appeal.  *Id.* at § 701.5(d)(2)(i).

Accordingly, at each step of the IGP process, a decision must be entered within a specified time period.  Significantly, "[a]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can – and must – be appealed to the next level, including CORC, to complete the grievance process."  *Murray v. Palmer*, No. 03-CV-1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) (citing, *inter alia*, 7 N.Y.C.R.R. § 701.6(g)(2)).

---

[8]      Depending on the type of matter complained of by the grievant, the superintendent has either seven or twenty days after receipt of the grievant's appeal to issue a decision.  *Id.* at § 701.5(c)(i), (ii).

Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

In addition to the ordinary IGP, and relevant to the facts of this case, there is an expedited process within the DOCCS for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he may report the misconduct to the employee's supervisor. *Id.* The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a number, and sent immediately to the superintendent for review. *Id.* at § 701.8(b). Under the regulations, the superintendent or his designees shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house" (by the Office of the New York State Inspector General) or by the New York State

Police.  *Id.* at § 701.8(c), (d).  An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure.  *Id.* at § 701.8(h).

In this case, it is undisputed that plaintiff did not file a grievance related to the allegations that give rise to his claims in this action.  There is no record evidence that plaintiff filed a grievance complaining that defendants Herb and Soto issued the misbehavior report against him on March 8, 2010, in retaliation for plaintiff's filing a grievance against defendant Herb in February 2010.  Similarly, there is no evidence that suggests plaintiff filed a grievance regarding the alleged equal protection violations.  Rather, in his response to the defendants' motion for summary judgment, plaintiff admitted that he did not file a grievance before filing this action.  *See* Dkt. No. 37 at 1 ("My failure to file the grievance should be excused for the following reasons.").  Because there is no dispute as to whether plaintiff followed the procedures set forth in the IGP for complaining about the alleged retaliation by defendants Herb and Soto or the alleged equal protection violations prior to filing this action, I will proceed to the next step of the exhaustion inquiry, which asks whether there is any reason that a plaintiff's failure to exhaust may be excused.

In a series of decisions rendered since enactment of the PLRA, the Second Circuit has prescribed a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *See*, *e.g.*, *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004); *see also Macias,* 495 F.3d at 41. Those decisions instruct that, before dismissing an action as a result of a plaintiff's failure to exhaust, a court must first determine whether the administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event of a finding that a remedy existed and was available, the court must next examine whether the defendant has forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through his own actions preventing the exhaustion of plaintiff's remedies, he should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the exhaustion defense survives these first two levels of scrutiny, the court must examine whether the plaintiff has plausibly alleged special circumstances to justify his failure to comply with the applicable administrative procedure requirements. *Id.*

In this case, plaintiff asks the court to excuse his failure to exhaust the available administrative remedies prior to commencing this action

because (1) "[t]he [Special Housing Unit ("SHU")] Counselor told [him] that [he] could not file a grievance alleging that Officer Herb's misbehavior report was retaliatory"; (2) "Correction Counselor Fischer . . . told [him] the same thing that the SHU Counselor told [him]"; and (3) someone in the law library "told [him] that [he] could not griev[e] a misbehavior report even if [he] believed that it had been issued in retaliation for a prior grievance that [he] filed against Defendant Officer Herb." Dkt. No. 37 at 1-2. In essence, plaintiff contends that, because three people told him that he could not file a grievance, he should be excused from the requirement that he do so before commencing this action. *Id.*

These allegations are insufficient to excuse plaintiff's failure under *Hemphill*. Even if it is true that plaintiff was informed by others that he could not grieve defendant Herb's alleged retaliation, that does not render the grievance procedures unavailable to him. *See Yeldon v. Ekpe*, 159 F. App'x 314, 316 (2d Cir. 2005) (finding that the plaintiff's excuse for failing to exhaust the available administrative remedies (i.e., a sergeant corrections officer informed him that any appeal of the denial of his grievance would be futile) does not constitute special circumstances "because it does not render the grievance system 'unavailable' to [him]"); *Rodriguez v. Mt. Vernon Hosp.*, No. 09-CV-5691, 2010 WL 3825736, at

*15 (S.D.N.Y. Sept. 7, 2010) (holding that a prison official's advice to the plaintiff that appealing the denial of his grievance would be futile does not give rise to special circumstances under the *Hemphill* three-part inquiry). Plaintiff has neither alleged nor set forth any evidence that would support a finding that the grievance procedure was unavailable to him with respect to his complaints that defendants Herb and Soto retaliated against him for filing a grievance against defendant Herb. Moreover, there is no evidence that plaintiff attempted to file a grievance but was prevented from doing so by anyone, including either of the defendants. Because there is no record evidence to suggest that the IGP was unavailable to plaintiff, that defendants' are estopped from asserting the affirmative defense, or special circumstances exist to excuse plaintiff's failure to exhaust the available administrative remedies, I recommend that his complaint in this action be dismissed.[9]

IV.  SUMMARY AND RECOMMENDATION

Although plaintiff has proceeded IFP in this case up until this point, defendants have requested that the court review whether he had accumulated three strikes under section 1915(g) prior to commencing this

---

[9]      I also note that plaintiff has failed to address the issue of exhaustion in his proposed amended complaint. *See generally* Dkt. No. 26-1. He neither alleges that he exhausted administrative remedies with respect to his allegations against the defendants, nor argues that his failure should be excused for any reason. *Id.* Indeed, the proposed amended complaint is silent regarding exhaustion. *Id.*

action.  After a careful review of plaintiff's previous litigation history, I find that he had only accumulated two strikes at the time he filed his complaint, and therefore revocation of his IFP status is not appropriate.  However, because there is nothing in the record now before the court, including any allegations by the plaintiff, to suggest that plaintiff is excused from failing to exhaust the available administrative remedies before filing this action under any of the exceptions listed in *Hemphill*, I recommend that the action be dismissed on the procedural basis of failure to exhaust, without reaching the merits of plaintiff's claims.  Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment, Dkt. No. 30, be GRANTED, and that the action be dismissed; and it is further

RECOMMENDED that plaintiff's motion for leave to file an amended complaint, Dkt. No. 26, be dismissed as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:     December 27, 2013
           Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Anthony G. GILL, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.
No. 902-CV-1460 (FJS/RFT).

Dec. 19, 2006.

Anthony G. Gill, of counsel, Comstock, NY, Plaintiff, Pro Se.

Hon. Eliot Spitzer, Attorney General of the State of New York, Douglas Goglia, Esq., Asst. Attorney General, of counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge Randolph F. Treece filed November 20, 2006 and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, it is hereby

**ORDERED,** that the Report-Recommendation of Magistrate Judge Randolph F. Treece filed November 20, 2006 is **ACCEPTED** in its entirety, for the reasons stated therein; and it is further

**ORDERED,** that the Order granting Gill's IFP status is **VACATED;** and it is further

**ORDERED,** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) is **GRANTED** unless Gill pays the filing fee of $150.00 within thirty days of this final order.

**IT IS SO ORDERED.**

RANDOLPH F. TREECE, United States Magistrate Judge.

### *REPORT-RECOMMENDATION and ORDER*
### I. INTRODUCTION

Pro se Plaintiff Anthony Gill brings this civil action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his civil rights while he was incarcerated at the Auburn Correctional Facility. Dkt. No. 1, Compl. FN1 Specifically, Gills alleges Defendants Pidlypchak and Dygert filed false misbehavior reports against him and harassed him in retaliation for the filing of numerous institutional grievances against them and a civil lawsuit against Pidlychak for smoking violations. Compl., Pl.'s Statement of Facts.

FN1. On December 23, 2002, Defendants filed a Motion to Dismiss Gill's Complaint pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 6, Mot. to Dismiss. By Order of the Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky sitting by designation, Defendants' Motion was granted dismissing Gill's complaint with prejudice. Dkt. No. 17, Decision & Order, dated July 28, 2003. Judgment was entered on August 1, 2003 and Gill appealed. Dkt. Nos. 18 & 19, Notice of Appeal, dated Aug. 4, 2003. The Second Circuit affirmed the District Court's dismissal of Gill's Eighth Amendment claim, but vacated the Judgment of the District Court dismissing Gill's First Amendment claim and remanded the action back to the District Court. *Gill v. Pidlypchak,* 389 F.3d 379 (2d Cir.2004).

Presently before the Court is Defendants' Letter-Motion requesting an order revoking Gill's *in forma pauperis* (IFP) status and conditionally dismissing this action pursuant to 28 U.S.C. § 1915(g) pending Gill's prompt payment of the statutory filing fee of $150.00. FN2 Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1. Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp.,

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION

### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis*. 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2).

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (**PLRA**) of 1996, which renders several restrictions on a **prisoner's** ability to exploit the justice system. One such mechanism is the so-called "three **strikes** rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been **dismissed** as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the **PLRA** amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to **filing lawsuits**. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to **file** actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " ' nothing to lose and everything to gain' " environment which allows inmates indiscriminately to **file** suit at taxpayers' expense. *See Anderson v. Coughlin, 700 F.2d 37, 42 (2d Cir.1983)* (quoting *Jones v. Bales, 58 F.R.D. 453, 463-64 (N.D.Ga.1972)*, aff'd, 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases **count** towards the three **strikes** rule, a court may look to **dismissals** which predated the enactment of the **PLRA**. *Welch v. Galie, 207 F.3d 130, 132 (2d Cir.2000)*. The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the **prisoner's** case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir.2004).* He "has **commenced** at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has **filed** at least thirty-nine (39) different **lawsuits** in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

> FN3. *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accettulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

> FN4. In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

### C. Application of *Snider v. Melindez* and *DeLeon v. Doe*

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w [h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider.*" Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> FN5. In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g) ] is properly considered *at the time an action is dismissed.*" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these **strikes** one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as **strikes** under the terms of § 1915(g)."[FN6] *Id* .

> FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:
>
> The designation of **strikes** has no practical consequences until a defendant in a **prisoner's lawsuit** raises the contention that the **prisoner's** suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three **strikes**. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three **strikes**. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

*DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).

The Second Circuit also stated that "[c]ontemporanous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez,* 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accetulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accetulli,* 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325); *Gill v. Anna M. Kross Center,* 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p. 2 (S.D.N.Y.) (citing *Neitzke v. Williams,* 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accetulli* and *Kross* cases "were **dismissed** due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the **dismissals** of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "**strikes**" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were **dismissed** by the Northern District for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure.[FN7] By his own admission, Gill concedes that these two cases were **dismissed** pursuant to FED.R.CIV.P. 11. Irrespective of specific language used in the District's Decisions and Orders **dismissing** these actions, we find that a Rule 11 **dismissal** is a **dismissal** on the merits. Therefore, these two cases would also each qualify as "**strikes**" against the Plaintiff.

FN7. A history of failure to prosecute is akin to the **filing** of a frivolous claim.

From the discussion and analysis above, it is clear that these types of **dismissals** are precisely what Congress had in mind when it enacted the **PLRA**, hoping to discourage and limit the amount of *frivolous* **lawsuits** brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "**strikes**" at the time he **commenced** the present action.

**D. Exception to the "Three Strikes Rule"**

**\*5** Notwithstanding prior **dismissals**, an inmate can overcome the "three **strikes** rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

**E. Revoking Gill's IFP Status**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006.[FN8] Pl.'s Lt.-Resp. at p. 4.

> FN8. Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Order granting Gill's IFP status (Dkt. No. 4) be VACATED; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

**\*6 ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.

Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

(Cite as: 2008 WL 552872 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Joseph P Paul GUARNERI, Plaintiff,
v.
Lt. James HAZZARD; Cpl J. Cronk; Deputy Paul
Marsh, Jr.; Deputy Grippin; Deputy Howland; Frederick
C. Lamy, Commissioner; Francis T. Sullivan,
Commissioner; Deputy Mace; John Doe, Deputy; and
Dr. Weitz, Defendants.
No. 9:06-CV-0985.

Feb. 27, 2008.

Joseph P Paul Guarneri, Elmira, NY, pro se.

Girvin & Ferlazzo, P.C., Gregg T. Johnson, Esq., Jacinda
Hall Conboy, Esq., Scott P. Quesnel, Esq., of Counsel,
Albany, NY, for Defendants Hazzard, Cronk, Marsh,
Grippin, Howland, and Mace.

O'Connor, O'Connor, Bresee & First, P.C., Justin O.
Corcoran, Esq ., of Counsel, Albany, NY, for Defendant
Weitz.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Bruce J. Boivin, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendant Sullivan.

*ORDER*

NORMAN A. MORDUE, Chief Judge.

*\*1* The above matter comes to me following a
Report-Recommendation by Magistrate Judge David R.
Homer, duly filed on the 6th day of February 2008.
Following ten days from the service thereof, the Clerk has
sent me the file, including any and all objections filed by
the parties herein.

After careful review of all of the papers herein,
including the Magistrate Judge's Report-Recommendation,
and no objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby approved.

2. Sullivan's motion to dismiss (Docket No. 43) is
granted and that the amended complaint is dismissed in its
entirety as to her.

3. Dr. Weitz's motion to dismiss (Docket No. 19) is:

a. Granted as to his lack of personal involvement with
the confiscation of the knee brace;

b. Denied as to his lack of personal involvement in
Guarneri's neck, back, and mental health treatments;

c. Denied as to Guarneri's back and neck injuries
sustained in 2003; and

d. Granted as to Guarneri's back and neck injuries
sustained in 2000.

4. The amend complaint is dismissed without
prejudice as to defendants Lamy and John Doe.

5. The Clerk of the Court shall serve a copy of this
Order upon all parties and the Magistrate Judge assigned
to this case.

IT IS SO ORDERED.

**REPORT-RECOMMENDATION AND ORDER**[FN1]

FN1. This matter was referred to the undersigned
for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

Plaintiff pro se Joseph Paul Guarneri ("Guarneri"),
presently an inmate in the custody of the New York State
Department of Correctional Services ("DOCS"), brings

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

(Cite as: 2008 WL 552872 (N.D.N.Y.))

this action pursuant to 42 U.S.C. § 1983 alleging that defendants, [FN2] six Schoharie County employees ("County defendants"), two New York State Commissioners ("State defendants"), and one physician, violated his First and Eighth Amendment rights while Guarneri was incarcerated at the Schoharie County Correctional Facility ("Schoharie"). Am. Compl. (Docket No. 13). Presently pending are the motions for summary judgment of the physician (Docket No. 19) and the State defendants [FN3] (Docket No. 43) pursuant to Fed.R.Civ.P. 12(b)(6). Guarneri opposes both motions. Docket No. 46. For the following reasons, it is recommended that the physician's motion to dismiss be granted in part and denied in part and that the State defendant's motion be granted.

> FN2. Guarneri initially named twelve defendants, two of whom were dismissed by an order dated March 6, 2007 (Docket No. 15) and one who remains unidentified. State Defs. Memorandum of Law (Docket No. 43, Pt. 4) at 3 n. 2.

> FN3. Defendant Lamay has not been served or otherwise appeared in this action. See State Defs. Memorandum of Law at 3 n. 5. Likewise, defendant John Doe has neither been served nor further identified. More than 120 days have elapsed since the amended complaint was filed. Accordingly, it is recommended that the amended complaint be dismissed without prejudice as to both defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b).

## I. Background

The facts are related herein in the light most favorable to Guarneri as the nonmoving party. See subsection II(A) *infra.*

Guarneri was incarcerated at Schoharie from June 6 to August 2006 for a parole violation. Am. Compl. at ¶ 2. On June 16, 2006, Guarneri represented himself at his preliminary hearing. *Id.* at ¶ 2. Guarneri claims that the Schoharie law library was inadequate because it lacked appropriate resources and utilized a crude and unreliable library loan system which delivered requested material, if at all, after the date of the preliminary hearing. *Id.* These deficiencies "infringed and undermined [Guarneri's] constitutional rights." *Id.* Additionally, Guarneri claims that his time in the library was "intentionally and

unreasonably limited ...." *Id.* at ¶ 42. Guarneri also contends that defendant Hazzard failed to copy the appropriate Penal Law sections regarding the period of punishment and failed to provide him with the correct case law pertaining to his litigation. *Id.* at ¶ 45.

**\*2** Besides his legal difficulty, Guarneri also arrived at Schoharie in grave pain due to pre-existing injuries including herniated discs in his neck and lower back, torn ligaments in his knee, Post-Traumatic Stress Disorder (PTSD), bipolar disorder, and depression. *Id.* Guarneri claims that on July 21, 2006, he was "denied ... emergency medical care by [defendants] Weitz and [ ] Hazzard for a [knee] give-way episode...." *Id.* at ¶ 22. Furthermore, Guarneri contended that upon receiving medical attention in the emergency room, hours later and after suffering severe pain, the treatment was wholly inadequate. *Id.* at ¶ 32. Guarneri also makes reference to incidents occurring in 2000 and 2003 which resulted in his herniated discs, alleging that at the time of the incident defendants Marsh and Hazzard delivered inadequate medical care that was further perpetuated by defendants Weitz and Hazzard with their decision to prohibit Guarneri from receiving a back brace. *Id.* at ¶ 30. Additionally, Guarneri contends that defendants Hazzard, Crook, Marsh, Grippin, Howland, Mace, John Doe, and Weitz all colluded against him "by not letting [Guarneri] speak to mental health counselors when [he was suffering from] mental health episodes ...." *Id.* at ¶ 35. Lastly, Guarneri contends that after arriving at Elmira Correctional Facility in August 2006, defendants Hazzard, Mace, and John Doe deliberately interfered with his medical treatment by precluding him from wearing the hinged knee brace which had subsequently been provided to him at Schoharie. *Id.* at ¶ 2.

In response to defendants repossessing his knee brace, Guarneri timely filed a grievance. *Id.* at ¶¶ 22, 25. Guarneri contends that the State defendants failed to respond to this grievance because they were acting in concert with the County defendants, "deliberately and intentionally tak[ing] advantage of ... [Guarneri]." *Id.* at ¶ 25. The State defendants lack of communication led Guarneri to the conclusion that "resort to an administrative remed[y] would be clearly futile ...." *Id.*

Additionally, Guarneri alleges that defendant Hazzard

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

(Cite as: 2008 WL 552872 (N.D.N.Y.))

"deliberately and intentionally [attempted to] stop" Guarneri from practicing Catholicism while he was incarcerated. *Id.* at ¶ 36. Guarneri contends that "defendant ... has known for years that [he] has been Catholic and has known the Rev. Ferenezy is not of the Catholic faith;" therefore, Hazzard's actions of arranging meetings between the two when Guarneri requested religious counsel amounted to defendants "tr[ying] to force a different religion on [Guarneri] ... den[ying him] the opportunity to see clergy and Catholic Religious Advisors when requested." *Id.* at ¶ 39.

## II. Discussion

Guarneri asserts two causes of action under the First Amendment that he has been denied (1) meaningful access to the courts and (2) his religious freedom. Additionally Guarneri claims deliberate indifference to a serious medical need in violation of the Eighth Amendment because defendants (1) did not allow him to keep his hinged knee brace upon arrival at Elmira Correctional Facility, (2) provided delayed and inadequate emergency treatment on July 26, 2006, (3) received inadequate care at the time of his disc herniations in 2000 and 2003, and (4) was denied proper medical care when defendants refused to order him a back brace. The physician, Dr. Weitz, moves for summary judgment on the grounds that (1) there was no personal involvement, (2) the amended complaint fails to state a claim for deliberate indifference to serious medical needs, (3) the amended complaint is barred by res judicata and collateral estoppel, and (4) the medical claims relating to Guarneri's back are barred by the statute of limitations [FN4] [FN5] Defendant Sullivan contends dismissal is appropriate because there was no personal involvement.

> FN4. Dr. Weitz advances this valid claim expressly, however briefly, in a footnote in his memorandum of law. Weitz Mem. of Law (Docket No. 19, Pt. 3) at 15 n. 2.

> FN5. Der. Weitz also advances the claim that Guarneri failed to state a valid pendent state law claim. However, the amended complaint fails to allege any pendent state law claims. Thus this argument need not be addressed.

### A. Legal Standard

**\*3** Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Gilfus v. Adessa,* No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y.2006) (citing *De Jesus v. Sears, Roebuck & Co.* 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted)). Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," ... that a *pro se* litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they 'suggest At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations, .. or arguments that the submissions themselves do not "suggest, ..." that we should not "excuse frivolous or vexatious filings by *pro se* litigants" ... and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...."

*Id.* (citations and footnote omitted).

### B. Personal Involvement

Both defendants contend that Guarneri has failed sufficiently to allege their personal involvement.

" '[P]ersonal involvement of defendants in alleged

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

(Cite as: 2008 WL 552872 (N.D.N.Y.))

constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*4 *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Despite Guarneri's submission of an amended complaint, he has failed to allege how Dr. Weitz was involved in the deprivation of his knee brace upon his arrival at Elmira Correctional Facility. Guarneri only references defendants Hazzard, Mace, and John Doe when discussing the events surrounding the confiscation of his knee brace. Am. Compl. at ¶ 19. Thus Guarneri fails to allege any facts indicating that Dr. Weitz was personally involved in those events.

However, Guarneri has contended that Dr. Weitz "denied [Guarneri] appropriate mental health care by not letting [him] speak to mental health counselors ..." and "refused [to] prescribe treatment for (herniated disk) in [sic] the lower back and neck [FN6] ... based on non-medical concerns like cost." Am. Compl. at ¶¶ 35, 30. These allegations specifically identify Dr. Weitz as a participant in the alleged medical indifference he suffered. Thus, Guarneri has succeeded in alleging facts, indicating that Dr. Weitz was personally involved in his medical care.

FN6. This allegation pertains solely to the neck and back injuries sustained in 2003. Those injuries occurring in 2000 have been dismissed as barred by the statute of limitations. *See infra* at subsection II(E).

Additionally, Sullivan has contended that Guarneri fails to allege her personal involvement. Guarneri alleges that the "State acted in concert with [County] defendants by not answering appeals of grievances submitted by [Guarneri] in a timely manner ...." Am. Compl. at ¶ 25. However, failing to "receive a response to a complaint ... is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation." *Abbas v. Senkowski,* No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005). Additionally, Sullivan may not be held personally liable solely because of his supervisory position. Moreover, Guarneri does not allege the creation or execution of an unconstitutional policy or negligent supervision. Thus, Guarneri's conclusory assertions are insufficient to provide a factual basis to support the personal involvement of Sullivan.

Therefore, it is recommended that Dr. Weitz's motion to dismiss be granted as to his involvement in the confiscation of the knee brace but denied with respect to his involvement in Guarneri's neck, back, and mental health treatments. Additionally, it is recommended that Sullivan's motion to dismiss be granted.

**C. Eighth Amendment**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This includes the provision of medical care. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Hathaway,* 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66 (quoting a § 1983 claim is twofold. First, the prisoner must show that there was a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

(Cite as: 2008 WL 552872 (N.D.N.Y.))

sufficiently serious medical need. *Chance v.. Armstrong, 143 F.3d 698, 702 (2d Cir.1998).* Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan,* 511 U.S. 825, 844 (1994).

**\*5** " 'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.2003)* (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright,* 315 F.3d 158, 162-63 (2d Cir.2003) (citing *Chance,* 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. *Smith,* 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance,* 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. *Id .* at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a § 1983 claim." *Magee v. Childs,* No. 04-CV-1089 (GLS/RFT), 2006 WL 681223 at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *Hathaway v.. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

**1. Knee**

Guarneri may have offered evidence sufficient to conclude that the knee injury he sustained was serious. Generally, knee injuries have been "insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." *Johnson v. Wright,* 477 F.Supp.2d 572, 575 (W.D.N.Y.2007) (holding that a prisoner's torn meniscus suffered as a result of a basketball injury was not a serious medical need) (quoting *Moody v. Pickles,* No. 03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (holding that a "medial meniscal tear, with joint effusion" which did not render plaintiff immobile was not a serious medical need; *see also Williamson v. Goord,* No. 02-CV-521(GLS/GHL), 2006 WL 1977438, at *9, 14, 16 (N.D.N.Y. July 11, 2006) (holding that a prisoner's knee injuries including arthrosis, degenerative joint disease, and partially torn anterior cruciate ligament ("ACL"), did not constitute "death or degeneration, or [constitute the appropriate level of] extreme pain [contemplated by] the law").

**\*6** In this case, it is unclear how significantly the deprivation of Guarneri's knee brace affected his mobility as he has subsequently indicated his ability to ambulate. Docket No. 46 at 3. However, construing the facts in the light most favorable to Guarneri, the excruciating pain that he alleges may be of sufficient severity. *Id.* Therefore, viewing the evidence in the light most favorable to Guarneri, it appears that his knee injury was a serious medical condition.

Additionally, construing Guarneri's allegations as true, it appears that there exists a question of fact whether defendant acted with deliberate indifference to that medical condition. Guarneri contends that after he was prescribed the hinged knee brace, defendants intentionally interfered with his treatment by denying him use of the brace. Am. Compl. at ¶ 19. Moreover, Guarneri contends that defendants intentionally delayed transporting him to an emergency room when his knee gave way, causing him excruciating pain for an unnecessarily long period of time. *Id.* at ¶ 32.

Therefore, it is recommended that Dr. Weitz's motion on this ground be denied.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

(Cite as: 2008 WL 552872 (N.D.N.Y.))

### 2. Mental Health

Guarneri also alleges that he suffered from and received inadequate medical treatment for PTSD, bipolar disorder, and depression. "Treatment of mental disorders of mentally disturbed inmates is ... a serious medical need" as contemplated by *Estelle. Guglielmoni v. Alexander,* 583 F.Supp. 821, 826 (D.Conn.1984). Thus, considering all of Guarneri's various complaints concerning his mental health, it is clear that he has alleged facts sufficient to provide relief as to whether he suffered a serious medical need as a result of his mental illnesses.

Moreover, Guarneri also contends that defendants have deliberately precluded him "from speaking to mental health counselors when hav[ing] mental health episodes ...." Am. Compl. at ¶ at 34-35. If proven, this constitutes deliberate indifference to Guarneri's mental health needs. Therefore, it is recommended that Dr. Weitz's motion on this ground be denied.

### 3. Back

Guarneri alleges sufficient evidence to present a serious medical need. Other courts have held that "[s]evere back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment." *Nelson v. Rodas,* No. 01-CV-7887 (RCC/AJP), 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (citations omitted); *see also, Farraday v. Lantz,* No. 03-CV-1520 (SRU), 2005 WL 3465846, at *5 (D. Conn. Dec 12, 2005) (holding that "persistent[ ] complain[ts] of lower back pain caused by herniated, migrated discs [and] sciatica ..." leading to severe pain constitutes a serious medical need). Therefore, with regard to the 2003 back injury, Guarneri has alleged a serious medical need.

Additionally, Guarneri alleges that defendant Hazzard "deliberately and with malice denied adequate medical care ...." Am. Compl. at ¶ 23. Thus, construing these allegations in the light most favorable to Guarneri, he has alleged deliberate indifference to this medical need. Thus, it is recommended that defendant's motion on this ground be denied.

### D. Res Judicata/Collateral Estoppel

**\*7** "A final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94 (1980) (applying res judicata to a 42 U.S.C. § 1983 action). Thus, to sustain a claim of res judicata, the defense must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000) (citations omitted). In New York State, the analysis is governed by the transactional approach in which later claims are barred if they "aris[e] out of the same factual grouping as an earlier litigated claim even if the[y are] ... based on different legal theories or seek[ ] dissimilar or additional relief." *Id.*

Under the Full Faith and Credit Clause of the Constitution, federal courts must grant state court judgments the same preclusive effects as those given to other courts located within the state. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (citing *Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 81 (1984)). However, the bar of res judicata will not apply where the original forum is incapable of providing the relief requested by the plaintiff. *Id.; Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986). The Second Circuit has held that a plaintiff in a § 1983 action who is seeking damages will not be vulnerable to dismissal based upon res judicata, although, a similar plaintiff seeking injunctive relief will be. *Davidson,* 792 F.2d at 277-78; *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 30 (2d Cir.1986).

As a threshold matter, Dr. Weitz correctly notes that Guarneri's previous lawsuit, also filed in the Northern District of New York, is still pending. *See Guarneri v. Bates,* No. 05-CV-444 (GLS/DRH) (report-recommendation of magistrate judge pending final decision before district court). Because the previous action has not received an adjudication on the merits, Dr. Weitz cannot overcome the first prong of the analysis. Thus, it is recommended that Dr. Weitz's motion on this ground be denied without prejudice.

In the alternative, Dr. Weitz also raises the broader affirmative defense of collateral estoppel. "Once a court has decided an issue of fact or law necessary to its

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

(Cite as: 2008 WL 552872 (N.D.N.Y.))

judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen,* 449 U.S. at 94 (1980). Collateral estoppel is applicable:

> [I]f (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom ... preclusion is sought has a full and fair opportunity to contest the decision ...; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action.

**\*8** *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987) (citation omitted). The requirement of a full and fair opportunity to contest requires that the plaintiff "was fully able to raise the same factual or legal issues" in the prior litigation as asserted in the present case. *LaFleur v. Whitman,* 300 F.3d 256, 274 (2d Cir.2002).

However, it is clear that there has not been a final determination in the pending federal case and Dr. Weitz, again, cannot surmount the first prong of the test. Therefore, Dr. Weitz's motion should be denied without prejudice on this ground as well.

### E. Statute of Limitations

Dr. Weitz moves to dismiss Guarneri's Eighth Amendment allegations concerning inadequate treatment for his neck and back on the ground that they are barred by the statute of limitations. While there is no provision in § 1983, § 1988 provides that state law may apply if not inconsistent with the Constitution or federal law. 42 U.S.C. § 1988(a) (2003); *Moor v. County of Alameda,* 411 U.S. 693, 702-03 (1973). In New York, the applicable statute of limitations for a § 1983 suit is the three-year period governing suits to recover upon a liability created or imposed by statute. *See Owens v. Okure,* 488 U.S. 235, 249-51 (1989); *Romer v. Leary,* 425 F.2d 186, 187 (2d Cir.1970); N.Y. C.P.L.R. 214(2) (McKinney 2003).

Federal law governs the determination of the accrual date for purposes of a § 1983 claim. *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002). The claim accrues "when the plaintiff knows or has reason to know" of the harm. *Id.* (citations omitted). "The crucial time for accrual purposes is when the plaintiff becomes aware that he [or

she] is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York,* 632 F.2d 185, 192 (2d Cir.1980). With regard to medical indifference claims, the statute of limitations in a § 1983 suit is derived from personal injury case law, not medical malpractice. *See e.g. Owens,* 488 U.S. at 251.

Here, Guarneri's initial complaint was filed on August 14, 2006. Compl. (Docket No. 1). Thus, claims relating to medical indifference occurring in 2000 are clearly outside the three-year period. However, claims regarding deliberate indifference resulting in herniated discs occurring in 2003 may fall within the three-year statutory period depending on when in 2003 the conduct occurred. Therefore, claims relating to the second back injury in 2003 may present facts upon which relief may be granted depending on when in 2003 the claim is shown to have accrued. At this stage, liberally construing Guarneri's amended complaint, the allegations therein are deemed to assert that claim accrued after August 14, 2003.

Thus, Dr. Weitz's motion on this ground should be granted with regard to the neck and back injuries occurring in 2000 and denied with regard to the back injuries occurring in 2003.

### III. Conclusion

**\*9** For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Sullivan's motion to dismiss (Docket No. 43) be **GRANTED** and that the amended complaint be **DISMISSED** in its entirety as to her;

2. Dr. Weitz's motion to dismiss (Docket No. 19) be:

  a. **GRANTED** as to his lack of personal involvement with the confiscation of the knee brace;

  b. **DENIED** as to his lack of personal involvement in Guarneri's neck, back, and mental health treatments;

  c. **DENIED** as to Guarneri's back and neck injuries sustained in 2003; and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

    d. **GRANTED** as to Guarneri's back and neck injuries sustained in 2000; and

    3. The amended complaint be **DISMISSED** without prejudice as to defendants Lamy and John Doe.

    Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.

Guarneri v. Hazzard
Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Slip Copy, 2013 WL 6173775 (N.D.N.Y.)
**(Cite as: 2013 WL 6173775 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Melvin HERRING, Plaintiff,
v.
B. TABOR, Defendant.

No. 9:12–cv–1739 (GLS/DEP).
Nov. 20, 2013.

Melvin Herring, Auburn, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Laura A. Sprague, Assistant Attorney General, of Counsel, for the Defendant.

***MEMORANDUM–DECISION AND ORDER***
GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Melvin Herring commenced this action against defendants Department of Correction and Community Supervision (DOCCS), Marcy Regional Mental Health Unit (RMHU), correction officer Tabor, B., and correction sergeant Smith pursuant to 42 U.S.C. § 1983. (Compl., Dkt. No. 1.) Herring's complaint alleges violations of the First and Eighth Amendments. (*Id.*) Herring seeks declaratory and injunctive relief, as well as damages. (Compl.¶¶ 79–86.)

Tabor filed a pre-answer motion to dismiss. (Dkt. No. 18.) In a Report–Recommendation and Order (R & R) dated July 1, 2013, Magistrate Judge David E. Peebles recommended that Tabor's motion be granted, with leave to amend. (R & R at 26, Dkt. No. 22.) Both parties have filed objections. (Dkt.Nos.23, 24.) For the reasons that follow, the R & R is adopted in its entirety.

### II. *Background*[FN1]

FN1. The facts are drawn from Herring's

complaint and presented in the light most favorable to him.

Herring is an inmate in the custody of the New York State DOCCS. (*See generally* Compl.) During the relevant time period, Herring was incarcerated in the Marcy Correctional Facility. (*Id.* ¶ 2.) While an inmate at Marcy, Herring worked on the lawns and grounds crew with other inmates. (*Id.* ¶ 16.) On July 17, 2012, Herring was assigned to clean the grounds around a fenced in area of RMHU. (*Id.*) After the crew had finished cleaning this area, Tabor ordered several crew members to then clean out the recreation pens at RMHU, which were littered with items such as food, paper, and clothing. (*Id.* ¶¶ 18, 20.) At some time prior to this order, inmates on the crew had been advised that they should not get too close to the RMHU recreation pens because RMHU inmates had a tendency to throw urine and feces out of their cell windows. (*Id.* ¶ 17.) Herring had also indicated to Tabor that the area smelled of urine and feces. (*Id.* ¶ 19.) However, Tabor denied smelling feces, and ordered the inmates to begin cleaning the recreation pens. (*Id.* ¶¶ 19–20.)

Despite a fear of having urine or feces thrown at him and contracting a disease, Herring complied with the order. (*Id.* ¶¶ 20, 63.) Herring was provided with plastic gloves to use while cleaning, and, with the gloves on, Herring disposed of a shirt that had feces on it by placing the shirt in a bag. (*Id.* ¶¶ 22–23.) The next day, Herring filed a grievance to complain about being required to clean the recreation pens, which Tabor allegedly knew contained human waste. (*Id.* ¶ 25.)

### III. *Procedural History*

Herring commenced this action by filing a complaint in November 2012. (Compl.) Following initial review of that complaint by this court, Herring's claims against Smith, DOCCS, and RMHU were dismissed, and all three were dismissed as defendants in this action, leaving only

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

an Eighth Amendment conditions of confinement claim against Tabor. (Dkt. No. 12 at 12–13.) Tabor then moved to dismiss Herring's complaint for failure to state a claim and, alternatively, to revoke Herring's *in forma pauperis* status. (Dkt. No. 18.)

### IV. *Standard of Review*

**\*2** Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4–5.

### IV. *Discussion*

Each party has filed objections to the R & R. (Dkt.Nos.23, 24.) Herring makes several objections to the R & R, primarily asserting that Tabor's conduct constituted deliberate indifference and that Herring has properly alleged an Eighth Amendment violation. (Dkt. No. 24 at 2–5.) Tabor objects only to the portion of the R & R recommending that Herring be given leave to amend his complaint. (Dkt. No. 23 at 1–2.)

### A. *Eighth Amendment Claim*

In his R & R, Judge Peebles recommended dismissal of Herring's conditions of confinement claim because, as alleged, it did not rise to the level of an Eighth Amendment violation. (R & R at 15–22.) Because Herring's objections are all either conclusory in nature or repeat arguments that he made in his complaint and in his response to Tabor's motion to dismiss, they are reviewed under a clear error standard. *See Almonte,* 2006 WL 149049, at *4. The court has thoroughly reviewed the R & R for clear error and found none. This

portion of the R & R is therefore adopted, and Herring's claim against Tabor is dismissed.

### B. *Leave to Amend*

Tabor has objected only to the portion of Judge Peebles' R & R which recommends granting Herring leave to amend his complaint. (Dkt. No. 23 at 1–2.) As this is a specific objection, it is reviewed *de novo*. *See Almonte,* 2006 WL 149049, at *5.

Although in all cases "[t]he court should freely give leave [to amend] when justice so requires," Fed.R.Civ.P. 15(a)(2), "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.2000) (internal quotation marks and citations omitted). Specifically, a complaint filed by a *pro se* litigant "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of N.Y.,* 579 F.3d 176, 183 (2d Cir.2009) (internal quotation marks and citation omitted).

In light of this liberal standard, the court concludes that leave to amend is appropriate, *see* Fed.R.Civ.P. 15(a)(2), and Herring is therefore granted leave to file an amended complaint in compliance with, *inter alia,* Fed.R.Civ.P. 8(a) and N.D.N.Y. L .R. 7.1(a)(4) within thirty days of this order. Herring is advised that his amended complaint must be a complete pleading that will replace and supersede the original complaint in its entirety.

**\*3** As to the remaining portions of the R & R, the court has reviewed them for clear error and has found none. Therefore, for the reasons articulated in the R & R, this court adopts Judge Peebles' recommendations, and dismisses Herring's complaint.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

hereby

ORDERED that Magistrate Judge David E. Peebles' July 1, 2013 Report–Recommendation and Order (Dkt. No. 22) is **ADOPTED** in its entirety; and it is further

ORDERED that Tabor's motion to dismiss (Dkt. No. 18) is **GRANTED** and Herring's complaint (Dkt. No. 1) is **DISMISSED;** and it is further

ORDERED that Herring may—in accordance with the requirements of, *inter alia,* Fed.R.Civ.P. 8(a) and N.D.N.Y. L.R. 7.1(a) (4)—file an amended complaint within thirty (30) days of this order; and it is further

ORDERED that, if Herring fails to file an amended complaint within thirty (30) days of this order, the Clerk shall **CLOSE** this action without further order of the court; and it is further

ORDERED that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*
DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Melvin Herring, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights. While the claims asserted in plaintiff's complaint were originally more broad, following the issuance of an initial screening order by Chief District Judge Gary L. Sharpe, the sole remaining cause of action is an Eighth Amendment conditions of confinement claim asserted against the only remaining defendant in this case, Corrections Officer B. Tabor, arising out of defendant's order directing plaintiff and other inmates to clean an area of a correctional facility that, according to Herring, would expose him to

human feces and urine.

In response to plaintiff's complaint, defendant has moved requesting its dismissal for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant also asks the court to revoke plaintiff's *in forma pauperis* status, in the event his motion is denied. For the reasons set forth below, I recommend that plaintiff's *in forma pauperis* status remain intact, but conclude that plaintiff's complaint fails to state a claim upon which relief may be granted.

I. *BACKGROUND*[FN1]

> FN1. In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546 (1964).

Plaintiff is a prison inmate confined in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. (Dkt. No. 1). Although plaintiff is now imprisoned elsewhere, at all times relevant to the events giving rise to this action, he was housed at the Marcy Correctional Facility ("Marcy"). Plf.'s Resp. (Dkt.19) at 1; Compl. (Dkt. No. 1) at ¶ 1.

*\*4* While an inmate at Marcy, plaintiff was a member of the lawn and grounds work crew. Compl. (Dkt. No. 1) at ¶ 16. Prior to the date in question, plaintiff and the other lawn and grounds crew inmate members had not previously been made to clean the facility's Residential Mental

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Health Unit ("RMHU") recreational pens during plaintiff's nine-month tenure working on the crew. *Id.* at ¶ 67. In fact, the inmates working on this crew were routinely warned to stay away from the RHMU recreational pens because the inmates housed in that unit have the tendency to throw urine and feces out of their cell windows. *Id.* at ¶¶ 17, 67.

While the crew was working on the morning of July 17, 2012, defendant ordered plaintiff and other crew members to clean the RHMU recreational pens, stating as a reason the fact that a DOCCS Commissioner was visiting the facility and the pens needed to be cleaned before his arrival. Compl. (Dkt. No. 1) at ¶ 20. Just prior to receiving defendant's order, plaintiff told defendant that the RHMU recreational pens smelled of both urine and feces. *Id.* at 19. Defendant denied smelling anything. *Id.* at ¶ 19, 63. Although other lawn and grounds crew members refused to follow defendant's directive, plaintiff complied out of fear of retaliation .[FN2] *Id.* at ¶¶ 20, 63.

> [FN2]. Plaintiff's complaint alleges that those inmates in the lawn and grounds crew who refused to clean the RMHU recreational pens as directed were subsequently punished with disciplinary confinement in the facility's Special Housing Unit ("SHU"). Compl. (Dkt. No. 1) at ¶ 24.

Plaintiff was given plastic gloves to use while cleaning, and does not allege that any human waste touched his skin or any other part of his body in the process of cleaning the pens. *Id.* at ¶ 22. While inside the RMHU recreational pen, plaintiff disposed of a shirt that "had feces all over it" by placing it into a bag using his hand that was protected by the plastic glove. Compl. (Dkt. No. 1) at ¶ 22. According to plaintiff, the smell of human waste was so strong that he nearly vomited. *Id.* at ¶ 23, 59.

Although it is alleged that a fellow lawn and grounds crew member suffered open sores the day

following the incident, plaintiff does not contend that he suffered any physical injury as a result of his compliance with defendant's order. *Id.* at ¶ 46. Instead, the complaint alleges only that plaintiff was "emotionally traumatized" by the incident. *Id.* at ¶ 12.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action by filing a complaint and application to proceed *in forma pauperis* ("IFP") on November 27, 2012. Compl. (Dkt.Nos.1, 2). In his initial review of plaintiff's complaint, Chief Judge Sharpe granted plaintiff's motion to proceed IFP, and narrowed the scope of the action by dismissing all but a single claim against one defendant. Decision and Order (Dkt. No. 12) at 6–10. As a result of that initial order, only plaintiff's Eighth Amendment conditions of confinement claim, asserted against defendant B. Tabor, remains viable in this action. *Id.* at 12–13. Plaintiff's complaint seeks various forms of injunctive relief, as well as compensatory and punitive damages. Compl. (Dkt. No. 1) at ¶¶ 79–86.

**\*5** In lieu of an answer, defendant filed a motion seeking dismissal of plaintiff's complaint arguing that it fails to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def's. Memo. of Law (Dkt. No. 18–1) at 4–5. In that motion, defendant also argues that, in the event the court denies his motion to dismiss, the court should revoke plaintiff's IFP status because he has accumulated three strikes for purposes of 28 U.S.C.1915(g). *Id.* at 5–6. Plaintiff has responded in opposition to each of defendant's arguments. Plf.'s Resp. (Dkt. No. 19).

Defendant's motion, which has been fully briefed and is now ripe for determination, has been referred to me for issuance of a report and recommendation, [Editor's Note: Attachments of Westlaw case copies deleted for online display.] pursuant to 28 U.S.C. § 636(b) (1)(B) and rule 72.3(c) of the local rules of practice for this court. *See* Fed.R.Civ.P. 72(b).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

III. *DISCUSSION*

A. *Plaintiff's IFP Status*

In support of his motion, defendant argues that, pursuant to 28 U .S.C. § 1915(g), plaintiff's litigation history, which includes at least three merit-based dismissals, warrants revocation of his IFP status. Def.'s Memo. of Law (Dkt. No. 18–1) at 6. Plaintiff opposes that request, and argues that he had not yet accumulated three strikes when this suit was commenced. Plf.'s Resp. (Dkt. No. 19) at 10–11.

Section 1915(g) provides that

[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443–44 (2d Cir.2007) (citing *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997)); *accord, Gill v. Pidlychak,* No. 02–CV–1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and recommendation by* Treece, M.J.). The prophylactic effect contemplated under section 1915(g) is accomplished by requiring a prisoner who has accumulated three strikes to engage in the same cost-benefit analysis before filing suit as other civil litigants; that is, the provision forces inmates to assess whether the result sought to be achieved justifies the filing fee expenditure. *Tafari,* 473 F.3d at 443.

The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari,* 473 F.3d at 442 (citing *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). To determine whether a dismissal satisfies the fail u re-to-state-a-claim prong of section 1915, courts look to Rule 12(b) (6) of the Federal Rules of Civil Procedure for guidance. *Tafari,* 473 F.3d at 442. The question of whether the dismissal of a prior action constitutes a strike for purposes of section 1915(g) is a matter of statutory interpretation, and as such a question for the court. *Id.*

**\*6** The plaintiff in this case has previously filed two actions in federal court in which he was granted IFP status. *Herring v. Madison,* No. 03–CV0152 (N.D.N.Y. filed Jan. 15, 2003) ( *"Herring I"* ); *Herring v. Dep't of Corr.,* No. 08–CV–0101 (N.D.N.Y. filed Jan. 28, 2008) ( *"Herring II"* ). *Herring I* was dismissed as frivolous by visiting Senior District Judge Thomas Eisele on July 25, 2004. *Herring I,* 03–CV–0152, Order Dated July 25, 2004 (Dkt. No. 43). Defendant argues that this dismissal counts as plaintiff's first strike. Def.'s Memo. of Law (Dkt. No. 18–1) at 6. Plaintiff subsequently appealed the dismissal in *Herring I* to the Second Circuit ( *"Herring I* appeal"); that appeal, however, was dismissed for failure to comply with a court order. *Herring I,* 03–CV–0152, Mandate Dated Jan. 14, 2005 (Dkt. No. 49). Defendant argues that this dismissal represents plaintiff's second strike. Def.'s Memo. of Law (Dkt. No. 18–1) at 6. *Herring II* was dismissed for failure to timely file an amended complaint in compliance with a decision and order finding the original complaint failed to state a cognizable claim pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure. *Herring II,* No. 08–CV–0101, Judgment Dated Feb. 13, 2009 (Dkt. No. 15). Defendant argues that this constitutes plaintiff's third strike. Def.'s Memo. of Law (Dkt. No. 18–1) at 6.

The district court's dismissals in *Herring I* and *Herring II* fall well within the definition of a strike under section 1915(g). Plaintiff's complaint in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Herring I* was dismissed as frivolous, a disposition that is expressly covered by section 1915(g). *Herring I,* 03–CV–0152, Order Dated Jul. 22, 2004 (Dkt. No. 43). Although *Herring II* was ultimately dismissed because plaintiff failed to avail himself of the opportunity to amend his complaint, plaintiff was afforded that opportunity only because all of the claims asserted in his original complaint lacked palpable merit. *Herring II,* No. 08–CV–0101, Memorandum–Decision and Order Dated Dec. 15, 2008 (Dkt. No. 14). Under these circumstances, the dismissal constitutes a strike for purposes of section 1915(g). *See Bermudez v. Rossi,* No. 07–CV–0367, 2008 WL 619170, at *3 (N .D.N.Y. Mar. 3, 2008) (Kahn, J.) (finding that one of the plaintiff's previously dismissed actions counted as a strike where the plaintiff had failed to file an amended complaint following the court's determination that the original complaint "lacked substantive sufficiency").

I cannot agree, however, that the dismissal of the *Herring I* appeal constitutes a third strike against plaintiff. Defendant relies on *Guarneri v. Wood,* No. 08–CV–0792, 2011 WL 4592209 (N.D .N.Y. Sept. 2, 2011) (Homer, M.J.), in arguing that a dismissal based on a failure to comply with a court order may constitute a strike under section 1915(g).

Although it is true the court in *Guarneri* held that one of the plaintiff's previously dismissed actions for failure to prosecute constituted a strike for purposes of section 1915(g), I respectfully decline to follow that holding for three reasons. First, the court in *Guarneri* found that the plaintiff's dismissed action at issue (the potential third strike) for failure to prosecute counted as a strike because, at the time the action was dismissed, the plaintiff had "filed a complaint, four notices rejecting proposed amended complaints, an amended complaint, and multiple letter requests over the course of four years before the case was ultimately dismissed for failure to prosecute." *Guarneri,* 2011 WL 4592209, at *10. The court commented that the

dismissed action "was not a temporarily infected case with remediable procedural or jurisdictional flaws but one close to Congress' intended policy behind the three-strike provision to prevent the tide of egregiously meritless lawsuits." *Id.* (internal quotation marks and alterations omitted) (citing *Tafari,* 473 F.3d at 443). In this case, the circumstances surrounding the Second Circuit's dismissal of plaintiff's appeal from *Herring I* are materially distinguishable. Specifically, the dismissal occurred not even six months after plaintiff filed his notice of appeal, and, in dismissing the appeal, the Second Circuit did not comment on its merits.

**\*7** Second, although *Guarneri* relied, in part, on *Bermudez* in finding that a previous dismissal based on a failure to comply with a court order may constitute a strike, the *Bermudez* court explicitly determined that the previous action at issue in that case was "essentially" dismissed for failure to state a claim upon which relief could be granted. *Bermudez,* 2008 WL 619170, at *3. Accordingly, to the extent that *Guarneri* relied on *Bermudez* for support of the proposition that a dismissal for failure to prosecute constitutes a strike, that reliance appears to have been misplaced.

Third, in light of the fact that the Second Circuit has not addressed the matter, I am inclined to follow those courts in this circuit that have declined to find that a dismissal for failure to prosecute or comply with a court order constitutes a strike under section 1915(g). *See, e.g., Toliver v. Perri,* No. 10–CV–3165, 2011 WL 43461, at *1 (S.D.N.Y. Jan. 6, 2011); *Kalwasinski v. McCracken,* No. 09–CV–6295, 2009 WL 4042973, at *4 (W.D.N.Y. Nov. 19, 2009); *Harry v. Doe,* No. 09–CV–2342, 2009 WL 2152531, at *1 (E.D.N.Y. Jul. 17, 2009).[FN3]

> FN3. At least two other circuits have also ruled that an action dismissed for failure to prosecute does not constitute a strike under section 1915(g). *Torns v. Miss. Dep't of Corrs.,* 317 F. App'x 403, 404 (5th

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.2009); *Butler v. Dep't of Justice,* 492 F.3d 440, 443 (D.D.C.2007); *but see O'Neal v. Price,* 531 F.3d 1146, 115 (9th Cir.2008) (construing a district court's dismissal of an action "during the screening process for a reason enumerated in [28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2)(B) or 42 U.S.C. § 1997e(c) ]" as a strike, "even if the district court styles such dismissal as denial of the prisoner's application to file the action without prepayment of the full filing fee").

In sum, because I find that plaintiff had accumulated only two strikes for purposes of section 1915(g) at the time this action was commenced, I recommend that his IFP status remain intact.[FN4]

> **FN4.** As is discussed more fully below, I am recommending that plaintiff's complaint in this action be dismissed for failure to state a cognizable claim. The Second Circuit has held that courts should determine whether an inmate has accumulated three strikes only when the section 1915(g) issue is ripe for adjudication, instead of determining whether a dismissal constitutes a strike at the time of entering judgment on the dismissal. *See Deleon v. Doe,* 361 F.3d 93, 95 (2d Cir.2004) ("[D]istrict courts should not issue these strikes one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at the appropriate time-qualify as strikes under the terms of [section] 1915(g)."). While I am bound to follow this admonition, I note that, in the event that my recommendation is accepted, and this action is ultimately dismissed for failure to state a claim, it could be argued that plaintiff will then have accumulated three strikes for purposes of section 1915(g). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

B. *Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal,* 556 U.S. 677–78 (quoting Fed.R.Civ.P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly,* 550 U.S. at 555–56); *see also Cooper v. Pate,* 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal,* 556 U.S. at 678. For purposes of assessing the motion, the court may consider the complaint as well as any documents attached* as exhibits or incorporated by reference. *Avent v. Doe,* No. 05–CV–1311, 2008 WL 877176 at *2 (N.D.N.Y. Mar. 31, 2008) (Scullin, J., adopting report and recommendation by DiBianco, M.J.) (citing *Dangler v. New York City Off Track Betting Corp.,* 193 F.2d 130, 138 (2d

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.1998)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U .S. at 570); *see also Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U .S. at 570) (alterations omitted).

**\*8** When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) ("[W]hen a plaintiff proceeds *pro se,* a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.,* 804 F.Supp.2d 100, 104 (N.D.N.Y.2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

C. *Eighth Amendment Conditions of Confinement*

Plaintiff's claim in this action is grounded in the Eighth Amendment. Herring alleges that, by instructing him to clean the RMHU recreation pens, defendant subjected him to a cruel and unusual punishment. *See generally* Compl. (Dkt. No. 1). In his motion, defendant argues that the conditions to which the plaintiff was exposed, even if unpleasant, did not rise to the level of a constitutional violation. *See generally* Def.'s Memo. of Law (Dkt. No. 18–1).

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or which 'involve the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01 (1958); *Gregg v. Georgia,* 428 U.S. 153, 169–73 (1976) (internal citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and subjective requirement. *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996). As to the objective requirement, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs,' " *Jolly,* 76 F.3d at 480 (quoting *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.2985)); *see also Walker v. Schult,* —— F.3d. ——, No. 12–CV–1806, 2013 WL 2249159, at \*4 (2d Cir. May 23, 2013) ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference,' " *Jolly,* 76 F.3d at 480 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)); *see also Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at \*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837; *see also Waldo,* 1998 WL 713809, at \*2; *Davidson,* 920 F.Supp. at 308.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*9** The Second Circuit has "long recognized that unsanitary conditions ... can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker,* 2013 WL 2249159, at \*6. An inmates' exposure to human waste may, in extreme situations, satisfy the objective element of an Eighth Amendment analysis. *See, e.g., LaReau v. MacDougall,* 473 F.2d 974, 978 (2d Cir.1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

In his complaint, plaintiff alleges that he was exposed to human feces when defendant ordered him to clean the recreational pen in the RMHU. *See generally* Compl. (Dkt. No. 1). Plaintiff alleges he nearly vomited from the smell of human waste while inside the pen, and that he contacted human feces when he disposed of a shirt that "had feces all over it" by picking it up with his hand that was protected by a plastic glove and placing it into a bag. *Id.* at ¶¶ 22, 23. Although it is not clear from plaintiff's complaint precisely how long he was inside the pen, it is alleged that he entered after he completed his regular morning lawn and grounds work, and that the lawn and grounds crew members were back in their cells by "before 12:00 p.m." *Id.* at ¶¶ 18, 23.

These allegations, considered together, suggest only that plaintiff was exposed to human waste for, at most, a period of hours, and was ordered to dispose of a shirt that had human feces on it with gloved hands as part of his job on the lawn and grounds crew. Even liberally construed, and accepted as true, these facts do not plausibly suggest that plaintiff was exposed to conditions that created an "unreasonable risk to serious damage to his health." *Walker,* 2013 WL 2249159, at \*4. *See Ortiz v. Dep't of Corr. of New York City,* No. 08–CV–2195, 2011 WL 2638137, at \*9 (S.D.N.Y. Apr. 29, 2011) (dismissing the plaintiff's complaint where it alleged that the toilet in his cell overflowed on three separate occasions, and the plaintiff was forced to remain in his cell on those

occasions for "a relatively small amount of hours," including one incident where plaintiff awoke in the middle of the night to an overflow and was not moved until later that day); *Kee v. Hasty,* No. 01–CV–2123, 2004 WL 807071, at \*26 n. 24 (S.D.N.Y. Apr. 14, 2004) (finding that an allegation that the defendant permitted the plaintiff to "suffer[ ] in feces" was not sufficient to state an Eighth Amendment claim where the defendant permitted the plaintiff to use the restroom at least once during his restraint); *Odom v. Keane,* No. 95–CV–9941, 1997 WL 576088, at \*4 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) (finding that the plaintiff's allegations that his cell was "unsanitary" and "did not have a working toilet" were insufficient to give rise to an Eighth Amendment claim where both "conditions were rectified by the end of the day"); *Evans v. Fogg,* No. 78–CV–5363, 466 F.Supp. 949, 950 (S.D.N.Y.1979) ("To be kept in a refuse-strewn cell for 24 hours and in a flood cell ... for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment."); *but see Gaston v. Coughlin,* 249 F.3d 156, 166 (2d Cir.2001) (finding that the plaintiff's complaint stated an Eighth Amendment conditions of confinement claim where it alleged, *inter alia,* that defendants knowingly permitted an area outside the plaintiff's cell "to remain filled with sewage and excrement for days on end"); *Wright v. McMann,* 387 F.2d 519, 522, 526 (2d Cir.1967) (finding that thirty-three-day period of confinement in a strip cell which was "fetid and reeking from the stench of the bodily wastes of previous occupants which ... covered the floor, the sink, and the toilet," combined with other conditions, was a violation of the Eighth Amendment); *Smith v. United States,* No. 09–CV–729, 2011 WL 777969 at \*10 (N.D.N.Y. Feb. 3, 2011) (Homer, M.J.), *report and recommendation adopted by* 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011) (McAvoy, J.), (finding that the prison official's refusal to flush an outside-controlled cell toilet that caused the plaintiff to become ill after sewage backed up onto the cell

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

floor satisfied the objective element).

**\*10** I also find that plaintiff's complaint similarly fails to satisfy the subjective element of the controlling Eighth Amendment test. *See Walker,* 2013 WL 2249159, at \*4 (holding that, to state an Eighth Amendment conditions of confinement claim, a plaintiff must allege that "the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety"). Plaintiff's complaint fails to allege facts from which one could infer that defendant was aware of a substantial risk of serious harm resulting from potential contact with human waste. Plaintiff was provided with protective plastic gloves for use in removing the human waste in issue, and exposure to it was only for a brief amount of time. Compl. (Dkt. No. 1) at ¶ 22. In addition, plaintiff's complaint alleges that defendant did not smell anything when plaintiff complained of a smell outside the RHMU recreational pens. *Id.* at ¶¶ 19, 63. Additionally, plaintiff's letter to the DOCCS Inspector General, which is incorporated by reference in the complaint, acknowledges that plaintiff did not tell defendant about the feces-stained shirt. Compl. (Dkt. No. 1) at ¶ 38; Plf.'s Resp. Ex. C (Dkt. No. 19) at 19. Although it is alleged that the lawn and grounds crew was routinely warned to stay away from the recreational pens because of the risk that RHMU inmates might throw human waste out the windows, Compl. (Dkt. No. 1) at ¶¶ 17, 67, and a liberal reading of that allegation could give rise to a inference that defendant may have been aware that the pens contained human waste, this amounts to an allegation of only negligence. An allegation of negligence is insufficient to satisfy the subjective requirements of an Eighth Amendment claim. *See Farmer,* 511 U.S. at 835 (describing subjective element as requiring "more than mere negligence"). Accordingly, there are no facts alleged from which I may infer that defendant was aware that plaintiff contacted human waste or was at risk for doing so to the extent that it would create a risk of substantial harm.

Because I conclude that plaintiff's complaint fails to allege sufficient facts to satisfy either the objective or subjective element of the Eighth Amendment conditions of confinement analysis, I recommend that this claim be dismissed.

D. *Recovery of Compensatory Damages*

Although I have recommended that plaintiff's Eighth Amendment claim be dismissed on other grounds, for the sake of completeness, I will briefly address defendant's argument that plaintiff is precluded from recovering compensatory damages. Def.'s Memo. of Law (Dkt. No. 18–1) at 5.

Pursuant to 42 U.S.C. § 1997e, "No Federal civil action may be brought by a prisoner confined in a ... correctional facility[ ] for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Second Circuit has held that section 1997e(e) applies to all federal civil actions, including those pursuant to 42 U.S.C. § 1983. *Thompson v. Carter,* 284 F.3d 411, 417–18 (2d Cir.2002). As such, "[c]laims brought by prisoners pursuant to [section] 1983 for ... damages unrelated to any physical injuries are subject to dismissal." *Shariff v. Coombe,* No. 96–CV–3001, 2002 WL 1392164, at \*4 (S.D.N.Y. June 26, 2002). The absence of physical injury does not totally bar civil rights claims by inmates, however, because section 1997e(e) does not preclude claims for nominal damages, punitive damages, or declaratory, or injunctive relief. *Shariff,* 2002 WL 1392164, at \*5.

**\*11** Here, plaintiff's complaint is devoid of any allegation that he experienced physical injury as a result of defendant's conduct giving rise to this action. *See generally* Compl. (Dkt. No. 1.) Accordingly, I recommend dismissal of plaintiff's Eighth Amendment claim to the extent that it requests an award of compensatory damages as relief.

E. *Whether to Permit Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). In this case, most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his pleading. Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning,' " *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, J.) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)); *Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J .). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to his claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Finally, plaintiff is informed that any such amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

### IV. *SUMMARY AND RECOMMENDATION*

**\*12** Although I find that plaintiff's IFP status should remain intact, I recommend that his complaint be dismissed because the allegations contained therein do not give rise to a cognizable Eighth Amendment conditions of confinement claim.

Based upon the foregoing, it is therefore hereby respectfully

RECOMMENDED that defendant's motion (Dkt. No. 18) seeking revocation of plaintiff's IFP status be DENIED, but that his motion (Dkt. No. 18) to dismiss be GRANTED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2013.
Herring v. Tabor
Slip Copy, 2013 WL 6173775 (N.D.N.Y.)

END OF DOCUMENT



Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Isaias BERMUDEZ, Plaintiff,
v.
S.ROSSI, Correctional Officer, Coxsackie Correctional
Facility, et al, Defendants.
No. 9:07-CV-0367 (LEK/DRH).

March 3, 2008.

Isaias Bermudez, Attica, NY, pro se.

Hon. Andrew M. Cuomo, New York State Attorney
General, Gerald J. Rock, Esq., Assistant Attorney General,
of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on February 20, 2008 by
the Honorable David R. Homer, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the
Northern District of New York. Report-Rec. (Dkt. No.
28). After ten days from the service thereof, the Clerk has
sent the entire file to the undersigned, including the
objections Plaintiff Isaias Bermudez, which were filed on
February 27, 2008. Objections (Dkt. No. 30).

It is the duty of this Court to "make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b). "A [district] judge ... may
accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge." *Id.*
This Court has considered the objections and has
undertaken a de novo review of the record and has
determined that the Report-Recommendation should be
approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt.
No. 28) is **APPROVED** and **ADOPTED** in its
**ENTIRETY;** and it is further

**ORDERED,** that Defendants' Motion to dismiss
pursuant to 28 U.S.C. § 1915 is **GRANTED;** and it is
further

**ORDERED,** that the Clerk serve a copy of this Order
on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION AND ORDER[FN1]

> FN1. This matter was referred to the undersigned
> for report and recommendation pursuant to 28
> U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

Plaintiff pro se Isaias Bermudez ("Bermudez"), an
inmate in the custody of the New York State Department
of Correctional Services ("DOCS"), brings this action
pursuant to 42 U.S.C. § 1983 alleging that defendants,
eight DOCS employees, violated his constitutional rights
under the First, Fourth, and Fourteenth Amendments.
Compl. (Docket No. 1). Presently pending is defendants'
motion to vacate Bermudez's in forma pauperis (IFP)
status and to dismiss the complaint pursuant to 28 U.S.C.
§ 1915(g). Docket Nos. 17, 19. Bermudez opposes the
motion. Docket Nos. 18, 21. For the following reasons, it
is recommended that defendants' motion be granted.

### I. Background

Bermudez asserts that while he was incarcerated at
Coxsackie Correctional Facility ("Coxsackie") in 2005,
defendants conspired to and did violate his First and
Fourteenth Amendment rights. Compl. at ¶¶ 2, 72-82.
Bermudez contends that on July 16, 2005, he filed a
grievance because he did "not receiv[e] toothpaste, soap
and envelopes for the last 24 days that [he] was moved to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))

[the D block] ....“ *Id.* at ¶¶ 14-15. Bermudez alleges that on July 18, defendant Montgomery, a corrections officer, made "retaliatory threats" promising to cause Bermudez serious physical harm. *Id.* at ¶¶ 16-17. Later that day and in fear for his safety, Bermudez wrote a letter to the superintendent. *Id.* at ¶ 18.

On July 21, 2005, Bermudez's cellblock "was under an institutional search ..." and Bermudez alleges that defendants, falsely claiming that Bermudez threatened them, unnecessarily searched his cell. *Id.* at ¶¶ 28, 30-31. Bermudez alleges that defendants Rossi and Montgomery thereafter "prepared and then filed a false misbehavior report ..." accusing Bermudez of verbally abusing and exposing himself to defendants. *Id.* at ¶¶ 36-37. This report also contained "a tainted ticket [presented at the] hearing disposition ... offering a pretended signature of a fictitious correctional officer ....“ *Id.* at ¶ 38. Bermudez was placed in keeplock.[FN2] *Id.* at ¶ 39.

> FN2. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (2007).

**\*2** On July 25, 2005, a disciplinary hearing was held. *Id.* at ¶ 40. The hearing was adjourned until July 27, during which time Bermudez alleges he was again threatened by defendants for contesting the disciplinary report. *Id.* at ¶¶ 42, 45. When the hearing was recommenced, "[Bermudez] immediately informed the hearing officer, defendant William Haggett, on the record, about the threats made by defendant ... Montgomery (which was intentionally erased [from the record] )" *Id.* at ¶ 45. Additionally, Bermudez claims that Rossi and Montgomery "testified falsely ... to keep [him] confined ....“ *Id.* at ¶ 46. "[T]he hearing officer ... found [Bermudez] guilty and sentenced [him] to six (6) months in the Special Housing Unit ("SHU")[FN3] with loss of phones, packages and privileges." *Id.* at ¶ 50. While in SHU, Bermudez requested a copy of the recording of the disciplinary hearing but received a copy with a majority of the proceedings deleted. *Id.* at ¶ 52. On October 17, 2005, "the ... disposition was reversed because the Hearing officer failed to address issues regarding retaliation

defense by the inmate." *Id.* at ¶ 56 (citations and internal quotations omitted).

> FN3. SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ..." N.Y. Comp.Codes R. & Regs. tit. 7, § 300.2(b) (2007). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

On August 12, 2005, Bermudez was transferred to Southport Correctional Facility. *Id.* at ¶ 54. Upon arrival, "one of [Bermudez's] property bags containing [his] sneakers, boots, walkman, headphones, contact lenses, art materials, religious materials and cosmetic items, watch, photo album and letters were intentionally thrown away and [ ] never recovered by either ... [f]acility." *Id.* at ¶ 54. This prohibited Bermudez from "attend[ing] regular bible group studies and the communion of breaking bread ...," activities essential to his faith. *Id.* at ¶ 55.

This action was commenced on or about April 5, 2007. Docket No. 1. Bermudez's application to proceed IFP was granted on April 17, 2007. Docket No. 4. Bermudez has filed at least three federal civil rights actions in courts in this circuit prior to the present action. Rock decl. (Docket No. 17, Pt. 3) at ¶ 5. Bermudez's lawsuits all appear to relate, in one fashion or another, to his incarceration in DOCS facilities.

## II. Discussion

Under 28 U.S.C. § 1915, a court "may authorize the commencement, prosecution or defense of any suit, action or proceeding ... or appeal therein, without prepayment of fees ... by a person who submits an affidavit ... that the person is unable to pay such fees ....“ 28 U.S.C. § 1915(a)(1). "Indigent or otherwise disadvantaged litigants are afforded a certain degree of leeway in the ... court system ...; [h]owever[,] the courts' generosity has its limits." *Tafari v. Hues,* 473 F.3d 440, 440 (2d Cir.2007). Defendants seek to vacate the IFP order and dismissal of the complaint under 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))

been dismissed as frivolous, malicious, or for failing to state a claim. *See* 28 U.S.C. § 1915(g) (2006).FN4

> **FN4.** The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA") which had as its principal purpose deterring frivolous prisoner litigation. *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997).

**\*3** These terms have subsequently been defined. Frivolous claims "lack[ ] an arguable basis either in law or in fact." *Tafari,* 473 F.3d at 442 (*quoting Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). Malicious claims are filed with the intent to hurt or harm another. *Id.* (citations omitted). The failure to state a claim uses a parallel definition from Fed.R.Civ.P. 12(b)(6); however, "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g) standard]." *Neitzke,* 490 U.S. at 326; *see also Tafari,* 473 F.3d at 442 (citations omitted).

Additionally, the "three-strikes" provision contains a narrow exception which permits suits notwithstanding prior dismissals when the prisoner is "under imminent danger of serious physical injury." *Id.* In deciding whether application of the exception is warranted, "a court must examine the available pleadings, construed in the light most favorable to the [prisoner] .... " *Gamble v. Maynard,* No. 06-CV-1543 (DNH/DEP), 2008 WL 150364, at *4 (N.D.N.Y. Jan. 14, 2008) (citations omitted). "This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm." *Id.* (citations omitted). This harm must also be real and serious and "merely speculative or hypothetical" harms are insufficient. *Id.* (citations omitted).

Here, Bermudez has initiated at least two prior actions in the Southern District of New York. Defendants identify these two actions and a subsequent appeal as constituting strikes for the purposes of § 1915(g). *See Bermudez v. Dep't of Corr.,* No. 03-CV-312 (S.D.N.Y. Sept. 4, 2003) (hereinafter *Bermudez I* );FN5 *Bermudez v. New York,* No. 03-CV-6705 (MBM) (S.D.N.Y. Sept. 4, 2003) (hereinafter *Bermudez II); Bermudez v. New York,* No. 03-CV-280 (2d Cir. Mar. 11, 2004) (hereinafter *Bermudez*

*III* ).FN6 Both cases and the appeal were dismissed based upon proper § 1915(g) grounds.

> **FN5.** *Bermudez I* is preceded by a 60-day order (*Bermudez v. Dep't of Corr.,* No. 03-CV-312, Docket No. 3) (hereinafter "60-day Order") which serves as the basis for the subsequent decision and order dismissing the case.

> **FN6.** While defendants attached copies of the docket sheets for the various cases, copies of the orders in question were provided to the Court by the Clerk's Office for the Southern District of New York and are being filed in the docket of this case.

*Bermudez I* was dismissed for Bermudez's failure to comply with an order "direct[ing him] to file an amended complaint .... " *Bermudez I.* In the preceding 60-day order, the Court explained that Bermudez's complaint did not "alleg[e] facts sufficient to demonstrate that [ (1) his] injury was caused by any policy or custom of the ... defendants," (2) defendant Farsi was personally involved, "[ (3) Bermudez] ... was given Red I.D. status without th[e mandatory] procedural protections," "(4) an[y] individual(s) w[ere] deliberately indifferent to his medical condition," or (5) he had exhausted his administrative remedies. 60-day Order at 1-4. Thus, the complaint lacked substantive sufficiency and "although ... [Bermudez's] case [was dismissed] for failure to comply with [the 60-day] order, essentially the prior order found that the complaint failed to state a claim upon which relief could be granted." *Gamble v. Monette,* No. 06-CV-136 (LEK/GJD), 2007 WL 2089697, at *4 (N.D.N.Y. July 20, 2007); *see also Haynes v. White,* No. 07-CV-150 (SWW/JTR), 2007 WL 3047006, at *1 n. 1 (E.D.Ark. Oct. 16, 2007) ("Dismissal pursuant to ... a court ... sua sponte dismiss[ing] a case for the "failure of the plaintiff to prosecute or to comply with these rules or any order of the court" may be treated as a dismissal for filing a frivolous action, and thus a "strike ....").

**\*4** As previously discussed, the definition of a frivolous claim is one lacking a basis in law or fact. Therefore, the dismissal of *Bermudez I* constitutes a strike for purposes of § 1915(g). *Bermudez II* was also

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))

"dismiss[ed] because it lack[ed] an arguable basis either in law or in fact." *Bermudez II,* No. 03-CV-6705 at 2. Therefore, Bermudez's second action was also frivolous within the meaning of § 1915(g) and the subsequent dismissal serves as a second strike. Finally, *Bermudez III,* was dismissed because the "appeal lack[ed] an arguable basis in law and fact ...." *Bermudez III,* No. 03-CV-280 at 1. Thus, Bermudez has received three strikes under § 1915(g).

The question then becomes whether Bermudez falls within the scope of the exception to the three-strike rule. Even construing the facts in a light most favorable to Bermudez, a review of the complaint shows that he was not facing imminent danger at the time he filed his complaint. Actually, Bermudez had been transferred from Coxsackie where all of the alleged violations had occurred. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (holding that the imminent danger exception is inapplicable if it does not "involve [the] present incarceration."). Thus, it cannot be said that Bermudez was in imminent danger since none of the defendants remain in contact with him. In addition, Bermudez's claims of a deprivation of his personal property do not constitute a serious physical injury. Moreover, Bermudez's assertions attempting to contend imminent physical harm, that "no matter where he goes ... he will very easily be a target by the staff ... [who] take adverse action against prisoners like [him] ..." are conclusory, speculative, and hypothetical. Docket No. 18 at 9. Therefore, these allegations do not suffice to bring Bermudez within the exception to the rule.

Furthermore, dismissal is not precluded by the fact that Bermudez has already been granted IFP status in this action. Docket No. 4. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998).

Therefore, Bermudez has received three prior strikes within the scope of § 1915(g), he does not qualify for the exception, and it is recommended that the order granting IFP status to Bermudez be vacated and that Bermudez's complaint be dismissed unless he pays the full filing fee of

$250.00 within thirty (30) days of the entry of a final order by the district court.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion (Docket Nos. 17, 19) be **GRANTED** and that:

1. The order granting Bermudez's IFP status (Docket No. 4) be **VACATED;**

2. The complaint be **DISMISSED** as to all defendants and all claims *unless* Bermudez pays the full filing fee of $250.00 within thirty (30) days of the entry of a final order by the district court; and

**\*5** 3. Bermudez be **BARRED** from filing any IFP complaints in this district unless he is under imminent danger of serious physical injury.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.

Bermudez v. Rossi
Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2012 WL 6061000 (E.D.N.Y.)
**(Cite as: 2012 WL 6061000 (E.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Allah F. JUSTICE, Plaintiff,
v.
C/O MERCHANT, c/o Santiago, c/o John Does #
1–2, Defendants.

No. 12–CV–5103 (JS)(WDW).
Dec. 5, 2012.

Allah F. Justice, East Meadow, NY, pro se.

No Appearances for Defendants.

*ORDER*
SEYBERT, District Judge.

**\*1** On October 17, 2012, incarcerated *pro se* plaintiff Allah F. Justice ("Plaintiff") filed his ninth *in forma pauperis* Complaint in this Court pursuant to Section 1983 accompanied by an application to proceed *in forma pauperis.*FN1 The instant Complaint, against Nassau County Corrections Officers Merchant, Santiago, and two unidentified "John Doe" corrections officers (collectively, "Defendants"), purports to allege that Plaintiff was forced to strip and was then assaulted by the Defendants while in his cell at the Nassau Correctional Center on September 29, 2012 at approximately 10:30 p.m.

> FN1. Plaintiff's other actions are: *Justice v. Nassau County Jail, et al.,* 07–CV–3800(JS)(WDW) (dismissed on Dec. 1, 2009 for failure to prosecute); *Justice v. Reilly,* 08–CV–3266(JS)(WDW) (dismissed on Sept. 10, 2009 for failure to prosecute); *Justice v. Corporal McFadden,* 08–CV–3918 (JS)(WDW) (dismissed on Sept. 9, 2009 for failure to prosecute); *Justice v. Corporal McGovern,* 11–CV–5076(JS)(WDW) (partial dismissal

on Dec. 6, 2011 for failure to state a claim); *Justice v. Sposato, et al.,* 11–CV–5946(JS) (WDW) (dismissed on March 7, 2012 for failure to state a claim and with leave to amend); *Justice v. Sposato, et al.,* 12–CV–0473(JS) (WDW) (dismissed for failure to state a claim on April 9, 2012); *Justice v. Nassau County Police, et al.,* 12–CV–2061(JS)(WDW) (Report and Recommendation dated Oct. 12, 2012 recommending dismissal for failure to state a claim); *Justice v. Rice, et al.,* 12–CV–2865(JS)(WDW) (dismissed on July 6, 2012 for failure to state a claim).

Upon review of the application to proceed *in forma pauperis,* the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the Court's filing fee. The Court has considered whether the "three strikes" provision of the Prison Litigation Reform Act ("PLRA") would bar Plaintiff from filing this action *in forma pauperis* and finds that it does not. 28 U.S.C. § 1915(g) bars prisoners from proceeding *in forma pauperis* after three or more previous claims have been dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Section 1915(g), often referred to as the "three strikes" rule, provides:

> In no event shall a prisoner bring a civil action ... under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious injury.

28 U.S.C. § 1915(g). The Court has reviewed each of the dismissals of Plaintiff's prior cases to determine whether such dismissals count as strikes for purposes of the PLRA. Dismissals based on a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6061000 (E.D.N.Y.)
**(Cite as: 2012 WL 6061000 (E.D.N.Y.))**

plaintiff's failure to prosecute do not count as strikes. *See, e.g., Johnson v. Truedo,* No. 11–CV–0627, 2012 WL 3054114, *4 (N.D.N.Y. June 15, 2012)* (Report and Recommendation Adopted by 2012 WL 3062293 (N.D.N.Y. July 26, 2012)) (citing *Toliver v. Perri,* No. 10–CV–3165, 2011 WL 43461, at *1 (S.D.N.Y. Jan. 6, 2011) (add'l citation omitted). Similarly, dismissals that post-date the filing of the current case generally should not be counted in determining whether to bar *in forma pauperis* status in the current case. *See Read v. Bill,* No. 11–CV–6367, 2011 WL 6148635, *3 (W.D.N.Y. Oct.21, 2011); *Eady v. Lappin,* No. 05–CV–0824, 2007 WL 1531879 (N.D.N.Y. May 22, 2007). Given these exceptions, Plaintiff has not yet accumulated three strikes despite his nine *in forma pauperis* cases.

Accordingly, Plaintiff's application to proceed *in forma pauperis* is GRANTED. The Clerk of the Court is directed to forward copies of the summonses for Defendants Merchant and Santiago, the Complaint and this Order to the United States Marshal Service for service on the named Defendants forthwith.

**\*2** However, the United States Marshal Service will not be able to serve the intended "John Doe" Defendants without more information. Accordingly, the Clerk of the Court shall send a copy of the Complaint and this Order to the Nassau County Attorney. Pursuant to *Valentin v. Dinkins,* 121 F.3d 72 (2d Cir.1997) (*per curiam* ), the Court requests that Nassau County Attorney ascertain the full names and service address(es) of the corrections officers, who were involved in the incident described in the Complaint to have occurred on September 29, 2012 at approximately 10:30 p.m. at the Nassau County Correctional Center. The Nassau County Attorney need not undertake to defend or indemnify these individuals at this juncture. This Order merely provides a means by which Plaintiff may name and properly serve the Defendants as instructed by the Second Circuit in *Valentin.* **The Nassau County Attorney is hereby requested to produce the information specified above regarding the identities and service addresses of the corrections officers by January 7, 2013.** Once this information is provided, Plaintiff's Complaint shall be deemed amended to reflect the full names of the John Doe Defendants, summonses shall be issued and the Court shall direct service on these Defendants.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

E.D.N.Y.,2012.
Justice v. Merchant
Not Reported in F.Supp.2d, 2012 WL 6061000 (E.D.N.Y.)

END OF DOCUMENT

Not Reported in F.Supp.2d, 2012 WL 3054114 (N.D.N.Y.)
**(Cite as: 2012 WL 3054114 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Robert JOHNSON, Plaintiff,
v.
Corrections Officer TRUEDO and Corrections
Officer Haze, Defendants.

No. 11–CV–627 (DNH/DRH).
June 15, 2012.

Robert Johnson, Poughkeepsie, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, DOuglas J. Goglia, Esq.,
Assistant Attorney General, of Counsel, Albany,
NY, for Defendants.

**REPORT–RECOMMENDATION AND ORDER**
FN1

> FN1. This matter was referred to the
> undersigned for report and
> recommendation pursuant to 28 U.S.C. §
> 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate
Judge.

**\*1** Plaintiff pro se Robert Johnson ("Johnson"),
formerly an inmate in the custody of the New York
State Department of Corrections and Community
Supervision (DOCCS), brings this action against
two DOCCS corrections officers alleging that they
violated his constitutional rights in violation of 42
U.S.C. § 1983. Compl. (Dkt. No. 1). Presently
pending is defendants' motion to dismiss pursuant
to 28 U .S.C. §§ 1915(e)(2)(A) and 1915(g). Dkt.
Nos. 13. 19. Johnson opposes the motion. Dkt. No.
17. For the reasons which follow, it is
recommended that defendants' motion be denied.

**I. Background**

Johnson has been incarcerated in DOCCS
custody on four separate occasions since 1990 and
was assigned a new DOCCS department
identification number ("DIN") each time. Goglia
Decl. (Dkt. No. 13–2) at ¶ 2. In this action Johnson
alleges that while he was incarcerated at Clinton
Correctional Facility on February 3, 2011, the two
defendants, both corrections officers, took him out
of his cell, repeatedly slapped him, poked him in
the eye with a cane, made racist references to him,
and threatened to kill him if he reported the
incident. Compl. at 5. Johnson seeks compensatory
and punitive damages as well as injunctive relief.
Id. at 7. This action followed. Since this action was
commenced, Johnson has been released from
incarceration. Dkt. Nos. 5, 12.

**II. Discussion**

Defendants contend first that in his application
to proceed in forma pauperis (IFP), Johnson falsely
denied possessing any funds received from the
settlements of unrelated cases in violation of 28
U.S.C. § 1915(e)(2)(A), mandating dismissal of the
action. Defs. Mem. of Law (Dkt. No. 13–1) at 4–5.
Second, defendants contend that at least three prior
actions commenced by Johnson were dismissed for
failure to state claims and in accordance with 28
U.S.C. § 1915(g), Johnson's IFP status should be
revoked and this action should be dismissed if
Johnson fails to pay the filing fee within a certain
period of time. Defs. Mem. of Law at 6–8.

**A. IFP Application**

In his IFP application dated May 5, 2011,
Johnson was asked, "Have you received any money
from any of the following sources within the past
twelve months: ... (g) Friends, Relatives, or any
other source?" to which Johnson checked the space
for "No." Johnson Motion to Proceed In Forma
Pauperis and Supporting Affirm. (Dkt. No. 2) at 1.
Johnson signed the application under oath. Id. The
application included an authorization for DOCCS to
disclose his inmate account to the Court and to
disburse funds from that account to the Court in full

Not Reported in F.Supp.2d, 2012 WL 3054114 (N.D.N.Y.)
**(Cite as: 2012 WL 3054114 (N.D.N.Y.))**

or partial payment of the $350 filing fee. *Id.* at 3. The application was granted. Dkt. No. 7.[FN2] Defendants contend that Johnson actually had received approximately $51,500 within the preceding twelve months from the settlements of three cases but failed to disclose this fact as required in the application.

> FN2. This case was initially filed in the Western District of New York and Johnson filed his application for IFP status in that district. Dkt. No. 2. The action was thereafter transferred to this district. Dkt. No. 3. Following transfer to this district, Johnson's application was granted. Dkt. No. 7.

Section 1915(e) (2)(A) provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—(A) the allegation of poverty is untrue...." According to defendants (*see* Goglia Decl. at ¶ 5), Johnson received a total of $51,500 from the following settlements in other cases he had brought while incarcerated:

**\*2** — *Johnson v. Laux,* No. 03–CV–1367 (N.D.N.Y.) was settled for $500 in a stipulation filed October 26, 2010. Goglia Decl. at ¶ 6 & Ex. B.

— *Johnson v. Facteau,* no. 10–CV–372 (N.D.N.Y.) was settled for $50,000 in a stipulation filed January 31, 2011. *Id.* at ¶ 7 & Ex. C.

— *Johnson v. Alessi,* No. 10–CV–8693 (S.D.N.Y.) was settled for $1,000 in a stipulation filed May 27, 2011. Goglia Decl. at ¶ 6 & Ex. D.

As to the *Facteau* settlement for $50,000, Johnson contends that this case involved a different plaintiff with the same name. Johnson Response (Dkt. No. 17. Defendants appear not to dispute this contention. Defs. Reply (Dkt. No. 19) at 1. A

review of the documents filed in *Facteau* indicates that the DIN for the plaintiff in that case does not match any of the four DINs assigned to Johnson. *Compare Facteau* Dkt. No. 1–1 at 2 *with* Goglia Decl. at ¶ 2. Thus, it appears that the *Facteau* $50,000 settlement may not be attributable to Johnson. Moreover, the *Alessi* settlement was not filed until May 27, 2011, three weeks after Johnson's IFP application here. Goglia Decl. at ¶ 6 & Ex. D. The record does not indicate when Johnson received actual payment of the settlement,[FN3] but presuming it was at or about the time the agreement was filed, Johnson was not in possession of that $1,000 at the time he filed his IFP application.

> FN3. The Court takes notice that in virtually every financial settlement with inmates in civil rights cases, counsel for the defendants advises that it takes up to four months from the date a settlement is finalized to process a settlement for payment by the state.

Thus, at most, the record indicates that Johnson had received a $500 settlement in the *Laux* case in the twelve months preceding his IFP application here and that he failed to disclose it in his application. Johnson offers no sufficient reason for this omission. "A misrepresentation by a plaintiff as to his or her financial assets is not necessarily fatal to the plaintiff's claims. However, dismissal is appropriate where a plaintiff misrepresents [his or] her financial arrangements in bad faith to obtain IFP status." *Vann v. Horn,* No. 10 Civ. 6777(PKC), 2011 WL 3501880, at *1 (S.D.N.Y. Aug. 9, 2011); *see also Tompkins v. Local 32BJ, SEIU & Allied Barton Security Servs.,* Nos. 11 Civ. 0414(KBF), 11 Civ. 3236(KBF), 2012 WL 1267876, at *12 (S.D.N.Y. Apr. 12, 2012). "Bad faith includes 'conceal[ing] a source of income in order to gain access to a court without prepayment of fees.' " *Vann,* 2011 WL 3501880, at *1 (quoting *Cuoco v. U.S. Bureau of Prisons,* 328 F.Supp.2d 463, 468 (S.D.N.Y.2004)). "One of the factors that courts

Not Reported in F.Supp.2d, 2012 WL 3054114 (N.D.N.Y.)
**(Cite as: 2012 WL 3054114 (N.D.N.Y.))**

may look at in determining whether a plaintiff has acted in bad faith is their past experience taking advantage of proceeding IFP." *Tompkins,* 2012 WL 1267876, at *12; *see also Shipman v. Mew York State Office of Persons with Developmental Disabilities,* No. 11 Civ. 2780, 2012 WL 1034903, at *3 (S.D.N.Y. Mar. 26, 2012).

Here, no evidence of bad faith in failing to disclose the $500 from the *Laux* settlement has been proffered. This amount alone is insufficient to demonstrate bad faith. *Compare Berry v. Criss,* No. 09 Civ. 08413(PKC)(THK), 2012 WL 1656946, at *2–3 (S.D .N.Y. Apr. 16, 2012) (holding that failure to disclose possession of $1,629.00 on IFP application was insufficient by itself to demonstrate bad faith) *with Vann,* 2011 WL 3501880, at *2 (holding that failure to disclose $30,000 settlement in IFP application demonstrated bad faith). Moreover, Johnson demonstrated a willingness to pay the filing fee from his inmate account with whatever funds were available by signing the authorization to do so. *See* Dkt. No. 2 at 3. Finally, no evidence has been proffered that in any of Johnson's multiple prior actions,[FN4] he deliberately withheld any information in an IFP application. On this record, then, there is insufficient evidence to conclude that Johnson acted in bad faith in failing to disclose his possession of $500 from the *Laux* settlement.

> FN4. According to defendants, Johnson has previously filed at least thirteen federal actions. Goglia Decl. at ¶ 4.

**\*3** Accordingly, defendants' motion on this ground should be denied.

### B. Three Strikes

Defendants also seek dismissal of the complaint under 28 U.S.C. § 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have been dismissed as frivolous, malicious, or for failing to state a claim. *See* 28 U.S.C. § 1915(g).[FN5] Frivolous claims "lack[ ] an arguable basis either in law or in fact." *Tafari v.*

*Hues,* 473 F.3d 440, 442 (2d Cir.2007) (*quoting Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). Malicious claims are filed with the intent to hurt or harm another. *Id.* (citations omitted). The failure to state a claim applies a parallel definition from Fed.R.Civ.P. 12(b)(6), but "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g) standard]." *Neitzke,* 490 U.S. at 326; *see also Tafari,* 473 F.3d at 442.[FN6] Dismissal is not precluded by the fact that Johnson has already been granted IFP status in this action. Dkt No. 4. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998).

> FN5. The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1995), which had as its principal purpose deterring frivolous prisoner litigation. *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir .1997).

> FN6. This "three-strikes" provision contains a narrow exception which permits suits, notwithstanding prior dismissals, when the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Lewis v. Sullivan,* 279 F.3d 526, 531 (7th Cir.2002) (applying imminent danger exception "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.'). Johnson makes no claim of imminent danger here which would invoke this exception.

Defendants contend that the following three actions brought by Johnson constitute "strikes" under § 1915(g):

1. *Johnson v. People of the County of Duchess,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

No. 98–CV–6476 (S.D.N.Y.) was dismissed as frivolous or malicious by the District Court for the Southern District of New York on September 14, 1998 pursuant to 28 U.S.C. § 1915(d). Dkt. No. 13–7 (Docket Entry 3) (dismissing action pursuant to 28 U.S.C. § 1915(d)). A dismissal pursuant to § 1915(d) indisputably constitutes a "strike" for purposes of § 1915(g). *Martin v. Goord,* No. 05–CV1583, 2008 WL 5057297, at *2 (N.D.N.Y. Nov. 24, 2008) (Hurd., J.); *Kalwasinski v.. McCraken,* No. 09–CV–6295, 2009 WL 4042973, at *4 (W.D.N.Y. Nov. 19, 2009).

2. In *Johnson v. Mid–State Correctional Facility,* No. 99–CV–01670 (LEK) (N.D.N.Y.), the action was dismissed in an order filed October 31, 2001 pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Dkt. No. 13–8.

3. In *Johnson v. Goord.* No. 00–CV–1689 (LEK) (N.D.N.Y.), the complaint was dismissed pursuant to 28 U.S.C. § 1915A. Dkt. No. 13–9. While Johnson was allowed leave to file an amended complaint within thirty days of the issuance of that order, he failed to do so, and the action was finally dismissed on March 14, 2001.4 *Id.,* at Dkt. No. 7.

The first two cases clearly qualify as "strikes" under § 1915(g) as they were dismissed for failure to state a claim. The third case, however, is less clearly a "strike." There is no docketed decision or order in that case reflecting the basis for its dismissal other than the text order dismissing with leave to file an amended complaint and the final judgment dismissing the action. The text order states in total that

**\*4** Order Directing Compliance as to Robert Johnson. ORDERED that pltf file an amended complaint w/in 30 days or this action be dismissed. IFP is granted. Date Served: 11/28/00 Date Entered: 11/28/00 Notice of compliance due by 12/28/00 Clerk's action due by 1/27/01 (Signed by Judge Lawrence E. Kahn) (rjb) (Entered: 11/28/2000).

Dkt. No. 13–9 at Docket Entry No. 4. Although Johnson requested and received two extensions of time to file an amended complaint, none was filed. *Id.* at Docket Entry Nos. 5, 6. A final judgment was thereafter entered. *Id.* at Docket Entry No. 7. That judgment stated in total as the basis for the dismissal that

IT IS ORDERED AND ADJUDGED that this action is dismissed for failure of the plaintiff to file an amended complaint in compliance with the Order of the Honorable Lawrence E. Kahn, filed November 28, 2001.

*Johnson v. Goord Dkt.* No. 7.

As defendants note, the Second Circuit Court of Appeals has not directly addressed whether a complaint dismissed in this manner constitutes a "strike" for purposes of § 1915(g). Decisions from tat least two district courts in this circuit have held that such a dismissal is for failure to prosecute the action rather than failure to state a claim. *See, e.g. Toliver v. Perri,* No. 10 Civ. 3165, 2011 WL 43461, at *1 (S.D.N.Y. Jan. 6, 2011); *Kalwasinski,* 2009 WL 4042973, at *4. Decisions from district courts in other circuits have held that such dismissals may constitute "strikes." *See, e.g., Sumner v. Tucker,* 9 F.Supp.2d 641, 644 (E.D.Va.1998) (dismissal with leave to replead constituted a strike despite fact that inmate declined to amend and instead sought to discontinue without prejudice); *Ruff v. Ramirez,* No. 07–0962, 2007 WL 4208286, at *5 (S.D.Cal.2007) (dismissal for failure to prosecute by itself is not within ambit of Section 1915(g).

Here, the only reason given by the district court for the dismissal in *Johnson v. Goord* was Johnson's failure to file an amended complaint. Although it could be inferred, there is no statement in the record that the case was dismissed for failure to state a claim, frivolousness, or any other reason which might give rise to a "strike. Complaints may be dismissed with leave to file an amended complaint for reasons other than failing to state claim, including seeking relief against a defendant

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

who is immune from suit, failing to file a complaint in acceptable form, filing a complaint that is unintelligible, and other reasons. *See* 28 U.S .C. § 1915A; Fed.R.Civ.P. 8, 10. The only reasons stated for the dismissal of *Johnson v. Goord* was Johnson's failure to file an amended complaint as directed by the court. Dkt. No. 13–9. This stated reason suggests a dismissal for failure to prosecute or comply with the order of the court, not for failing to state a claim as contended by defendants. Therefore, it is unnecessary to determine whether a dismissal with leave to file an amended complaint may constitute a "strike" under § 1915(g) because on the record presented here, defendants have failed to demonstrate that the dismissal in *Johnson v. Goord* was for failing to state a claim rather than for failing to prosecute or to comply with a court order, neither of which would constitute a "strike" under § 1915(g).

**\*5** Accordingly, defendants' motion on this ground should also be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion to dismiss be **DENIED** in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.D.N.Y.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

N.D.N.Y.,2012.
Johnson v. Truedo

Not Reported in F.Supp.2d, 2012 WL 3054114 (N.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3062293 (N.D.N.Y.)
**(Cite as: 2012 WL 3062293 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Robert JOHNSON, Plaintiff,
v.
Corrections Officer TRUEDO and Corrections
Officer Haze, Defendants.

No. 9:11–CV–627 (DNH/DRH).
July 26, 2012.

Robert Johnson, Poughkeepsie, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Douglas J. Goglia, Esq., Ass't Attorney General, of Counsel, Albany, NY, for Defendants.

### *DECISION and ORDER*
DAVID N. HURD, District Judge.

**\*1** Plaintiff brought this action pursuant to 42 U.S.C. § 1983. On June 15, 2012, the Honorable David R. Homer, United States Magistrate Judge, advised, by Report–Recommendation, that defendants' motion to dismiss be denied. No objections to the Report–Recommendation were filed.

Based upon a careful review of the entire file and the recommendations of the Magistrate Judge, the Report–Recommendation is accepted in whole. *See* 28 U.S.C. 636(b)(1).

Therefore it is

ORDERED that

Defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.

N.D.N.Y.,2012.

Johnson v. Truedo
Not Reported in F.Supp.2d, 2012 WL 3062293 (N.D.N.Y.)

END OF DOCUMENT

Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)

(Cite as: 2011 WL 43461 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Michel TOLIVER, Plaintiff,
v.
Somu Detective Almo Sanchez PERRI, et al.,
Defendants.
No. 10 Civ. 3165(PAC)(MHD).

Jan. 6, 2011.
*MEMORANDUM AMD ORDER*

MICHAEL H. DOLINGER, United States Magistrate
Judge.

**\*1** Before the court is defendants' request to revoke
plaintiff's *in forma pauperis* status pursuant to 28 U.S.C.
§ 1915(g), the "three strikes" provision of the Prison
Litigation Reform Act ("PLRA"). (*See* Dec. 20, 2010
letter to the Court from Ass't Corp. Counsel Bradford C.
Patrick). Because we find that plaintiff has only one
"strike" as defined in section 1915(g), we deny defendants'
request without prejudice to renewal should two or more
of plaintiff's currently pending actions in this court be
dismissed as frivolous, malicious, or failing to state a
claim upon which relief may be granted.

The "three strikes" provision of the PLRA provides:

In no event shall a prisoner bring a civil action or appeal
a judgment in a civil action or proceeding under this
section if the prisoner has, on 3 or more prior occasions,
while incarcerated or detained in any facility, brought an
action or appeal in a court of the United States that was
dismissed on the grounds that it is frivolous, malicious,
or fails to state a claim upon which relief may be
granted, unless the prisoner is under imminent danger of
serious physical injury.

28 U.S.C. § 1915(g); *cf.* Fed.R.Civ.P. 12(b)(6). There
is no dispute that the plaintiff in this action is a "prisoner"
for purposes of section 1915(g), as he is presently
incarcerated at the Five Points Correctional Facility in
Romulus, New York. (*See* Letter from Michel Toliver to
the Court, Oct. 30, 2010; *see also* 28 U.S.C. § 1915(h)
(defining "prisoner" for purposes of section 1915)). Hence
we must determine whether, while incarcerated, he has
previously filed three civil actions (or appeals) which have
been dismissed as frivolous, malicious, or failing to state
a claim upon which relief may be granted.

Defendants cite four cases previously filed by the
plaintiff, and assert that each was dismissed for failure to
state a claim upon which relief could be granted. In one
instance, defendants are correct that plaintiff's claim was
dismissed under Rule 12(b)(6). *See Toliver v. Dep't of
Corr.,* 07 Civ. 3017(KMW) (Order of Dismissal, Apr. 17,
2007, at 2 (S.D.N.Y.) ("[T]he complaint ... is dismissed
because it fails to state a claim on which relief may be
granted.").

In each of the three other cases, however, plaintiff's
complaint was dismissed, not because he failed to state a
claim upon which relief could be granted, but because he
failed to amend his complaint within a certain time period,
as ordered by the court. *See Toliver v. Dep't of Corr.,* 07
Civ. 4539(KMW) (Order, Sept. 11, 2007) (S.D.N.Y.)
("By order dated May 30, 2007, plaintiff was directed to
file an amended complaint with this Court within 60 days.
Since plaintiff has failed to file an amended complaint as
specified ... the complaint is dismissed."); *Toliver v. New
York City Police Dep't,* 07 Civ. 4575(KMW) (Order, Sept.
11, 2007) (S.D.N.Y.) ("By order dated May 31, 2007,
plaintiff was directed to file an amended complaint with
this Court within 60 days. Since plaintiff has failed to file
an amended complaint as specified ... the complaint is
dismissed."); *Toliver v. New York City Police Dep't,* 07
Civ. 5877(KMW) (S.D.N.Y.) (Order, Sept. 11, 2007)
("By order dated June 21, 2007, plaintiff was directed to
file an amended complaint with this Court within 60 days.
Since plaintiff has failed to file an amended complaint as
specified ... the complaint is dismissed."). Each of these
orders cited to 28 U.S.C. § 1915(e)(2)(B)(ii), a section of
the PLRA that refers to dismissal when a complaint "fails
to state a claim on which relief may be granted."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)

(Cite as: 2011 WL 43461 (S.D.N.Y.))

Nonetheless, it appears clear from the text of the orders that each of these three cases was dismissed because plaintiff failed to amend his complaint as directed by the court. Fairly construed, this type of dismissal is best characterized as resting on a failure to prosecute a pending action rather than a failure to state a claim.[FN1]

> FN1. We recognize that the apparent context of these dismissals leaves some definitional dispute regarding the nature of the dismissal. In each of these cases the plaintiff submitted a proposed *pro se* complaint, which was reviewed by the *Pro Se* Clerk of the Court, who found it wanting, and as a result the then-Chief Judge issued an order directing that the complaint be filed and then dismissed for failure to state a claim, but with the proviso that the plaintiff could file an amended complaint within sixty days since it appeared that he might be able to plead claims that would pass muster under Rule 12(b)(6). In each instance plaintiff did not file an amended complaint within the specified time, and as a result the case was dismissed.

> It is true that in each case the original complaint was found legally inadequate and therefore dismissed, but the case was not itself dismissed until after the plaintiff had failed to comply with the court's directive to file a corrected pleading within 60 days. We therefore view the dismissal of each of these cases—as distinguished from the dismissal of the initial complaint—as being premised, in substance, on a failure to prosecute.

**\*2** While the Second Circuit has not addressed whether dismissal for failure to prosecute counts as a strike, this and other courts in this Circuit have declined to find that such a dismissal constitutes a strike. *See Toliver v. New York City Dep't of Corr.,* 10 Civ. 0822(RJS)(RLE) (Order, Dec. 21, 2010) (S.D.N.Y.); *Toliver v. New York City Dep't of Corr.,* 10 Civ. 6666(RJS)(RLE) (Order, Dec. 21, 2010) (S.D.N.Y.); *Kalwasinski v. McCraken,* 2009 WL 4042973, at \*4 (W.D.N.Y. Nov. 19, 2009) ("the Court is not aware of any support for finding a "strike" based upon a failure to prosecute."); *Harry v. Doe,* 2009 WL 2152531, at \*2 (E.D.N.Y. Jul. 17, 2009) ("the Court considers it unlikely that the dismissal for failure to prosecute would count as a strike"). Moreover, at least two other Circuits have ruled that dismissal for failure to prosecute is not a strike. *See Torns v. Mississippi Dep't of Corrections,* 317 Fed. Appx. 403, 404 (5th Cir.2009); *Butler v. Dep't of Justice,* 492 F.3d 440, 443 (D.C.Cir.2007).

In *Butler,* the District of Columbia Court of Appeals examined the three grounds upon which dismissals count as "strikes" under the relevant provision of the PLRA. It first noted that a dismissal "for failure to state a claim on which relief may be granted" clearly refers to dismissals under Rule 12(b)(6), which it found was not implicated in a dismissal for failure to prosecute. 492 F.3d at 443. The court in *Butler* also determined that dismissal for failure to prosecute "does not rest on the merits of a claim," in contrast to a dismissal on the grounds that the case is frivolous, which is "based on the utter lack of merit of an action or appeal." *Id.* Finally, the court held that dismissal for failure to prosecute does not "fit [ ] appropriately within the statutory category of a dismissal 'on the ground [ ] that it is ... malicious.' " *Id.* Given the existence of "non-malicious reasons why a prisoner may fail to prosecute a matter, including transfer to another facility and sickness," the court in *Butler* held that dismissal for failure to prosecute was not dismissal of an action as "malicious," and therefore did not fall within the categories enumerated by the PLRA. *Id.*

The court in *Butler* also noted a Supreme Court case, *Neitzke v. Williams,* 490 U.S. 319 (1989), decided under an earlier version of the *in forma pauperis* statute. "At the time, the *in forma pauperis* statute authorized 'federal courts to dismiss a claim filed *in forma pauperis* if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.' " *Butler,* 492 F.3d at 444 (quoting *Neitzke,* 490 U.S. at 324 (1989)). In *Neitzke,* prison officials urged the Supreme Court to adopt a *per se* rule that dismissals under Rule 12(b)(6) were frivolous. The Court declined to do so, reasoning that it could not, as a matter of statutory construction, conclude that complaints filed *in forma pauperis* were frivolous because they failed to state a claim. *Id.* (quoting *Neitzke,* 490 U.S. at 331).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)

(Cite as: 2011 WL 43461 (S.D.N.Y.))

**\*3** As the Court of Appeals noted in *Butler,* "[h]ad Congress wanted to include dismissals for failure to prosecute among the strikes listed in § 1915(g), it could have done so." *Id.* (citing *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007). Since Congress did not include dismissals for failure to prosecute in the categories of strikes listed in the PLRA, we cannot count such dismissals as strikes in this case.[FN2]

> [FN2.] The court in *Butler* also noted that litigation by prisoners who file numerous suits and fail to prosecute them could constitute a burden to the courts, and suggested that the solution to this problem "lies in exercising our discretionary authority to deny [*in forma pauperis* ] status to prisoners who have abused the privilege." *Butler,* 492 F.3d at 444. It then examined previous cases where the Supreme Court had denied *in forma pauperis* status to litigants, and decided to "examine the number, content, frequency, and disposition of [the appellant's] previous filings to determine if there is a pattern of abusing the [*in forma pauperis* ] privilege in his litigation history. *Id.* at 445–46 (citing cases). It went on to deny the appellant *in forma pauperis* status. *Id.* at 446–47. In each case examined by the *Butler* court, however, the litigant in question had filed at least twenty-five actions or appeals within the preceding three to four years. Mr. Toliver may be well on his way to filing that number of cases, but he is not there yet. We therefore decline to exercise our discretion in favor of revoking his *in forma pauperis* status.

We find the reasoning of *Butler* and the other cases that have declined to count dismissals for failure to prosecute as "strikes" persuasive, and hence conclude that plaintiff has only one strike for purposes of the PLRA. We therefore deny the City's motion to revoke his *in forma pauperis* status.

### CONCLUSION

There is no doubt that the plaintiff in this action is a serial litigant. (*See* Defs.' Letter to the Court, Nov. 3, 2010, at p. 3 n. 3 (listing nine cases filed by the plaintiff in 2010)). He has not, however, accumulated enough "strikes" under the PLRA to lose his capacity to request, and receive, *in forma pauperis* status. He may do so in the future, at which point defendants are free to renew their motion; but until that time, it is denied.

**SO ORDERED.**

S.D.N.Y.,2011.

Toliver v. Perri
Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4822241 (W.D.Mich.)
**(Cite as: 2008 WL 4822241 (W.D.Mich.))**

C

Only the Westlaw citation is currently available.

United States District Court,
W.D. Michigan,
Southern Division.
James Onie MULLINS, Plaintiff,
v.
George PRAMSTELLER et al., Defendants.

No. 1:08-cv-38.
Nov. 3, 2008.

James Onie Mullins, Macomb, New Haven, MI, for Plaintiff.

Dawn Christina Marie Jack, MI Dept Attorney General, Lansing, MI, David B. Mammel, Ronald W. Chapman, Chapman and Associates PC, Bloomfield Hills, MI, for Defendants.

*Order*

PAUL L. MALONEY, Chief Judge.

**Adopting the R & R without Objection; Dismissing the Complaint as to Defendant Griffin for Failure to Effect Service of Process; Dismissing the Complaint against the Other Defendants for Failure to Exhaust; Terminating the Case; Denying a Certificate of Appealability**

*1 Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Joseph G. Scoville, United States Magistrate Judge, for a Report and Recommendation ("R & R"). Magistrate Judge Scoville issued the R & R on Tuesday, September 23, 2008, and it was sent to plaintiff Mullins by regular U.S. mail on Wednesday, September 24, 2008. Mullins has not filed objections.

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R & R], any party may serve and file written objections to such proposed findings and recommendations as

provided by rules of court." Likewise, FED. R. CIV. P. 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." *See also* W.D. MICH. LCIVR 72.3(b).

For Mullins' sake, the court assumes that he did not receive the R & R until Wednesday, October 8, 2008, seven calendar days after it was mailed. Under R. CIV. P. 6(a)(1), Walters' ten-day objection period did not start until the day after he received the R & R, i.e., Thursday, October 9, 2008. Day 2 was Friday, October 10.

The court calculates the ten-day period as prescribed by FED. R. CIV. P. 6(a)(2), excluding weekends and legal holidays. Thus, the court excludes Saturday, October 11, Sunday, October 12, and Monday, October 13 (Columbus Day). Days three through six ran from Tuesday, October 14 through Friday, October 17. The court excludes Saturday, October 18 and Sunday, October 19. Days seven through ten ran from Monday, October 20 through Thursday, October 23.

Finally, the court generously allows a full week between Mullins submitting the objection document to the prison authorities for mailing, and the objection arriving at the courthouse by regular U.S. mail. Under these assumptions, Walters' objections were due no later than Thursday, October 30, 2008.

In any event, the court finds the R & R to be well-reasoned. As noted by the R & R at 6-10, defendants Pramstaller, Hutchinson, and Abdellatif have carried their burden of asserting and proving the affirmative defense of failure to exhaust administrative remedies-in this case, the grievance procedures set forth in MDOC Policy Directive 03.02.130 (2003 version). Namely, both of Mullins' grievances regarding his medical care were properly rejected as untimely. " 'There is no

question that exhaustion is mandatory under the PLRA, and that unexhausted claims cannot be brought in court.' " *Grinter v. Knight,* 532 F.3d 567, 577 (6th Cir.2008) (quoting *Jones v. Bock,* 549 U.S. 199, ----, 127 S.Ct. 910, 918-19, 166 L.Ed.2d 798 (2007) (citation omitted)).

The Magistrate Judge also correctly determined that the complaint must be dismissed as to defendant Nurse Griffin because Mullins failed to effect service of process upon her during the life of the summons. *See Petty v. Cty. of Franklin, Ohio,* 478 F.3d 341, 344 (6th Cir.2007) (affirming dismissal of claims against defendants who were not served within 120 days after filing the complaint) (citing FED. R. CIV. P. 4(m)).

**ORDER**

**\*2** Accordingly, having reviewed the complaint, defendant Pramstaller's motion for summary judgment, defendants Hutchinson and Abdellatif's motion to dismiss, and the R & R, and having received no opposition briefs or objections from the plaintiff, the court **ADOPTS** the R & R [doc. # 27] without objection.

The complaint is **DISMISSED without prejudice** as to defendants Pramstaller, Hutchinson, and Abdellatif for failure to exhaust administrative remedies.

The complaint is **DISMISSED without prejudice** as to defendant Griffin for failure to effect service of process.

This dismissal shall count as a **STRIKE** for purposes of 28 U.S .C. § 1915(g).

This case is **TERMINATED.**

**This order is final, but it is not appealable** because there is no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See Jarvis,* 2008 WL 441391 at \*3 and *Westbrook,* 2007 WL 3462337 at \*4 (both citing *McGore v. Wrigglesworth,* 114 F.3d 601, 611 (6th Cir.1997)). FN1

FN1. *See also Matthews,* 2008 WL 205207 at \*3 (Jonker, J.) (citing *McGore* ); *Floyd,* 2008 WL 59167 at \*1 (Neff, J.) (citing *McGore* ); *Taylor,* 2007 WL 4557852 (Miles, J.) (citing *McGore* ).

Further, a certificate of appealability **SHALL NOT ISSUE** from this court, because the plaintiff has not made " 'a substantial showing of the denial of a federal constitutional right.' " *Taylor v. Sampson,* 2008 WL 2923435, \*3 (W.D.Mich. July 25, 2008) (quoting *Harbison v. Bell,* 503 F.3d 566, 568 (6th Cir.2007), *cert. granted o.g.,* --- U.S. ----, 128 S.Ct. 2959, ---L.Ed.2d ---- (2008) (Nos. 07-8520 & 07-8521)). "This is because [plaintiff] 'has not demonstrated that reasonable jurists could disagree with the district court's resolution of his constitutional claims' or that jurists could conclude that the issues raised are 'adequate to deserve further review.' " *Taylor,* 2008 WL 2923435 at \*3 (quoting *Harbison,* 503 F.3d at 569 (citing *Banks v. Dretke,* 540 U.S. 668, 705, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004))).

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

JOSEPH G. SCOVILLE, United States Magistrate Judge.

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint relates to the medical care he received from March 30, 2006 through May 31, 2007, while in the custody of the Michigan Department of Corrections (MDOC). Plaintiff seeks an award of monetary damages. Plaintiff named four defendants in his complaint: (1) George Pramstaller, former Director of the MDOC's Bureau of Health Care; (2) Craig Hutchinson, Director of Correctional Medical Services (CMS); (3) Badawi Abdellatif, M.D.; and (4) Shawn Griffin, R.N.

On April 21, 2008, defendant Pramstaller filed a motion for summary judgment. (docket # 14). The court entered an order advising plaintiff of his opportunity to submit affidavits, documents or

other materials in opposition to defendant Pramstaller's motion on or before May 20, 2008. (4/22/08 Order, docket # 16). Plaintiff elected not to file a response to defendant Pramstaller's motion for summary judgment.

On June 9, 2008, defendants Hutchinson and Abdellatif filed a Rule 12(b)(6) motion requesting dismissal of plaintiff's complaint. (docket # 21). The court entered its order notifying plaintiff of his opportunity to file a response to defendants' motion on or before July 8, 2008. (6/10/08 Order, docket # 22). Plaintiff elected not to file a response.

**\*3** For the reasons set forth herein, I recommend that defendants' motions (docket # 's 14, 21) be granted, and that plaintiff's claims against defendants Pramstaller, Hutchinson, and Abdellatif be dismissed with prejudice. I further recommend that all plaintiff's claims against defendant Shawn Griffin be dismissed without prejudice for failure to achieve service of process within the life of the court's summons.

### *Applicable Standards*
### A. 12(b)(6) Standard

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir.2006). The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Zaluski v. United Am. Healthcare Corp.,* 527 F.3d 564, 570 (6th Cir.2008); *Ley v. Visteon Corp.,* No. 06-2237, 2008 WL 3905469, at \* 2 (6th Cir. Aug.26, 2008). The court need not accept as true legal conclusions or unwarranted factual inferences. *See Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir.2008). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Haines v. Kerner,* 404 U.S. 519,

520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Allard v. Weitzman ( In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993); *see Bishop v. Lucent Tech., Inc.,* 520 F.3d 516, 519 (6th Cir.2008).

Plaintiff elected to support his complaint with exhibits. I have considered plaintiff's exhibits in evaluating defendant's motion to dismiss, but this consideration does not convert the defendants' motion to dismiss into a motion for summary judgment. Documents attached to the complaint are considered part of the pleading itself for purposes of Rule 12(b)(6). *See* FED. R. CIV. P. 10(c); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335-36 (6th Cir.2007); *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."); *accord Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 296-97 (6th Cir.2008).

### B. Summary Judgment Standard

**\*4** Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.,* 532 F.3d 455, 452 (6th Cir.2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *El Bey v. Roop,* 530 F.3d 407, 413 (6th Cir.2008) (quoting

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Smith v. Williams-Ash,* 520 F.3d 596, 599 (6th Cir.2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 787 (6th Cir.2000); *see also Minadeo v. ICI Paints,* 398 F.3d 751, 761 (6th Cir.2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where, however, a moving party with the burden of proof seeks summary judgment, he faces a "substantially higher hurdle." *Arnett v. Myers,* 281 F.3d 552, 561 (6th Cir.2002); *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1056 (6th Cir.2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that

the party with the burden of proof faces "a substantially higher hurdle" and " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Arnett,* 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed.2000)); *Cockrel,* 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie,* 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). This higher standard applies because exhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense.

## C. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

**\*5** Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007); *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter,* 534 U.S. at 520; *Booth,* 532 U.S. at 734. In *Jones v. Bock,* the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 127 S.Ct. at 921. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 127 S.Ct. at 923. The Court held that when a prisoner complaint contains both exhausted

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 127 S.Ct. at 923-26.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock,* 127 S.Ct. at 922-23. In *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. *Id.* at 90-93; *see* 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective December 19, 2003),[FN1] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. (*See* docket # 15, Ex. 2). Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided is to be limited to the *facts* involving the issue being grieved (*i.e.,* who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). Thus, where an individual is not named in

the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Davis v. Straub,* No. 1:07-cv-156, 2008 WL 696603, at * 5 (W.D.Mich. Mar.13, 2008).

> FN1. On July 9, 2007, the MDOC amended Policy Directive 03.02.130. The earlier 2003 version of the policy directive was in effect at all times relevant to plaintiff's claims.

**\*6** The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy. The Regional Health Administrator or his designee is the Step II respondent in grievances alleging inadequate medical care. *Id.* at ¶ FF. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the Step III respondent. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved in writing...." *Id.*

A prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4822241 (W.D.Mich.)
**(Cite as: 2008 WL 4822241 (W.D.Mich.))**

to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor,* 199 F.3 d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner,* 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas,* 108 F. App'x 254, 256 (6th Cir.2004).

### *Discussion*
### I. Defendant Pramstaller

Defendant Pramstaller seeks summary judgment on the ground that plaintiff did not properly exhaust his claims as required under the PLRA. Plaintiff filed two untimely grievances regarding his medical care. On June 14, 2006, plaintiff filed Grievance No. LRF 06-06-00710-12F (docket # 15, Ex. 1) complaining of the inadequacy of the medical care. Plaintiff identified the "date of the incident" as March 30, 2006. This grievance was rejected as untimely, and it eventually culminated in a Step III decision dated October 13, 2006, affirming the rejection plaintiff's grievance because it was untimely. (docket # 1, Ex. 1 at 9).

On August 23, 2007, plaintiff filed Grievance No. LRF 07-08-01328-28A against defendants Pramstaller, Hutchinson, and Adellatif. (docket # 15, Ex. 3). Plaintiff complained that the medical care he received during the period from April 7, 2006 through May 31, 2007, had been inadequate. This grievance was rejected at Step I because it was untimely. (docket # 1, Ex. 1 at 17). Plaintiff did not appeal the denial of this grievance.

**\*7** The record before the court establishes beyond genuine issue that plaintiff did not properly exhaust his administrative remedies against defendant Pramstaller. He has therefore established his affirmative defense. I recommend that defendant Pramstaller's motion for summary

judgment be granted.

### II. Defendants Hutchinson and Abdellatif

Defendants Hutchinson and Abdellatif seek dismissal of plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies. "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Employees Pension Fund v. Ernst & Young LLP,* 336 F.3d 495, 501 (6th Cir.2003); *see Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360-61 (6th Cir.2001); *accord J.P. Silverton Indus. L.P. v. Sohm,* 243 F. App'x 82, 87 (6th Cir.2007). MDOC's policy directives are matters of public record and can be considered by the court in connection with a Rule 12(b)(6) motion without converting the defendants' motion to dismiss into a motion for summary judgment. Defendants' Exhibit A is a copy of the July 9, 2007 version of Policy Directive 03.02.130. The December 19, 2003 version of Policy Directive 03.02.130 was in effect at all times relevant to plaintiff's claims. Accordingly, defendants' Exhibit A has been disregarded.FN2

> FN2. Defendants' Exhibits B, C, and D are unobjectionable because are they are copies of unpublished legal authorities rather than evidentiary material.

Defendants' brief states, "Attached to Co-defendant George Pramstaller, D.O.' s Rule 56(b) motion for Summary Judgment as Exhibits 1 and 3 are the relevant MDOC grievance records for the grievances which Plaintiff pursued prior to filing his Complaint. Plaintiff's grievance records demonstrate that he has failed to properly exhaust his administrative remedies as to Defendants prior to filing suit." (Defendants' Brief at 5). Ordinarily, it would be error to for the court to consider exhibits submitted in support of a motion for summary judgment by one defendant in connection with a Rule 12(b)(6) motion filed by other

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

defendants, without converting the motion to dismiss into a motion for summary judgment and providing notice to the parties of the conversion. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., 452 F.3d 494, 503-04 (6th Cir.2006).* However, plaintiff made grievances LRF 06-06-00710-12F and LRF 07-08-01328-28A and the related grievance responses exhibits to his complaint, and these documents are integral to plaintiff's claims. Accordingly, these exhibits can be considered by the court without converting defendants' motion to dismiss into a motion for summary judgment. *See* FED. R. CIV. P. 10(c); *see also Commercial Money Center, Inc.,* 508 F.3d at 355-56; *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997); *Davis v. Caruso,* No. 07-cv-10115, 2008 WL 540818, at * 5 (E.D.Mich. Feb.25, 2008).

For the reasons stated in Section I of this report and recommendation, I conclude that the record clearly supports the affirmative defense of failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a). I recommend that the motion to dismiss by defendants Hutchinson and Abdellatif be granted.

### III. Defendant Griffin

**\*8** On March 6, 2008, the court entered its order for service of the summons and complaint. (3/6/08 Order, docket # 9). On April 10, 2008, the United States Marshals Service returned an unexecuted summons for defendant Shawn Griffin. (docket # 13). Nurse Griffin has never been served or otherwise appeared in this lawsuit. I recommend that all plaintiff's claims against defendant Shawn Griffin be dismissed for failure to achieve service within the life of the court's summons. *See* FED. R. CIV. P. 4(m). This report and recommendation serves as plaintiff's notice of impending dismissal. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music,* 376 F.3d 615, 623 (6th Cir.2004); *accord Reynosa v. Schultz,* No. 07-1521, 2008 WL 2491620, at *6 (6th Cir. June 23, 2008).

### *Recommended Disposition*

For the reasons set forth herein, I recommend

that the motion for summary judgment by defendant Pramstaller (docket # 14) and the Rule 12(b)(6) motion by defendants Hutchinson and Abdellatif (docket # 21) be granted, and that all plaintiff's claims against these defendants be dismissed with prejudice. I further recommend that all plaintiff's claims against the remaining defendant, Shawn Griffin, R.N., be dismissed without prejudice for failure to achieve service of process within the life of the summons under Rule 4(m) of the Federal Rules of Civil Procedure.

W.D.Mich.,2008.
Mullins v. Pramsteller
Not Reported in F.Supp.2d, 2008 WL 4822241 (W.D.Mich.)

END OF DOCUMENT

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Paul G. WRIGHT and Theresa Wright, and their minor
children E.W., M.W., N.W., and R.W., Plaintiffs,
v.
Hon. Margaret O. SZCZUR, et al., Defendants.
No. 11–CV–140S.

Jan. 30, 2012.
Paul G. Wright, Getzville, NY, pro se.

Theresa Wright, Getzville, NY, pro se.

E.W., pro se.

M.W., pro se.

N.W., pro se.

R.W., pro se.

Michael J. Russo, New York State Attorney General's
Office, Joel J. Java, Jr., Roach, Brown, Mccarthy &
Gruber, P.C., Brett P. Gliosca, Ricotta & Visco, Stephen
A. Sharkey, Bond, Schoeneck & King, PLLC, Michael T.
Hagelin, Hagelin Kent LLC, Gerard E. O'Connor,
Lippman O'Connor, Anthony Girolamo Marecki, Richard
Frederic Gioia, Kevin T. O'Brien, Elizabeth M. Bergen,
Albert J. D'Aquino, Robert D. Barone, Joseph M.
Schnitter, Lisa T. Sofferin, Daniel J. Sperrazza, Buffalo,
NY, Keith Alan Raven, New York, NY, for Defendants.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, Chief Judge.
**I. INTRODUCTION**
**\*1** *Pro se* Plaintiffs, Paul and Theresa Wright (the
"Wrights"), on behalf of themselves and their minor
children (the "Wright children"), bring this action,

commenced February 15, 2011, against 58 defendants
alleging various constitutional violations. Plaintiffs'
complaint appears to request relief pursuant to 42 U.S.C.
§ 1983 for violations of the First, Fourth, Fifth, Seventh,
Eighth, and Fourteenth Amendments. Additionally, the
Wrights request relief pursuant to the Perjury Act, 18
U.S.C. § 1621, the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and
1968, and the Health Information Portability and
Accountability Act of 1996 ("HIPAA"), Pub.L. No.
104–191, 110 Stat.1936 (1996). Finally, the Wrights
assert intentional infliction of emotional distress claims.
Presently before this Court are twelve motions to dismiss
from all the defendants except Linda and David
Beckinghausen, and Dr. Wonhoon Park.[FN1,FN2] For the
following reasons, all motions to dismiss are granted
except those of the individual Erie County Defendants.

> FN1. For a review and a description of the
> defendants in this action, see the W rights'
> Amended Complaint at pp. 4–5 (Docket No. 71.)

> FN2. There are three other motions before this
> Court (Docket Nos. 80, 88, 89) which, by virtue
> of other rulings, will be dismissed as moot.

As an initial matter, to the extent that the Wrights
seek to vindicate their children's rights, as *pro se* litigants,
they are barred from doing so without an attorney. *Cheung
v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59,
61 (2d Cir.1990) ("[A] non-attorney parent must be
represented by counsel in bringing an action on behalf of
his or her child."); *see also Murphy v. Arlington Cent.
Sch. Dist. Bd. of Educ.,* 297 F.3d 195, 201 (2d Cir.2002)
(noting that "[i]n this Circuit, a non-attorney parent is
precluded from representing his or her child in federal
court" and that the district court should have ordered *pro
se* plaintiff to obtain counsel in the district court). This
rule is unaltered by Fed R. Civ. P. 17(c)(2). *Berrios v.
N.Y.C. Housing Auth.,* 564 F.3d 130, 134 (2d Cir.2009).
Indeed, this court is precluded from making a
determination on the merits of the children's claims. *Id.*
("What the court may not properly do, however, is make
a merits determination of claims filed on behalf of a minor

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

or incompetent person who is not properly represented.").

Consequently, any claims involving the rights of the Wright children will be dismissed without prejudice and the Wrights will be permitted to re-plead those claims in the event they secure attorney representation.

## II. BACKGROUND

### A. Facts[FN3]

> [FN3.] Plaintiffs have provided meager factual detail concerning the events about which they complain. There is no coherent pattern or timeline of events. Instead, their complaint consists largely of scattered accusations aimed at numerous and various defendants. Despite this, under the necessary liberal reading, the Wrights have stated one cognizable claim, discussed *infra.*

The Wrights have four children, referred to in this litigation as "N.W.," "E.W.," M.W.," and "R.W." (Amended Complaint p. 1; Docket No. 71.) At some point in early 2008, New York's Office of Children and Family Services received a call about a problem at the Wright household, presumably involving the level of care that the Wrights were providing to their children.[FN4] (*Id.* ¶ 1.) This began a series of events about which the Wrights allege constitutional violations against every person and agency involved, implicating nearly the entire Bill of Rights. Their allegations can roughly be organized into four categories, a description of each follows.

> [FN4.] Plaintiffs do not detail the specifics of the call.

### 1. Medical Information

**\*2** The first three pages of Plaintiffs' complaint concern allegations that various defendants unlawfully shared and disseminated the Wright's medical information in violation of HIPAA. (*Id.* ¶¶ 2–10.) Plaintiffs allege that this information was then used against them in subsequent custody proceedings. (*Id.*) Specifically, Plaintiffs allege that Annmarie Albanese, Dr. Barbara Stouter, Dr. James Panzeralla, Dr. David James, Dr. Cheryl Neely, Dr. Corstiaan Brass, Sharon Novak, Marylou Weaver, Sandie Yeater, Dr. Marybeth Lopat–Winter, Dr. Justin Kanaley, Jennifer Daege, Edward Surowiec Dr. Wonhoon Park, and Dr. McCormack, Charles Gallagher, Christopher Anderson, James Brown, Phil Pawlowski, and Emil Cappelli all engaged in acts prohibited by HIPAA.

### 2. Children's Removal

The Wrights allege that around February 15, 2008, Annmarie Albanese, a CPS caseworker, came to the Wrights' home and sought to enter. (Complaint ¶ 13.) When Paul Wright denied her access to his home, she threatened to return with the police and remove the children. (*Id.*) Plaintiffs further allege that eventually, by forgery and fabrication,[FN5] Albanese applied for and received a warrant from Erie County Family Court Judge Margaret Szczur, which authorized the removal the Wright children from their home. (*Id.* ¶ 14.) They also claim that Judge Szczur, who apparently ordered the removal of the children based on neglect, is liable because her rulings were unnecessarily harsh and were carried out absent a pre-deprivation hearing. (*Id.* ¶¶ 15–17.) They also bring claims against the New York State Court Appellate Division, Fourth Department, which apparently affirmed Judge Szczur's order. Further, Plaintiffs implicate Sam Endich,[FN6] Christopher Anderson, Andrew McLaren, and Gateway Longview, all of whom Plaintiffs believe were involved in the removal or detention of their children.

> [FN5.] They assert that Albanese later admitted to presenting false testimony in her application to the Judge. (*Id.* ¶ 3.)

> [FN6.] The Wrights also allege that Sam End ich filed a false police report concerning an interaction he had with Paul Wright in March or April 2008.

### 3. Foster Parents

It appears that the Wright children were eventually split up and sent to two separate homes. According to the complaint, Janet Kelly was the foster parent for E.W. and M.W., while David and Linda Beckinghausen were the foster parents for N.W. and R.W. (*Id.* ¶¶ 27–30.) Plaintiffs allege that Janet Kelly mistreated E.W. and M.W., at one point screaming and shaking E.W. and at another point locking M.W. in a small room for over four hours. (*Id.* ¶ 27–28.) As for the Beckinghausens, Plaintiffs allege that

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

they improperly transferred N.W. from his school. (*Id.* ¶ 30.) Plaintiffs claim that both Janet Kelly and the Beckinghausens told the Wright children that they had "already been adopted," which was apparently untrue. (*Id.* ¶¶ 31, 33.)

**4. The Wrights' Medical Treatment**

Finally, the Wrights allege claims arising from perceived mistreatment by various medical professionals. According to the complaint, on February 14, 2008, Theresa Wright went to Millard Fillmore Suburban's emergency room complaining of stomach pain. (*Id.* ¶ 4.) Once admitted, Dr. David James allegedly neglected to examine her abdominal area and instead examined only her foot. He then told her, "CPS is looking for you, you're going to Buffalo General [Hospital] for psychiatric evaluation. (*Id.*) It is unclear whether Theresa ever went to Buffalo General, as Plaintiffs set forth no additional facts, claiming only that Dr. James and Dr. Cheryl Neely later falsified "a certificate." (*Id.* ¶¶ 4–5 .)

**\*3** Unrelatedly, in March of 2008, Drs. Jack Coyne and Deborah Dee, working for the Child Advocacy Center allegedly examined all of the Wright children. (*Id.* ¶ 19.) Each of them complained of stomach pain, but, according to Plaintiffs, they were ignored and told the pain "was in their head." (*Id.*) At several points in early 2008, Albanese, Carolyn Isbrandt, and Janet Kelly all reacted the same way to the children's complaints, disregarding them and telling the children the pain was only "in their head." (*Id.* ¶¶ 22–25.)

## III. DISCUSSION

### A. Legal Standard

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed.R.Civ.P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund,*

*Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1945 (quoting *Twombly,* 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. *Iqbal,* 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* at 1950; Fed.R.Civ.P. 8(a)(2). Wellpleaded allegations must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. *Iqbal,* 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. *See Iqbal,* 129 S.Ct. at 1950. Second, well-pleaded, nonconclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." *Id.*

### B. Federal Claims[FN7]

> FN7. To the extent that the Wrights assert claims under the Fifth, Sixth, Seventh, Eighth, or Ninth Amendments, this Court finds no allegations in the Complaint that could plausibly fall in the ambit of the protections outlined in those amendments. They are therefore dismissed as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

against all Defendants without further discussion.

**\*4** *Pro se* litigants, like the Wrights, are entitled to broad consideration of their submissions. Federal courts routinely read pro se submissions liberally, and interpret them to raise the strongest arguments that they suggest. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). This Court has considered the Wrights' submissions accordingly.

Because the analysis of some of the Wrights' claims applies equally to each defendant, those claims will be discussed first, followed by analysis applicable to specific defendants.

**1. Defendants at Large**

*i. HIPAA*

Its clear that the Wrights believe that several defendants violated medical privacy regulations found in HIPAA. However, enforcement of the HIPAA statute is limited to the Secretary of Health and Human Services. *See* Pub.L. No. 104–191, 110 Stat.1936 (1996); *see also Nat'l Abortion Fed'n v. Ashcroft,* No. 03 Civ. 8695, 2004 WL 555701, \*2 (S.D.N.Y. Mar. 19, 2004). HIPAA does not provide for a private right of action. *Ames v. Group Health Inc.,* 553 F.Supp.2d 187, 192 (E.D.N.Y.2008) (finding that case law is "clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information"); *Bayne v. Health Ins. Portability & Accountability Act,* No. 11–CV0321, 2012 WL 119617, at \*6 (E.D.N.Y. Jan 17., 2012). As such, the Wrights' HIPAA claims are dismissed as against all defendants.

*ii. Perjury*

Equally clear is the Wrights' belief that several defendants, specifically individual Erie County Defendants, committed perjury during the events leading to and during (what appears to be) the Wrights' custody hearing. This claim is also not actionable. 18 U.S.C. § 1621, the federal perjury statute, like the HIPAA statute, does not create a private right of action. *See, e.g., Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir.2002) ("We affirm the

district court's dismissal of claims of sabotage, forgery, and perjury, which are crimes and therefore do not give rise to civil causes of action."). These claims are therefore dismissed as against all defendants.

*iii. RICO*

The Wrights assert throughout the complaint that they are entitled to relief under 18 U.S.C. §§ 1962 and 1964. "To state a RICO claim, a plaintiff must plead (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. In addition, a plaintiff must plead injury to business or property as a result of the RICO violation." [FN8] *Anatian v. Coutts Bank (Switz.) Ltd.,* 193 F.3d 85, 88 (2d Cir.1999) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

> [FN8.] Racketeering activity is defined at 18 U.S.C.1961(1).

Even under a liberal reading of the complaint, the Wrights do not allege that any defendant engaged in "conduct of an enterprise." *See id.* Further, RICO only provides recovery for injury to business or property; it does not provide recovery for physical or emotional injuries. *Williams v. Dow Chemical Co.,* 255 F.Supp.2d 219, 225 (S.D.N.Y.2003); *see also Le Paw v. BAT Indus. P.L.C.,* No. 96 Civ. 4373, 1997 WL 242132, at \*2 (E.D.N.Y. Mar.6, 1997) ("In other words, claims for personal injuries or emotional distress are not cognizable under RICO."). The Wrights, however, allege only that they suffered personal injuries, including emotional distress and the deprivation of constitutional rights. Thus, the Wrights have not made out a *prima facie* RICO case, and their claims under this statute must be dismissed as against all defendants.

*iv. 42 U.S.C. § 1983*

**\*5** The gravamen of the Wrights' claims are brought pursuant to 42 U.S.C. § 1983 for perceived constitutional violations. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. *See* 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

conferred elsewhere in the federal statutes and Constitution. *See Graham v. Connor,* 490 U.S. 386, 393–94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).

Thus, to establish liability under § 1983, the plaintiff must satisfy two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). " § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

A court assessing the viability of a § 1983 claim must first determine whether the actions alleged were committed under color of state law. *Carlos v. Santos,* 123 F.3d 61, 65 (2d Cir.1997). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988)).

Despite the fact that many defendants are private actors, the Wrights assert that nearly everyone named in their complaint was acting under color of state law. Mere conclusory labels, however, are insufficient under *Iqbal* and *Twombly* to survive a motion to dismiss. Instead, the Wrights must demonstrate, through factual allegations either that: (1) there was a "close nexus" between the private and state actors, (2) the private activity was a product of "state compulsion," or (3) the private actors performed a public function. *Turturro v. Cont'l Airlines,* 334 F.Supp.2d 383, 394 (S.D.N.Y.2004) (citing *Okunieff v. Rosenberg,* 996 F.Supp. 343, 347–57 (S.D.N.Y.1998), *aff'd,* 166 F.3d 507 (2d Cir.1999) (per curiam)).

The Wrights fail to meet any of these tests. It is evident that the Wrights feel that they and their children were at the whim of a system over which they had no control and that somehow all these defendants acted in concert in wronging them. Their allegations, however, are simply too vague and indefinite. The Wrights provide no facts that could conceivably link the private actors to a state actor or function. Rather, they merely label private actors as "acting under state law" and allege various conspiracies without supporting facts. "Plaintiffs['] complaint offers no explanation of how [defendants] allegedly conspired with the state defendants, and provides no factual basis whatsoever to support [their] conspiracy theory." *Mooney v. County of Monroe,* 508 F.Supp.2d 222, 224 (W.D.N.Y.2007). As the Second Circuit held: "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002).

**\*6** Therefore, the motions to dismiss filed by the following private defendants regarding claims under § 1983 are granted: Buffalo General Hospital, Kaleida Health, Millard Fillmore Suburban Hospital, Buffalo Medical Group, Corstiaan Brass, James Panzarella, Family Care Medicine, Jennifer Daege, [FN9] Rite–Aid Pharmacies, Edward Surowiec, Amherst Health Center, Amherst University Health Center, Lifetime Medical Group, Barbara Stouter, Justin Kanaley, Marybeth Lopat–Winter, Sharon Novak, Tonawanda Pediatric, Marylou Weaver, Sandie Yeater, Robert McCormack, David James, Cheryl Neely, Cheri Carol–Alvarez, Lauren Dombrowski, Michelle Federowicz. Gateway Longview, Horizons Health Services, Carolyn Isbrandt, Andrew McLaren, Susan Seawood, Chrisy Smith, Janet Kelly,[FN10] and Stacey Sowinski.

> **FN9.** The W rights do not mention Jennifer Daege in their complaint.

> **FN10.** Because Janet Kelly is dismissed from this suit, Sam Endich's motion to dismiss her counterclaim (Docket No. 80) is denied as moot.

**2. Specific Defendants**

*i. Erie County Defendants*[FN11]

> **FN11.** This group consists of the Erie County Department of Social Services, Child Protection

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

Services, Charles Gallagher, Annmarie Albanese, Christopher Anderson, James Brown, Yvonne Rychcik, Phil Pawlowski, and Emil Cappelli.

The crux of the Wrights' claims against the Erie County Defendants is that they fraudulently removed their children from their custody. The Defendants argue that this Court lacks jurisdiction to hear those claims under the *Rooker–Feldman* doctrine, which precludes federal courts from exercising jurisdiction over cases that are "inextricably intertwined" with a state court judgment. *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 483, n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). A federal case is inextricably intertwined with a state case if the federal claim "succeeds only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin,* 22 F.Supp.2d 180, 185 (S.D.N.Y.1998) (quoting *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)).

While the Wrights are certainly displeased with the result of the Family Court and New York State Court proceedings, their allegations also suggest that actions leading up to those proceedings violated their custodial rights. As such, the Wrights do not seek to appeal or call into question the Family Court decision so much as they seek to vindicate rights they believe were violated before the proceedings occurred. *Rooker–Feldman* does not divest this Court of jurisdiction over those claims. *See McKithen v. Brown,* 481 F.3d 89, 98 (2d Cir.2007) ("[A] party is not complaining of an injury "caused by" a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been "caused by" those proceedings."); *Green v. Mattingly,* 585 F.3d 97 (2d Cir.2009) (finding *Rooker–Feldman* inapplicable and noting that "[t]he situation would have been different if the Family Court had entered a final order of disposition permanently removing plaintiff's child from her custody *and plaintiff had brought this action seeking the return of her child* ") (emphasis added).[FN12]

FN12. What is more, for *Rooker–Feldman* to apply, the Wrights must have had a full and fair opportunity to litigate these issues in Family Court. *See, e.g., Velez v. Reynolds,* 325

F.Supp.2d 293, 309 (S.D.N.Y.2004). At this stage of the proceedings, this Court cannot determine what opportunities the Wrights had in that respect.

With jurisdiction proper, Defendants next argue that the Wrights have failed to state a claim under Fed.R.Civ.P. 12(b)(6). This Court has found three plausible claims against the Erie County Defendants: the Wrights allege that Pawlowski made a "false report" of "suspected neglect." (Complaint ¶ 37); that Albanese "with the assistance of" Gallagher, Anderson, Brown, Pawlowski, and Cappelli "filed an application for a warrant that contained numerous false statements claiming 'imminent danger' " (*Id.* ¶ 13); and that Albanese "knowingly presented false information" in her application for a warrant to seize the Wright children (*Id.* ¶ 3).[FN13] Although pled inartfully and in a rather conclusory fashion, considering the Wrights' *pro se* status, such allegations state a valid claim under the Fourteenth Amendment's Due Process Clause. *See Platsky v. C.I.A.,* 953 F.2d 26, 28 (2d Cir.1991) ("[T]he Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel.").

FN13. Unless there was more than one warrant, the third allegation seems duplicative of the second.

**\*7** Parents "have a constitutionally protected liberty interest in the care, custody, and management of their children, and family members have a fundamental right under the Fourteenth Amendment to stay together." *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999). The Supreme Court has held that "[t]he liberty interest ... of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Kia P. v. McIntyre,* 235 F.3d 749 (2d Cir.2000) (finding that the liberty interest of parent and child in continued care and companionship has both procedural as well as substantive elements).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

These rights, however, are not absolute. The Second Circuit has recognized that the "constitutionally protected interest in ... family integrity" must be "counterbalanced by the compelling governmental interest in the protection of minor children." *Southerland v. City of New York,* 652 F.3d 209, 230 (2d. Cir.2011). "Because the law contemplates a careful balancing of interests, a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected." *Id.*

At this stage of the litigation, this Court cannot say whether the Wrights' liberty interest in the continued care of their children was violated. The Wrights claim that the individual Erie County Defendants improperly removed their children from their care. Lacking the necessary information to determine whether this removal was proper under the law, that is, whether there was a reasonable basis for thinking that the children were neglected, this Court cannot dismiss this claim against the individual Erie County Defendants.

Further, the Wrights have alleged the warrant application was procured through perjured testimony. Because "perjury by a[ ] [children services] caseworker to effectuate an otherwise improper removal may constitute a violation of procedural due process," *Green ex rel. T.C. v. Mattingly,* No. 07–CV–1790 (ENV), 2010 WL 3824119, at *9 (E.D.N.Y. Sept.23 2010) dismissal is unwarranted. *See Chi Chao Yuan v. Rivera,* 48 F.Supp.2d 335, 346 (S.D.N.Y.1999) ("The right to a fair tribunal includes the right to a proceeding free of perjury by state officials"); *E.D. v. Tuffarelli,* 692 F.Supp.2d 347, 359 (S.D.N.Y.2010) (listing "manufacturing evidence" and "ignoring exculpatory information" as the sort of "obvious extremes" against which caseworkers are not protected); *Morrison v. Lefevre,* 592 F.Supp. 1052, 1073 (S.D.N.Y.1984) ( "The introduction of false evidence in itself violates the due process clause.").

The Erie County Defendants argue that they are entitled to qualified immunity, which protects officials from § 1983 liability if their actions (1) did not violate clearly established law or (2) were objectively reasonable. *See Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999).

However, if the Wrights establish that these Defendants violated their constitutional right to care for their children, they are not entitled to this immunity for two reasons. First, this law is clearly established. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (noting Supreme Court's "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"). Second, without more facts, this Court cannot conclude that it was objectively reasonable for these Defendants to believe that their conduct did not violate the Wrights' rights. It is alleged that they misrepresented and forged documents and testimony. Such acts are not objectively reasonable; Defendants are therefore not entitled to the protections of qualified immunity at this time.

**\*8** However, the Wrights' claims cannot survive against the Erie County Department of Social Services and Child Protection Services; they must be dismissed under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may be held liable for damages under § 1983 only when execution of government policy or custom, or the failure to train, supervise, or discipline its employees inflicts the injury in question. *Id.* The Wrights allege no facts supporting such a policy, custom, or failure to supervise. Dismissal is therefore warranted.

The Wrights also contend that the Erie County Defendants violated the Fourth Amendment right against unreasonable searches and seizures in the removal of their children. Although the removal of a child may be construed as a "seizure" under the Fourth Amendment, *see Tenenbaum,* 193 F.3d at 602, and therefore may give rise to a § 1983 action, it can only be "brought on behalf of a child by a parent" and cannot be brought vicariously on behalf of the parents themselves. *E.D. ex rel. V.D. v.Tuffarelli,* 692 F.Supp.2d 347, 366 (S.D.N.Y.2010); *see also Alderman v. United States,* 394 U.S. 165, 174, 89, S.Ct. 961, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Because the Wrights, as *pro se* litigants, cannot represent the interests of their children, this claim is dismissed without prejudice. *Chueng,* 906 F.2d at 61.

*ii. Sam Endich*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

Sam Endich is a counselor at the Wright children's school, Heim Elementary. [FN14] (Amended Complaint, p. 4.) The Wrights claim that Sam Endich (1) allowed certain CPS personnel to conduct interviews with the Wright children, (2) filed a false police report against Paul Wright, and (3) assisted in the seizure of the Wright children from Heim Elementary. The Wrights assert that they are entitled to relief under § 1983.

FN14. Endich does not argue that he is a private actor.

The Wrights first and second allegations fail to implicate constitutional concerns. First, "as a matter of law ... no constitutional rights [are] implicated in the interview of [a minor child] at school without [the] parents' knowledge or consent." *Cornigans v. Mark Country Day Sch.,* No. CV 03–1414, 2006 WL 3950335 at *6 (E.D.N.Y. July 12, 2006).[FN15] Second, although the filing of a false arrest report can constitute an unlawful seizure under the Fourth Amendment, *see Paul v. Bank of Am. Corp.,* No. 09–CV–1932, 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011)), the Wrights do not allege that Paul was ever arrested pursuant to this report, foreclosing such a claim.

FN15. Even if the interviews could be construed as a Fourth Amendment false arrest claim, it would be the children's claim, not their parents.

While the third allegation, that Endich "assisted" the CPS caseworkers removal of the children from their school, may state a Due Process claim akin to that discussed above, the Wrights admit that the caseworkers removed the children pursuant to a warrant. (Complaint ¶ 17.) Acting under this understanding, Endich's conduct was objectively reasonable and he is therefore entitled to the protections of qualified immunity. *See Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998) (qualified immunity appropriate where it was objectively reasonable for official to believe his acts did not violate clearly established rights). Therefore, his motion to dismiss is granted.

*iii. Child and Adolescent Treatment Services, Inc.*

**\*9** Although served with a summons and complaint, the Wrights allege no claims against Child and Adolescent Treatment Services, Inc. ("Treatment Services"). They only allege that Dr. Jack Coyne and Deborah Dee worked for the "Child Advocacy Center, Erie County Dept. Of Social Services" and, in that capacity, violated their children's constitutional rights. Treatment Services denies that it employs Dr. Coyne or Dee. In any event, even if this claim is proper as against Treatment Services, it is dismissed without prejudice for the same reasons as discussed immediately below.

*iv. Dr. Jack Coyne, M.D., and Deborah Dee, N.P.*

The Wrights allege that Dr. Coyne and Dee acted with deliberate indifference towards their children when they ignored the Wright children's complaints about stomach pain. But, these are alleged violations of their children's rights. The Wrights, as *pro se* plaintiffs, cannot bring an action on behalf of their children. Therefore, this Court cannot address these claims at this time. *Cheung,* 906 F.2d at 61. As such, claims against Dr. Coyne and Dee are dismissed without prejudice.

*v. Judicial Defendants*

The Wrights also bring this suit against Family Court Judge Margaret Szczur, several justices of the Fourth Department, and the Family Court and Fourth Department themselves. These claims are dismissed. The allegations against the judges all fall within their official capacity. State court judges, including those sitting on Family Court, are absolutely immune from damage suits pursuant to § 1983. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Dorman v. Higgins,* 821 F.2d 133, 137 (2nd Cir.1987); *Fariello v. Rodriguez,* 148 F.R.D. 670, 678 (E.D.N.Y.1993) (applying absolute immunity to Family Court judges).

The courts themselves are also immune from suit under the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Mathis v. Clerk of the First Dep't,* 631 F.Supp. 232, 234 (S.D.N.Y.1986) ("The Appellate Division, a state court, is ... immune from suit by virtue of the Eleventh Amendment). These Defendants' motion to dismiss is therefore granted.[FN16]

FN16. Insofar as the Wrights seek to overturn

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

either of the these courts' rulings, such a claim would be barred by *Rooker–Feldman*.

### C. State Claims

The Wrights only cognizable state-law claim is one for intentional infliction of emotional distress. However, under New York law, claims for intentional infliction of emotional distress are subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3); *Patterson v. Balsamico,* 440 F.3d 104, 112 (2d Cir.2006). The Wrights filed this suit on February 15, 2011, and their claim accrued no later than October 2009—the latest date that the Wrights allege such a tortious act. Accordingly, to the extent that these claims are asserted on behalf of the parents themselves, they are time-barred and dismissed. The Wrights also allege that their children were denied adequate medical care and unlawfully imprisoned, but those claims, in addition to any children's emotional distress claims, are dismissed without prejudice for the reasons previously articulated.

### IV. CONCLUSION

**\*10** All told, the Wrights can proceed with one claim against one set of Defendants: a substantive and procedural Due Process violation against the individual Erie County Defendants, alleging that they improperly procured a warrant and illegally removed their children from their custody. For the foregoing reasons, all other motions to dismiss, including that of the municipal Erie County Defendants, are granted. Claims brought on behalf of the Wright children are dismissed without prejudice.

### V. ORDERS

IT HEREBY IS ORDERED, that Amherst Health Center, Amherst University Health Center, Jack Coyne, Lifetime Health Medical Group, and Barbara Stouter's (Docket No. 98) Motion to Dismiss is GRANTED.

FURTHER, that Buffalo General Hospital, Deborah Dee, Kaleida Health, and Millard Filmore Suburban Hospital's Motion to Dismiss (Docket No. 99) is GRANTED.

FURTHER, that Jennifer Daege, Rite Aid Pharmacies, and Edward Surowiec's Motion to Dismiss (Docket No. 100) is GRANTED.

FURTHER, that Cheri Carrol–Alvarez, Lauren Dombrowski, Michelle Federowicz, Gateway Longview, Horizons Health Services, Carolyn Isbrandt, Andrew J. McLaren, Susan Seawood, Chrisy Smith, and Stacey Sowinski's Motion to Dismiss (Docket No. 101) is GRANTED.

FURTHER, that Sam Endich's Motion to Dismiss (Docket No. 102) is GRANTED.

FURTHER, that Janet Kelly's Motion to Dismiss (Docket No. 103) is GRANTED.

FURTHER, that Child Advocacy Center Inc.'s Motion to Dismiss (Docket No. 105) is GRANTED.

FURTHER, that David James, Robert McCormack, Cheryl Neely's Motion to Dismiss (Docket No. 106) is GRANTED.

FURTHER, that Corstiaan Brass, Buffalo Medical Group, Family Care Medicine, and James Panzarella's Motion to Dismiss (Docket No. 107) is GRANTED.

FURTHER, that Annmarie Albanese, Christopher Anderson, James Brown, James Brown, Emil Cappelli, Child Protection Services, Erie County Dept. of Social Services, Charles Gallagher, Phil Pawlowski, and Yvonne Rychcik's Motion to Dismiss (Docket No. 109) is GRANTED with respect to the municipal defendants and DENIED with respect to the individual Defendants.

FURTHER, that Justin Kanaley, Marybeth Lopat–Winter, Sandie Yeater, Sharon Novak, Tonawanda Pediatric, and Marylou Weaver's Motion to Dismiss (Docket No. 110) is GRANTED.

FURTHER, that JJ Centra, Erie County Family Court, P.J. Hurlbutt, Salvatore Martoche, New York Appellate Division, Fourth Department, Henry Scudder, Nancy Smith, and Margaret O. Szczur's Motion to Dismiss (Docket No. 123) is GRANTED.

FURTHER, that Sam Endich's Motion to Dismiss Janet Kelly's Counterclaim (Docket No. 80) is DENIED as moot.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

FURTHER, that Plaintiffs' Motion to Attach a Memorandum of Law (Docket No. 88) is DENIED.

FURTHER, that Janet Kelly's Motion to Strike Answer (Docket No. 89) is DENIED as moot.

SO ORDERED.

W.D.N.Y.,2012.

Wright v. Szczur
Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
George M. CHAVIS, Plaintiff,
v.
K. CURLEE, Prison Counselor, Great Meadow C.F.,
e.g., Defendants.

No. 9:06-CV-0049 (LEK/GHL).
Feb. 21, 2008.

George M. Chavis, Dannemora, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Adele M. Taylor-Scott, Esq., Assistant Attorney General, of Counsel, Albany, NY.

### DECISION AND ORDER
LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on January 28, 2008 by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 36). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff George M. Chavis, which were filed on February 13, 2008. Objections (Dkt. No. 37).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 36) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Plaintiff's *in forma pauperis* status is **revoked as having been improvidently granted** and that Plaintiff is given **TEN (10) DAYS** from the date of this Order to pay the Court's filing fee of $250. Should Plaintiff fail to make that payment, his Complaint will be dismissed without further order of this Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION
GEORGE H. LOWE, United States Magistrate Judge.

This prisoner civil rights action, commenced *pro se* pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Plaintiff's Amended Complaint alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., fourteen employees of the New York State Department of Correctional Services ("Defendants") violated his constitutional rights by retaliating against him or subjecting him to cruel and unusual prison conditions. (*See generally* Dkt. No. 6 [Plf.'s Am. Compl.].) Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint on the ground that the action is barred by the "three strikes" rule established by 28 U.S.C. § 1915(g). (Dkt. No. 31.) For the reasons that follow, I recommend that Defendants' motion be granted or, in the alternative, that Plaintiff's Amended Complaint be *sua sponte* dismissed as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

# I. ANALYSIS OF DEFENDANTS' MOTION

## A. Acquisition of "Three Strikes" Warranting Dismissal

**\*2** Under the so-called "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is *frivolous, malicious, or fails to state a claim upon which relief may be granted,* unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) [emphasis added]. Defendants are correct when they argue that the power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding. (Dkt. No. 31, Part 13, at 2-3.) In other words, a federal district court has the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted.FN1

> FN1. *See, e.g., Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at \*1 & n. 1 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.); *Gill v. Pidlypchak,* 02-CV-1460, 2006 WL 3751340, at \*5 (N.D.N.Y. Dec.19, 2006) (Scullin, J.); *Polanco v. Burge,* 05-CV-0651, 2006 WL 2806574, at \*2 (N.D.N.Y. Sept.28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe,* 118 F.Supp.2d 172, 174 (D.Conn.2000); *McFadden v. Parpan,* 16 F. Supp.2d 246, 247 (E.D.N.Y.1998); *see also Rolle v. Garcia,* 04-CV-0312, Report-Recommendation (N.D.N.Y. Jan. 29, 2007) (Lowe, M.J.), *adopted on other grounds,* 04-CV-0312, 2007 WL 672679 (N.D.N.Y. Feb.28, 2007) (Kahn, J.).

The first thing we must do is determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). The Complaint in this action was signed by Plaintiff on September 12, 2005, postmarked on January 12, 2006, and received (and docketed) by the Clerk's Office on January 13, 2006. (Dkt. No. 1.) Ordinarily, under the "prison mailbox rule," the date of *filing* is deemed to be the date that the prisoner-plaintiff is presumed to have handed his complaint to a prison guard for *mailing,* which is the date that the complaint was *signed.*FN2 The problem here is that there appears to have been a four-month delay between the date of signing of the Complaint and the date of mailing (or post-marking) of the Complaint. As a result, the question arises: was Plaintiffs Complaint "filed" on the date of signing (i.e., September 12, 2005) or on the date of mailing (i.e., January 12, 2006)? Fortunately, the Court need not decide whether Plaintiff's action was "brought," for purposes of 28 U.S.C. § 1915(g)-on September 12, 2005, or on January 12, 2006-because an analysis under either finding would yield the same conclusion.

> FN2. *See Shaw v. Superint., Attica Corr. Facility,* 03-CV-0610, 2007 WL 951459, at \*3 n. 3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.,* 03-CV-0681, 2006 WL 931729, at \*3-4 (N.D.N.Y. Apr.7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

After carefully reviewing Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, I have determined that, as of September 12, 2005 (the earlier of the two aforementioned dates), he had acquired at least three "strikes" for purposes of 28 U.S.C. § 1915(g).

Plaintiffs "first strike" came in the case of *Chavis v. Charnes,* 99-CV-5072 (S.D.N.Y.). In *Charnes,* Plaintiff's *pro se* prisoner rights complaint was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

dismissed by the Southern District of New York *sua sponte,* on July 14, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The Docket Sheet does not expressly state whether the dismissal was for frivolousness, maliciousness or merely failure to state a claim. *Id.* However, clearly the dismissal was for one of those three reasons since the Order of Dismissal expressly cited 28 U.S.C. § 1915 and was issued *sua sponte* immediately after filing. *Id.* The only authority under 28 U.S.C. § 1915 to issue such an order *sua sponte* immediately after filing is if the dismissal is frivolousness, maliciousness or failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), (b). Furthermore, the Chief District Judge issuing the Order (Thomas P. Griesa) certified that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3). *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). Such a certification, which occurs when a district judge finds the lack of an arguable basis in law or fact in the losing party's claims or arguments, indicates a finding of frivolousness with regard to Plaintiff's claims.[FN3] Thus, there was clearly at least one "strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN3. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) ("We consider a [losing party's] good faith ... demonstrated when he seeks appellate review of any issue not frivolous. In so doing, we note that if in forma pauperis litigation is attempted for reasons that may genuinely be characterized as the litigant's 'bad faith,' express authority exists in 28 U.S.C.1915(d) for dismissal of the cause as frivolous."); *accord, Pytel v. U.S.,* 378 F.Supp. 294, 296-97 (N.D.N.Y.1974) (MacMahon, J.) ("This Court will not authorize an appeal *in forma pauperis* under 28 U.S.C. § 1915(a) and hereby certifies that any appeal is not taken in good faith. In this context, good faith is judged by an objective standard, and where, as here, an appeal would be frivolous, it

is not taken in good faith.") [citations omitted]; *S.E.C v. Broadwell Securities, Inc.,* 64-CV-3995, 1981 WL 1655, at *1 (S.D.N.Y. July 8, 1981)* ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915. Good faith, in this context, is an objective standard that measures whether the issues on appeal are frivolous.") [internal quotation marks and citations omitted].

**\*3** Plaintiff's "second strike" came during his appeal from the aforementioned order of dismissal. Despite Chief Judge Griesa's certification that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3), Plaintiff took an appeal anyway, on August 12, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The appeal, which was to the Second Circuit, was assigned docket number 99-265. *Id; see also Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). On February 25, 2000, the Second Circuit issued an Order denying Plaintiff's request to proceed *in forma pauperis* during the appeal, and dismissed Plaintiff's appeal. (*Id.*) Although the copy of the Order of Dismissal is not available on-line, the Second Circuit Docket Sheet expressly quotes the Order. *See Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). According to the Docket Sheet, the Order stated:

> Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.1915(e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

(*Id.*) [FN4] I can find no record of any appeal pending (or having been actually filed) with the Supreme Court. Thus, there was clearly a "second strike" for purposes of 28 U.S.C. § 1915(g) before

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff "brought" this action on September 12, 2005. I note that a second strike may result from the dismissal of a federal appeal, even though the appellant had already incurred a strike during the dismissal of the federal district court action underlying the appeal.[FN5]

> FN4. I note that this express finding of "frivolousness" is also reflected in the district court docket sheet's identification of the Second Circuit's Order of Dismissal. *See Chavis v. Chames,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation).

> FN5. *See Cait v. Beto I Unit,* 04-CV-40848, 126 Fed. App'x 645, 646 (5th Cir. Feb.23, 2005) ("The magistrate judge's dismissal of Cain's complaint as frivolous and for failure to state a claim and our dismissal of Cain's appeal both count as strikes for purposes of 28 U.S.C. § 1915(g)."); *Smith v. Bruce,* No. 04-3043, 103 Fed. App'x 324, 344 (10th Cir. June 29, 2004) ("Dismissal of Smith's appeal as frivolous counts as a strike against him, as does the district court's dismissal of his complaint.") [citations omitted]; *Mains v. Washington,* 131 F.3d 1248, 1250 (7th Cir.1997) ("A frivolous complaint (or as in this case a complaint that is dismissed under § 1915 A for failure to state a claim) followed by a frivolous appeal leads to two 'strikes' under 28 U.S.C. § 1915(g)."); *cf. Bea v. Doe,* 401 F.Supp.2d 538, 540 & n. 5 (E.D.Va.2005) (because district court proceeding and appellate proceeding arising out of district court proceedings were "distinct" for purposes of PLRA's "three strikes" rule, the plaintiffs voluntary withdrawal of his appeal did not effect the fact that the dismissal of the district court action constituted a "strike").

Plaintiffs "third strike" came in the case of *Chavis v. Struebel,* No. 04-2814 (2d Cir.). In *Streubel,* Plaintiff's *pro se* prisoner rights complaint was dismissed by the Western District of New York on March 29, 2004, for failure to state claim *and* failure to adduce evidence pursuant to Fed.R.Civ.P. 56. *Chavis v.* *Struebel,* 317 F.Supp.2d 232, 236-39 (W.D.N.Y. March 29, 2004). As a result, no strike resulted from that dismissal. However, during the dismissal, the United States Magistrate Judge (assignment to whom the parties had consented) certified that any appeal from his order of dismissal would not be taken in good faith, for purposes of 28 U.S.C. § 1915(a)(3). *Struebel,* 317 F.Supp.2d at 239. Plaintiff took an appeal anyway. On June 2, 2005, the Second Circuit dismissed the appeal because it "lack[ed] an arguable basis in law or fact" pursuant to 28 U.S.C. § 1915(e)(2) (B)(l), expressly citing that statute and *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). *Chavis v. Struebel,* No. 04-2814, Mandate (2d Cir. filed March 11, 2005) (attached as Exhibit 3 to this Report-Recommendation). *Neitzke v. Williams,* and its progeny, explain that use of such language is an unequivocal finding of frivolousness for purposes of 28 U.S.C. § 1915.[FN6] I can find no record of any appeal pending (or having been filed) with the Supreme Court. Thus, there was clearly a "third strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN6. *See Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("[A]n appeal on a matter of law is frivolous where none of the legal points are arguable on their merits.... By logical extension, a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact.") [internal quotation marks and citation omitted]; *Tavarez v. Reno,* 54 F.3d 109, 109 (2d Cir.1995) ("An appeal is frivolous where it lacks an arguable basis in law or fact.") (citing *Neitzke v. Williams,* 490 U.S. 319, 325 [1989] ).

**\*4** Even if one of the above dismissals did not constitute a "strike" for some reason, Plaintiff incurred yet another strike before he filed the current action. Plaintiff's "fourth strike" came in the case of *Chavis v. New York,* UID 2001-013-019 (N.Y.Ct.CI.). In *Chavis v. New York,* Plaintiff, as a prisoner proceeding *pro se,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

filed a claim against New York State for the "loss of travel expenses [incurred] by [his] family members" as a result of "false information given them over the phone by [his] vindictive SHU-Counselor" regarding the authorized time during which they could visit Plaintiff at Lakeview Prison. *Chavis v. New York,* UID 2001-013-019, Decision (N.Y. Ct. Cl. filed Sept. 19, 2001) (Patti, J.) (attached as Exhibit 4 to this Report-Recommendation). The defendant moved to dismiss on the ground that the claim was inappropriately brought in that (1) Plaintiff was not the one who incurred the property loss and (2) he was not authorized to represent them in court (as a practicing attorney). *Id.* The Court of Claims judge assigned to the case, Judge Philip J. Patti, agreed with defendant and dismissed Plaintiffs claim on September 19, 2001. *Id.* Notably missing from the decision is any mention of evidence. This is because the decision was based solely on the allegations of Plaintiff's complaint. As a result, the dismissal was much like one for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6).FN7 I can find no record of any appeal from this decision anywhere pending (or having been filed). Thus, there appears to have been a "fourth strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN7. I note that, even if the dismissal of Plaintiff's claim in *Chavis v. New York* was not simply caused by a failure to state a claim but was also caused partially by a lack of standing, case law exist holding that such a dismissal would still constitute a "strike" for purposes of 28 U.S.C. § 1915(g). *See Jones v. Edgar,* 3 F.Supp.2d 979, 981-82 (C.D.Ill.1998) (dismissal of prisoner's claim relating to alleged Fifteenth Amendment violation for failure to state claim, coupled with dismissal of prisoner's judicial-voting-districts claim for lack of standing, counted as a "strike" for purposes of PLRA, cited with approval in *Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at *2, n. 4 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.) [collecting

cases]; *cf. Comeaux v. Cockrell,* 72 F. App'x 54, 55 (5th Cir.2003) ("The district court could dismiss part of [the plaintiff's] complaint as malicious, which counted as a strike under 28 U.S.C. § 1915(g), even though the case was ultimately dismissed for failure to comply with court orders."); *Cross v. Harris,* 06-CV-0236, 2006 WL 3834270, at *3 & n. 1 (E.D.Ark. Dec.29, 2006) (counting as a strike a prior partial dismissal on ground of frivolousness, even though rest of action was dismissed for failure to exhaust administrative remedies); *President v. Duplichan,* 05-CV-1178,2006 WL 2540362, at *5 (W.D.La. June 14, 2006) (considering fact that "Plaintiff has had at least three previous civil actions filed in this Court dismissed in whole *or in part* as frivolous, malicious, or for failing to state a claim" in determining whether he had acquired "three strikes" pursuant to Section 1915[g] ) [emphasis added]; *Townsend v. Walker,* 06-CV-0361, 2006 U.S. Dist. LEXIS 37723, at *3-4, 2006 WL 1663713 (S.D. Ill. June 8, 2006) (rejecting plaintiff's argument that "[b]ecause [his] entire case was not dismissed for failure to state a claim, ... the ... [partial dismissal] should not count as a strike."); *Shaw v. Weaks,* 06-CV-2024, 2006 WL 1049307, at *6 n. 13 (W.D.Tenn. Apr.20, 2006) (counting as a strike a prior partial dismissal on ground of firivolousness or failure to state claim, even though rest of action was dismissed for failure to exhaust administrative remedies); *demons v. Young,* 240 F.Supp.2d 639, 640-641 (E.D.Mich.2003) (ruling that "a complaint dismissed in part as frivolous and in part without prejudice because of the failure to exhaust administrative remedies is ... a 'strike' for purposes of 28 U.S.C. § 1915(g)").

Having said all of this, I note that, for the most part, I am not persuaded by Defendants' argument that various of Plaintiffs actions or appeals resulted in "strikes" for purposes of 28 U.S.C. § 1915(g). (Dkt. No. 31, Part 13, at 4-5.) Generally, either the particular

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

dismissals cited by Defendants occurred after the "bringing" of Plaintiff's action (on September 12, 2005, or perhaps January 12, 2006), or those dismissals simply did not occur on the ground that the action was "frivolous, malicious, or fails to state a claim" under 28 U.S.C. § 1915(g). I note that I do not read 42 U.S.C. § 1915(g), or the cases applying it, as suggesting that a dismissal solely because of discovery abuses pursuant to Fed.R.Civ.P. 37, or a failure to serve pursuant to Fed.R.Civ.P. 41, constitutes a dismissal for frivolousness, maliciousness or failure to state a claim. FN8 Failures during discovery and failures to serve are failures based on something other than the four corners of a plaintiff's complaint-which is essentially the only thing looked at when determining frivolousness, maliciousness and failure to state a claim. Finally, I read 42 U.S.C. § 1915(g) as not encompassing a dismissal that is based partially upon the absence of genuine issues of material fact determined after a review of record evidence pursuant to Fed.R.Civ.P. 56. Apart from the fact that 28 U.S.C. § 1915(g), which is very specific, does not speak of such dismissals, such a review of record evidence generally only occurs when a litigant has survived any argument that his claim is frivolous, malicious or fails to state a claim.

> FN8. *See, e.g.,* Marjorie A. Shields, "Validity and Construction of 'Three Strikes' Rule Under 28 U.S.C.A. § 1915(g) Barring Prisoners from In Pauperis Filing of Civil Suit After Three Dismissals for Frivolity," 168 A.L.R. Fed. 433, §§ III.5. III.6 (2001 & Cumulative Supplement) (discussing cases addressing what constitutes a "frivolous" or "malicious" action for purposes of 28 U.S.C.A. § 1915[g] ).

**\*5** For all of these reasons, I find that Plaintiff had earned at least three "strikes" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005. However, that does not end our inquiry, because the "Three Strikes Rule" contains an exception for prisoners who are "in imminent danger of serious physical injury" when they bring their action. 28 U.S.C. § 1915(g).

**B. Non-Applicability of Imminent Danger Exception**

As stated earlier, the "Three Strikes Rule," set forth in the federal statute governing *in forma pauperis* proceedings, reads,

> *In no event shall a prisoner bring a civil action* or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury.*

28 U.S.C. § 1915(g) [emphasis added].

Because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent danger of serious physical injury when they "bring a civil action," the imminent-danger exception applies only when such danger exists *at the time the action is brought. See Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). As the Second Circuit explained in *Malik,*

> We agree with our sister circuits that § 1915(g) allows prisoners to escape the three strikes rule only if "the prisoner *is* under imminent danger of serious physical injury." (emphasis added). Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed. Further, "[b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Abdul-Akbar [v. McKelvie],* 239 F.3d [307] at 315 [3d Cir.2001]. Accordingly, the language of § 1915(g) makes clear that the "imminent danger" exception only applies to danger existing at the time the complaint is filed.

> *Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002), *accord, Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at *2-3 (2d Cir. Dec.6, 2007) (declining to overturn the Second Circuit's time-of-filing interpretation set forth in *Malik* ).

As a result, as in the Court's analysis of the assessment-of-strikes issue, the first thing the Court must do when analyzing the imminent-danger issue is to determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). As explained above in Part LA. of this Report-Recommendation, because of the "prison mailbox rule," an issue exists regarding precisely when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). He signed his original Complaint on September 12, 2005. However, he apparently did not mail that Complaint until on January 12, 2006. What further complicates matters is the fact that Plaintiff signed what he characterized as an "Amended" Complaint in this action on July 24, 2006. (Dkt. No. 6.) Ordinarily, this fact would not present a real problem, since an amended complaint contains allegations arising out of the same events as the events giving rise to the allegations contained in the original complaint. However, here, the "Amended" Complaint was, in actuality, an Amended and *Supplemental* Complaint, asserting, for the first time, allegations arising out of events occurring *after* the date he originally "brought" the action, specifically events occurring between May and July of 2006, at Auburn C.F. (*Compare* Dkt. No. 1 *with* Dkt. No. 6.) As a result, a sort of paradox arises: If a court considers the new allegations presented in a plaintiff's supplemental complaint when resolving the imminent-danger issue (presented by 28 U.S.C. § 1915 [g] ), the court will be determining whether the plaintiff was in imminent danger *after,* not before, he brought the action-unless the court re-characterizes the date on which the action was "brought" to coincide with the filing of the supplemental complaint.

**\*6** Fortunately, again, the Court need not resolve this issue because the Court would reach the same conclusion about the applicability of the imminent-danger exception regardless of whether the Court assumed Plaintiff "brought" this action on July 24, 2006, on January 12, 2006, or on September 12, 2005. This is because Plaintiff has not, in either his original Complaint or his Amended Complaint, alleged facts plausibly suggesting that he was under imminent danger of serious physical injury on any of the referenced dates.[FN9]

> FN9. I note that, when determining whether a prisoner has qualified for the "imminent danger" exception, courts look at the non-conclusory allegations in plaintiff's complaint. *Welch v. Fisher,* 07-CV-0929, 2007 WL 3231992, at *1-2 (N.D.N.Y. Oct.30, 2007) (McAvoy, J.) (concluding that plaintiff had failed to allege imminent danger of serious physical injury) [citations omitted]; *see also Abbrews v. Cervantes,* 493 F.3d 1047, 1053 (9th Cir.2007) ("[A]ll [circuits] maintain a singular focus on the facts alleged in the complaint in deciding whether a prisoner faced the requisite harm.") [collecting cases]; *Ibrahim v. Dist., of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006) ("In determining whether he qualifies [for the 'imminent danger' exception], we look to the complaint"); *Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir.2004) ("[T]he issue [under § 1915(g) ] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."); *Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) ("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger.") [citation omitted]; *Rivera v. Allin,* 144 F.3d 719, 726 (11th Cir.1998) ("Prior to denying leave to proceed IFP, courts must review a frequent filer prisoner's well-pled allegations to ensure that the prisoner is not under imminent danger of serious physical injury.") [internal quotation marks and citation omitted], *abrogated on other grounds, Jones v. Block,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

For example, liberally construed, Plaintiff's Amended Complaint (signed on July 24, 2006) alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., the fourteen Defendants in this action violated his constitutional rights in the following ways:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) **Defendant Curlee** (a) filed false disciplinary charges against Plaintiff on July 7, 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Auburn C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request on or about July 11, 2005, at Auburn C.F.;

(2) **Defendant Young** denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F.;

(3) **Defendant Jackowski** (a) also denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F., (b) wrongfully convicted Plaintiff of the referenced charges, and excessively sentenced him to nine months' confinement in the Great Meadow C.F. SHU, and (c) Defendant Jackowski also excessively punished Plaintiff to six months' confinement in the Great Meadow C.F. SHU following another wrongful conviction of false and retaliatory charges filed by Defendant Curlee in July of 2005;

(4) **Defendant Selsky** failed to completely reverse these disciplinary convictions, in September or October of 2005;

(5) **Defendant Green** intentionally ordered wrongful disciplinary hearings against Plaintiff on false disciplinary charges in July and August of 2005, at Great Meadow C.F.;

(6) **Defendant Campbell** (a) filed false disciplinary charges against Plaintiff in July of 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Great Meadow C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request five or six months before his Parole Board interview in 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(7) **Defendant Atkinson** wrongfully and intentionally denied Plaintiff's "mandatory program" requests between February and August of 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(8) **Defendant Beebe,** in retaliation against Plaintiff for having provided Defendant Curlee with written notice that he intended to take legal action against her, at Auburn C.F., (a) wrongfully and intentionally inhibited Plaintiff's practice of the Islamic religion by denying him "all religious materials including [his] study lessons" between July and August of 2005, at Great Meadow C.F., (b) wrongfully and intentionally denied Plaintiff his legal work, which was inside his "property bags," at Great Meadow C.F., and (c) wrongfully and intentionally placed him in a Great Meadow C.F. SHU cell that was "dirty, grimy and unsanitized" for a month prior to his transfer to another prison;

***7** (9) **Defendant McGuire** either committed the same violations as did Defendant Beebe during the same time period at Great Meadow C.F., or he helped Defendant Beebe commit those violations;

(10) **Defendant Nesmith** callously (a) denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" between June of 2005 and August 8, 2005, even though Plaintiff had had an outbreak of hives during that time period, at Great Meadow C.F., which had caused "eye and facial swelling," and (b) visited Plaintiff's cell without actually performing a sick call on several dates during the referenced time period;

(11) **Defendant Laux** denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" on May 23, 2006, without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.;

(12) **Defendant Hai** filed false disciplinary charges against Plaintiff on June 13, 2006, and June 14, 2006, in retaliation for the grievances that he had filed against Defendant Hai on June 2, 2006, and June 13, 2006, at Auburn C.F.;

(13) **Defendant Wolgzyk** (a) intentionally denied Plaintiff a legal assistant prior to his disciplinary

hearings on June 19, 2006, and June 20, 2006, at Auburn C.F., (b) wrongfully convicted him of the charges against him at those hearings, at Auburn C.F., and (c) callously sentenced him to incarceration in the Auburn C.F. SHU; and

(14) **Defendant Graham** caused Plaintiff to be incarcerated in an Auburn C.F. SHU cell that was dirty and flooded, and where he was deprived of running water, cleaning supplies, personal hygiene items, and his legal papers, in June and July of 2006. (*See generally* Dkt. No. 6.)

I find that these alleged facts do not plausibly suggest that Plaintiff was under an *imminent danger of serious physical injury* when he brought this action. (Indeed, I would have difficulty finding that these allegations plausibly suggest any *deliberate indifference to a serious medical need.*) The closest Plaintiff comes to asserting such factual allegations is when he alleges that (1) Defendant Nesmith denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" *between June of 2005 and August 8, 2005,* even though Plaintiff had had an outbreak of hives during that time period at Great Meadow C.F., which had caused "eye and facial swelling," and (2) Defendant Laux denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" *on May 23, 2006,* without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.

The first problem with these allegations is they do not plausibly suggest that the injuries Defendants Nesmith and Laux caused Plaintiff *between June of 2005 and August 8, 2005,* and *on May 23, 2006,* somehow continued to cause Plaintiff adverse health consequences *at the time this action was "brought"* - whether that date was when Plaintiff dated his original Complaint, on *September 12, 2005,* or when that original Complaint was postmarked, on *January 12, 2006,* or when Plaintiff signed his "Amended" Complaint in this action, *on July 24, 2006,*

**\*8** The Second Circuit recently affirmed a district court's finding of no-imminent-danger under circumstances involving an analogous temporal

disconnect. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724 (2d Cir. Dec.6, 2007). In *Polanco v. Hopkins,* the plaintiff alleged that (1) defendants were effectively forcing him to breathe "black mold" in a prison shower, exacerbating both his AIDS condition and his Hepatitis-B condition, and (2) defendants had deprived him of hygienic items and a proper diet while in the prison SHU, causing him to lose weight. *Polanco v. Hopkins,* 03-CV-6661, 2007 WL 914023, at *3-5 (W.D.N.Y. March 23, 2007). With respect to the first claim (regarding the moldy shower), the Western District of New York ruled that the plaintiff had not alleged facts plausibly suggesting that he was in imminent danger of serious physical injury *at the time be "brought" the action,* because he filed the action on December 29, 2003 (while he was incarcerated at Auburn C.F.) long after he had been subjected to the moldy shower on October 10, 2002 (while he was incarcerated at Elmira C.F.). *Polanco,* 2007 WL 914023, at *3-4. With respect to the second claim (regarding his proper hygiene and diet while in SHU), the Western District ruled there was no "imminent danger" alleged due to a similar temporal disconnect between the date of the injury (on March 25-27, 2003) and the date of the filing (on December 29, 2003). *Id.* at *5 & n. 1. On appeal, the Second Circuit agreed, affirming the Western District's ruling. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at *2 (2d Cir. Dec.6, 2007) ("Nor did the District Court err in determining that Polanco's 'allegations cannot support a determination that he was in imminent danger' of serious physical injury with respect to his claims relating to the health risks associated with his exposure to mold or to his claim of unjust discipline.' ").

In any event, even if this temporal disconnect did not plague Plaintiff's allegations, his allegations would still not plausibly suggest "imminent danger" because they lack several critical details. For example, with respect to his Benadryl claim, Plaintiff alleges no physical injury greater than "eye and facial swelling." Nor does Plaintiff allege how many times Defendant Nesmith deprived him of the Benadryl-a number closer to four or forty? With respect to his vitamin claim, Plaintiff alleges no specific physical injury *at all.* How

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

did Defendant Laux's alleged vitamin deprivation on one day exacerbate Plaintiff's pre-existing Hepatitis-B condition? And how did any such exacerbated condition rise to the level of an *imminent danger of serious physical injury?*

Analogous circuit court decisions exist finding that a prisoner had not alleged such an imminent danger due to his failure to provide such critical details. *See, e.g., Skillern v. Paul,* 06-CV-11440, 202 Fed. App'x 343, 344 (11th Cir. Oct.4, 2006) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged merely that the deprivation of his heart medication "may result" in his suffering serious physical injury, without "present[ing] any description of the condition giving rise to the prescription for heart disease medication," and without "alleg[ing] that he suffered any physical injury as a result of not receiving the medication"); *White v. Colorado,* 157 F.3d 1226, 1231-32 (10th Cir.1998) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915 [g], where he merely alleged "vague and utterly conclusory assertions" of withheld medical treatment, specifically, that he "ha [s] been deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life threatening degree"). FN10

> FN10. *See also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he merely asserted conclusory allegations that prison officials were trying to kill him by forcing him to work in extreme weather conditions despite "his blood pressure condition").

**\*9** Finally, I note that Plaintiff, in an obvious attempt to respond to Defendants' imminent-danger argument, has asserted some allegations of physical injury in his Opposition Memorandum of Law (described below). As an initial matter, I find that only

the allegations of a prisoner's *pleading* (not a memorandum of law) should be considered in deciding whether such imminent danger existed at the time an action was brought, for the reasons discussed above. FN11 In any event, these allegations asserted in Plaintiff's Opposition Memorandum of Law are, like the allegations asserted in his pleadings, wholly conclusory. (*See* Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 4, 26 [alleging that an excessive use of force, by unidentified Defendants on unidentified dates, caused Plaintiff to experience "internal organ trauma with bleeding-swelling to head and body with lacerations"]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 20 [alleging that Defendant Laux caused "a deterioration of Plaintiff's physical condition]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 21-22 [alleging that, on July 17, 2006, unidentified correctional officers, physically assaulted Plaintiff]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 25 [alleging that, during an unspecified time, unspecified Defendants denied Plaintiff "emergency medical treatment for 2 1/2 weeks"].)

> FN11. *See, supra,* note 9 of this Report-Recommendation.

For these reasons, I find that Plaintiff has not alleged facts plausibly suggesting that he was under imminent danger of serious physical injury when he brought this action. As a result, I recommend that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ten (10) days from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of dismissal.

Finally, I note that I specifically reject Plaintiff's argument that the Court is somehow estopped from revoking or rescinding his *in forma pauperis* status because it granted that status on July 5, 2006. (Dkt. No. 33, at 24-25 [Plf.'s Opp. Mem. of Law].) It is true that, in my Report-Recommendation of July 5, 2006, I noted, in a footnote, that Plaintiff had filed five other actions in the Northern District. (Dkt. No. 5, at 2.) However, before so noting, I had no occasion to look outside of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Northern District of New York for other cases filed by, or "strikes" earned by, Plaintiff. Simply stated, I was relying on Plaintiff's misrepresentation, in his sworn Complaint, about his litigation history. (*See, infra,* Part II of this Report-Recommendation [describing Plaintiff's misrepresentation].) Having misled the Court about his previous litigation history, Plaintiff cannot be heard to complain about the Court's reconsideration of his entitlement to proceed *in forma pauperis.*

## II. ALTERNATIVE GROUND FOR DISMISSAL

In the alternative, I find that Plaintiff should be sanctioned for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

**\*10** Specifically, in Paragraph 5 of Plaintiff's sworn Complaint, he answered "Yes" to the question, "Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?" (Dkt. No. 1, ¶ 5[a] [Plf.'s Compl.].) He then listed only *one* case when identifying those cases, even though he was specifically instructed, "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page." (Dkt. No. 1, ¶ 5[b] [Plf.'s Compl.].) Paragraph 5 of Plaintiff's sworn Amended Complaint contains the exact same question and answer. (*See* Dkt. No. 6, ¶ 5 [Plf.'s Am. Compl.].)

The problem is that, in answering this question, Plaintiff failed to disclose to the Court *any* of the *fourteen* state and federal court actions relating to his imprisonment that he had filed before the date on which he signed his original Complaint, on September 12, 2005, and/or before the date on which he signed his Amended Complaint, on July 24, 2006. *See Chavis v. Charnes,* 99-CV-5070 (S.D.N.Y.) (filed 7/14/99); *Chavis v. Cunningham,* 00-CV-0097 (W.D.N.Y.) (filed 1/28/00); *Chavis v. Flagler,* 01-CV-0510 (W.D.N.Y.) (filed 7/19/01); *Chavis v. VonHagan,* 02-CV-0119 (W.D.N.Y.) (filed 2/11/02); *Chavis v. Zodlow,* 02-CV-0637 (N.D.N.Y.) (filed 5/9/02); *Chavis v. Kienert,* 03-CV-0039 (N.D.N.Y) (filed 1/9/03); *Chavis*

*v. Ferris,* 03-CV-0743 (W.D.N.Y.) (filed 10/2/03); *Chavis v. Bennett,* 03-CV-0755 (N.D.N.Y.) (filed 6/18/03); *Chavis v. D.N.,* 04-CV-0158 (N.D.N.Y.) (filed 2/12/04); *Chavis v. Woods,* 05-CV-0429 (S.D.N.Y.) (filed 1/14/05); *Chavis v. Woods,* 05-CV-0768 (E.D.N.Y.) (filed 2/9/05); *Chavis v. Goord,* 8 A.D.3d 786, 777 N.Y.S.2d 918 (N.Y.App.Div., 3d Dept.) (appeal dismissed on 6/10/04); *Chavis v. New York,* UID 2001-013-019, Claim No. 100419 (N.Y. Ct CI.) (dismissed on 9/19/01).

Generally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

Here, the information omitted by Plaintiff was certainly material since the action proceeded for well over a year on the assumption that Plaintiff was telling the truth when he swore that, as of the dates on which he filed his Complaint and Amended Complaint, he had filed only one other lawsuit in state or federal court otherwise relating to his imprisonment. Had Plaintiff answered truthfully, it is highly likely that either the Court, or defense counsel, would have more promptly explored Plaintiff's prior litigation history and discovered the above-described "strikes." I note that, while a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

form complaint calling for such information, and *swore* to the truthfulness of his answer. No amount of special solicitude can excuse such a material misrepresentation to the Court.[FN12]

> **FN12.** I note that I am doubtful that Plaintiff is even entitled to such special solicitude, since the rationale for extending such solicitude is a *pro se* litigant's inexperience, and, here, Plaintiff is no stranger to the court system. *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining to extend special solicitude to experienced *pro se* civil rights litigant); *see also Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, at *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.). Specifically, from my review of various on-line databases, including the Federal Judiciary's PACER Service, it appears that Plaintiff has filed at least 15 other federal court actions, most of which were followed by an appeal, and at least six state court actions or appeals. *See, supra,* Part II of this Report-Recommendation (listing cases); *see also Chavis v. Ryan,* 05-CV-0100 (N.D.N.Y.); *Chavis v. Goord,* No. 500537, 2007 WL 4335538 (N.Y.App.Div., 3d Dept); *Chavis v. Goord,* 45 A.D.3d 1063, 845 N.Y.S.2d 866 (N.Y.App.Div., 3d Dept.); *Chavis v. Goord,* 43 A.D.3d 1235, 841 N.Y.S.2d 720 (N.Y.App.Div., 3d Dept.).

**\*11** District judges from this Court have recently indicated a willingness to sanction *pro se* litigants for making such material misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033,2007 WL 2406909, at *13-14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J.,

adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAcoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases].

Certainly, numerous other federal courts have so sanctioned *pro se* litigants. *See, e.g., Greer v. Schriro,* No. 06-15537, 2007 WL 4163413, at *1 (9th Cir. Nov.26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith,* No. 05-13124, 181 Fed. App'x 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hudson v. Fuller,* No. 02-1396, 59 Fed. App'x 855, 856-57 (7th Cir. Feb.25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,,* 99 F.3d 1145, 1145 (9th Cir.1996) (affirming district court dismissal that was based on this ground).[FN13]

> **FN13.** *See also Hood v. Tompkins,* No. 05-16358, 197 Fed. App'x 818, 819 (11* Cir. Aug.7, 2006) (affirming district court dismissal on this ground), *accord, Dinkins v. Smalley,* 07-CV-0043, 2008 WL 160699, at *3 & n. 3 (S.D.Ga. Jan.14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiff's complaint should be dismissed on this ground) [citing cases]. I note that the dismissals in *Hood v. Tompkins* and *Dinkins v. Smalley* were without prejudice since the plaintiffs in those cases had not yet had an opportunity to file an amended complaint. However, here, Plaintiff has had such an opportunity. (*See* Dkt. No. 6.) As a result, the dismissal should be *with prejudice.*

I note that I have carefully considered all less drastic sanctions and found them to be inadequate and inappropriate remedies, given the particular

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

circumstances of this case, and Plaintiff's incorrigible propensity for abusing the litigation process.[FN14] As a result, I recommend that, in the alternative, Plaintiff's Amended Complaint should be dismissed with prejudice as a sanction under Fed.R.Civ.P. 11 for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

> FN14. For example, in addition to the numerous baseless actions that Plaintiff has filed in federal court, and the numerous misrepresentations he has made in those actions about his then-previous litigation history, I note that Plaintiff has, in this action, used abusive language, calling various Defendants "devils" and "satanic," and calling defense counsel "sneaky, wicked, [and] manipulative." (*See, e.g.,* Dkt. No. 6, ¶ 6 at 1, 16 [Plf.'s Am. Compl.]; Dkt. No. 33, at 15 [Plf.'s Opp. Mem. of Law].)

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 31) be ***GRANTED.*** that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ***TEN (10) DAYS*** from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of ***DISMISSAL;*** and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's Complaint be *sua sponte* **DISMISSED with prejudice** as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history; and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

**\*12** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

*Exhibit 1*
**U.S. District Court**
**United States District Court for the Southern**
**District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE # : 1:99-cv-05072-TPG**
*Chavis v. Charnes,* et al

Assigned to: Judge Thomas P. Griesa

Demand: $0

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 07/14/1999

Date Terminated: 07/14/1999

Jury Demand: Plaintiff

Nature of Suit: 550 Prisoner: Civil

Rights

Jurisdiction: Federal Question

*Plaintiff*

**George M. Chavis**

V.

*Defendant*

**Mr. Allen Charnes**

*Defendant*

**Ms. Irene Springer**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)

**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

represented by **George M. Chavis**

(91-A-3261)

Southport Correctional Facility

P.O. Box 2000

Pine City, N.Y. 14871-2000

PROSE

| Date Filed | # Docket Text |
|---|---|
| 07/14/1999 | 1 DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS by George M. Chavis (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 2 COMPLAINT filed (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Magistrate Judge Dolinger is so Designated. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 3 ORDER OF DISMISSAL Accordingly, the complaint, filed in forma pauperis under 28 U.S.C.1915(a), is dismissed pursuant to 28 U.S.C.1915(d). We certify pursuant to 28 U.S.C.1915(a) that any appeal from this order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa) (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 4 JUDGMENT for Allen Charnes, Irene Springer. Ordered, Adjudged and Decreed: That the complaint be and it is hereby dismissed. 28 U.S.C.1915(d). We certify that any appeal from the Court's order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa). entered on 7/19/99. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Case closed Op) (Entered: 07/19/1999) |
| 08/12/1999 | NOTICE OF APPEAL by George M. Chavis; from [4-1] judgment. Copies of notice of appeal mailed to |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | |
|---|---|
| | Attorney(s) of Record: .FEES DUE, IFP revoked 7/14/99. (as) (Entered: 09/02/1999) |
| 08/12/1999 | Notice of appeal and certified copy of docket to USCA: [5-1] appeal by George M. Chavis; Copy of notice of appeal sent to District Judge. (as) (Entered: 09/02/1999) |
| 09/08/1999 | 6 Notice that the record on appeal has been certified and transmitted to the U.S. Court of Appeals: [5-1] appeal by George M. Chavis (as) (Entered: 09/08/1999) |
| 03/01/2000 | 7 MANDATE OF USCA (certified copy) Re: Dismiss [5-1] appeal by George M. Chavis. Motions having been made by appellant pro se for in forma pauperis status and for damages, upon consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. 99-0265 Roseann B. MacKechnie, Clerk (sl) (Entered: 03/02/2000) |
| 05/11/2000 | Record on appeal files (99-265) returned from U.S. Court of Appeals: [5-1] appeal by George M. Chavis. (dt) (Entered: 05/11/2000) |

**PACER Service Center**

**Transaction Receipt**

01/17/2008 11:48:19

| | | | |
|---|---|---|---|
| **PACER Login:** | us4417 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:99-cv-05072-TPG |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

*Exhibit 2*
GENERAL DOCKET FOR
Second Circuit Court of Appeals
**\*13** Filed: 9/14/99

Court of Appeals Docket # :99-265

Nsuit: 3550 PRISONER PET-Civil Rights

*Chavis v. Charnes,* et al

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Appeal from: U.S. District Court SDNY

Case type information:

1) Prisoner Petition

2) State

3) Civil Rights

Lower court information:

District: 0208-01: 99-cv-5072

Trial Judge: Thomas P. Griesa, Chief Judge

Date Filed: 7/14/99

Date order/judgment: 7/14/99

Date NOA filed: 8/12/99

Fee status: IFP denied in CA

Prior cases:

None

Current cases:

None

Panel Assignment:

GEORGE M. CHAVIS, Plaintiff-Appellant

George M. Chavis

# 91-A-3261

[COR LD NTC]

Coxsackie Correctional Facility

P.O. Box 2000

Coxsackie, N.Y. 12051

ALLEN CHARNES, Mr., Defendant-Appellee

# 990265, Esq.

[COR LD NTC ret]

Attorney General's Office

State of New York

The Capitol

Albany, N.Y. 12224

IRENE SPRINGER, Ms., Defendant-Appellee

# 990265, Esq.

(See above)

[COR LD NTC ret]

Official Caption [FN15]

> [FN15.] Fed. R.App. P. Rule 12[a] and 32[a].

Docket No. [s]: 99-0265

GEORGE M. CHAVIS, Plaintiff-Appellant,

v.

MR. ALLEN CHARNES and MS. IRENE SPRINGER, Defendants-Appellees.

Authorized Abbreviated Caption [FN16]

> [FN16.] For use on correspondence and motions only.

Docket No. [s]: 99-0265

*CHAVIS v. CHARNES*

8/31/99 Copy of district court order RECEIVED.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(ag44)

9/14/99 Copy of notice of appeal and district court docket entries on behalf of Appellant George M. Chavis filed. (COANRQ state-cvrgt;fee due) [99-265] (ag44)

9/14/99 Record on appeal filed. (Original papers of district court.) Number of volumes: 1 (ag44)

9/17/99 Note: This appeal was PRO SE when filed. (ag44)

9/17/99 Letter sent to Appellant George M. Chavis giving 30 days from date to either pay the fee or file a motion for ifp. Fee due on 10/18/99. D Response due financial affidavit on 10/18/99. (ag44)

9/20/99 Appellant George M. Chavis motion to proceed in forma pauperis Satisfy fee or motion for ifp. FILED (w/pfs). [1555668-1] (ag44) 10/6/99 Letter from appellant, regarding submission of pre-argument materials, received. (ag44)

10/12/99 Letter sent to Appellant George M. Chavis instructing him to forward his prisoner fee letter to this court as soon as possible. (ag44)

10/18/99 Appellant George M. Chavis motion to allow damages FILED (w/pfs). [1490706-1] (ag40)

11/24/99 Letter from appellant, regarding the status of his appeal, received. (ag44)

1/4/00 Letter sent to Appellant George M. Chavis informing him of the status of his appeal. (ag44)

2/25/00 Order FILED DENYING motion to allow [1490706-1] by Appellant George M. Chavis, endorsed on motion dated 10/18/99., DENYING motion to proceed in forma pauperis [1555668-1] by Appellant George M. Chavis, endorsed on motion dated 9/20/99. Order states, "Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.

S.1915 (e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). For the Court: LC." (ag44)

**\*14** 2/25/00 Notice, regarding motion order dated 2/25/00, issued to counsel. (ag44)

2/25/00 Certified copy of order dated 2/25/00 disposing of the appeal issued to district court. (ag44)

3/9/00 Letter from appellant, regarding reinstatement of the appeal, received. (ag44)

3/16/00 Letter sent to Appellant George M. Chavis stating that if he wants to reinstate the appeal, he must file a motion. (ag44)

3/31/00 Appellant George M. Chavis motion for: 2.5 million dollars RECEIVED. (ag44)

5/1/00 Record on appeal RETURNED to lower court. No. of volumes: 1(ref)

5/25/00 Letter from appellant, regarding motion for appointment of counsel and review of medical papers, received. (ag44)

6/22/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1652956-1](hh)

7/18/00 Appellant George M. Chavis papers supporting motion # for reconsideration [1652956-1] by Appellant George M. Chavis filed. (ag44)

8/2/00 Order FILED DENYING motion to reconsider decision [1652956-1] by Appellant George M. Chavis, endorsed on motion dated 6/22/00. Order states, "Before CJS, SS, DN Hurd, It is hereby ordered that the motion for reconsideration be and it hereby is denied. For the Court: BJM" (ag44)

8/3/00 Notice, regarding motion order dated 8/2/00, issued to counsel. (ag44)

8/18/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1691931-1](hh)

10/6/00 Letter received from G. Chavis re: appeal to

the Supreme Court. (ag42)

11/9/00 Letter from appellant, regarding denial of his motion for reconsideration, received. (ag44)

12/8/00 Letter sent to Appellant George M. Chavis re: Letter received on 10/06/00. (ag42)

6/25/01 Order FILED DENYING motion to reconsider decision [1691931-1] by Appellant George M. Chavis, endorsed on motion dated 8/18/00. (Before: CJS, SS, CJJ, Hurd, DJ) (BJM, AA FOR THE COURT) (ag40)

6/25/01 Notice of motion to denying reconsideration issued to counsel and pro se. (ag40)

6/25/01 Letter sent to Appellant George M. Chavis: reagrding letter he sent to this court. (ag40)

*Exhibit 3*
United States Court of Appeals
FOR THE
SECOND CIRCUIT
At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 11th Day of MARCH Two thousand and five.

Present:

Hon. Thomas J.

Meskill, Hon. Dennis Jacobs,

Hon. Chester J. Straub,

*Circuit Judges.*

_____

George M. Chavis, Plaintiff-Appellant,

v.

Robert Cunningham, George Struebel, Defendants-Appellees,

D. Waiter, T. Brekon, Wright, John Doe, Glenn S. Goord, Anthony J. Annuci, Walter R. Kelly, Frank McCray, James Conway, Edward Donnerly, Defendants,

_____

Appellant, *pro se,* moves for *in forma pauperis* status. Upon due consideration, it is ORDERED that the motion is DENIED, and the appeal is dismissed, because the appeal "lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).

**\*15** FOR THE COURT:

Roseann B. MacKechnie, Clerk

By: Lucille Carr

*Exhibit 4*
**New York State Court of Claims**

*CHAVIS v. THE STATE OF NEW YORK,* #
**2001-013-019, Claim No. 100419, Motion No. M-63721**
**Synopsis**
A claim brought by a non-attorney which asserts a cause of action on behalf of family members is dismissed as improperly brought.

**Case Information**

| | |
|---|---|
| **UID:** | 2001-013-019 |
| **Claimant(s):** | GEORGE CHAVIS |
| **Claimant short name:** | CHAVIS |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | |
|---|---|
| **Footnote (claimant name):** | |
| **Defendant(s):** | THE STATE OF NEW YORK |
| **Footnote (defendant name):** | |
| **Third-party claimant(s):** | |
| **Third-party defendant(s):** | |
| **Claim number(s):** | 100419 |
| **Motion number(s):** | M-63721 |
| **Cross-motion number(s):** | |
| **Judge:** | Philip J. Patti |
| **Claimant's attorney:** | GEORGE CHAVIS, Pro Se |
| | HON. ELIOT SPITZER |
| **Defendant's attorney:** | Attorney General of the State of New York |
| | BY: William D. Lonergan, Esq. Assistant Attorney General |
| **Third-party defendant's attorney:** | |
| **Signature date:** | September 19, 2001 |
| **City:** | Rochester |
| **Comments:** | |
| **Official citation:** | |
| **Appellate results:** | |
| **See also** | |
| **(multicaptioned case)** | |

### Decision

On August 15, 2001, the following papers were read on Defendant's motion for an order of dismissal:

1. Notice of Motion and Supporting Affidavit of William D. Lonergan, Esq. ("Lonergan Affidavit")

2. Affidavit in Opposition: None Received

3. Filed Papers: Claim; Answer

The substantive portion of this claim, which was filed by *pro se* Claimant George Chavis, reads as follows:

On date of 8-22-98, my mother and brothers (2), had visited me at Lakeview Prison, at an "unauthorized" time, due to false information given them over the phone by my vindictive SHU-Counselor, on 8-11-98,

resulting in loss of travel expenses by my family members.

Claimant served a Notice of Intention on September 11, 1998 (Lonergan Affidavit, Exhibit A), and the Claim was filed and served in May 1999. In its answer, the State raised the following as its fifth affirmative defense:

The claim is inappropriately brought, as the Claimant is not authorized to practice law under the New York State Judiciary Law. As such, Claimant cannot bring an action on behalf of his family members.

Defendant now moves for an order dismiss the claim on this ground.

CPLR 321(a) provides that an adult party "may prosecute or defend a civil action in person or by attorney," and Judiciary Law § 478 makes it unlawful

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

for persons who have not been admitted to practice law to appear as or hold themselves out as attorneys. Claimant has made no submission in opposition to Defendant's motion and, because he expressly indicates that he has brought this action *"pro se,"* I have no option but to conclude that he has neither the authority to represent his family members in this matter nor a claim to assert on his own behalf.

**\*16** Defendant's motion is granted, and Claim No. 100419 is dismissed.

September 19, 2001

Rochester, New York

HON. PHILIP J. PATTI Judge of the Court of Claims

N.D.N.Y.,2008.
Chavis v. Curlee
Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4258230 (S.D.N.Y.)
**(Cite as: 2007 WL 4258230 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Russell D. PALMER, Plaintiff,
v.
N.Y.S. DEPT. OF CORRECTION
GREENHAVEN, et al., Defendants.

No. 06 Civ. 2873(PAC)(KNF).
Dec. 4, 2007.

*OPINION AND ORDER*
Honorable PAUL A. CROTTY, District Judge.

**\*1** In April, 2006, Russell D. Palmer ("Plaintiff") commenced this § 1983 action, *pro se* and *in forma pauperis*, alleging that he had been deprived of an opportunity to attend his son's funeral in July, 2003; that in March, 2001, he was forced to drink contaminated water and, thereafter, tested positive for hepatitis and other assorted medical difficulties; that the Warden and medical staff were deliberately indifferent to his severe medical conditions; that his various grievances about his mistreatment by Correction Officers were arbitrarily denied; and, finally, when he complained about lighting in his cell, he was subject to retaliatory searches of his cell. Plaintiff sought $15 million in monetary and punitive damages.

In a preliminary filing with the Pro Se Office in February, 2006, Plaintiff represented that he only had two prior actions relating to his imprisonment, which he identified as *Palmer v. Police Officer Wawlyn Stewart,* 02 Civ. 4076, and *Palmer v. District Attorney Robert Johnson and Police Officer Neldon,* 05 Civ. 1546.[FN1]

> FN1. The original description of the case in February, 2006 did not provide a docket number for this case. When Plaintiff filed an amended complaint in August, 2006, he provided the docket number for the second

matter.

Defendants moved to dismiss on August 4, 2006 on the grounds that Plaintiff failed to comply with Judge Mukasey's order in *Palmer v. Alvarez,* 05 Civ. 3258, requiring Plaintiff to pay a filing fee prior to bringing any action, and otherwise to dismiss the complaint for failure to state a claim.

The matter was reassigned by Chief Judge Mukasey to this Court on October 24, 2006, and referred to Magistrate Judge Fox. When Plaintiff filed an amended complaint, Defendants renewed their motion to dismiss in December, 2006.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On August 24, 2007, Magistrate Judge Fox issued his thorough and thoughtful Report and Recommendation. The Magistrate Judge found that not only had Plaintiff filed the two lawsuits he admitted to, but seven additional *pro se, in forma pauperis* matters for a total of nine cases. Eight of these cases had been dismissed for failure to state a claim.

The Magistrate Judge found that in *Palmer v. Alvarez,* Plaintiff's complaint was dismissed pursuant to 28 U.S.C. §§ 1915(e) (2)(b)(ii) and (iii), "for failure to state a claim upon which relief can be granted and for asserting claims against Defendants immune from suit." The District Judge certified, pursuant to 28 U.S.C. § 1915(a)(3), "that any appeal from this order would not be taken in good faith." Finally, Judge Mukasey also barred Plaintiff "from filing any civil action under the *in forma pauperis* statute while he is a prisoner, unless his allegations bring his complaint within the terms of the statute's 'imminent danger' exception."

Plaintiff attempts to avoid the impact of Judge Mukasey's order by claiming that the absence of a filing fee is irrelevant because the filing fee can be deducted from his inmate trust account. This

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

argument is rejected. When Congress adopted the Prison Litigation Reform Act, it clearly had inmates like Plaintiff in mind. The statute is intended to deter frivolous prisoner litigation by forcing an inmate to do what every other citizen must do: think before filing the lawsuit-"is filing this suit worth the costs." *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007) (quoting *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997).

**\*2** Once an inmate has had three or more suits dismissed, he is barred from instituting further suits *in forma pauperis,* "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The clear intention of the statute is that after three actions have been dismissed for failure to state a claim, the prisoner has to pay the appropriate filing fee, just like everyone else, at the time of filing. The filing statutes do not permit payment over time by periodic deductions. Further, the Court has no access to Palmer's inmate trust account. The law here is simple, clear and direct: payment must be made-as it is for everyone else-at the time of filing.

Plaintiff's failure to comply with Judge Mukasey's directive in the *Alvarez* case is more than sufficient to justify dismissal of this action. But, Magistrate Judge Fox did not rely only on Palmer's non-compliance with the *Alvarez* order. With commendable thoroughness, he reviewed each of Palmer's nine actions, which began almost a decade ago in 1998. There is only one matter that was still pending. As to the other eight matters, he found that each had been disposed of in a manner that qualified as a strike under 28 U.S.C. § 1915(g).

Since there were more than three strikes, the statute permits an action without a filing fee only where there is an "imminent danger of serious physical injury." Magistrate Judge Fox reviewed Palmer's complaint to see whether there was any "imminent danger." The common definition of "imminent" is "likely to happen without delay" or "impending" or "threatening." None of Palmer's allegations dealt with anything that was going to

happen on April 12, 2006, when Plaintiff filed his complaint. Indeed, Plaintiff complains of events which occurred no later than 2004, and some go back to 2001. In these circumstances, the Magistrate Judge reached the correct conclusion that the allegations of Plaintiff's complaint were completely lacking any suggestion of imminence.

Accordingly, the Magistrate Judge recommended that the Defendants' motion to dismiss Palmer's complaint, pursuant to 28 U.S .C. § 1915(g), be granted.

## APPLICABLE LAW

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate judge's recommendations, the court is required to review the contested portions *de novo. Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991).

## PLAINTIFF'S OBJECTIONS

Palmer filed timely objections to the Report and Recommendation. First, Palmer applies his own brand of mathematics to the eight strikes. He concludes there are only two strikes, as follows:

(i) Two of the strikes are on appeal, and therefore neither judgment is final and, accordingly, should not count as a strike;

(ii) Two of the strikes occurred in lawsuits when he was not in prison, where he was not proceeding *pro se,* and where he settled for a sum of money [The Court notes that Palmer's description of these actions is at a substantial variance from the Magistrate Judge's];

**\*3** (iii) Three lawsuits were related and should be considered as one strike.

Counting as Plaintiff does, (i) and (ii) reduce eight strikes to four, and counting three actions as one strike, means there are only two valid strikes ( *i.e.,* the three actions as one strike, and the *Alvarez*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4258230 (S.D.N.Y.)
**(Cite as: 2007 WL 4258230 (S.D.N.Y.))**

*action* ).

Even if the Court were to agree with Plaintiff as to (i) and (ii) (and it does not on (ii)), there is no good reason why the three lawsuits which Plaintiff chose to bring as separate actions, and are identified by separate docket numbers, and proceed against separate defendants, should be counted as only one. At a bare minimum, there are four strikes and Plaintiff must pay to file his actions, just like any other citizen, as Judge Mukasey had previously ordered.

Plaintiff argues that since all of his complaints are on-going, they are imminent. In his objections, Palmer points in particular to allegations of imminent danger, such as, "I went to see the defendants [i.e. two treating physicians] in January of 2004 and complained I was getting an infection between my toes." Further, his toe nails "started turning black, yellow and green and the plaintiff finger nails and finger started to become swolling" [sic]. "Greenhaven C.F. allowed the matter to become worse, now the plaintiff must have six toe nails and one pinkie nail removed". (Palmer's Objections to Report and Recommendation 8/31/2007, p. 2, 3.) This simple recitation of his claimed ailments demonstrates that there is no imminence and certainly no imminence of "serious physical injury." Palmer's argument is untenable; indeed, it is frivolous, and it must be rejected.

### CONCLUSION

The Court adopts the Report and Recommendation and rejects Plaintiff's objections.

Plaintiff must pay his filing fee in advance, and his failure to do so, as Judge Mukasey held in *Palmer v. Alvarez,* means that his action must be and is hereby dismissed. An appeal from this order would not be taken in good faith, as it would be frivolous, as is the current pleading. 28 U.S.C. § 1915(a)(3). The Clerk is directed to dismiss the action and close out this case.

SO ORDERED.

### REPORT AND RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate Judge.

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

Plaintiff Russell D. Palmer ("Palmer"), a New York State inmate, proceeding *pro se* and *in forma pauperis* ("IFP"), brings this action, pursuant to 42 U.S.C. § 1983 ("Section 1983"), against the New York State Department of Corrections and various corrections officials alleging deprivation of his civil rights. Before the Court is the defendants' motion to dismiss, pursuant to: (1) 28 U.S.C. § 1915(g), for Palmer's failure to pay the applicable filing fee, as required by a court order dated March 25, 2005; and (2) Fed.R.Civ.P. 12(b)(6), for Palmer's failure to state a claim upon which relief may be granted. The plaintiff opposes dismissal of his complaint contending, *inter alia,* the filing fee will be deducted from his inmate account. The motion is addressed below.

### II. BACKGROUND

**\*4** Palmer filed the instant complaint on April 12, 2006, and his request to proceed IFP was granted. He submitted a signed Prisoner Authorization form permitting automatic deductions of the filing fee from his prison trust fund account.

Palmer alleged that, while he was confined at Green Haven Correctional Facility, the defendants violated his civil rights by: (a) preventing him from attending his son's funeral; (b) subjecting him to contaminated drinking water; (c) charging and convicting him, wrongfully, for possessing unauthorized material; (d) confining him to his cell without authorization to do so; and (e) depriving him of lights and electrical power in his cell for two weeks. In the complaint the plaintiff filed to initiate this action, Palmer indicated he had filed the following lawsuits previously, which involved either the same facts as are pertinent to this action, or were otherwise related to his confinement: (1)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Palmer v. Stewart,* No. 02 Civ. 4076, filed on or about September 11, 2001, in the United States District Court for the Southern District of New York ("SDNY"), and no disposition issued; and (2) *Palmer v. Neldon,* No. 05 Civ. 1546, filed on or about November 30, 2004, in the SDNY, and no disposition issued. On August 29, 2006, Palmer filed an amended complaint, in connection with the instant action. In that amended pleading, Palmer made additional allegations of civil rights violations by the defendants that occurred during his confinement at Otisville Correctional Facility, between October 2005 and August 2006. In the amended complaint, the plaintiff did not disclose any additional actions that he had filed prior to commencing the instant action.

### III. DISCUSSION

Congress enacted the Prison Litigation Reform Act ("PLRA") "with the principal purpose of deterring frivolous prisoner lawsuits and appeals." *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007) (quoting *Nicholas v. Tucker,* 114 F.3d 17, 19 [2d Cir.1997] ). To that end, PLRA contains a "three-strikes" provision. "The 'three-strikes' provision in the PLRA was designed to accomplish [the] goal [of deterring frivolous prisoner litigation] by 'forc[ing prisoners] to go through the same thought process non-inmates go through before filing a suit, i.e. is filing this suit worth the costs?' " *Id.* (Citation omitted). PLRA's "three-strikes" provision states:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The " 'imminent danger' exception only applies to danger existing at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002). "By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Abdul-Akbar v. McKelvie,* 239 F.3d 307, 315 (3rd Cir.2001).

**\*5** An action is frivolous when "it lacks an arguable basis either in law or in fact." *See Tafari,* 473 F.3d at 442. "A case is malicious if it was filed with the intention or desire to harm another." *Id.* (quotation omitted). In determining whether a prior dismissal of an action qualifies as a strike, for the purpose of Section 1915(g), a district court needs to be mindful that the phrase " 'fails to state a claim upon which relief may be granted' is an explicit reference to Fed.R.Civ.P. 12(b)(6)." *See Tafari,* 473 F.3d at 442. "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock,* --- U.S. ----, 127 S.Ct. 910, 920-21 (2007). Moreover, failing to state a claim upon which relief may be granted and seeking monetary damages from a defendant who is immune from such relief are both grounds for the *sua sponte* dismissal of a complaint by a court that is performing the judicial screening function assigned to it by PLRA. *See id.* at 920; *see also* 28 U.S.C. § 1915(e)(2)(B). A determination on whether a particular ground is a basis for dismissing a complaint, for failing to state a claim upon which relief may be granted, "depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Bock,* 127 S.Ct. at 921.

In his complaint, the plaintiff identified only two actions he had filed prior to commencing the instant action. However, public records reveal that,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

while confined as an inmate, Palmer had filed the following civil actions, in the SDNY, prior to commencing the instant action:

1) *Palmer v. New York City Police Department, et al.,* No. 98 Civ. 6591 (Section 1983 filed on September 18, 1998);

2) *Palmer, et al. v. Siegel,* No. 98 Civ. 6592 ( Section 1983 filed on September 18, 1998);

3) *Palmer, et al. v. Bronx Supreme Court,* No. 01 Civ. 6694 (Section 1983 filed on July 23, 2001);

4) *Palmer v. Caldron, et al.,* No. 01 Civ. 6695 ( Section 1983 filed on July 24, 2001);

5) *Palmer v. J.S.C. Fisher, et al.,* No. 01 Civ. 6696 (Section 1983 filed on July 24, 2001);

6) *Palmer v. Stewart,* No. 02 Civ. 4076 (Section 1983 filed in on May 30, 2002);

7) *Palmer v. Phillips,* No. 04 Civ. 1414 (Habeas Corpus proceeding);

8) *Palmer v. Police Officer Neldon, et al.,* No. 05 Civ. 1546 (Section 1983 filed on February 4, 2005); and

9) *Palmer v. Alvarez,* No. 05 Civ. 3258 (Section 1983 filed on March 25, 2005).

*Palmer v. Alvarez, No. 05 Civ. 3258*

The defendants contend the instant action is barred because the dismissal order in *Palmer v. Alvarez,* dated March 25, 2005, invoked 28 U.S.C. § 1915(g) specifically: "Plaintiff is also barred from filing any civil action in this court under the *in forma pauperis* statute while he is a prisoner, unless his allegations bring his complaint within the terms of the statute's 'imminent danger' exception." The plaintiff asserts the defendants' contention "concerning [his failure to pay the] filing fee is irrelevant" because the filing fee will be deducted from the plaintiff's inmate trust account.

**\*6** The plaintiff's complaint in *Palmer v.*

*Alvarez* was dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii), 1915(e)(2)(b) (iii), "for failure to state a claim upon which relief may be granted and for asserting claims against defendants immune from suit ." The district judge certified, pursuant to 28 U.S.C. § 1915(a) (3), "that any appeal from this order would not be taken in good faith." The dismissal judgment in *Palmer v. Alvarez* qualifies as a strike, for the purpose of Section 1915(g), because it was based on a failure to state a claim on which relief may be granted and immunity from suit grounds, as specified in Section 1915(g).

*Palmer v. Police Officer Neldon, et al., No. 05 Civ. 01546*

Although the defendants do not allege any other action that may qualify for the purpose of PLRA's three-strikes provision, public records demonstrate that, on May 3, 2006, in *Palmer v. Police Officer Neldon, et al.,* a magistrate judge, after converting the defendants' motion to dismiss, made pursuant to Fed.R.Civ.P. 12(b)(6), to a Fed.R.Civ.P. 56, motion for summary judgment, recommended dismissal of the complaint, with prejudice, because the plaintiff's claims were barred by the applicable statute of limitations. On September 29, 2006, the assigned district judge adopted the magistrate judge's report and recommendation. The docket sheet maintained by the SDNY Clerk of Court for that action indicates that, thereafter, the plaintiff filed a notice of appeal with the Second Circuit Court of Appeals. Although the defendant's motion to dismiss was converted to a motion for summary judgment, the district court's dismissal in *Palmer v. Police Officer Neldon, et al.* qualifies as a strike, for the purpose of Section 1915(g), because the action was dismissed because it was barred by the applicable statute of limitations, which is a failure to state a claim on which relief may be granted.

*Palmer v. Phillips, No. 04 Civ. 1414*

On February 19, 2004, acting *pro se,* Palmer filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. As of the time of this writing,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4258230 (S.D.N.Y.)
**(Cite as: 2007 WL 4258230 (S.D.N.Y.))**

the petition has not been resolved and cannot count as a strike, for the purpose of Section 1915(g).

*Palmer v. Stewart, No. 02 Civ. 4076*

On July 15, 2002, Palmer filed a *pro se* civil rights action against a police officer named "Stewart." After it was determined that the officer had passed away, Palmer was directed, by a magistrate judge, on March 9, 2004, to file a motion pursuant to Fed.R.Civ.P. 25(a)(1), to substitute the named defendant with a representative of the defendant's Estate. Palmer substituted the representative. However, in a memorandum of law, dated April 17, 2004, Palmer explained to the court that bringing an action against the defendant's Estate was a mistake because the defendant was not involved in the events underlying his action. Palmer's application to substitute Detective Stephen Harding as a defendant was denied by a district judge's order of November 15, 2005, for reasons stated in the magistrate judge's March 5, 2004 order, and the action was dismissed in its entirety, with prejudice. The magistrate judge's March 5, 2004 order denied Palmer's application to amend his complaint to add three defendants, including Detective Stephen Harding, because the amendment was untimely, as the statute of limitations expired on the underlying claim against the proposed new defendants. The magistrate judge explained that Palmer's lack of knowledge of the defendant's identity did not qualify as "a mistake concerning the identity of a proper party," as contemplated by Fed.R.Civ.P. 15(c)(3). Therefore, inasmuch as *Palmer v. Stewart* was dismissed based on the expiration of the applicable statute of limitations, that dismissal counts as a strike, for the purpose of Section 1915(g).

*Palmer v. J.S.C. Fisher, et al., No. 01 Civ. 6696, Palmer v. Caldron, et al., No. 01 Civ. 6695, Palmer, et al. v. Bronx Supreme Court, No. 01 Civ. 6694*

**\*7** In July 2001, Palmer brought three *pro se* civil rights actions against J.S.C. Fisher, et al.,

Caldron, et al., and the Bronx Supreme Court, respectively. On July 24, 2001, a district judge consolidated the three actions and, pursuant to 28 U.S.C.1915(e)(2)(B)(ii), 1915(e)(2)(B)(iii), dismissed them for Palmer's failure to state a claim(s) on which relief could be granted, and because Palmer sought relief against defendants who were immune from such relief. All three judgments of dismissal certified, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the order of dismissal would not be taken in good faith. The Court finds that these three dismissals count as strikes, for the purpose of Section 1915(g), because the actions were dismissed due to Palmer's failure to state a claim upon which relief could be granted and because he attempted to obtain relief against defendants who were immune from the relief sought.

*Palmer, et al. v. Siegel, No. 98 Civ. 6592*

On September 18, 1998, Palmer filed a *pro se* Section 1983 action against his court-appointed counsel alleging that counsel's legal malpractice and negligence violated his constitutional rights. Dismissing the action the same day, a district judge concluded that, because court-appointed attorneys and public defenders do not act under color of state law, "[p]laintiff's allegations against this defendant fail to state a cognizable claim in federal court. Accordingly, the complaint, filed *in forma pauperis* under 28 U.S.C.1915(a)(1), is dismissed because it 'lacks an arguable basis either in law or in fact.' *Neitzke v. Williams,* 490 U.S. 319, 325[, 109 S.Ct. 1827, 1831] (1989)." The judgment of dismissal certified that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from the order would not be taken in good faith. This action was dismissed for both failure to state a claim upon which relief may be granted and because it was frivolous. Consequently, the dismissal counts as a strike, for the purpose of Section 1915(g).

*Palmer v. New York City Police Department, et al., No. 98 Civ. 6591*

On September 18, 1998, the plaintiff filed a *pro*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*se* civil rights action alleging he was falsely arrested for a crime he did not commit. The complaint was dismissed on the same day, pursuant to 28 U.S.C. § 1915(e)(2), because it lacked an adequate basis in either law or in fact. The judgment of dismissal certified that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from the order would not be taken in good faith. This dismissal counts as a strike, for the purpose of Section 1915(g).

As the above analysis demonstrates, the plaintiff filed more than three meritless civil rights actions, while confined as an inmate, prior to filing the instant action. To avoid dismissal of the instant action, pursuant to Section 1915(g), the plaintiff must demonstrate that he was under imminent danger of serious physical injury at the time he filed the complaint, on April 12, 2006.

*Imminent Danger*

**\*8** The defendants contend, none of Palmer's claims demonstrate that he was under imminent danger of serious physical injury at the time he filed the complaint. The Court agrees with the defendants. Even when interpreting the complaint liberally and construing the pleadings in the light most favorable to Palmer, any harm that he may have suffered because he: (a) was unable to attend his son's funeral in 2003; (b) contracted hepatitis in 2001 by drinking contaminated water at Green Haven Correctional Facility and developed an eye infection in 2004; (c) was wrongfully charged with possession of unauthorized material in 2004; or (d) was deprived of light and electrical power in his cell in 2004, was not an impending harm on April 12, 2006, when Palmer filed his complaint. Therefore, no harm alleged by Palmer in his complaint or any other allegation contained therein satisfies the "imminent danger of serious physical injury" exception found in Section 1915(g) that would permit Palmer to maintain this action.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that the defendants' motion to dismiss the plaintiff's complaint, pursuant to 28 U.S.C. § 1915(g), be granted.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 470 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

S.D.N.Y.,2007.
Palmer v. N.Y.S. Dept. of Correction Greenhaven
Not Reported in F.Supp.2d, 2007 WL 4258230 (S.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
D. Vermont.
Byron MARTIN, Plaintiff
v.
R. Tasha WALLIS, John Doe # 1, John Doe # 2,
Steven Collier, Daniel Akers, Randy Stovall, Laura
Kash, Mr. Napier, Mike Bowling, Danny Lane,
Mitchell Brandenburg, Melissa Brunelle, Frank
Kincaid, Donna Stivers, Kathy Childers, John Does
1–5, Sean Selby, Larry Smith, Tom Roberts and
Kevin Charboneau, Defendants.

No. 1:07–cv–175.
Aug. 12, 2008.

Byron Martin, Barton, VT, pro se.

Toni H. Clithero, Esq., Vermont Office of the
Attorney General, Montpelier, VT, for Defendants.

### ORDER

J. GARVAN MURTHA, District Judge.

**\*1** The Magistrate Judge's Report and
Recommendation was filed July 17, 2008. (Paper
53.) After *de novo* review and absent objection, the
Report and Recommendation is AFFIRMED,
APPROVED and ADOPTED. *See* 28 U.S.C. §
636(b)(1).

The defendants' motions to dismiss (Papers 45
and 49) are hereby GRANTED to the extent that
they seek dismissal based upon 28 U.S.C. § 1915(g)
. The *in forma pauperis* order in this case (Paper 2)
is vacated and this case shall be DISMISSED
unless plaintiff pays the filing fee within 30 days of
this Order. Failure to pay the fee in a timely manner
will result in dismissal.

If the fee is paid in accordance with the Court's
instructions, the Court will consider the remaining
arguments for dismissal set forth by defendants
Selby, Smith, Roberts, Charboneau and Wallis.
(Paper 49.)

Plaintiff's motion for default judgment (Paper
8) is DENIED.

SO ORDERED.

*MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION* (Papers 8, 45 and 49)

JEROME J. NIEDERMEIER, United States
Magistrate Judge.

This case, brought by *pro se* plaintiff Byron
Martin, pertains to injuries Martin allegedly
suffered while in prison. The complaint initially
named over 30 defendants. Some defendants have
been dismissed pursuant to a stipulation, but several
remain. Currently pending before the Court are
motions to dismiss filed by two separate groups of
defendants (Papers 45 and 49), and Martin's motion
for a default judgment (Paper 8).

In their motions to dismiss, both sets of
defendants contend that Martin has violated the
Prison Litigation Reform Act's ("PLRA") "three
strikes" rule by filing multiple frivolous actions.
This violation, they argue, bars Martin from
proceeding *in forma pauperis*. For reasons set forth
below, the Court agrees. Accordingly, I recommend
that the *in forma pauperis* order in this case be
vacated and the case be DISMISSED unless Martin
pays the filing fee in a timely manner.

Failure to pay the fee should result in
dismissal. If the fee is paid in accordance with the
Court's instructions, the Court will consider the
remaining arguments set forth by defendants Selby,
Smith, Roberts, Charboneau and Wallis (Paper 49).
Finally, I recommend that Martin's motion for
default judgment (Paper 8) be DENIED.

*Factual Background*

Martin's 34–page complaint alleges a wide
range of misconduct occurring between 2002 and
2007, during which time he was in the custody of

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

the Vermont Department of Corrections. The complaint lists nine "issues," with over 30 individuals and several John Does named as defendants. On April 30, 2008, Martin and counsel for 17 defendants, all of whom were employed by the State of Vermont, filed a stipulation of dismissal. Some of the issued raised in the complaint pertained only to defendants who have now been dismissed. Allegations against the remaining defendants include complaints of cold temperatures in Martin's cell; retaliation for accessing the courts; "extortion of copies and postage"; and wrongful conviction due to the misconduct of various State Troopers.

**\*2** Specifically, Martin first alleges that between June 2002 and June 2003, temperatures in his cell ranged from over 100 degrees in the summer to below zero in the winter. From June 2002 to December 2002, his bedding consisted of a mattress on the floor of the cell. As a result of these conditions, Martin allegedly suffered heat flashes, migraines, colds, asthma and bug bites.

The only remaining defendant connected with these claims is R. Tasha Wallis. Martin asserts that Wallis was the Commissioner of the Vermont Department of Buildings and General Services at the time, and refers to her as the "owner" of the prison. The complaint alleges that Wallis "knew that the boiler was broken yet did nothing to insure that the building was heated, and knew there was no air conditioning in the building."

The next set of allegations pertain to Martin's time spent in a privately-operated prison in Beattyville, Kentucky. Vermont sends some of its prisoners out of state pursuant to its contract with Corrections Corporation of America ("CCA"), the owner of the Kentucky facility. The first such allegation is that Martin was placed in punitive segregation in retaliation for exercising his right to access the courts. The defendants in this claim are primarily employees of CCA.FN1 Also named as a defendant is their attorney, Steven Collier, Esq. Collier is accused of conspiring with prison

employees to wrongfully accuse Martin of violating a prison rule. Martin's second claim is that prison employees charged him for copying and postage while he was indigent. He contends that such charges were in violation of prison rules, and that the defendants' conduct amounted to extortion.

> FN1. These defendants have not yet been served. Counsel for the defendants has informed the Court that, if the motion to dismiss on the "three strikes" issue is denied, he will return waivers accepting service on their behalf in their official capacities.

Martin's final claim is brought against defendants Selby, Smith, Roberts and Charboneau, each of whom are Vermont State Troopers. Martin claims that these defendants lied and withheld information in a concerted effort to see him convicted in state court. Although he argues that he will be able to prove his innocence on the criminal charge, he states that "[t]his is a civil action not a habeas corpus because I am alleging an injury to my reputation...."

Currently pending before the Court are two motions to dismiss. The first, filed by Attorney Collier *pro se,*FN2 argues that Martin should not be allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915 because at least three of his previous cases were dismissed as frivolous or for failure to state a claim. *See* 28 U.S.C. § 1915(g). The second is submitted by defendant Wallis and the four State Troopers. In addition to the "three strikes" argument, these defendants claim official capacity immunity under the Eleventh Amendment, lack of personal involvement on the part of defendant Wallis, and protection under *Heck v. Humphrey,* 512 U.S. 477 (1994) from any civil claim that would invalidate Martin's criminal conviction.

> FN2. The motion was also brought in the name of two other defendants, both of whom have since been dismissed.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

*Discussion*

I. *The PLRA's "Three Strikes" Rule*

**\*3** Under 28 U.S.C. § 1915, a court may allow an inmate to file suit without prepayment of fees so long as the inmate provides an affidavit demonstrating his inability to pay. 28 U.S.C. § 1915(a)(1). When Martin filed this action in March 2007, the Court granted his motion to proceed *in forma pauperis* and ordered the Marshals to effect service upon the defendants. The movants now argue that the Court should rescind its order because Martin has run afoul of the PLRA's "three strikes" rule, codified at 28 U.S.C. § 1915(g).

Section 1915(g) states:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

In enacting the PLRA, Congress's principal intent was to deter frivolous litigation by prisoners. *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007). The PLRA's three-strikes provision furthers this goal by limiting courts' discretion to grant *in forma pauperis* status to prisoners with a record of frivolous litigation. *Id.; see Thompson v. D.E.A.,* 492 F.3d 428, 431 (D.C.Cir.2007).

Since Congress passed § 1915(g), courts have worked to define the terms therein. The Second Circuit has defined a "frivolous" claim as one that "lacks an arguable basis in law or fact." *Tafari,* 473 F.3d at 442 (quoting *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). With respect to a complaint that "fails to state a claim upon which relief may be granted," the Supreme Court has noted the similarity with the language in Fed.R.Civ.P. 12(b)(6), but has determined that dismissal under Rule 12(b)(6) does not necessarily mean that the case "failed to state a claim" as the phrase was intended in § 1915(g). *Neitzke,* 490 U.S. at 326. "That frivolousness in the [ § 1915(g) ] context refers to a more limited set of claims than does Rule 12(b)(6) accords ... with the understanding articulated in other areas of law that not all unsuccessful claims are frivolous." *Id.* at 329 (citations omitted).

Martin has several cases that arguably qualify as strikes under § 1915(g). Proceeding in chronological order, the movants first offer the case of *Martin v. Gold,* File No. 1:03–CV–240. That case, much like this one, pertained to the conditions of Martin's confinement. The defendants moved for summary judgment, and Judge Murtha adopted my recommendation that the case be dismissed. Judge Murtha also certified that "any appeal taken *in forma pauperis* from this Order would not be taken in good faith because such an appeal would be frivolous." (Paper 78). Notwithstanding this certification, Martin appealed the judgment. The appeal was dismissed by the Second Circuit, which found that "the appeal lacks an arguable basis in fact or law." (Paper 83) (citing *Neitzke,* 490 U.S. at 325 and 28 U.S.C. § 1915(e)).

**\*4** When a district judge certifies that an appeal "would not be taken in good faith," courts have held that this constitutes a finding of frivolousness. *See, e.g., Chavis v. Curlee,* 2008 WL 508694, at \*2 (N.D.N.Y. Feb. 21, 2008) (certification by district judge that appeal would not be taken in good faith is a finding of frivolousness for purpose of § 1915(g)); *cf. S.E.C. v. Broadwell Securities, Inc.,* 1981 WL 1655, at \*1 (S.D.N.Y. July 8, 1981) ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915. Good faith, in this context, is an objective standard that measures whether the issues on appeal are frivolous."). However, courts have also held that a case decided at summary judgment generally does not qualify for a strike under § 1915. *See Angelle v. Gibson,* 253

F.3d 704, 704 (5th Cir.2001) ("Because the district court's dismissal for failure to state a claim acted as a grant of summary judgment, the district court's judgment does not count as a 'strike.' "); *Ramsey v. Goord,* 2007 WL 1199573, at *2 (W.D.N.Y. Apr. 19, 2007) ("a dismissal on summary judgment is generally not considered within the parameters of the three-strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a claim").

In *Martin v. Gold,* I issued a 27–page Report and Recommendation on the summary judgment motion, analyzing, among other things, the extent of personal involvement by certain defendants. In my view, that issue presented at least one close question of fact and law. *See, e.g., Martin v. Gold,* File No. 1:03–CV–240 (Paper 66 at 14) ("The question of notice to defendant Girrell presents a close issue."). Because the case appears to have required a developed record and close scrutiny of the legal issues, the Court should not find that it was frivolous as filed.

Martin's appeal, however, was deemed frivolous by the Second Circuit. I therefore recommend that, although the underlying case was not frivolous, the subsequent appeal be counted as a "strike" for purposes of § 1915(g). *See Chavis,* 2008 WL 508694, at *3 n. 5 (collecting cases for proposition that district court action and subsequent appeal can both qualify as strikes under § 1915(g)).

The defendants have offered several additional cases as potential frivolous filings. One such case is *Butts v. ConAgra Foods, Inc.,* File No. 2:06–CV–l, in which a group of inmates claim that they ate chicken containing intestines and excrement. Martin included himself as a *pro se* plaintiff in the complaint due to the fact that he witnessed his fellow inmates eating the chicken. The defendant moved to dismiss Martin as a party. The Court granted the motion, finding that Martin had failed to assert an injury and had no standing to bring a claim. *Butts,* File No. 2:06–CV–1 (Paper 51 at 3–5).

Martin's entry into the *Butts* case was clearly frivolous. In response to the defendant's motion to dismiss, Martin argued that he was helping Butts handle evidence and prepare legal filings. These arguments added nothing to the fact that he was merely a witness to the alleged events, and that he had no grounds upon which to join as a party in the lawsuit. *See, e.g., Rice v. Nat'l Security Council,* 244 F.Supp.2d 594, 597–987 (D.S.C.2001) (counting case as strike where inmates "failed to allege with particularity how the actions of the Defendants directly effected them"). The Court should therefore consider Martin's dismissal from the *Butts* case as a strike under § 1915(g).

**\*5** Martin engaged in similar frivolous conduct in a subsequent case, *Shaimas v. Catholic Diocese of Burlington,* File No. 1:07–CV–26. In *Shaimas,* plaintiff Christopher Shaimas alleged that he was sexually abused as a child. Martin included himself as a *pro se* plaintiff, claiming that since spending time with Shaimas in prison, he had lived through Shaimas's experience "vicariously." Martin also alleged that he had provided Shaimas with legal assistance, and had helped "Mr. Shaimas['] psychological and physical dilemma by listening."

The Court dismissed Martin from the case *sua sponte* under 28 U.S.C. § 1915(e)(2), which requires dismissal if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. As in *Butts,* the Court found that Martin had failed to allege an injury, had no standing to enter the case, and that his claims must therefore be dismissed. *Shaimas,* File No. 1:07–CV–26 (Paper 3 at 2–3). Given that the dismissal was conducted under § 1915(e)(2) based on frivolousness and/or failure to state a claim, and because Martin's entry into the case was plainly frivolous, the *Shaimas* case should count as a strike under § 1915(g) as well.

The final candidate is a case Martin filed in the Eastern District of Virginia entitled *Martin v. Elam,* File No. 1:03–CV–1223. (Paper 45–21). The court

dismissed the case at the outset for failure to exhaust administrative remedies. Martin moved for reconsideration. The court granted the motion for reconsideration, reopened the case, and dismissed it "as frivolous and malicious pursuant to 28 U.S.C.1915(b)." *Id.* at 2. The court further ordered that "this dismissal may affect plaintiff's ability to proceed in forma pauperis in future civil actions pursuant to 28 U.S.C.1915(g) ...." *Id.* Martin's second motion for reconsideration was denied. In light of the court's clear determination that Martin's repeated filings amounted to frivolous and malicious conduct, that case should count as a fourth strike under the PLRA.

The next question is whether Martin falls within the scope of the exception to the three-strikes rule. That exception permits an *in forma pauperis* filing, notwithstanding three previous strikes, if the plaintiff "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Martin's claims all arise out of his previous incarceration in Vermont and Kentucky. He has since been released from prison, and none of the allegations indicate that he is in any danger while outside prison walls. The "imminent danger" exception is, therefore, inapplicable.

The defendants argue that Martin's release from prison does not affect the PLRA three-strikes analysis. Specifically, they contend that because Martin was incarcerated when he filed his *in forma pauperis* application, his three strikes require rescission of the order waiving initial payment of the filing fee, regardless of his current status. The PLRA requires that a case counting as a strike must have been filed while the litigant was "incarcerated or detained in any facility." 28 U.S.C. § 1915(g). There can be no dispute that this case meets that definition. Consequently, the Court agrees that Martin's subsequent release from prison has no effect on the PLRA analysis.

**\*6** In sum, Martin's filings over the last several years have included multiple frivolous filings. Because he was incarcerated at the time the cases were filed, the filings qualified as strikes under § 1915(g). The defendants' motions to dismiss for violation of the PLRA's three-strikes rule should, therefore, be GRANTED, and the Court should vacate its order allowing Martin to proceed *in forma pauperis.* I recommend that Martin be allowed 30 days in which to pay the filing fee, and if no such fee is paid, that this case be DISMISSED.

## II. *Motion for Default Judgment*

Also pending before the Court is Martin's motion for a default judgment, in which he argues that the defendants failed to file answers in a timely manner. (Paper 8). When Martin filed his motion, the Marshals Service had not yet sent waivers of service to the defendants. The docket shows that Martin filed his motion on January 8, 2008, and that waivers were sent on January 10, 2008. Accordingly, the motion for default judgment was premature and should be DENIED.

### Conclusion

For the reasons set forth above, I recommend that the defendants' motions to dismiss (Papers 45 and 49) be GRANTED to the extent that they seek dismissal based upon 28 U.S.C. § 1915(g). The *in forma pauperis* order in this case (Paper 2) should be vacated and the case should be DISMISSED unless Martin pays the filing fee within 30 days of the entry of a final order by the Court.

Failure to pay the fee in a timely manner should result in dismissal. If the fee is paid in accordance with the Court's instructions, the Court will consider the remaining arguments for dismissal set forth by defendants Selby, Smith, Roberts, Charboneau and Wallis (Paper 49). Finally, I recommend that Martin's motion for default judgment (Paper 8) be DENIED.

D.Vt.,2008.
Martin v. Wallis
Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)
**(Cite as: 2008 WL 5157194 (N.D.N.Y.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Melvin C. LEWIS, Plaintiff,
v.
P. HEALY, et al., Defendants.

No. 9:08-CV-148 (LEK/DEP).
Dec. 8, 2008.

West KeySummary**Federal Civil Procedure 170A**
☞**2734**

170A Federal Civil Procedure
 170AXIX Fees and Costs
  170Ak2732 Deposit or Security
   170Ak2734 k. Forma Pauperis
Proceedings. Most Cited Cases

An inmate's *in forma pauperis* status, entitling
him to a waiver of normal court costs, was vacated
because he had brought three prior civil rights
actions which were dismissed on their merits.
Accordingly, the court recognized that the net result
of its findings regarding the prior actions was not
denial altogether of the inmate's access to the
courts, but instead was only the imposition of the
requirement that he conclude that the pursuit of his
civil rights claims justifies his expenditure of the
full applicable filing fee.

Melvin C. Lewis, Napanoch, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the
State of New York, David L. Cochran, Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

***DECISION AND ORDER***
LAWRENCE E. KAHN, District Judge.
 **\*1** This matter comes before the Court
following a Report-Recommendation filed on
October 29, 2008, by the Honorable David E.

Peebles, United States Magistrate Judge, pursuant
to 28 U.S .C. § 636(b) and L.R. 72.3(c) of the
Northern District of New York. Report-Rec. (Dkt.
No. 32).

 Within ten days, excluding weekends and
holidays, after a party has been served with a copy
of a Magistrate Judge's Report-Recommendation,
the party "may serve and file specific, written
objections to the proposed findings and
recommendations," FED.R.CIV.P. 72(b), in
compliance with L.R. 72.1. No objections have
been raised in the allotted time with respect to
Judge Peebles' Report-Recommendation.
Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is
not subject to attack for plain error or manifest
injustice.

 Accordingly, it is hereby

 **ORDERED,** that the Report-Recommendation
(Dkt. No. 32) is **APPROVED** and **ADOPTED** in
its **ENTIRETY;** and it is further

 **ORDERED,** that the Order granting Plaintiff
in forma pauperis status (Dkt. No. 4) is
**VACATED;** and it is further

 **ORDERED,** that Defendants' Motion to
dismiss Plaintiff's Complaint (Dkt. No. 21) is
**GRANTED** as to all Defendants and all claims
unless Lewis pays the full required filing fee of
$350 **within thirty (30) days** from the date of this
Order; and it is further

 **ORDERED,** that the requirement that
Defendants answer Plaintiff's Complaint is
**STAYED** indefinitely pending final resolution of
the IFP issue raised in their motion; and it is further

 **ORDERED,** that Plaintiff's Motion to amend
the Complaint (Dkt. No. 25) is **DENIED,** without
prejudice to its renewal in the event that the
required filing fee is paid; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Melvin C. Lewis, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis* ("IFP"), has commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging deprivation of his civil rights. In their response to plaintiff's complaint, defendants assert that plaintiff's IFP status was improvidently granted, and seek conditional dismissal of plaintiff's complaint under 28 U.S.C. § 1915(g), absent his pre-payment in full of the applicable filing fee, in light of the prior dismissal of three or more such inmate civil rights actions brought by him, but found to be lacking in palpable merit. Because I agree that plaintiff is subject to the "three strikes" provision of section 1915(g), and has not established a basis to invoke the imminent danger exception to that rule, I recommend that defendants' motion be granted.

I. *BACKGROUND*

Plaintiff is, and was at the times relevant to the constitutional claims raised in this action, a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and confined within the Eastern Correctional Facility ("Eastern"), located in Napanoch, New York. *See generally* Complaint (Dkt. No. 1). In his complaint, plaintiff asserts that he was subject to adverse action, including confinement to his cell and reassignment from his work program, in retaliation for having filed grievances against certain defendants. *Id.* Plaintiff also alleges that the defendants conspired to effectuate the issuance of a false misbehavior report against him, and that during the course of an ensuing disciplinary proceeding he was denied procedural due process. *Id.*

**\*2** In reply to a specific inquiry on the form civil rights complaint utilized by the plaintiff to initiate this action, requesting information regarding previous lawsuits, Lewis identified only one other action filed by him in any state or federal court relating to the terms of his confinement.[FN1] *See* Complaint (Dkt. No. 1) § 5. That limited response, however, is flatly contradicted by publicly available information which reveals that at the time of commencement of this suit, plaintiff had initiated at least ten other civil rights actions and one habeas corpus proceeding in this district, the Southern District of New York, and the Western District of New York, dating back to 1997, while a DOCS inmate. The following represents a listing of plaintiff's prior known civil right actions and habeas corpus petitions filed while confined as a prison inmate:

> FN1. When signing his complaint, plaintiff attested to the truth of its contents under penalty of perjury. *See* Complaint (Dkt. No. 1) at 11.

A. *Northern District of New York*
(1) *Lewis, et al. v. DeAngelo, et al.,* Civil Action No. 97-CV-1316 (Civil Rights Action consolidating Civil Action Nos. 97-CV-1457, 97-CV-1683, 97-CV-1657, 97-CV-1375, 97-CV-1416, and 97-CV-1427)

(2) *Lewis v. City of Binghamton, et al.,* Civil Action No. 97-CV-1823 (Civil Rights Action)

(3) *Lewis v. Dury, et al.,* Civil Action No. 00-CV-765 (Civil Rights Action)

(4) *Lewis v. Poole,* Civil Action No. 02-CV-987 (Habeas Corpus Proceeding)

(5) *Lewis v. Donahue et al.,* Civil Action No. 04-CV-1452 (Civil Rights Action)

(6) *Lewis v. Allen, et al.,* Civil Action No. 05-CV-1117 (Civil Rights Action)

(7) *Lewis v. Goord, et al.,* Civil Action No.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

06-CV-505 (Civil Rights Action)

B. *Western District of New York*
(1) *Lewis v. Pataki, et al.,* Civil Action No. 03-CV-800 (Civil Rights Action)

(2) *Lewis v. Blazejewski, et al.,* Civil Action No. 03-CV-943 (Civil Rights Action)

(3) *Lewis v. Pataki, et al.,* Civil Action No. 04-CV-162 (Civil Rights Action)

C. *Southern District of New York*
(1) *Lewis v. Corp. City of Binghamton, et al.,* Civil Action No. 07-CV-4674 (Civil Rights Action)

II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on February 8, 2008, and was thereafter granted leave to proceed IFP. Dkt. Nos. 1, 4. Following their execution of acknowledgment of service forms, *see* Dkt. Nos. 11, 12, 13, 14, and 17, on May 23, 2008 defendants filed a motion seeking dismissal of plaintiff's complaint pursuant to 28 U.S.C. § 1915(g). Dkt. No. 21. With the filing by Lewis of papers in opposition to that motion, Dkt. No. 24, defendants' motion is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).FN2 *See also* Fed.R.Civ.P. 72(b).

FN2. Also pending before the court is a motion by the plaintiff to amend his complaint in order to add new defendants and assert additional claims under section 1983. *See* Dkt. No. 25. In light of my finding that plaintiff does not qualify for IFP status, I recommend that the motion to amend be held in abeyance, and decided only in the event plaintiff pays the full fee for filing this action.

III. *DISCUSSION*

A. *Three Strikes Provision Generally*

In their motion, defendants invoke 28 U.S.C. § 1915(g), arguing that under that section plaintiff's litigation history, which includes at least three merit-based dismissals, warrants revocation of his IFP status.

*3 Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress enacting this "three strikes" provision was to curb prison inmate abuses and deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443-44 (2d Cir.2007); *Gill v. Pidlychak,* No. 9:02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec.19, 2006) (Scullin, S.J. & Treece, M.J.). The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in the same cost benefit analysis that other civil litigants must make before deciding whether to commence suit, accompanied by the filing of the full fee-that is, to assess whether the result to be achieved justifies the filing fee expenditure. *Tafari,* 473 F.3d at 444; *Ibrahim v. District of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006). As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted IFP status,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing law suits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates discriminately to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997), *cert. denied sub nom., Nicholas v. Miller,* 523 U.S. 1126, 118 S.Ct. 1812, 140 L.Ed.2d 950 (1998) (internal citations omitted); *see also Gill,* 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such a question for the court.[FN3] *Tafari,* 473 F.3d at 442-43. In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions. *Tafari,* 473 F.3d at 442 (citing *Andrews v. King,* 398 F.3d 1113, 1121 (9th Cir.2005)).

> FN3. The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that

section. *DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir.2004); *see also Snider v. Melindez,* 199 F.3d 108, 115 (2d Cir.1999) ("We ... doubt whether the entry of a strike is properly considered at the time an action is dismissed.").

B. *Application of Section 1915(g)*

**\*4** Defendants' motion identifies four actions, all brought by the plaintiff in either this district or the Southern District of New York, as constituting strikes, for purposes of section 1915(g), including Civil Action Nos. 97-CV1823, 04-CV-1452, 07-CV-4674, and 05-CV-1117. In support of their motion, defendants offer only entries from the docket sheets maintained by the court in two of those four actions. *See* Cochran Affirmation (Dkt. No. 21) Exhs. C and D. Defendants interpret the docket entries associated with the dismissal of each of those actions as evidencing a judicial finding that plaintiff's complaint failed to state a claim upon which relief may be granted.

The determination of whether a prior dismissal does in fact constitute a strike is dependent upon the precise nature of the dismissal and the grounds supporting it. For that reason, rather than being guided by the text of relevant docket entries and the particular language employed, I have obtained copies of the actual orders directing dismissal of those actions, and will look to those orders, constituting matters of public record of which the court may properly take judicial notice, *Green v. Nottingham,* 90 F.3d 415, 418 (10th Cir.1996) (citing *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10 th Cir.1979)), to aid in determining whether they meet the requisite criteria to qualify as strikes under section 1915(g).

1. *Civil Action No. 97-CV-1823*

The first action offered by defendants in support of their motion is *Lewis v. City of Binghamton, et al.,* Civil Action No. 97-CV-1823 (N.D.N.Y., filed December 15, 1997).[FN4] *See* Cochran Affirmation (Dkt.21) Exh. C. At the time the suit was commenced, plaintiff was confined

Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)
**(Cite as: 2008 WL 5157194 (N.D.N.Y.))**

within the Broome County Correctional Facility. No. 6:97-CV-1823, Dkt. No. 1. Plaintiff's complaint in that action asserts claims under 42 U.S.C. § 1983 against the City of Binghamton; Gerald F. Mollen, the District Attorney of Broome County; Matthew Ryan, an attorney for the Broome County Public Defender's Office; and MaryAnn Lehmann, identified by Lewis as "City Court Judge for Broome County", seeking money damages for his allegedly illegal imprisonment in 1997 resulting from the negligence and malicious misconduct of the defendants. *Id.* at Dkt. Nos. 1, 5. Plaintiff's complaint was dismissed as a result of an order issued on February 5, 1998 by then-Chief Judge Thomas J. McAvoy on the basis that a plaintiff cannot recover monetary damages for an alleged unconstitutional conviction or imprisonment under section 1983 without first proving that the conviction has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. *Id.* at Dkt. No. 5 (citing, *inter alia, Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). The order specifically recited that plaintiff's complaint was being dismissed for failure to state a claim upon which relief may be granted. That action therefore qualifies as a strike for purposes of section 1915(g). *Tafari,* 473 F.3d at 441; *see also Smith v. District of Columbia,* 182 F.3d 25, 27-29 (D.C.Cir.1999).

> FN4. Because plaintiff was confined within the Broome County Correctional Facility at the time that action was commenced, the docket sheet does not reflect his department identification number ("DIN"), which is often helpful in confirming that the plaintiff in that action and the plaintiff in the current action are one in the same. Based upon an examination of his criminal record, however, the plaintiff "Melvin C. Lewis" in the current action is determined to be the same "Melvin Cornell Lewis" who commenced No. 97-CV-1823.

*2. Civil Action No. 04-CV-1452*

**\*5** The second case cited by the defendants in support of their three strikes motion is *Lewis v. Donahue, et al.,* Civil Action No. 3:04-CV-1452 (N.D.N.Y., filed Dec. 15, 2004). The plaintiff's complaint associated with that action reflects that at the time the suit was commenced, he was confined within the Auburn Correctional Facility, and that the claims asserted in his complaint are alleged to have arisen under 42 U.S.C. § 1983. *See* No. 04-CV-1452, Dkt. No. 1. That action was brought by plaintiff against Binghamton Police Officers Scott Donahue and Barry Angels, Broome County Court Judge Martin E. Smith, and Chief Assistant District Attorney Joanne Rose Parry, alleging false arrest, false imprisonment, and malicious prosecution in connection with his 2000 conviction and subsequent imprisonment.FN5 *Id.* As the result of an order issued on June 6, 2006 by District Judge Thomas J. McAvoy, plaintiff's complaint was dismissed on the basis that a plaintiff cannot recover damages for an unconstitutional conviction or imprisonment under section 1983 " 'unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.' " *Id.* at Dkt. No. 56 (quoting *Heck,* 512 U.S. at 489, 114 S.Ct. 2364, 129 L.Ed.2d 383). That order recited that plaintiff's complaint was being dismissed because it failed to state a claim upon which relief could be granted and was frivolous under 28 U.S.C. § 1915(e) (2). *Id.* Accordingly, that dismissal also qualifies as a strike for purposes of section 1915(g). *Tafari,* 473 F.3d at 441; *see also Smith,* 182 F.3d at 27-29.

> FN5. Plaintiff's complaint in that action was initially dismissed pursuant to an order issued on December 22, 2004 by District Judge Gary L. Sharpe, finding that plaintiff's claims were not cognizable under 42 U.S.C. § 1983 because it appeared that plaintiff was only seeking to alter the fact or duration of his custody, relief available solely by way of a habeas corpus petition. No. 04-CV-1452, Dkt. No

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

4. Plaintiff responded by filing a motion for reconsideration, *id.* at Dkt. No. 6, which was granted by Judge Sharpe on May 24, 2005, restoring the action and vacating the judgment in favor of the defendants on the ground that plaintiff was "not seeking immediate or speedier release from prison, but rather only monetary damages and a probable cause hearing[,]" relief which he could pursue under section 1983. *Id.* at Dkt. No. 10. Plaintiff's claims against Judge Martin E. Smith and Chief Assistant District Attorney Joanne Rose Parry, however, were dismissed by Judge Sharpe on the basis of judicial and prosecutorial immunity, respectively. *Id.*

### 3. *Civil Action No. 07-CV-4674*

The third strike alleged by the defendants relates to an action entitled *Lewis v. Corp. City of Binghamton, et al.,* Civil Action No. 1:07-CV-4674 (S.D.N.Y., filed June 4, 2007). *See* Corchran Affirmation (Dkt. No 21) Exh. D. In that suit, which like this action was commenced while plaintiff was confined within Eastern, Lewis asserted claims under 42 U.S.C. § 1983 against "the Corporation City of Binghamton"; Broome County Court Judge Martin E. Smith; Chief Assistant District Attorney Joanne Rose Parry; and James M. Barber, plaintiff's defense attorney, again alleging constitutional violations in connection with his 2000 conviction. No. 07-CV-4674, Dkt. No. 3. Citing *Heck,* Chief Judge Kimba M. Wood dismissed plaintiff's complaint on June 4, 2007 for failure to state a claim upon which relief may be granted, and also with the additional finding that any appeal from that order would not be taken in good faith. *Id.* at Dkt. No. 3. Consequently, that action similarly qualifies as a strike for purposes of defendants' motion. *Tafari,* 473 F.3d at 441; *see also Smith,* 182 F.3d at 27-29.

As the foregoing reflects, defendants have convincingly established that the plaintiff has filed at least three meritless civil rights complaints while

confined as a New York prison inmate.[FN6] Accordingly, absent applicability of the imminent danger exception, plaintiff is subject to the provisions of 28 U.S.C. § 1915(g), and thus may properly be required to prepay in full the applicable filing fee in order to pursue his claims, notwithstanding that IFP status was previously conferred. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247-48 (E.D.N.Y.1998).

> FN6. Defendants contend that another action, *Lewis v. Monette,* 9:05-CV-1117 (N.D.N.Y., filed September 6, 2005), may qualify as a strike for purposes of section 1915(g). While it is unnecessary to analyze the circumstances surrounding the dismissal of that action, it likely does not qualify as a strike since plaintiff's claims were dismissed on motion for summary judgment, rather than based upon a failure to state a claim upon which relief may be granted. *See Weber v. Gathers,* No. 2:04-1563-MBS, 2006 WL 2796374, at *3 (D.S.C. Sept.26, 2006) ("[A]n action proceeding to the summary judgment stage can rarely be characterized as 'frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted' for purposes of 28 U.S.C. § 1915(g)."); *Harris v. Oatley,* No. 2:05-CV-265, 2006 WL 2714961, at *5 (W.D.Mich. Sept.22, 2006) ("[C]ases dismissed on summary judgment do not constitute a strike.").
>
> On the other hand, it does appear that at least one other case not cited by the defendants may also qualify as a strike. *See Lewis v. Pataki, et al.,* Civil Action No. 04-CV-162 (W.D.N.Y., filed March 12, 2004) (dismissing the action pursuant to 28 U.S.C. § 1915(e)(2)(B) and certifying that any appeal from that order would not be taken in good faith). In light of the findings of this report and recommendation, however, it is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

unnecessary to address the circumstances surrounding dismissal of that case.

### C. *Imminent Danger Exception*

**\*6** As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g). *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm. *Id.* An inmate who claims the benefit of this exception must also show that the danger faced rises to the level of a "serious physical injury." 28 U.S.C. § 1915(g). The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical. *Johnson v. Barney,* No. 04 Civ. 10204, 2005 WL 2173950, at \*1-\*2 (S.D.N.Y. Sept.6, 2005) (inmate's allegation of danger at facility he was not housed at, but may pass through at infrequent occasions in the future, does not establish imminent danger)

The term "serious physical injury", as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death [.]" *Ibrahim,* 463 F.3d at 7. In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney,* 281 F.3d 709, 710 (8th Cir.2002). Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin,* 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim,* 463 F.3d at 6-7;

and patterns of harassment from corrections officers, heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini,* 352 F.3d 328, 330-31 (7th Cir.2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

In this action, plaintiff's claims include allegations of retaliation, conspiracy, and denial of due process, resulting in confinement to his cell; reassignment from his work program; the issuance of a falsified misbehavior report; nineteen days of keeplock confinement; and loss of packages, telephone privileges, commissary, and recreation.[FN7] *See* Complaint (Dkt. No. 1). Having carefully reviewed both plaintiff's complaint and the materials submitted in response to defendants' motion to dismiss, I conclude that none of the matters set forth in those papers suggest the existence of imminent danger of serious physical injury of the sort contemplated by Congress when enacting section 1915(g). *See Polanco v. Hopkins,* 510 F.3d 152 (S.D.N.Y.2007) (finding prisoner was not in imminent danger of serious physical injury where he alleged he was unjustly disciplined by confinement for thirty days, deprived of keeplock shower, called names and received threats from guards, wrongly reported with misbehavior charge, and confined to special housing unit (SHU)). Plaintiff therefore does not qualify for relief under the imminent danger exception to the three strikes rule.

> FN7. Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998) (citing *Gittens* ); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at \*2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi,* 46 F.3d

189, 192 (2d Cir.1995)). Inmate conditions while keeplocked are substantially the same as in the general population. *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998). While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. *Id.* Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals, *Id.* The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

## IV. *SUMMARY AND RECOMMENDATION*

**\*7** The record now before the court firmly establishes that three prior civil rights actions, brought by the plaintiff while a prison inmate, have been dismissed on their merits for failure to state claims upon which relief may be granted. The record also fails to reveal any basis to conclude that plaintiff is in imminent danger of serious physical injury, and therefore entitled to exemption from the three strikes provision of 28 U.S.C. § 1915(g). Accordingly, recognizing that the net result of these findings is not denial altogether of plaintiff's access to the courts, but instead only the requirement that he conclude that the pursuit of his civil rights claims justifies his expenditure of the full applicable filing fee, it is hereby respectfully

RECOMMENDED that:

1) The order granting the plaintiff IFP status (Dkt. No. 4) be VACATED.

2) Defendants' motion to dismiss plaintiff's complaint (Dkt. No. 21) be GRANTED as to all defendants and all claims unless Lewis pays the full required filing fee of $350.00 within thirty days after the entry of a final order by the district court

addressing this recommendation; and

3) The requirement that defendants answer plaintiff's complaint be STAYED indefinitely pending final resolution of the IFP issue raised in their motion; and

4) Plaintiff's motion to amend the complaint (Dkt. No. 25) be DENIED, without prejudice to its renewal in the event that the required filing fee is paid or if the district court rejects this recommendation and denies defendants' motion to dismiss.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS OF SERVICE OF THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a) , 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2008.
Lewis v. Healy
Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)

END OF DOCUMENT


Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Michael F. RAMSEY, Plaintiff,
v.
Glenn S. GOORD, Donald Selsky, Mr. Ryerson,
Thomas G. Eagen, John H. Nuttall, Michael McGinnis,
Paul Chapius, A. Bartlett, M. Sheahan, J. Irizarry, J.
Hale, J. Cieslak, Sgt. Litwilder, J. Ames, C.O. Clark,
C.O. Held, and P. Klatt, Defendants.
No. 05-CV-47A.

Aug. 13, 2005.
Michael F. Ramsey, Clinton Correctional Facility,
Dannemora, NY, pro se.

DECISION and ORDER

SKRETNY, J.

INTRODUCTION

*1 Plaintiff, an inmate formerly incarcerated at the
Elmira and Southport Correctional Facilities (hereinafter
"Elmira" and "Southport"), has brought this action
pursuant to 42 U.S.C. § 1983, and seeks permission to
proceed in forma pauperis pursuant to 28 U.S.C. § 1915.
Plaintiff's complaint sets forth five claims alleging
violations of his constitutional and statutory rights. The
first and second claims set forth in the complaint relate to
a July, 2002 administrative hearing that was conducted on
disciplinary charges brought against him during his
sojourn at Elmira, and principally allege a violation of
plaintiff's due process rights. Plaintiff's third and fourth
claims allege violations of his right to practice his
religious beliefs by correctional employees and
supervisory personnel at Southport between February,
2004 and January, 2005. Plaintiff's fifth claim asserts that
prison officials at Southport interfered with his First and
Fourteenth Amendment rights when they deprived him of
paper and other materials necessary to his prosecution of
legal actions that he had previously filed. Plaintiff seeks

declaratory and injunctive relief as well as compensatory
and punitive damages with respect to each claim.

Plaintiff's application to proceed in forma pauperis is
granted. For the reasons set forth below, several of
plaintiff's claims are now dismissed pursuant to 28 U.S.C.
§§ (e)(2)(B) and 1915(A), and service by the U.S. Marshal
is directed with respect to the remaining claims.

DISCUSSION

Section 1915(e)(2)(B) of 28 U.S.C. provides that the
Court shall dismiss a case in which in forma pauperis
status has been granted if the Court determines that the
action: (I) is frivolous or malicious; (ii) fails to state a
claim upon which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief. In addition, 28 U.S.C. § 1915A(a) requires the
Court to conduct an initial screening of "a complaint in a
civil action in which a prisoner seeks redress from a
governmental entity or officer or employee of a
governmental entity," id., regardless of whether or not the
inmate has sought in forma pauperis status under 28
U.S.C. § 1915.

In evaluating the complaint, the Court must accept as
true all factual allegations and must draw all inferences in
plaintiff's favor. See King v. Simpson, 189 F.3d 284, 287
(2d Cir.1999). Dismissal is not appropriate "unless it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957). "This rule applies with particular
force where the plaintiff alleges civil rights violations or
where the complaint is submitted pro se." Chance v.
Armstrong, 143 F.3d 698, 701 (2d Cir.1998). Based on its
evaluation of the amended complaint, the Court finds that
several of plaintiff's claims must be dismissed pursuant to
28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because
they fail to state a claim upon which relief may be granted.

*2 Plaintiff brings this action pursuant to 42 U.S.C. §
1983. "To state a valid claim under 42 U.S.C. §§ 1983, the
plaintiff must allege that the challenged conduct (1) was
attributable to a person acting under color of state law, and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

(2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). In addition, a prerequisite for liability under § 1983 is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

*1. Claims Relating to July, 2002 Disciplinary Hearing (First and Second Claims)*

*(a) Due Process*

The first claim of plaintiff's complaint alleges that he was deprived of his procedural due process rights during a disciplinary hearing conducted before defendant Ryerson, a hearing officer at Elmira, which resulted on July 24, 2002 in the determination of guilt with respect to the charges brought against plaintiff, and the imposition of six moths punitive confinement with six months loss of good time and privileges. (Compl. pp. 4-5). Specifically, plaintiff claims that he was denied the following due process rights at the hearing: the right to call witnesses; the right to employee assistance; the right to hear and respond to the evidence against him; and the right to have the hearing electronically recorded. (Compl. p. 5). He asserts that defendants Selsky and Goord further violated his due process rights when they denied his appeal of Ryerson's determination.

Plaintiff's second claim also relates to the July, 2002 disciplinary hearing, and alleges that defendant Goord, Commissioner of the New York State Department of Correctional Services ("DOCS") ordered defendant Selsky, Director of the Special Housing Program for DOCS, to deny plaintiff's appeal of the July 24, 2002 disciplinary determination in retaliation for a complaint plaintiff had sent to Goord with respect to Goord's treatment of him. The complaint further alleges that following the denial of plaintiff's appeal of the July 24, 2002 determination by defendant Selsky, he sent a complaint to defendant Goord repeating the "blatant due process violations" that had allegedly been committed by defendant Ryerson during the disciplinary hearing, and alleging that Goord and Selsky's refusal to reverse

Ryerson's determination was done for the purpose of retaliating against him for the complaint he had filed against Goord. Following plaintiff's receipt of a letter from defendant Selsky informing him that no further action would be taken with respect to plaintiff's appeal of the disciplinary determination, plaintiff states that he filed an Article 78 petition in New York State Supreme Court challenging defendant Ryerson's determination. He alleges that after unnecessarily delaying the Article 78 proceeding for the purpose of prolonging plaintiff's stay in punitive confinement, defendant Ryerson administratively reversed defendant Ryerson's determination and then moved successfully to dismiss plaintiff's petition as moot. (Compl. pp. 3, 6-7).

**\*3** It is well settled that when a litigant makes a constitutional challenge to a determination which affects the overall length of his imprisonment, the "sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Moreover, an inmate cannot use § 1983 to recover damages where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and a § 1983 cannot lie "unless ... the conviction or sentence has already been invalidated" on direct appeal or by a habeas corpus petition. *Id.* at 487. The Supreme Court further held in *Edwards v. Balisok,* 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), that habeas was the sole mechanism for an inmate's constitutional challenge to a prison disciplinary hearing which led to a revocation of the inmate's accrued good-time credits because the "principal procedural defect complained of," namely deceit and bias on the part of the disciplinary hearing officer, "would, if established, necessarily imply the invalidity of the deprivation [the inmate's] good-time credits."

While the determination that forms the gravamen of plaintiff's complaint in the instant matter did affect the overall length of his imprisonment to the extent that it imposed a loss of six months good time, his complaint is not barred under *Preiser* and *Heck* because plaintiff demonstrates that it was administratively reversed following his commencement of an Article 78 proceeding

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

in New York State Supreme Court.[FN1] *See, e.g., Odom v. Pataki,* 00 Civ. 3727, 2001 U.S. Dist. LEXIS 2790, at *7-8 (S.D.N.Y.2001) ("[A]n inmate may not assert a damages claim under § 1983 that attacks the fact or length of the inmate's confinement without first showing that the conviction has been reversed or otherwise invalidated.").

> FN1. Plaintiff attaches to his complaint documentation from the New York State Department of Correctional Services and the New York State Attorney General's Office which supports his claim that the July 24, 2002 disciplinary hearing determination was reversed, with all references to that determination expunged from plaintiff's record.

In determining whether plaintiff's first and second claims can go forward, the Court must also examine whether plaintiff has alleged the deprivation of a liberty interest that is entitled to constitutional protection. The administrative reversal of the July 24, 2002 disciplinary determination, and the expungement of that determination from plaintiff record, does not render plaintiff's due process claim non-justiciable, for plaintiff alleges that he served 121 days in "punitive confinement" prior to such reversal, during which he was handcuffed, chained and shackled whenever permitted to leave his cell.[FN2] (Compl. p. 5).

> FN2. The Court's determination that plaintiff served 121 days in punitive confinement is based upon the plaintiff's allegation that he was sentenced to six months of such confinement on July 24, 2002, and that his sentence was administratively reversed on November 22, 2002, pursuant to a Memorandum issued on the latter date by the Director of Special Housing/Inmate Discipline of the New York State DOCS, a copy of which is attached to the complaint.

In *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.[FN3] "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence impose by a court of law," 515 U.S. at 485, 115 S.Ct. at 2301, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met. *See Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997) (holding that, while *Sandin* did not create a per se rule that disciplinary confinement may never implicate a liberty interest, where a prisoner fails to show the conditions to which he was subjected were "atypical and significant," summary judgment may nevertheless be granted).

> FN3. *Sandin* compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 515 U.S. at 485-86, 115 S.Ct. at 2301. Based on that comparison, the Court held that the plaintiff's 30-day SHU punishment did not "work a major disruption in his environment," *id.* at 486, 115 S.Ct. at 2301, and was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487, 115 S.Ct. at 2302.

**\*4** Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement ... were dramatically different from the basic conditions of [his] indeterminate sentence." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). In determining whether a prisoner has a liberty interest in remaining free from segregated confinement, district courts must make factual findings with respect to the alleged conditions of the confinement and the issue of its atypicality. *See, e.g., Welch v. Bartlett,* 196 F.3d 389, 393-95 (2d Cir.1997); *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller,* 111 F.3d at 8-9; *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997). Several factors should be considered when assessing whether the particular restrictions imposed on the prisoner are atypical and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

significant, including: (1) the effect of the segregation on the length of the plaintiff's prison confinement; (2) the extent to which the conditions at issue differ from other routine prison conditions; and (3) the duration of the prisoner's disciplinary confinement compared to the potential duration a prisoner may experience while in discretionary confinement. *Wright,* 132 F.3d at 136.

In terms of the period of the number of days of punitive or other special confinement that will be regarded as sufficient implicate a prisoner's liberty interest, our Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004). Instead, the Court of Appeals have established guidelines to be used by district courts in determining whether a prisoner's liberty interest has been infringed. *Id.* Pursuant to these guidelines, the Court has ruled that where a prisoner has been confined for what it has termed an "intermediate duration," defined as between 101 and 305 days, the district court is required to develop a " 'detailed record' of the conditions of confinement relative to ordinary prison conditions." *Id.* at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000)). The Court in *Palmer* further instructed that in a case involving an intermediate term of confinement, the district court must examine the "actual circumstances" of SHU confinement "without relying on its familiarity with SHU conditions in previous cases." *Id.* (citing *Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999)).

In the instant case, plaintiff alleges that he was maintained in keeplock for 121 days, during which time he further alleges that he was subject to restraint by handcuffs, chains and shackles whenever he was allowed to leave his cell. It is not possible, based upon the allegations set forth in the complaint, for the Court to determine whether the conditions under which plaintiff was maintained were atypical within the meaning of *Sandin.* In light of the Second Circuit's directive that the district court must develop a detailed record concerning the nature of confinement conditions "where special confinement exceeds 101 days or there is any other indication of atypicality," *Harris v. McGinnis,* No. 02 Civ. 6481, 2004 U.S. Dist. Lexis 19500, at *14 (S.D.N.Y.2004), the Court concludes that the complaint

sufficiently alleges that plaintiff was deprived of a liberty interest.

**\*5** To state a due process claim, plaintiff must also allege that the defendants "deprived him of [a liberty] interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654. Under the Fourteenth Amendment, the procedural protections required when the length or conditions of confinement implicate due process protections: "advance notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (citing *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999)). In light of the plaintiff's allegations, noted above, concerning how his due process rights were infringed at the July 24, 2002 hearing, and given the Court's duty to construe liberally the pleadings of *pro se* plaintiffs, the Court determines that the plaintiff's first and second claims sufficiently allege that his liberty interest was deprived as a result of insufficient process.[FN4]

> FN4. The Court notes that while plaintiff does specify in his complaint the precise nature of the alleged deprivation of due process that occurred at the July 24, 2002 hearing, the complaint is pretty thin in terms of allegations of specific facts showing precisely how plaintiff's due process rights were interfered with. The Court's decision to allow plaintiff's due process claims to proceed despite the sparseness of his factual allegations stems from the fact that the administrative reversal of the hearing determination is stated to have been based upon error by the hearing officer. (DOCS Memorandum 11/22/02 attached to complaint).

There remains, however, the question of whether plaintiff has alleged sufficient involvement by defendants Ryerson, Goord and Selsky in the claimed deprivation of his due process rights. A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998). Under this requirement, there may be liability if:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

(1) the defendant participated directly in the alleged constitutional violation; or (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which the unconstitutional practices occurred or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. *Montero v. Travis,* 171 F.3d 757, 761-62 (2d. Cir.1999) (citing *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997)); *see Neitzke v. Williams,* 490 U.S. 319, 323 n. 2, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's due process claim against defendant Ryerson stems from Ryerson's role as the hearing officer at the hearing which concluded on July 22, 2002, and the Court finds that Ryerson's alleged role in presiding over the hearing is sufficient to allege personal involvement. Accordingly, plaintiff's first claim, alleging deprivation of due process, will be allowed to go forward against defendant Ryerson.

The Court's determination is different, however, with respect to plaintiff's due process claims against defendants Selsky and Goord. Plaintiff alleges in his first claim that he appealed Ryerson's disciplinary determination to Goord, and that defendant Selsky responded on Goord's behalf, advising him that his appeal was denied. In his second claim he further alleges that he sent two letters to defendant Goord complaining about the treatment to which he had been subjected at the disciplinary hearing. Once again responding on behalf of Commissioner Goord, defendant Selsky advised plaintiff that no further action would be taken by Selsky or Goord with respect to plaintiff's complaint about his treatment at the hearing. (Compl. pp. 6-7). Plaintiff's allegations are not sufficient to allege personal involvement by defendants Selsky and

Goord with respect to plaintiff's due process claims.[FN5]

> **FN5.** While plaintiff alleges that defendant Goord ordered defendant Selsky to deny plaintiff's appeal as a means of punishing and retaliating against plaintiff for having complained to Goord, plaintiff alleges no facts that would support this allegation and it is not self-evident how plaintiff would have been in a position to know that Goord "ordered" Selsky to punish and retaliate against plaintiff. Plaintiff similarly alleges no facts to support his claim that Goord requested "lengthy delays and unnecessary extensions" in responding to plaintiff's Article 78 complaint.

**\*6** It is well-established that "mere linkage in the prison chain of command" is not sufficient to support a claim of personal involvement. *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1995); *see also Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim."). Moreover, the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS "chain of command," affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at *21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at *21-22 (S.D.N.Y.2004). In addition, the fact that defendant Goord apparently referred plaintiff's appeal and letter-complaints to defendant Selsky for resolution is not enough to establish personal involvement on the part of Goord. *See Lunney v. Brureton,* 04 Civ. 2438, 2005 U.S. Dist. LEXIS 770, at *45-46 (S.D.N.Y.2005) (citing *Sealy v. Giltner,* 116 F.3d 47, 51 (2d cir.1997)) ("[S]ubmitting an appeal or complaint to a subordinate for disposition is not sufficient to find personal involvement."). The Court therefore determines that plaintiff's due process claims against defendants Selsky and Goord must be dismissed.

*(b) Malicious Prosecution, First Amendment, Equal Protection*

In addition to his due process arguments, plaintiff's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

first and second claims set forth additional bases for his challenges to the disciplinary proceeding concluded on July 24, 2002. He alleges that he was the victim of malicious prosecution, and that defendants Selsky and Goord's initial refusal to reverse the disciplinary determination stemmed from their decision to retaliate against plaintiff for complaining about their treatment of him, thereby violating his First Amendment rights. Plaintiff also invokes the equal protection clause.

Plaintiff fails to specifically indicate which actions of the defendants are alleged to constitute "malicious prosecution." However, based upon the factual recitals set forth in his statement of his first and second claims, it would appear that plaintiff is contending that the refusal of defendants Selsky and Goord to reverse defendant Ryerson's determination on appeal until after plaintiff had commenced an Article 78 proceeding with respect to that determination constituted "malicious prosecution."

"To prevail on a malicious prosecution claim under either New York law or § 1983, a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding." Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir.1996) (citing Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.1991)). Further, only those claims of malicious prosecution that implicate Fourth Amendment rights can be appropriate bases for malicious prosecution claims brought under § 1983. Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir.2004) (citing Albright v. Oliver, 510 U.S. 266, 274-75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A claim for malicious prosecution under § 1983 may not be premised on an administrative disciplinary proceeding, at least in the absence of a claim of a violation of Fourth Amendment rights. Id. at 315.

*7 The disciplinary proceeding challenged by plaintiff in the instant matter was not a criminal prosecution, see Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution ...."), and plaintiff alleges no violation of Fourth Amendment rights. Accordingly, to the extent the first and second claims in the complaint are based upon the defendants' alleged

malicious prosecution of him, they must be dismissed.

Plaintiff's invocation of his First Amendment rights to free speech and to petition the government as another basis for his second claim is understood to relate to his allegation that defendant Selksy denied plaintiff's appeal from the July 24, 2002 disciplinary determination in retaliation for his sending a letter to defendant Goord criticizing certain statements Goord had made in a DOCS newsletter. (Compl.P. 6).

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. See, e .g., Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988). To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir.2000) (internal quotation and citation omitted). As to the second prong, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. See Colon, 58 F.3d at 872-73.

Because claims of retaliation are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," Colon, 58 F.3d at 872, requiring " 'detailed fact pleading ... to withstand a motion to dismiss." ' Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983) (quoting Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir.1981)). To survive a motion to dismiss, such claims must be " 'supported by specific and detailed factual allegations," ' and should not be stated " 'in wholly conclusory terms." ' Friedl, 210 F.3d at 85-86 (quoting Flaherty, 713 F.2d at 13); see also Graham, 89 F.3d at 79 (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); Gill v. Mooney, 824 F.2d 192,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

194 (2d Cir.1987) (same).

Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment are actionable under § 1983; in other words, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. *Thaddeus-X v. Blatter,* 175 F.3d 378, 397 (6th Cir.1999) (cited with approval in *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)). *See Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (on remand, district court must consider the "serious question" of "whether the alleged acts of retaliation ... were more than *de minimis"* in deciding summary judgment motion). A *de minimis* retaliatory act is outside the ambit of constitutional protection. *Dawes,* 239 F.3d at 492.

**\*8** There is nothing in plaintiff's complaint to support his claim that his appeal from July 24, 2002 was denied in retaliation for his having sent a complaint to defendant Goord beyond: (1) the temporal proximity between his filing of his complaint and the denial of his appeal and (2) his recital of an accusation of retaliation that he leveled against Goord and Selsky in a second letter that he sent to Goord following the denial of his appeal. Plaintiff fails, however, to point to anything said or otherwise communicated to him by Goord or Selsky or by any other prison official or employee that supports his claim that defendants' denial of his appeal was intended to retaliate against him for exercising his First Amendment rights. The Court therefore finds that plaintiff's claim of retaliation is wholly conclusory and therefore that his First Amendment claims (free speech, right to petition) should be dismissed. Further, the Court finds nothing in plaintiff's statement of his first and second claims that would support his allegation that defendants Goord and Selsky violated his equal protection rights, and those claims must likewise be dismissed.

*2. Claims Alleging Deprivation of Religious Freedom (Third and Fourth Claims)*

Plaintiff's third and fourth claims principally allege that prison officials took actions that had the effect of depriving him of his right to freely exercise his religious beliefs.

Plaintiff's third claim alleges that Jewish inmates like himself were subjected at Southport to certain delays and restrictions on their right to be fed food prepared in accordance with the prescribed kosher rules. Specifically, he asserts that only Jewish inmates were forced to wait ten to twenty days after their arrival at Southport before being provided with a kosher diet, disciplined for giving away food they do not eat or want and denied meat alternatives for meat items on the kosher menu. (Compl. p. 8). Curiously, plaintiff's complaint does not identify the officials or employees at Southport who were responsible for such alleged discriminatory treatment of Jewish inmates. Instead, his third claim focuses on the alleged failure of supervisory personnel to take favorable action in response to the grievances and letters plaintiff submitted to them in which he complained about the facility's "discriminatory policies and practices." He alleges that in February, 2004 he filed a grievance complaining about religious discrimination, but that acting Superintendent Chappius and Superintendent McGinnis upheld the denial of the grievance, as did defendant Eagan, the director of the DOCS Inmate Grievance Program, to whom plaintiff subsequently appealed.[FN6]

> FN6. Plaintiff attaches to his complaint copies of the relevant decisions denying his grievances, which the Court has reviewed.

As previously noted in connection with the Court's assessment of plaintiff's disciplinary hearing claims, personal involvement of a defendant in an alleged Constitutional violation is a prerequisite for liability under § 1983. Here, plaintiff does not allege that defendants Goord, Eagan, McGinnis and Chappius were personally involved in the alleged deprivations of plaintiff's free exercise rights. Instead, plaintiff seeks to sue them because of their refusal to reverse the denial of his grievance. As previously noted, the fact that a prison official in the prison "chain of command" affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at \*21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at \*21-22 (S.D.N.Y.2004); *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002); *Villante v. N.Y. State Dep't of Corr. Servs.,* 96-CV-1484,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

2001 U.S. Dist. LEXIS 25208, at *17 (N.D.N.Y.2001). This point was well-stated in *Joyner v. Greiner,* in which the Court dismissed a former inmate's Eighth Amendment claim against the Superintendent of the Sing Sing Correctional Facility which was premised upon the Superintendent's denial of a grievance the inmate had filed with respect to the medical treatment he had received:

**\*9** The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance-which is all that is alleged against him-is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant.

195 F.Supp.2d at 506 (internal quotation marks and citation omitted).

This principle applies to superintendents, commissioners, and other prison officials who are in the chain of command with respect to the grievance review process. *See, e.g., Breslin,* 2004 U.S. Dist. LEXIS at *21-22 (dismissing claim against superintendent based upon "mere affirmation of grievance denial"); *Foreman,* 2004 U.S. Dist. LEXIS at *21-22 (dismissing claims against Commissioner and prison superintendent).

Accordingly, the Court determines that plaintiff's claims against defendants Goord, Eagen, McGinnis, and Chappius alleging violations of his freedom of religion, due process and equal protection rights, as set forth in the "third claim" of his complaint, must be dismissed in their entirety for failure to allege the requisite personal involvement by the defendants.

Plaintiff's fourth claim also relates to the alleged deprivation by prison officials of kosher food, but other things are added to a create convoluted assortment of allegations. Specifically, plaintiff asserts that his rights to free speech and to petition were interfered with, and that he was subjected to malicious prosecution and discrimination.

Plaintiff's fourth claim alleges that in retaliation for having provided a statement supporting a fellow Jewish inmate who had been involved in a dispute with defendant C.O. Clark, Clark advised plaintiff that he was being removed from the kosher meal program. Plaintiff asserts that this retaliatory denial of kosher food, which began on July 29, 2004, continued for about a month thereafter, ending (on September 4, 2004) after plaintiff had filed grievances with respect to the defendants' actions in connection with plaintiff's exclusion from kosher meals, and related retaliatory actions allegedly undertaken by several of the defendants.[FN7] Plaintiff claims that defendant Held initially ordered him removed from the kosher meal program, and that defendant Irizarry subsequently sent plaintiff a letter advising him that he was being removed from the kosher meal "for allegedly violating a facility rule."

FN7. Several of the memoranda and grievance decisions by DOCS officials attached to the complaint indicate that plaintiff had been removed from the "Cold Alternative Meal Program" as a result of "program violations" by the plaintiff (specifically, that plaintiff was giving away or trading his food) and not in retaliation for something plaintiff had done.

Plaintiff then chronicles his attempts to appeal defendant Irizarry's determination, initially to defendant McGinnis. He alleges that McGinnis was advised by the facility Rabbi that Irizarry's actions violated plaintiff's religious dietary laws, and that he should immediately be returned to the kosher meal program, but McGinnis disregarded the Rabbi's advice and upheld Irizarry's determination. Thereafter plaintiff appealed McGinnis's affirmation of Irizarry's decision to defendant Goord. However, following the resumption of plaintiff's kosher meals on September 4, 2004, defendant DOCS deputy Commissioner Nuttal, responding on behalf of Goord, informed plaintiff that the issue was "closed," and that no actions would be taken in response to the issues raised in plaintiff's complaints and appeals. Two additional grievances subsequently filed by plaintiff were, he claims, likewise ignored.

**\*10** The Court finds that plaintiff's allegations are sufficient to allow his fourth claim asserting violations of his free exercise, right to petition, due process, and equal protection rights to proceed against defendants Klatt,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Clark, Held, Irizarry, McGinnis, and Sheahan.[FN8]

> FN8. While the allegations in plaintiff's fourth claim against defendants McGinnis and Sheahan would appear to be essentially based upon their denial of plaintiff's appeal of defendant Irizarry's decision to remove plaintiff from the kosher food program, and might therefore be dismissed for failure to allege those defendant's personal involvement in the violation of plaintiff's constitutional rights (see discussion set forth in the Court's dismissal of plaintiff's third claim *supra* ), the Court finds that plaintiff's allegation that the facility Rabbi spoke to defendant McGinnis, but McGinnis disregarded his advice sufficiently alleges personal involvement against defendant McGinnis (and by extension, defendant Sheahan, who plaintiff alleges acted in concert with McGinnis) to allow plaintiff's fourth claim against McGinnis and Sheahan to go forward.

The Court further finds, however, that plaintiff's fourth claim must be dismissed with respect to defendants Goord, Nuttal, Cieslak and Eagan. Plaintiff's allegations against these defendants with respect to his fourth claim are based upon the fact that they refused to reverse the denial of several grievances filed by plaintiff with respect to his claims of religious discrimination and denial of due process. As explained by the Court in addressing plaintiff's third claim, *supra,* the mere fact that a prison official in the prison "chain of command" has occasion to pass upon a prisoner's grievance is not sufficient to establish personal involvement in an alleged denial of a plaintiff's constitutional rights. *See, e.g., Joyner v. Greiner,* 195 F.Supp. at 506. Similarly, the fact that plaintiff also sent letters to defendant Goord "pleading for him to take corrective actions," but that Commissioner Goord and Deputy Commissioner Nuttall took no corrective action in response to his missives is not sufficient to hold Goord or Nuttal liable under § 1983. *See Sealey,* 116 F.3d at 51.

Plaintiff also asserts in his fourth claim that he was the victim of malicious prosecution and failure to protect, but the complaint does not allege the predicate facts necessary to support these allegations, and they are accordingly dismissed against all defendants.

*3. Claim of Denial of Access to Court and Right to Petition (Fifth Claim)*

Plaintiff's fifth claim asserts that his rights to petition for redress of grievances and for access to the Courts were interfered with when defendants Ames and Litwilder, in February/March 2004, confiscated all of his writing paper and carbon paper, denied him law library materials, would not allow him to use a stapler, and refused to allow him to have his briefs and affidavits in a state court case to be bound in accordance with the rules of the New York State Supreme Court, Second Judicial Department, causing his papers to be rejected. Plaintiff filed grievances with respect to these alleged interferences with his rights, but his grievances were denied or ignored by defendants Bartlett, Hale, and Cieslak, as were his ensuing appeals to defendants McGinnis, Chapius and Eagan.

Plaintiff's allegations that the denial of his access to materials necessary to prepare or perfect his grievances and lawsuits materially prejudiced his ability to pursue such grievances and legal actions are sufficient to state a claim that his right of access to the courts was unconstitutionally hindered. *Ramsey v. Coughlin,* No. 94-CV-9S( F), 1 F.Supp.2d 198, 204-205 (W.D.N.Y.1998) (Magistrate's Report and Recommendation). Plaintiff's fifth claim will therefore be allowed to proceed against defendants Ames and Litwilder.

**\*11** However, plaintiff's fifth claim must be dismissed with respect to defendants Bartlett, Hale, Cieslak, McGinnis, Chapius and Eagan. With respect to these defendants, plaintiff's allegations fail to allege the requisite personal involvement. As previously noted, the fact that defendants failed to respond to plaintiff's letters or, as links in the prison system "chain of command," affirmed the denial or dismissal of plaintiff's grievances, is not sufficient to establish their liability under Section 1983. *See, e.g., Page v. Breslin,* 2004 U.S. Dist. LEXIS at \*21-22; *Foreman v. Goord,* 2004 U.S. Dist. LEXIS, at 19-22; *Joyner v. Greiner,* 195 F.Supp.2d at 15.

*CONCLUSION*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

In accordance with the foregoing, the Court determines that:

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted.

All claims against defendants Goord, Selsky, Eagan, Chappius, Nuttal, Cieslak, Bartlett, and Hale are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

Plaintiff's malicious prosecution claim as set forth in the "first claim" of his complaint is dismissed as to all defendants enumerated therein.

Plaintiff's free exercise of religion, due process, equal protection/discrimination claims set forth in the "third claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's malicious prosecution and failure to protect claims set forth in the "fourth claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's due process claim set forth in the "first claim" of his complaint survives as to defendant Ryerson.

Plaintiff's free exercise of religion, right to petition, due process, and equal protection claims set forth in the "fourth claim" of his complaint survive as to defendants Klatt, Clark, Held, Irizarry, McGinnis and Sheahan.

Plaintiff's access to court, right to petition, and due process claims set forth in the "fifth claim" of his complaint survive as to defendants Ames and Litwilder.

The U.S. Marshal is directed to serve the summons, complaint and this Order on defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder regarding the claims against those defendants which survive, as enumerated above.

*ORDER*

IT HEREBY IS ORDERED that plaintiff's claims

against defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate as parties to this action defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the summons, complaint and this Order upon defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

**\*12** FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

W.D.N.Y.,2005.

Ramsey v. Goord
Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

C   Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Wayne HARGROVE, Plaintiff,
v.
Sheriff Edward RILEY; Nassau County Correctional
Facility, et al; Nassau County University Medical Staff
and Nassau County Correctional Facility, Defendants.
**Civil Action No. CV-04-4587 (DGT).**

Jan. 31, 2007.

Wayne Hargrove, Ossining, NY, pro se.

Alexander V. Sansone, Troy & Troy, Lake Ronkonkoma,
NY, Joseph Carney, Mineola, NY, for Defendants.

*MEMORANDUM AND ORDER*

TRAGER, J.

*1 Inmate Wayne Hargrove ("Hargrove" or "plaintiff")
brings this *pro se* action pursuant to 42 U.S.C. § 1983
against the Nassau County Sheriff, Nassau County
Correctional Facility ("NCCF") and NCCF's medical staff,
(collectively, "defendants"), seeking damages for injuries
allegedly caused by defendants while he was incarcerated
at NCCF. Defendants now move for summary judgment
pursuant to Fed.R.Civ.P. 56 arguing, *inter alia,* that
Hargrove's claims should be dismissed because he failed
to exhaust administrative remedies, as required by the
Prison Litigation Reform Act of 1995 ("PLRA"), 42
U.S.C. § 1997e. For the following reasons, defendants'
motions for summary judgment are granted.

**Background**

On August 27, 2004,[FN1] Hargrove filed a complaint,
alleging that defendants violated his civil rights when they
forcibly administered purified protein derivative skin tests
("PPD test") to test for latent tuberculosis ("TB") in April
2002, 2003 and 2004 while he was incarcerated at NCCF.
Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A. Hargrove
named Nassau County Sheriff Edward Reilly ("Reilly"),
NCCF and Nassau County University Medical Staff [FN2] as
defendants.[FN3] On November 22, 2004, after discovery,
County Defendants and NHCC Defendants filed separate
motions for summary judgment pursuant to Fed.R.Civ.P.
56. Both defendants properly filed a Local Rule 56.1
Statement and served Hargrove a Notice to *Pro Se* Litigant
Opposing Motion for Summary Judgment, pursuant to
Local Civil Rule 56.2.

FN1. Hargrove signed the complaint August 27,
2004. The *pro se* clerk's office received and filed
the complaint on September 20, 2004. Under the
prison mail-box rule, a *pro se* prisoner's
complaint is deemed filed when it is delivered to
prison authorities. *See, e.g., Walker v.
Jastremski,* 430 F.3d 560, 562 (2d
Cir.2005)(deeming *pro* se prisoner's § 1983
action filed on date complaint was handed to
prison officials). There is no evidence in the
record as to when Hargrove handed the
complaint to prison officials. However, it is clear
the operative date is between August 27, 2004
and September 20, 2004. As discussed, *infra,*
both of these dates occur before Hargrove
properly exhausted the administrative remedies
available to him at NCCF.

FN2. The Nassau County University Medical
Staff are employed by the Nassau Health Care
Corporation ("NHCC"). Pursuant to the
Correctional Center Health Services Agreement
between the County of Nassau and NHCC, dated
September 24, 1999, NHCC provides medical
services for inmates at NCCF. County Defs.'s

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Not. of Motion, Decl., at 1.

FN3. Reilly and NCCF are represented separately from NHCC. Accordingly, when a distinction is necessary, Reilly and NCCF will be referred to as "County Defendants" and Nassau County University Medical Staff and NHCC will be referred to as "NHCC Defendants."

**(1)**

**Tuberculosis Testing at NCCF**

Upon entering NCCF, new prisoners must first go through medical intake. Aff. of Kim Edwards, ("Edwards Aff.") ¶ 3. This standard process usually takes seventy-two hours. Edwards Aff. ¶ 4. During medical intake, NCCF tests inmates for TB. Aff. of Getachew Feleke ("Feleke Aff.") ¶ 3. NCCF generally uses a PPD test to detect latent TB. Feleke Aff. ¶ 3. However, if an inmate has previously tested positive for TB, it is NCCF's policy to test for TB using an x-ray instead.[FN4] Feleke Aff. ¶ 3. As part of its Infectious Disease Program, NCCF re-tests inmates for TB each year, beginning after they have been housed in that facility for one year. Edwards Aff. ¶ 5.

FN4. According to WebMD, "[a] tuberculin skin test should not be done for people who have a (1) Known TB infection [or a] (2) Positive tuberculin skin test in the past. A second test may cause a more severe reaction to the TB antigens." Jan Nissl, RN, BS, *Tuberculin Skin Tests,* WEBMD, http://www.webmd.com/hw/lab_tests/hw203560.asp (last visited Jan. 31, 2007).

**(2)**

**Hargrove's Tuberculosis Testing at NCCF**

On March 15, 2002, Hargrove was incarcerated at NCCF.

NHCC Defs.' 56.1 Statement ¶ 1. Before entering the general population, Hargrove was processed through medical intake. NHCC Defs.' 56.1 Statement ¶ 2. The NCCF Medical Intake Chart for Hargrove, dated March 15, 2002 ("3/15/02 Chart"), shows that Hargrove informed medical staff that he had previously been exposed to tuberculosis. NHCC Defs.' Notice of Mot., Ex. C, at 1; NHCC Defs.' 56.1 Statement ¶ 2. The 3/15/02 Chart also shows that Hargrove reported testing positive to a prior PPD test and that he had been treated for TB in 2000. NHCC Defs.' Notice of Mot., Ex. C, at 1. Hargrove alleges that he was exposed to and treated for TB in 1997. Hargrove's Aff. in Opp. to Mot. for Summary Judgment, ("Aff. in Opp."), Ex. A at 1-2. Defendants contend that Hargrove was given an x-ray during the medical intake process because of his reported positive PPD test, and that the x-ray was negative, showing no active TB infection. NHCC Defs.' 56.1 Statement ¶ 2; Edwards Aff. ¶ 3. Without specifying a date, Hargrove generally states that his "request to be x-rayed was denied." Aff. in Opp. at 3.

**\*2** Pursuant to NCCF's Infectious Disease Program, after being incarcerated in NCCF for a year, Hargrove was scheduled to be re-tested for TB. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. On May 24, 2003, Hargrove was given a PPD skin test. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. This test was negative. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. According to Hargrove, he requested an x-ray instead of a PPD test because of his previous exposure to TB, but was forced to submit to the PPD test. He also alleges that defendants threatened to put him in "keep lock" or "lock up" unless he submitted to the PPD test.[FN5] Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A.

FN5. Hargrove has made contradictory statements about being placed in "keep lock" or "lock up". It is unclear whether he is alleging that defendants threatened to place him in "lock up" unless he submitted to the PPD test or whether he was actually placed in "lock up" until such time that he agreed to submit to the PPD tests. For example, in his complaint, Hargrove states that when he "refused to submit to another [PPD] test, the Correctional Authorities were brought in and placed [him] in lock up." Complaint ¶ 4. In a hearing before Magistrate Judge Bloom on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

January 31, 2005, Hargrove stated that he took the PPD tests because he was told that he would be placed in "lock up" until he submitted to the test. Hr'g Tr. 6:1-18; 9:5-10:10. In Exhibit B to his complaint, Hargrove alleges both that he was given an unwarranted TB shot and that when he refused the same shot he was placed in "keep lock." Complaint, Ex. B. There is no evidence in the record that Hargrove was ever segregated from the general population while housed at NCCF, outside of the seventy-two hour initial medical intake period. Aff. of Sgt. Neumann ("Neumann Aff.") at 1-2 (referring to prison records showing Hargrove's holding locations which demonstrate that he was never placed in "lock up"); NCCF 56.1 Statement ¶ E. Whether or not Hargrove was actually placed in "lock up" is not a material fact for purposes of this motion; as explained in detail, *infra,* Hargrove's failure to exhaust administrative remedies under the PLRA precludes a consideration of the merits of his Section 1983 claim.

The following year, in June of 2004, Hargrove was scheduled to be retested. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Because of the contradiction between the negative May 2003 PPD test and his reported positive history, NCCF contacted the Infectious Disease Department of the Nassau County Medical Center. Edwards Aff. ¶ 6. It was suggested that Hargrove be given a two-step PPD test, administered fifteen days apart. Feleke Aff. ¶ 4; Edwards Aff. ¶ 6. Hargrove was given these two PPD skin tests in June 2004. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Again, Hargrove alleges that these tests were administered against his will and under threat of being placed in quarantine. Complaint, Exs. A, B; Aff. in Opp., Ex. A.

On December 3, 2004, Hargrove was seen by a physician's assistant. NHCC Defs.' 56.1 Statement ¶ 6. During this meeting, Hargrove complained of a dry cough and that the site on his forearm where the June 2004 PPD tests had been administered was red and swollen. NHCC Defs.' 56.1 Statement ¶ 6; 11/28/04 Sick Call Request.

Hargrove's December 18, 2004 chart notes a positive PPD

test and an order was placed in the chart that Hargrove not be submitted for future PPD tests. Edwards Aff. ¶ 7; NHCC Defs.' 56.1 Statement ¶ 8. *See also* 11/19/2004 Grievance.

Hargrove alleges that the following physical ailments were caused by the PPD tests: chronic coughing, high blood pressure, chronic back pain, lung infection, dizzy spells, blurred vision and a permanent scar on both his forearms. Complaint, Ex. C; Aff. in Opp. at 3-4.

(3)

**NCCF's Inmate Grievance Procedure**

NCCF has had an inmate grievance program ("IGP") in place since 2001. Aff. of Kenneth Williams, ("Williams Aff."), at 2. NCCF's IGP is carried out in conformance with the New York State Commission of Corrections Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("Minimum Standards"). *Id.*

The IGP is designed to resolve complaints and grievances that an inmate may have regarding the inmate's care and treatment while incarcerated at NCCF. Williams Aff. at 2. Upon entering NCCF, all inmates receive a copy of the NCCF inmate handbook, which outlines the IGP. *Id.*

**\*3** The record does not include an actual copy of NCCF's IGP, but the NCCF's IGP is detailed in the affidavit of NCCF Investigator Kenneth Williams. FN6 The IGP encourages inmates to resolve their grievances informally with the staff member assigned to the inmate housing unit first. *Id.* If an acceptable resolution cannot be reached, inmates must then proceed through the formal three-step process set out in the IGP. *Id.* at 3.

FN6. Hargrove does dispute any statements made by Investigator Williams regarding the inmate grievance procedure, time limits or its availability to him. Furthermore, Hargrove does

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

not dispute that he received a handbook outlining the IGP.

The first step requires an inmate to submit his grievance form [FN7] to the Inmate Grievance Unit by placing it in a locked box located in each housing area, "within five days of the date of the act or occurrence giving rise to the grievance." [FN8] *Id.* at 2-3. NCCF indexes all grievance forms filed by inmates in a log book and in a computer system. *Id.* at 1, 3. Once a grievance form is received by the Inmate Grievance Unit, the grievance is investigated and the inmate will receive a written determination of the outcome from the Inmate Grievance Coordinator in Section II of the grievance form. [FN9] *Id.* at 3. The inmate is then given a choice to accept or appeal the decision by checking the desired selection and signing his name in Section III of the grievance form. *See, e.g.,* 11/19/2004 Grievance form. If the inmate is not satisfied with the decision of the Inmate Grievance Coordinator, the inmate may appeal the determination to the Chief Administrative Officer. Williams Aff. at 3. Finally, if the inmate is not satisfied with the Chief Administrative Officer's determination, the inmate may appeal to the New York State Commission of Correction Citizen's Policy and Complaint Review Council ("Council"). *Id.* at 3. The Council will then render a final determination. *Id.* at 3.

FN7. The grievance forms contain four sections to be utilized throughout all three steps of the IGP. Section I provides space for the inmate to explain his complaint and the actions he requests as relief. Section II is for the decision of the Inmate Grievance Coordinator. Section III is titled "Acceptance/Appeal of Grievance Coordinator's decision" and contains two mutually exclusive options in which the inmate must choose one or the other: "I have read and accept the Grievance Coordinator's decision," or "I have read and appeal the Grievance Coordinator's decision." Section IV provides space for the decision of the Chief Administrative Officer.

FN8. Hargrove has not argued that he was unaware of this five-day deadline.

FN9. There is no evidence in the record specifying the how long an inmate has to appeal inaction by the Inmate Grievance Unit.

(4)

**Authenticity of the Grievance Forms and Other Documents Submitted by Hargrove**

In support of his allegations that he continuously informed defendants that he had been exposed to TB and, therefore, should not have been given PPD tests, Hargrove submitted three letters with his complaint, two of which were addressed to the Inmate Grievance Committee and one of which was addressed to "To whom this may concern." Complaint, Exs. A-C. He also submitted five complaint letters written to Sheriff Reilly, seventeen sick call requests and nine grievance forms during discovery and with his Affidavit in Opposition to Defendants' Motion for Summary Judgment, explaining that some of the medical records and notarized letters were "missing." Aff. in Opp, Ex. A at 2. Defendants call the authenticity of most of these documents into question, contending that Hargrove never submitted any grievance form or complaint letter before he filed his complaint. County Defs.' Mem. of Law at 16-21; County Defs.' 56.1 Statement at ¶¶ B2, C3, D3.

Kenneth Williams, an investigator at NCCF in the Inmate Grievance Unit, testified that he reviewed all of the grievance forms, complaint letters and sick call requests annexed to Hargrove's Complaint and to Hargrove's Affidavit in Opposition to Defendants' Motion for Summary Judgment. Williams Aff. at 2. Williams testified that he examined the grievance records at NCCF and searched "for any grievances by plaintiff/inmate Hargrove" and found "only two." [FN10] Williams Aff. at 1. The first grievance, dated November 19, 2004, complained that the medical staff continued "forcing [Hargrove] to take a T.B. shot while [he] keep[s] telling them that [he] has been exposed to T.B." 11/19/2004 Grievance; Williams Aff. at 1. In response to this grievance, Hargrove's "positive" TB status was noted in his medical records and an order was placed in Hargrove's medical chart, stating that Hargrove not be subjected to future PPD tests. 11/19/2004 Grievance, Section II;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Williams Aff. at 1; NHCC Defs.' 56.1 Statement ¶ 8; Edwards Aff. ¶ 7. In Section III of the 11/19/2004 Grievance, Hargrove acknowledged that he had read the Grievance Coordinator's decision, and that he chose to accept the decision instead of appealing it. 11/19/2004 Grievance. The other grievance received by the Grievance Unit, dated May 11, 2005, complained of an unrelated matter. 5/11/2005 Grievance (complaining of back problems and requesting the return of his medical shoes); Williams Aff. at 1. Thus, Williams concluded that, beside the 11/19/2004 and 5/11/2005 Grievance Forms, none of the other documents were "received by the grievance unit, and, given the locked box system, the grievance-forms were never submitted by plaintiff/inmate." Williams Aff. at 2.

> FN10. It is NCCF's procedure to forward to the attention of the Grievance Unit all official grievance forms and complaint letters-even ones not specifically addressed to the Grievance Unit. Williams Aff. at 3.

**\*4** A visual examination of the grievance forms Hargrove submitted in support of his claims suggests forgery. Five of the nine grievance forms were requests to stop PPD testing. *See* April 19, 2002 grievance; April 28, 2002 grievance; April 20, 2003 grievance; April 28, 2003 grievance; November 19, 2004 grievance. The remaining grievance forms concerned Hargrove's requests for medical shoes. *See* March 18, 2002 grievance; July 6, 2002 grievance; February 20, 2003 grievance; May 11, 2005 grievance. Of the grievance forms complaining of unwanted PPD tests, the April 28, 2002 grievance form is a patent photocopy of the April 19, 2002 grievance form, and the April 28, 2003 grievance form is a patent photocopy of the April 20, 2003 grievance form, with only the handwritten dates changed. The only potentially authentic grievance forms relating to Hargrove's complaint about the PPD testing are dated April 19, 2002, April 20, 2003, and November 19, 2004. Of these grievance forms, only the November 19, 2004 has been authenticated by NCCF personnel. *See generally* Williams Aff. at 1-4.

Turning to the complaint letters addressed to Reilly, many contain notary stamps cut from the bottom of unrelated

documents and photocopied onto the bottom of the complaint letters. *See* County Defs.' Mem. of Law at 18-21. C.O. Thomas McDevitt and C.O. Paul Klein, both of whom perform notary services for prisoners at NCCF, have submitted sworn affidavits, stating that they kept individual Notary Log Books covering all dates relevant to this litigation. Aff. of C.O. Klein, ("Klein Aff."), at 1; Aff. of C.O. McDevitt, ("McDevitt Aff."), at 1. McDevitt's Notary Log Book shows that he notarized only one document for Hargrove. This document, dated May 13, 2002, was a motion related to Hargrove's criminal trial. McDevitt Aff. at 1-2. Hargrove signed the Notary Log Book acknowledging receipt of that notarized motion. McDevitt Aff. at 2. McDevitt states that he never notarized any other documents for Hargrove. McDevitt Aff. at 2. However, McDevitt's stamp and signature dated May 13, 2002 (the date of the legitimate notarization) appear on Hargrove's letter to Sheriff Reilly dated May 10, 2002. County Defs.' Not. of Motion, Ex. A.

These facts repeat themselves in regard to the documents bearing the notary stamp and signature of Klein. Klein had performed several legitimate notarizations for Hargrove in connection to Hargrove's criminal trial. Klein Aff. at 1-2. Hargrove signed Klein's Notary Log Book acknowledging receipt of those notarized documents. Klein Aff. at 2. However, Klein states that he never notarized any of Hargrove's letters addressed to Sheriff Reilly that bear Klein's stamp and signature. Klein Aff. at 2. On all of the documents that Hargrove submitted bearing Klein's stamp and signature, the dates and signatures of Klein match identically to the dates on which he had performed legitimate notarizations for Hargrove in connection with his criminal trial. Defendants argue it is clear that the documents bearing the stamps and signatures of McDevitt and Klein were not actually notarized by these notaries. County Defs.' Mem. of Law at 17-22.

**\*5** Hargrove does not deny these allegations. Instead, he resubmits the documents that McDevitt and Klein testify they did not notarize with his Affidavit in Opposition and insists that the documents "refute[ ] the assertions put forth by the defendants." Aff. in Opp. at 2.

**Discussion**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

**(1)**

**Summary Judgment Standard**

A motion for summary judgment is granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court ruling on a summary judgment motion must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Williams v. Metropolitan Detention Center,* 418 F.Supp.2d 96, 100 (E.D.N.Y.2005). Defendants, the moving party in this action, bear the burden of demonstrating the absence of a genuine issue of material fact. *Baisch v. Gallina,* 346 F.3d 366, 371 (2d Cir.2003).

As Hargrove is proceeding *pro se,* his complaint must be reviewed carefully and liberally, and be interpreted to "raise the strongest argument it suggests," *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001), particularly when civil rights violations are alleged, *see, e.g., McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Plaintiff's complaint does not specify the legal theories upon which it relies, but, in construing his complaint to raise its strongest arguments, it will be interpreted to raise claims under 42 U.S.C. § 1983. *See, e.g., Dufort v. Burgos,* No. 04-CV-4940, 2005 WL 2660384, at *2 (E.D.N.Y. Oct. 18, 2005) (liberally construing plaintiff's complaint, which failed to specify the legal theory or theories upon which it rested, as, *inter alia,* a claim under 42 U.S.C. § 1983); *Williams,* 418 F.Supp.2d at 100 (same).

**(2)**

**Prison Litigation Reform Act**

**a. Purpose of the Prison Litigation Reform Act**

The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits." *Woodford v. Ngo,*

--- U.S. ----, 126 S.Ct. 2378, 2387 (2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). It seeks to eliminate unwarranted interference with the administration of prisons by federal courts, and thus " 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Woodford,* 126 S.Ct. at 2387 (quoting *Porter,* 534 U.S. at 525).*See also Booth v. Churner,* 532 U.S. 731, 739 (2001). Formal grievance procedures allow prison officials to reconsider their policies, implement the necessary corrections and discipline prison officials who fail to follow existing policy. *See Ruggiero v. County of Orange,* 467 F.3d 170, 177-78 (2d Cir.2006).

**b. The Exhaustion Requirement**

The PLRA's "invigorated" exhaustion provision, 42 U.S.C. § 1997e(a), provides the mechanism to reduce the quantity and improve the quality of prisoners' suits by requiring that prison officials have the opportunity to address prisoner complaints through internal processes before allowing a case to proceed in federal court. *Woodford,* 126 S.Ct. at 2382 (citing *Porter,* 534 U.S. at 524).Section 1997e(a) provides that:

**\*6** [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983. *Woodford,* 126 S.Ct. at 2383;*Ruggiero,* 467 F.3d at 174;*Williams,* 418 F.Supp.2d at 100-01. The exhaustion provision is applicable to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings, as long as other forms of relief are obtainable through administrative channels. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *see also Woodford,* 126 S.Ct. at 2382-83 ("[A] prisoner must now exhaust

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.") (citing *Booth,* 532 U.S. at 734).

In June 2006, the Supreme Court held that the PLRA requires "proper exhaustion" before a case may proceed in federal court. *Woodford,* 126 S.Ct. at 2387. "Proper exhaustion" requires a prisoner to use " 'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' " *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2385 (emphasis in original)). Although the level of detail necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones v. Bock,* 127 S.Ct. 910, 2007 WL 135890, at *12 (Jan. 22, 2007), "proper exhaustion" under the PLRA " 'demands compliance with [that] agency's deadlines and other critical procedural rules.' " *Ruggiero,* 467 F.3d at 176 (quoting *Woodford,* 126 S.Ct. at 2386). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2382).

**(3)**

**Exhaustion Analysis: Hargrove did not Exhaust the Administrative Remedies Made Available by NCCF prior to Bringing Suit**

Section 1997e(a) of the PLRA applies to Hargrove's complaint; Hargrove was and continues to be confined in a correctional facility, *see Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004), and Hargrove's claim is about a "prison condition" within the meaning of the PLRA, *see Williams,* 418 F.Supp.2d at 101. *See also Sloane v. W. Mazzuca,* No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) (recognizing PLRA's application to complaint alleging retaliation by prison officials for plaintiff's refusal to consent to a PPD test). Accordingly, the merits of Hargrove's Section 1983 claims can only be addressed if it is first determined that Hargrove properly exhausted each claim under Section 1997e(a) of the PLRA before filing his complaint in federal court.

**\*7** Hargrove has submitted both forged [FN11] and authentic grievance forms in opposing defendants' motions for summary judgment. Excluding, for the moment, the forged documents, NCCF's records reflect that Hargrove did not submit his first grievance until after he filed the instant complaint. Williams Aff. at 1. Hargrove's first grievance complaining of unwanted PPD testing is dated November 19, 2004, Williams Aff. at 1, two to three months after Hargrove filed his complaint. Additionally, this first grievance, dated November 19, 2004, was submitted five months after the last PPD test was administered to him in June 2004. NHCC Defs.' 56.1 Statement ¶¶ 5,6. This five-month period far exceeds the five-day window provided by NCCF's IGP. Since Hargrove failed to comply with the IGP's deadlines, he did not properly exhaust the available administrative remedies. *Ruggiero,* 467 F.3d at 176 (" 'untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.' ") (quoting *Woodford,* 126 S.Ct. at 2382).

> FN11. Based on an examination of the documents themselves, as well as the uncontradicted testimony of the notaries performing services for prisoners at NCCF, *see generally* Klein Aff.; McDevitt Aff., and of the investigator in the Inmate Grievance Unit, *see generally* Williams Aff., it appears that many of the documents submitted by Hargrove are forgeries. However, in order to view the facts in the light most favorable to Hargrove, and so as to avoid making findings of fact in a summary judgment motion, for the purposes of the exhaustion analysis, all of the documents will be considered to be authentic. However, for purposes of the sanctions analysis, the documents will be explored and the consequences of Hargrove's misrepresentations will be addressed.

Furthermore, even if the falsified grievance forms Hargrove submitted in support of his claim are considered authentic, they are still untimely. The diagnostic TB tests (whether x-ray or PPD tests) were given to Hargrove on March 15, 2002, May 24, 2003 and in June of 2004, but the grievance forms Hargrove submitted complaining of unwanted PPD tests are dated April 19, 2002, April 28, 2002, April 20, 2003, April 28, 2003 and November 19,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2004. None of these grievances were filed "within five days of the of the date of the act or occurrence giving rise to the grievance." Williams Aff. at 3. There is no evidence in the record suggesting that NCCF's IGP allows for a tolling of the five-day time limit in which to file a grievance.[FN12]

> FN12. Even if the submitted grievances had been filed within the proscribed time period, they only show that Hargrove's grievances reached an Inmate Grievance Coordinator, the first formal step of NCCF's three-step administrative grievance process; Hargrove never appealed to the Chief Administrative Officer. By failing to take the next available step in NCCF's IGP, Hargrove failed to satisfy the mandatory exhaustion requirement. *See, e.g., Williams, 418 F.Supp.2d at 101, 102* (dismissing *pro se* complaint where plaintiff could only show he exhausted two of the four-step process mandated by prison's administrative process).

While the letters to Reilly and sick call requests show that Hargrove attempted to bring his complaints about the PPD testing to the attention of the prison staff, *see, e.g.,* Aff. in Opp., Exs. A-D, NCCF's IGP requires use of formal grievance forms. Thus, writing complaint letters and submitting sick call requests did not properly exhaust NCCF's available administrative remedies. *See, e .g., Hernandez v. Coffey,* No. 99-CV-11615, 2006 WL 2109465, at *4 (S.D.N.Y. July 26, 2006) (holding letters did not satisfy plaintiff's exhaustion obligation); *Williams, 418 F.Supp.2d at 101* (holding that because plaintiff's efforts to convey his medical condition through letters and conversations with the warden and medical staff did "not include the required steps of the PLRA's administrative remedy process," plaintiff failed to exhaust); *Mills v. Garvin,* No. 99-CV-6032, 2001 U.S. Dist. LEXIS 3333, at *8 (S.D.N.Y. Mar. 2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA").

As Hargrove failed to properly exhaust his administrative remedies, this action is precluded by 42 U.S.C. § 1997e(a) unless Hargrove can establish excuse for his failure to exhaust.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(4)**

**No Grounds to Excuse Plaintiff's Failure to Exhaust**

*\*8* Exhaustion is an affirmative defense that defendants have the duty to raise. *Jones,* 2007 WL 135890, at *8-11;Sloane,* 2006 WL 3096031, at *4;Williams,* 418 F.Supp.2d at 101. Once argued by the defendants, a plaintiff has an opportunity to show why the exhaustion requirement should be excused or why his failure to exhaust is justified. *See Ruggiero,* 467 F.3d at 175;*Collins v. Goord,* 438 F.Supp.2d 399, 411 (S.D.N.Y.2006) ("[T]he Second Circuit has cautioned that 'while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply.' ")(internal citations omitted). Thus, before concluding that a prisoner failed to exhaust available administrative remedies as required by Section 1997e(a) of the PLRA, the following three factors must be considered: (1) whether administrative remedies were actually available to the prisoner; (2) whether defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; and (3) whether special circumstances, such as a reasonable misunderstanding of the grievance procedures, exist justifying the prisoner's failure to comply with the exhaustion requirement. *Ruggiero,* 467 F.3d at 175 (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).[FN13]

> FN13. Courts in the Second Circuit have questioned what effect, if any, the Supreme Court's recent decision in *Woodford* requiring "proper exhaustion" may have on the three-step *Hemphill* inquiry. The Second Circuit has yet to address this issue. *See Ruggiero,* 467 F.3d at 175-76 (declining to "determine what effect *Woodford* has on our case law in this area ... because [plaintiff] could not have prevailed even under our pre-*Woodford* case law"). To date, district courts have acknowledged the tension, but resolved to apply *Hemphill* to exhaustion claims until instructed otherwise by the Second Circuit. *See, e.g., Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *9, n. 4 (S.D.N.Y. Dec. 6,

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2006) (applying the current law of the Second Circuit to exhaustion claims); *Sloane,* 2006 WL 3096031, at *5 ("Until such time as the Court of Appeals considers the impact of *Woodford,* if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the current law of this circuit to the exhaustion claims."); *Collins v. Goord,* 438 F.Supp.2d at 411 n. 13 (acknowledging that *Woodford* and *Hemphill* may be in tension, but deciding exhaustion claims under *Hemphill* inquiry); *Hernandez v. Coffey,* No. 99-CV11615, 2006 WL 2109465, at *3 (S.D.N.Y. July 26, 2006) (same). Here, Hargrove does not prevail under *Hemphill;* therefore, there is no occasion to address the potential effect *Woodford* may have had in his case.

**a. Whether administrative remedies were "available" to Hargrove**

The first step in the *Hemphill* inquiry requires a court to determine whether administrative remedies were available to the prisoner. *Hemphill,* 380 F.3d at 686. The test for assessing availability is an "objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 688 (internal quotation marks omitted). In making this determination, "courts should be careful to look at the applicable set of grievance procedures." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). Exhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, see *Ruggiero,* 467 F.3d at 179, or where defendants' behavior prevents plaintiff from seeking administrative remedies,[FN14]*Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir.2004).

FN14. Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies "unavailable" to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.

Here, Hargrove has not claimed that NCCF's administrative grievance procedure was unavailable to him. In fact, Hargrove demonstrated his access to and knowledge of NCCF's IGP by filing proper grievances on November 19, 2004 and on May 10, 2005. Hargrove did not dispute any part of Investigator Williams's affidavit detailing the IGP and its availability to inmates since 2001. Specifically, Hargrove did not dispute, upon entering the facility, that he received a copy of the inmate handbook outlining the IGP. He has not claimed that he is unfamiliar with or unaware of NCCF's IGP. Hargrove has not alleged that prison officials failed to advance his grievances [FN15] or that they threatened him or took any other action which effectively rendered the administrative process unavailable.

FN15. Although not specifically alleged, interpreting the evidence to "raise the strongest argument," Hargrove may be arguing that NCCF's IGP was not available to him because the Grievance Coordinator failed to respond to his grievances. In the single grievance regarding PPD tests that defendants concede is authentic, Hargrove writes, "[n]ow for the third time your office refused to answer my grievances so please look into this matter because the T.B. shot is [sic] effecting my health." 11/19/04 Grievance. This language implies that Hargrove filed grievances in the past and received no response from the Inmate Grievance Coordinator. Furthermore, Hargrove wrote on one of the submitted copies of the November 19, 2004 grievance that "[t]his is the only accepte[sic] that Plaintiff got back from all grievances and letters that the Plaintiff sent to Sheriff Riley and his medical staffs about his staff making [sic] take T.B. test for 3 year[s]." County Defs'. Not. of Motion, Ex. A, 11/19/2004 grievance.

First, it must be reiterated that filing of the initial grievances was untimely. However, even assuming *arguendo* that the original grievances had been timely filed, district courts in the Second Circuit have held that the "lack of a response from the [Inmate Grievance Review Committee] does not excuse an inmate's obligation to exhaust his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

remedies through available appeals." *Hernandez v. Coffey,* 2006 WL 2109465, at *3-5. *See also Hemphill,* 380 F.3d at 686 ("Threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system"); *Acosta v. Corr. Officer Dawkins,* No. 04-CV-6678, 2005 WL 1668627, at *3 (S.D.N.Y. July 14, 2005) (inmate required to appeal lack of response to exhaust administrative remedies); *Mendoza v. Goord,* No. 00-CV-0146, 2002 U.S. Dist. LEXIS 22573, at *6 (S.D.N.Y. Nov. 21, 2002) ("If, as a result of a negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner [does not receive a response] on his complaint, he is not thereby forestalled from appealing"). Hargrove did not assert or offer evidence suggesting that he appealed the unresponsiveness or that those appeals were not advanced.

**\*9** Additionally, Hargrove's transfer from NCCF to Sing Sing Correctional Facility ("Sing Sing") in July 2005 did not excuse his previous failure to properly exhaust. *See, e.g., Sims v. Blot,* No. 00-CV-2524, 2003 WL 21738766, at *4 (S.D.N.Y. July 25, 2003) (determining that failure to exhaust administrative remedies is not excused by transfer to another facility); *Santiago v. Meinsen,* 89 F.Supp.2d 435, 440-41 (S.D.N.Y.2000) (determining that plaintiff should not be "rewarded" for failing to participate in grievance procedure before being transferred). Hargrove had ample opportunity to properly file his grievances and to appeal their results as required by NCCF's procedures while he was imprisoned at NCCF. The last PPD test Hargrove complains of was given in 2004; therefore, Hargrove had until June or July of 2004 to timely file his grievance in accordance with NCCF's IGP. Hargrove was not transferred to Sing Sing until July 2005. County Defs.' Mem. of Law at 2. Thus, Hargrove's transfer cannot excuse his previous failure to properly exhaust.

**b. Estoppel**

The second step of the inquiry asks whether defendants are estopped from raising exhaustion as a defense. Specifically, "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (internal citations omitted).

Here, Hargrove has not made any statements that would permit a finding that defendants should be estopped from raising the affirmative defense of exhaustion or that defendants waived the right to raise the defense. Defendants first raised the PLRA's exhaustion requirement as an affirmative defense in their respective answers. *See* County Defs.' Am. Answer at 3; NHCC Defs.' Answer at 1. County Defendants raised it again in their motion for summary judgment. *See* County Defs.' Mem of Law at 15-23. Thus, defendants are not estopped from raising the affirmative defense now. *See, e.g., Sloane,* 2006 WL 3096031, at *8 (exhaustion defense not waived where defendants first raised it in their motion to dismiss).

Additionally, defendants have not threatened Hargrove or engaged in other conduct preventing him from exhausting the available administrative remedies. *Cf. Ziemba v. Wezner,* 366 F.3d 161, 162 (2d Cir.2004) (holding defendants were estopped from asserting non-exhaustion because of prison officials' beatings, threats and other conduct inhibiting the inmate from filing proper grievances); *Feliciano v. Goord,* No. 97-CV-263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (holding defendants were estopped from asserting non-exhaustion where prison officials refused to provide inmate with grievance forms, assured him that the incidents would be investigated by staff as a prerequisite to filing a grievance, and provided prisoner with no information about results of investigation). Hargrove has not argued otherwise. *See Ruggiero,* 467 F.3d at 178 (holding defendants were not estopped from asserting a failure to exhaust defense where plaintiff pointed to no affirmative act by prison officials that would have prevented him from pursing administrative remedies); *Sloane,* 2006 WL 3096031, at *8 (finding no estoppel where plaintiff did not argue that defendants prevented him from pursuing the available administrative remedies); *Hernandez,* 2006 WL 2109465,

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

at *4 (finding no estoppel where plaintiff did not argue that any threats or intimidation prevented him from pursuing his appeals). Thus, for the same reasons that administrative remedies were not deemed unavailable to Hargrove, defendants are not estopped from raising a failure to exhaust defense.

### c. Special circumstances

**\*10** Even where administrative remedies are available and the defendants are not estopped from arguing exhaustion, the court must "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Hemphill,* 380 F.3d at 688 (quoting *Giano,* 380 F.3d at 676). For example, plaintiff's reasonable interpretation of regulations differing from prison official's interpretation has been held to constitute a "special circumstance." *Giano,* 380 F.3d at 676-77. No special circumstances have been alleged that would excuse Hargrove from availing himself of administrative remedies. *See Sloane,* 2006 WL 3096031, at *8; *Freeman v. Goord,* No. 02-CV-9033, 2004 U .S. Dist. LEXIS 23873, at * 9-10 (S.D.N.Y.2004) (granting motion to dismiss where "there is no evidence in the record ••• of any 'special circumstances' in this action.")

**(5)**

**Hargrove's Failure to Exhaust, in Addition to his Fraud on the Court, Warrants Dismissal with Prejudice**

Hargrove has not sufficiently rebutted the defendants' assertion of failure to exhaust, and a liberal reading of his submissions does not reveal any grounds to excuse that failure.

Because Hargrove filed a complaint in federal court before filing a grievance, permitting his unexhausted and unexcused claim to proceed would undercut one of the goals of the exhaustion doctrine by allowing NCCF to be haled into federal court without the "opportunity to correct

its own mistakes with respect to the programs it administers." *Woodford,* 126 S.Ct. at 2385. *See also Ruggiero,* 467 F.3d at 178 (citing *Porter,* 534 U.S. at 525). Thus, his complaint must be dismissed.

In general, dismissal without prejudice is appropriate where plaintiff has failed to exhaust but the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004). Dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry,* 366 F.3d at 88. Here, Hargrove's administrative remedies were available to him during his entire period of confinement at NCCF. He remained incarcerated in NCCF throughout the time period in which he alleges the PPD tests were given. He could have exhausted remedies for his grievances at any time. Therefore, Hargrove had ample opportunity to seek administrative remedies but failed to do so. Because there is no evidence in the record that administrative remedies are still available to Hargrove, as the five-day time period had run, and because Hargrove has alleged no special circumstances justifying his failure to exhaust, his complaint is accordingly dismissed with prejudice. *Berry,* 366 F.3d at 88 (upholding dismissal with prejudice where plaintiff had no justification for his failure to pursue administrative remedies while they were available.)

**\*11** Additionally, defendants' have moved for sanctions based on Hargrove's alleged submission of falsified evidence. If a party commits a fraud on the court, the court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process. *Shangold v. The Walt Disney Co.,* No. 03-CV-9522, 2006 WL 71672, at *4 (S.D.N.Y. January 12, 2006) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991)). Fraud upon the court has been defined as "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir.1988); *McMunn v. Mem'l Sloan-Kettering Cancer Center,* 191 F.Supp.2d 440, 445 (S.D.N.Y.2002). In order for a court to grant sanctions based upon fraud, it must be established by clear and convincing evidence that a party has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

the presentation of the opposing party's claim or defense." *McMunn*, 191 F.Supp.2d at 455 (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir.1989).

After carefully reviewing the allegedly fraudulent documents, it must be concluded that Hargrove consciously falsified these documents. *See, e.g., Shangold*, 2006 WL 71672, at \*1, \*3 (finding clear and convincing evidence of fraud where plaintiffs fabricated a timeline and plot outlines to advance their claims); *McMunn*, 191 F.Supp.2d at 446 (finding clear and convincing evidence of fraud where plaintiff edited audio tapes and represented that they were unedited during discovery). The notaries performing services for prisoners at NCCF testify that they never notarized many of the documents supplied by Hargrove. *See* Klein Aff.; McDevitt Aff. Furthermore, a visual examination of the documents themselves makes it clear that many of the documents submitted by Hargrove are forgeries.

In considering what sanction to impose, courts consider the following five factors: (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the plaintiffs; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future. *Scholastic, Inc. v. Stouffer*, 221 F.Supp.2d 425, 444 (S.D.N.Y.2002) (citing *McMunn*, 191 F.Supp.2d at 461).

Here, Hargrove's deception was not an isolated instance; he fabricated the dates on many grievance forms, in addition to improperly duplicating notary stamps on complaint letters to make them look authentic. Klein Aff. at 2; McDevitt Aff. at 2; County Defs.' 56.1 Statement ¶¶ C3, D3. He submitted these forgeries to defendants during discovery and again as exhibits to his Affidavit in Opposition to Defendant's Motion for Summary Judgment. A severe sanction is warranted as Hargrove's forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity. Aff. in Opp. at 1-4. Given that there is clear and convincing evidence that Hargrove has continuously and consciously perpetrated a fraud on the court through his submission of fraudulent documents and sworn

affirmations of those documents' authenticity, dismissal with prejudice is especially appropriate. *See, e.g., Shangold*, 2006 WL 71672, at \*5 (dismissing with prejudice where plaintiffs fabricated evidence to advance their claims); *Scholastic*, 221 F.Supp.2d at 439-444 (dismissing with prejudice where plaintiff produced seven pieces of falsified evidence); *McMunn*, 191 F.Supp.2d at 445 (dismissing with prejudice where plaintiff "lie[d] to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

### Conclusion

**\*12** Because Hargrove did not satisfy the exhaustion requirement under the PLRA, defendants' motions for summary judgment are granted. Further, considering the fraud Hargrove perpetrated on the court, the claims are dismissed against all defendants with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED:

E.D.N.Y.,2007.
Hargrove v. Riley
Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)
(Cite as: 2006 WL 2639369 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
James PETTUS, Plaintiff,
v.
Jospeh McCOY, Superintendent, Deputy Ryan,
Defendants.
No. 9:04-CV-0471.

Sept. 13, 2006.

James Pettus, Comstock, NY, pro se.

Charles J. Quackenbush, New York State Attorney
General, The Capitol Albany, NY, for Defendants.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** Plaintiff commenced the instant action asserting
various violations of his constitutional rights arising out of
his placement at the Southport Correctional Facility. In his
Complaint, Plaintiff alleges that he was improperly sent to
the Special Housing Unit ("SHU") at a maximum security
facility and that being in SHU has put his life in jeopardy.
Currently before the Court is Defendants' motion for
summary judgment pursuant to Fed.R.Civ.P. 56 seeking
dismissal of the Complaint in its entirety for failure to
exhaust administrative remedies.

**I. FACTS**[FN1]

    FN1. The following facts are taken from
    Defendants' statement of material facts submitted

pursuant to N.D.N.Y.L.R. 7.1(a)(3). These facts
are deemed admitted because they are supported
by the record evidence and Plaintiff failed to
submit an opposing statement of material facts as
required by Rule 7.1(a)(3). Plaintiff was
specifically advised by Defendants of his
obligation to file an opposing statement of
material facts and to otherwise properly respond
to the motion for summary judgment.

Plaintiff is an inmate in the custody of the New York State
Department of Correctional Services. Plaintiff signed the
instant Complaint on April 7, 2004. On his Complaint
form, Plaintiff indicated that there is a grievance
procedure available to him and that he availed himself of
the grievance procedure by filing a complaint with the
IGRC [FN2], followed by an appeal to the superintendent of
the facility, and then to the Central Office Review
Committee in Albany. The Complaint indicates that
Plaintiff is "waiting for response from Albany." The
Complaint was filed on April 27, 2004.

    FN2. Inmate Grievance Review Committee.

On April 12, 2004, prior to the filing of the instant
Complaint, Plaintiff filed a grievance relating to the issues
presented in this case. On April 19, 2004, the IGRC
recommended that Plaintiff's grievance be denied. Plaintiff
then appealed that decision to the facility Superintendent.
In the meantime, on April 27, Plaintiff commenced the
instant litigation. On May 3, 2004, after Plaintiff filed the
Complaint in this case, the Superintendent denied
Plaintiff's grievance. On May 5, 2004, Plaintiff appealed
the decision to the Central Office Review Committee in
Albany. On June 23, 2004, the Central Office Review
Committee denied Plaintiff's appeal. Plaintiff did not file
any other grievances in connection with the matters raised
in this lawsuit.

Defendants now move to dismiss on the ground that
Plaintiff commenced the instant action before fully
exhausting his available administrative remedies.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)
(Cite as: 2006 WL 2639369 (N.D.N.Y.))

## II. DISCUSSION

The sole issue presented is whether Plaintiff was required to complete the administrative process before commencing this litigation. This issue has already been addressed by the Second Circuit in *Neal v. Goord,* 267 F.3d 116 (2d Cir.2001). The issue in that case was "whether plaintiff's complaint should have been dismissed despite his having exhausted at least some claims during the pendency of his lawsuit." *Id.* at 121. The Second Circuit held that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal." *Id.*

In this case, Defendants have established from a legally sufficient source that an administrative remedy is available and applicable. *Mojias v. Johnson,* 351 F.3d 606, 610 (2d Cir.2003); *see also* 7. N.Y.C.R.R. § 701.1, *et seq.* Plaintiff's Complaint concerns his placement in SHU at a maximum security facility. These are matters that fall within the grievance procedure available to NYSDOCS inmates and are required to be exhausted under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Plaintiff has failed to demonstrate any applicable exception to the exhaustion requirement. Because Plaintiff commenced the instant litigation prior to fully completing the administrative review process, the instant Complaint must be dismissed without prejudice. *Neal,* 267 F.3d 116.

## III. CONCLUSION

**\*2** For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED WITHOUT PREJUDICE. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

N.D.N.Y.,2006.
Pettus v. McCoy
Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2004 WL 324898 (S.D.N.Y.)
(Cite as: 2004 WL 324898 (S.D.N.Y.))

H

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
William MINGUES, Plaintiff,
v.
C.O NELSON and C.O. Berlingame, Defendants.
**No. 96 CV 5396(GBD).**

Feb. 20, 2004.

**Background:** Inmate brought a § 1983 action asserting, inter alia, claims of excessive force during his wife's visit with him at the correctional facility.

**Holding:** On a defense motion to dismiss, the District Court, Daniels, J., held that the record established that the action was filed after the effective date of the Prison Litigation Reform Act (PLRA).
Motion granted.

West Headnotes

Civil Rights 78 ⟜ 1395(7)

78 Civil Rights
    78III Federal Remedies in General
        78k1392 Pleading
            78k1395 Particular Causes of Action
                78k1395(7) k. Prisons and Jails; Probation
and Parole. Most Cited Cases
Record established that inmate's § 1983 action was filed after the effective date of the Prison Litigation Reform Act of 1996 (PLRA), such that the inmate's failure to exhaust his administrative remedies precluded relief; examination of the initial complaint itself, on its face, unequivocally demonstrated that the inmate's subsequent allegation in his amended complaint that he filed the complaint in April of

1996 was patently false; there was no explanation offered that could reasonably support and account for the existence of May dates on the complaint. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

*MEMORANDUM DECISION AND ORDER*

DANIELS, J.

**\*1** This § 1983 action was originally commenced by the plaintiff,[FN1] a prisoner in New York State custody, and his wife claiming their civil rights were violated during the wife's visit with plaintiff at the correctional facility. Discovery in this matter has concluded. Previously, all claims asserted by plaintiff's wife were dismissed for failure to prosecute. Additionally, defendants' summary judgment motion was denied with respect to plaintiff's claims of excessive force,[FN2] and summary judgment was granted dismissing all of plaintiff's other claims. Defendants now seek to dismiss the remaining excessive force claims on the grounds they are barred by the Prisoner Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), as plaintiff failed to exhaust his administrative remedies.

FN1. Plaintiff and his wife were proceeding *pro se* when they filed the complaint and amended complaint. Thereafter, plaintiff obtained legal representation.

FN2. In the amended complaint, plaintiff alleges he was beaten, kicked and punched. (Am.Compl. § 6). In his original complaint, he had also claimed that he was whipped." (Compl. at 7, 8). Plaintiff testified at his deposition that he was slapped once in the face, punched about four or five times in the lower back, and a correctional officer then laid on top of him. (Mingues Dep. at 78-81). The incident, which took approximately thirty to forty seconds, caused plaintiff to suffer from back pain for an unspecified period of time. (*Id.* at 81, 86).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 324898 (S.D.N.Y.)
(Cite as: 2004 WL 324898 (S.D.N.Y.))

Subdivision (a) of § 1997e provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This provision became effective on April 26, 1996. *Blisset v. Casey,* 147 F.3d 218, 219 (2d Cir.1998). The PLRA's exhaustion requirement does not apply retroactively to actions pending when the Act was signed into law. *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003).

There is no dispute that plaintiff did not avail himself of the existing and available prison grievance procedure. Plaintiff, however, argues he was not required to exhaust his administrative remedies because, as alleged in his amended complaint, "petitioners (sic) had already filed in April 10-12 of 1996," prior to the PLRA's April 26, 1996 enactment date.[FN3] (Am.Compl. § 2). In order to determine the date that the instant action was commenced, the date of the filing of the amended complaint relates back to the filing date of the original complaint. Fed.R.Civ.P. 15(c). The original complaint was signed and dated by plaintiff's wife on May 8, 1996; it was stamped received by the Pro Se Office on May 10, 1996; and plaintiff's signature is dated May 13, 1996.[FN4]

> FN3. The amended complaint reads as follows:
>
> That the original complaint filed under and pursuant to Title 42 section 1983 and 1985 was made and submitted before this court in April of 1996, before the application of the Prisoner Litigation Reform Act of 1996 was signed into law. The Act was signed into law April 26, 1996 and petitioners had already filed in April 10-12 of 1996. (Am.Compl. § 2).

> FN4. Plaintiff's wife application for *in forma pauperis* relief was signed and dated May 8, 1996, and it is stamped as received by the Pro Se Office on May 10, 1996. Plaintiff's signature, on his initial application for appointment of counsel, is dated May 13, 1996, and it is stamped as

received by the Pro Se Office on May 10, 1996. Attached to plaintiff's application, is his signed Affirmation of Service, also dated May 13, 1996, wherein plaintiff declared under penalty of perjury that he served his application upon the Pro Se Office. Plaintiff alleges that "between April 17, 1996 until October 7, 1996," all visitation was suspended between him and his wife and that their "only form of communications was correspondence ." (Am.Compl. § 7).

The matter was referred to Magistrate Judge Pitman for a Report and Recommendation ("Report"). Although the magistrate judge found that the three earliest possible dates that the evidence demonstrates the complaint could have been filed, *i.e.,* May 8th, 10th, and 13th of 1996, were all beyond the PLRA enactment date, he nevertheless recommended that the motion to dismiss be denied based on plaintiff's allegation in the amended complaint that he filed the original complaint April 10-12 of 1996, prior to the April 26, 1996 enactment date. The magistrate judge found that, "[i]n light of the express allegation in the Amended Complaint that plaintiff commenced the action before April 26, 1996 and the absence of a clear record to the contrary, the requirement that disputed factual issues be resolved in plaintiff's favor for purposes of this motion requires that the motion be denied." (Report at 12-13).

**\*2** Defendants object to the Report's conclusion that there is a material issue of fact regarding the date the action was filed. Plaintiff's attorney did not file any objections.[FN5] The Court must make a *de novo* determination as to those portions of the Report to which there are objections. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). It is not required that the Court conduct a *de novo* hearing on the matter. *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Rather, it is sufficient that the Court "arrive at its own, independent conclusion" regarding those portions to which the objections were made. *Nelson v. Smith,* 618 F.Supp. 1186, 1189-90 (S.D.N.Y.1985) (quoting *Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir.1983)). Accordingly, the Court, in the exercise of sound judicial discretion, must determine the extent, if any, it should rely upon the magistrate judge's proposed findings and recommendations. *Raddatz,* 447 U.S. at 676. The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report. Fed.R.Civ.P. 72(b); 28 U.S.C. §

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 324898 (S.D.N.Y.)
(Cite as: 2004 WL 324898 (S.D.N.Y.))

636(b)(1)(C). Where there are no objections, the Court may accept the Report provided there is no clear error on the face of the record. *Nelson v. Smith,* 618 F.Supp. at 1189; *see also Heisler v. Kralik,* 981 F.Supp. 830, 840 (S.D.N.Y.1997), *aff'd sub nom. Heisler v. Rockland County,* 164 F.3d 618 (2d Cir.1998).

FN5. Plaintiff himself filed objections which was not adopted by his counsel. Plaintiff objects to the magistrate judge's finding that an issue exists as to when plaintiff filed the complaint because plaintiff asserts he gave it to prison officials to be mailed in April. Additionally, plaintiff objects to the magistrate judge's suggestion that the defendants convert their motion to one for summary judgment asserting the same theory as set forth in the present motion. Since this Court finds that the instant motion is meritorious, the propriety of plaintiff personally submitting his own objections need not be address as those objections are moot.

Upon a *de novo* review, the Report's recommendation that the motion be denied is rejected by the Court. Section 1997e (a) requires that inmates exhaust all available administrative remedies prior to the commencement of a § 1983 action concerning prison conditions, and failure to do so warrants dismissal of the action. *Porter v. Nussel,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Scott,* 344 F.3d at 290. The exhaustion of one's administrative remedies, however, is not a jurisdictional requirement under the PLRA. *Richardson v. Goord,* 347 F.3d 431 (2d Cir.2003). A defendant may assert a non-exhaustion claim as an affirmative defense. *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). Since it is an affirmative defense, defendants bear the burden of proof in this regard. *See, McCoy v. Goord,* 255 F.Supp.2d 233, 248 (S.D.N.Y.2003); *Arnold v. Goetz,* 245 F.Supp.2d 527, 534-35 (S.D.N.Y.2003); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002). A motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), is an appropriate vehicle to be used by a defendant where the failure to exhaust is clear from the face of the complaint as well as any written instrument attached as an exhibit and any statements or documents incorporated by reference into the complaint. *See, Scott v. Gardner,* 287 F.Supp.2d 477, 485 (S.D.N.Y.2003) (citation omitted); *McCoy,* 255 F.Supp.2d at 249.

In the amended complaint, plaintiff alleges, in a conclusory manner, that he filed the original complaint before the effective date of the PLRA, sometime between April 10th and April 12th of 1996.FN6 On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inference in plaintiff's favor. *Resnick v. Swartz,* 303 F.3d 147, 150-51 (2d Cir.2002) (citation omitted); *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). Dismissal is only warranted where it appears without doubt that plaintiff can prove no set of facts supporting his claims that would entitle him to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). The court's consideration is not limiting solely to the factual allegations set forth in the amended complaint. Rather, the court may also consider documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which he has knowledge of and relied on in bringing the action. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citation omitted). The court is not bound to accept as true a conclusory allegation where the pleadings are devoid of any specific facts or circumstances supporting such an assertion. *DeJesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.1996). Nor must the court "ignore any facts alleged in the complaint that undermine the plaintiff's claim." *Roots Partnership v. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir.1992) (citation omitted).

FN6. In response to then Chief Judge Thomas P. Griesa's 1996 order dismissing this action, plaintiff filed an Application for Reconsideration, dated October 28, 1996, wherein he claims that "on April 12, 1996 this petitioner filed a 1983 civil suit ..." (Pl.'s Mot. for Recons. at 1).

*3 Plaintiff fails to allege any factual basis in support of his claim that he filed the initial complaint between April 10-12, 1996. The Court is not required to accept this statement as a well-pleaded factual allegation in light of the existing record which clearly demonstrates that such an allegation is not only factually unsupported by the clear evidence, but is factually impossible. Generally, an

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 324898 (S.D.N.Y.)
(Cite as: 2004 WL 324898 (S.D.N.Y.))

amended complaint supersedes the original complaint, and renders it of no legal effect. *In re. Crysen/Montenay Energy Co.,* 226 F.3d 160, 162 (2d Cir.2000). In plaintiff's amended complaint, he states that he is submitting the amended complaint in support of his original complaint. Hence, the original complaint is incorporated by reference in the amended complaint, and may be considered by the Court. Even if the initial complaint was not so incorporated, given the circumstances of this case, the Court would nevertheless consider it as it relates to the original date of filing. An examination of the initial complaint itself, on its face, unequivocally demonstrates that plaintiff's subsequent allegation in his amended complaint that he filed the complaint between April 10th and 12th of 1996 is patently false.

The original complaint refers to plaintiff's prison disciplinary hearing arising out of the same incident forming the basis of the present lawsuit. Generally, the disciplinary charges against plaintiff were in connection with an alleged conspiracy by him and his wife to commit grand larceny against inmate Robert Cornell. That began on April 16, 1996, and concluded on April 19, 1996. (Defs.' Notice of Mot. for Summ. J. Ex. N, Transcript of Disciplinary Hr'g, conducted on April 16, 18-19, 1996). Specifically, in the original complaint, plaintiff refers to the testimony given by this fellow inmate.[FN7] (Compl. at 8). That inmate testified on April 19th. (Hr'g. Tr. at 53-54, 57). Thus, plaintiff's claim that he filed the complaint between April 10-12, 1996, is absolutely impossible as the initial complaint refers to events occurring after that time period. Merely because plaintiff boldly alleges in his amended complaint that he filed the original complaint between April 10th and 12th does not require this Court to turn a blind eye to plaintiff's prior pleadings demonstrating the absurdity of his claim.[FN8] *See, Silva Run Worlwide Ltd. v. Gaming Lottery Corp.,* 2001 WL 396521, *1 (S.D.N.Y. April 19, 2001) (citations omitted) (A court should not "accept allegations that are contradicted or undermined by other more specific allegations in the complaint or by written materials properly before the court.").

FN7. In the complaint, plaintiff alleges "that at his S.H.U. hearing petitioner called as a witness Robert Cornell who stated that this petitioner Mingues nor his wife (co-petitioner) Narvaez ever took any money from him. (Compl. at 8).

FN8. At his deposition, plaintiff testified that he filed the initial complaint "[a]pproximately around June of 1996." (Mingues Dep. at 37-38).

Lawsuits by inmates represented by counsel are commenced when the complaint is filed with the court. *See,* Fed.R.Civ.P. 3, 5(e). For *pro se* litigants, who are not imprisoned and have been granted *in forum pauperis* relief, their complaints are deemed filed when received by the Pro Se Office. *See,* *Toliver v. County of Sullivan,* 841 F.2d 41 (2d Cir.1998). The complaint of a *pro se* prisoner, however, is deemed filed when he or she gives the complaint to prisoner officials to be mailed. *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993), *modified on other grounds,* 25 F.3d 81 (2d Cir.1994). The "prison mailbox" rule is designed to combat inmate litigants' dependence on the prison facility's mail system and their lack of counsel so as to assure the timely filing of their legal papers with the court. *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001) (citations omitted). Given the difficulty in determining when a prisoner relinquishes control of the complaint to prison personnel, the date the plaintiff signed the original complaint is presumed to be the date plaintiff gave the complaint to prison officials to be mailed. *See e.g., Forster v. Bigger,* 2003 WL 22299326, *2 (S.D.N.Y. Oct.7, 2003); *Hosendove v. Myers,* 2003 WL 22216809, *2 (D.Conn. Sept.19, 2003); *Hayes v. N .Y.S. D.O.C. Officers,* 1998 WL 901730, *3 (S.D.N.Y. Dec.28, 1998); *Torres v. Irvin,* 33 F.Supp.2d 257, 270 (S.D.N.Y.1998) (cases cited therein).

**\*4** In response to the Report and Recommendation, plaintiff asserts that, in April, the original complaint "was placed in the facility mail box." (Pl.'s Objection to Report at 1). However, it is uncontested that plaintiff's wife signed the complaint on May 8th; it was received by the Pro Se Office on May 10th; and plaintiff's signature is dated May 13th. There is no explanation offered that could reasonably support and account for the existence of these May dates on a complaint which plaintiff falsely claims to have deposited to be mailed during the period of April 10th and April 12th. Had plaintiff mailed the complaint directly to the court prior to April 26th, it would have been impossible for the plaintiff's wife to have signed the document two

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 324898 (S.D.N.Y.)
(Cite as: 2004 WL 324898 (S.D.N.Y.))

days prior to the date that the Pro Se Office stamped it received on May 10th.[FN9] Moreover, absent evidence to the contrary, applying the mailbox rule would presume that plaintiff gave his complaint to prison officials on May 13, 1996, the date he signed it. *See, Johnson v. Coombe,* 156 F.Supp.2d 273, 277 (S.D.N.Y.2001) (quoting *Torres,* 33 F.Supp.2d at 270). Even if the Court gave plaintiff the benefit of the date plaintiff's wife signed the complaint, *i.e.,* the earliest date reflected on the filed complaint, it was still after the effective date of the PLRA. Hence, plaintiff is legally obligated to have pursued his prison grievance procedures prior to filing the instant action. The plaintiff has offered no explanation for the initial complaint's reference to events that occurred after the date he claims he filed it, the two May dates on which he and his former co-plaintiff wife signed the complaint, or the May date stamped received by the Pro Se Office. As the magistrate Judge observed:

FN9. The benefit of the mailbox rule does not apply where the plaintiff delivers the complaint to someone outside the prison system to forward to the court. *Knickerbocker v. Artuz,* 271 F.3d 35, 37 (2d Cir.2001).

Apart from the allegation that certain events giving rise to the claims occurred on April 9, 1996, the Original Complaint contains no mention of dates in April, 1996. Mingues no where explains the contradiction between the signature dates on the Original Complaint and the allegations contained in Amended Complaint. (Report at 12).

New York state law provides a three tier grievance procedure applicable to plaintiff's claims of excessive force. *See,* N.Y. Correct. Law § 139 (McKinnney's 2003); N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7 (2003); *Mendoz v. Goord,* 2002 WL 31654855 (S.D.N.Y.Nov.21, 2002); *Rodriguez v. Hahn,* 209 F.Supp.2d 344 (S.D.N.Y.2002). Plaintiff has not denied knowledge of the grievance procedure at his institution, nor claimed that anything or anyone caused him not to file a grievance and completely pursue it through the administrative process.[FN10] The magistrate judge's determination that the defendants' Rule 12(b) motion should be denied because of an "absence of a clear record" contrary to plaintiff's express allegation in the amended complaint that he

commenced the action before April 26, 1996 is erroneous. The Court could have *sua sponte* dismiss this action as the record is unmistakably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA. *See, Mojias v. Johnson,* 351 F.3d 606 (2003); *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999). In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear.

FN10. In the original complaint, plaintiff stated he did not file a grievance, pursuant to the state's prisoner grievance procedure, "because this matter can not be dealt with by interdepartmental grievances." (Compl. at 2-3). In plaintiff's attorney's memorandum in opposition to the motion to dismiss, counsel contends that plaintiff is not required to file a grievance because the state's prison system provides extremely limited administrative remedies and money damages, which plaintiff seeks, are not available.

**\*5** Accordingly, it is hereby

ORDERED that the Report and Recommendation is not adopted; and it is further

ORDERED that the defendants' motion to dismiss the complaint is granted.

S.D.N.Y.,2004.
Mingues v. Nelson
Not Reported in F.Supp.2d, 2004 WL 324898 (S.D.N.Y.)

END OF DOCUMENT

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
James MURRAY, Plaintiff,
v.
R. PALMER, Corrections Officer, Great Meadow
Correctional Facility; S. Griffin, Corrections Officer,
Great Meadow Correctional Facility; M. Terry,
Corrections Officer, Great Meadow Correctional
Facility; F. Englese, Corrections Officer, Great Meadow
Correctional Facility; Sergeant Edwards, Great Meadow
Correctional Facility; K. Bump, Sergeant, Great
Meadow Correctional Facility; K.H. Smith, Sergeant,
Great Meadow Correctional Facility; A. Paolano,
Facility Health Director: and Ted Nesmith, Physicians
Assistant, Defendants.
No. 9:03-CV-1010 (DNH/GLS).

June 20, 2008.
James Murray, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, James Seaman, Esq., Asst. Attorney General,
of Counsel, Albany, NY, for Defendants.

***ORDER***

DAVID N. HURD, District Judge.

**\*1** Plaintiff, James Murray, brought this civil rights
action pursuant to 42 U.S.C. § 1983. In a 51 page Report
Recommendation dated February 11, 2008, the Honorable
George H. Lowe, United States Magistrate Judge,
recommended that defendants' motion for summary
judgment be granted in part (i.e., to the extent that it
requests the dismissal with prejudice of plaintiff's claims
against defendant Paolano and Nesmith); and denied in
part (i.e., to the extent that it requests dismissal of
plaintiff's claims against the remaining defendants on the
grounds of plaintiff's failure to exhaust available
administrative remedies) for the reasons stated in the
Report Recommendation. Lengthy objections to the
Report Recommendation have been filed by the plaintiff.

Based upon a de novo review of the portions of the
Report-Recommendation to which the plaintiff has
objected, the Report-Recommendation is accepted and
adopted. See 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is
GRANTED in part and DENIED in part;

2. Plaintiff's complaint against defendants Paolano
and Nesmith is DISMISSED with prejudice;

3. Defendants' motion for summary judgment is
DENIED, to the extent that their request for dismissal of
plaintiff's assault claims under the Eighth Amendment
against the remaining defendants on the grounds of
plaintiff's failure to exhaust available administrative
remedies as stated in the Report-Recommendation.

IT IS SO ORDERED.

JAMES MURRAY, Plaintiff,

-v.-

R. PALMER, Corrections Officer, Great Meadow
C.F.; S. GRIFFIN, Corrections Officer, Great Meadow
C.F.; M. TERRY, Corrections Officer, Great Meadow
C.F.; F. ENGLESE, Corrections Officer, Great Meadow
C.F.; P. EDWARDS, Sergeant, Great Meadow C.F.; K.
BUMP, Sergeant, Great Meadow C.F.; K.H. SMITH,
Sergeant, Great Meadow C.F.; A. PAOLANO, Health
Director, Great Meadows C.F.; TED NESMITH,
Physicians Assistant, Great Meadows C.F., Defendants.

R. PALMER, Corrections Officer, Great Meadow
C.F.; S. GRIFFIN, Corrections Officer, Great Meadow
C.F.; M. TERRY, Corrections Officer, Great Meadow

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

C.F.; Counter Claimants,

-v.-

JAMES MURRAY, Counter Defendant.

### ORDER and REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently pending before the Court is Defendants' motion for summary judgment. (Dkt. No. 78.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Plaintiff's Second Amended Complaint

In his Second Amended Complaint, James Murray ("Plaintiff") alleges that nine correctional officials and health care providers employed by the New York State Department of Correctional Services ("DOCS") at Great Meadow Correctional Facility ("Great Meadow C.F.") violated his rights under the Eighth Amendment on August 17, 2000, when (1) Defendants Palmers, Griffin, Terry, and Englese assaulted him without provocation while he was incapacitated by mechanical restraints, (2) Defendants Edwards, Bump, and Smith witnessed, but did not stop, the assault, and (3) Defendants Paolano and Nesmith failed to examine and treat him following the assault despite his complaints of having a broken wrist. (Dkt. No. 10, ¶¶ 6-7 [Plf.'s Second Am. Compl.].)

### B. Defendants' Counterclaim

**\*2** In their Answer to Plaintiff's Second Amended Complaint, three of the nine Defendants (Palmer, Griffin and Terry) assert a counterclaim against Defendant for personal injuries they sustained as a result of Plaintiff's assault and battery upon them during the physical struggle that ensued between them and Plaintiff due to his threatening and violent behavior on August 17, 2000, at Great Meadow C.F. (Dkt. No. 35, Part 1, ¶¶ 23-30 [Defs.'

Answer & Counterclaim].)

I note that the docket in this action inaccurately indicates that this Counterclaim is asserted also on behalf of Defendants Englese, Edwards, Bump, Smith, Paolano, and "Nejwith" (later identified as "Nesmith"). (*See* Caption of Docket Sheet.) As a result, at the end of this Report-Recommendation, *I direct the Clerk's Office to correct the docket sheet to remove the names of those individuals as "counter claimants" on the docket.*

I note also that, while such counterclaims are unusual in prisoner civil rights cases (due to the fact that prisoners are often "judgment proof" since they are without funds), Plaintiff paid the $150 filing fee in this action (Dkt. No. 1), and, in his Second Amended Complaint, he alleges that he received a settlement payment in another prisoner civil rights actions in 2002. (Dkt. No. 10, ¶ 10 [Plf.'s Second Am. Compl.].) Further investigation reveals that the settlement resulted in a payment of $20,000 to Plaintiff. *See Murray v. Westchester County Jail,* 98-CV-0959 (S .D.N.Y.) (settled for $20,000 in 2002).

## II. DEFENDANTS' MOTION AND PLAINTIFF'S RESPONSE

### A. Defendants' Motion

In their motion for summary judgment, Defendants argue that Plaintiff's Second Amended Complaint should be dismissed for four reasons: (1) Plaintiff has failed to adduce any evidence establishing that Defendant Paolano, a supervisor, was personally involved in any of the constitutional violations alleged; (2) Plaintiff has failed to adduce any evidence establishing that Defendant Nesmith was deliberately indifferent to any of Plaintiff's serious medical needs; (3) at the very least, Defendant Nesmith is protected from liability by the doctrine of qualified immunity, as a matter of law; and (4) Plaintiff has failed to adduce any evidence establishing that he exhausted his available administrative remedies with respect to his assault claim, before filing that claim in federal court. (Dkt. No. 78, Part 13, at 2, 4-13 [Defs.' Mem. of Law].)

In addition, Defendants argue that, during his deposition in this action, Plaintiff asserted, for the first time, a claim that the medical staff at Great Meadow C.F. violated his rights under the Eighth Amendment by failing

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

to honor non-life-sustaining medical prescriptions written at a former facility. (*Id.* at 3.) As a threshold matter, Defendants argue, this claim should be dismissed since Plaintiff never included the claim in his Second Amended Complaint, nor did Plaintiff ever file a motion for leave to file a Third Amended Complaint. (*Id.*) In any event, Defendants argue, even if the Court were to reach the merits of this claim, the Court should dismiss the claim because Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, that Defendants were personally involved in the creation or implementation of DOCS' prescription-review policy, nor has Plaintiff provided such allegations or evidence indicating the policy is even unconstitutional. (*Id.*)

**\*3** Defendants' motion is accompanied by a Statement of Material Facts, submitted in accordance with Local Rule 7.1(a)(3) ("Rule 7.1 Statement"). (Dkt. No. 78, Part 12.) Each of the 40 paragraphs contained in Defendants' Rule 7.1 Statement is supported by an accurate citation to the record evidence. (*Id.*) It is worth mentioning that the record evidence consists of (1) the affirmations of Defendants Nesmith and Paolano, and exhibits thereto, (2) the affirmation of the Inmate Grievance Program Director for DOCS, and exhibits thereto, (3) affirmation of the Legal Liaison between Great Meadow C.F. and the New York State Attorney General's Office during the time in question, and exhibits thereto, and (4) a 155-page excerpt from Plaintiff's deposition transcript. (Dkt. No. 78.)

**B. Plaintiff's Response**

After being specifically notified of the consequences of failing to properly respond to Defendants' motion (*see* Dkt. No. 78, Part 1), and after being granted *three* extensions of the deadline by which to do so (*see* Dkt. Nos. 79, 80, 83), Plaintiff submitted a barrage of documents: (1) 49 pages of exhibits, which are attached to neither an affidavit nor a memorandum of law (Dkt. No. 84); (2) 113 pages of exhibits, attached to a 25-page affidavit (Dkt. No. 85); (3) 21 pages of exhibits, attached to a 12-page supplemental affidavit (Dkt. No. 86); and (4) a 29-page memorandum of law (Dkt. No. 86); and a 13-page supplemental memorandum of law (Dkt. No. 88).

Generally in his Memorandum of Law and Supplemental Memorandum of Law, Plaintiff responds to

the legal arguments advanced by Defendants. (*See* Dkt. No. 86, Plf.'s Memo. of Law [responding to Defs.' exhaustion argument]; Dkt. No. 88, at 7-13 [Plf.'s Supp. Memo. of Law, responding to Defs.' arguments regarding the personal involvement of Defendant Paolano, the lack of evidence supporting a deliberate indifference claim against Defendant Nesmith, the applicability of the qualified immunity defense with regard to Plaintiff's claim against Defendant Nesmith, and the sufficiency and timing of Plaintiff's prescription-review claim against Defendant Paolano].) Those responses are described below in Part IV of this Report-Recommendation.

However, unfortunately, not among the numerous documents that Plaintiff has provided is a *proper* response to Defendants' Rule 7.1 Statement. (*See* Dkt. No. 85, Part 2, at 45-52 [Ex. N to Plf.'s Affid.].) Specifically, Plaintiff's Rule 7.1 Response (which is buried in a pile of exhibits) fails, with very few exceptions, to "set forth ... specific citation[s] to the record," as required by Local Rule 7.1(a)(3). (*Id.*) I note that the notary's "sworn to" stamp at the end of the Rule 7.1. Statement does not transform Plaintiff's Rule 7.1 Response into record evidence so as to render that Response compliant with Local Rule 7.1. First, Local Rule 7.1 expressly states, "The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits." N.D.N.Y. L.R. 7.1(a)(3). In this way, the District's Local Rule, like similar local rules of other districts, contemplates citations to a record that is independent of a Rule 7.1 Response. *See, e.g., Vaden v. GAP, Inc.,* 06-CV-0142, 2007 U.S. Dist. LEXIS 22736, at \*3-5, 2007 WL 954256 (M.D.Tenn. March 26, 2007) (finding non-movant's verified response to movant's statement of material facts to be deficient because it did cite to affidavit or declaration, nor did it establish that non-movant had actual knowledge of matters to which he attested); *Waterhouse v. District of Columbia,* 124 F.Supp.2d 1, 4-5 (D.D.C.2000) (criticizing party's "Verified Statement of Material Facts," as being deficient in citations to independent record evidence, lacking "firsthand knowledge," and being purely "self-serving" in nature). Moreover, many of Plaintiff's statements in his Rule 7.1 Response are either argumentative in nature or lacking in specificity and personal knowledge, so as to disqualify those statements from having the effect of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

sworn testimony for purposes of a summary judgment motion. *See, infra,* notes 10-12 of this Report-Recommendation.

### III. GOVERNING LEGAL STANDARD

**\*4** Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists,FN1 the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.FN2

> FN1. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> FN2. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FN3 The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." FN4 Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." FN5

> FN3. Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary

judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

> FN4. Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading ...."); *Matsushita,* 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> FN5. *Ross v. McGinnis,* 00-CV-0275, 2004 WL 1125177, at \*8 (W.D.N.Y. Mar.29, 2004) [internal quotations omitted] [emphasis added].

What this burden-shifting standard means when a plaintiff has failed to *properly* respond to a defendant's Rule 7.1 Statement of Material Facts is that the facts as set forth in that Rule 7.1 Statement will be accepted as true FN6 to the extent that (1) those facts are supported by the evidence in the record,FN7 and (2) the non-moving party, if he is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.FN8

> FN6. *See* N.D.N.Y. L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."*) [emphasis in original].

> FN7. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243 (2d Cir.2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted].

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

FN8. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

Implied in the above-stated standard is the fact that a district court has no duty to perform an *independent* review of the record to find proof of a factual dispute, even if the non-movant is proceeding *pro se.*[FN9] In the event the district court chooses to conduct such an independent review of the record, any affidavit submitted by the non-movant, in order to be sufficient to create a factual issue for purposes of a summary judgment motion, must, among other things, not be conclusory.[FN10] (An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general.)[FN11] Finally, even where an affidavit is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[FN12]

FN9. *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432, 2004 WL 2309715 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N .Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4, 2006 WL 395269 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct.29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN10. *See* Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.,* 425 F.2d 92, 97 (2d Cir.1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

FN11. *See, e.g., Bickerstaff v. Vassar Oil,* 196 F.3d 435, 452 (2d Cir.1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.,* 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ); *Applegate,* 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

FN12. *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554-55 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at *3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb.15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd,* 136 F. App'x 383 (2d Cir.2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

## IV. ANALYSIS

## A. Whether Plaintiff Has Adduced Evidence Establishing that Defendant Paolano Was Personally Involved in the Constitutional Violations Alleged

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).[FN13] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN14] If the defendant is a supervisory official, such as a correctional facility superintendent or a facility health services director, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN15] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN16] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN17]

FN13. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

FN14. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

FN15. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

FN16. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

FN17. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,*

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

781 F.2d 319, 323-324 (2d Cir.1986) (setting forth four prongs).

**\*5** Defendants argue that Plaintiff has not adduced evidence establishing that Defendant Paolano, the Great Meadow C.F. Health Services Director during the time in question, was personally involved in the constitutional violations alleged. (Dkt. No. 78, Part 13, at 2 [Defs.' Memo. of Law].) In support of this argument, Defendants point to the record evidence establishing that, during the time in which Plaintiff was incarcerated at Great Meadow C.F. (i . e., from early August of 2000 to late November of 2000), Defendant Paolano never treated Plaintiff for any medical condition, much less a broken wrist on August 17, 2000. (*Id.; see also* Dkt. No. 78, Part 4, ¶¶ 7-8 [Paolano Affid.]; Dkt. No. 78, Part 5 [Ex. A to Paolano Affid.]; Dkt. No. 78, Part 11, at 32-33 [Plf.'s Depo.].)

Plaintiff responds that (1) Defendant Paolano was personally involved since he "treated" Plaintiff on August 17, 2000, by virtue of his supervisory position as the Great Meadow C.F.'s Health Services Director, and (2) Defendant Paolano has the "final say" regarding what medications inmates shall be permitted to retain when they transfer into Great Meadow C.F. (Dkt. No. 88, at 7-8 [Plf.'s Supp. Memo. of Law].) In support of this argument, Plaintiff cites a paragraph of his Supplemental Affidavit, and an administrative decision, for the proposition that Defendant Paolano, as the Great Meadow C.F. Health Services Director, had the "sole responsibility for providing treatment to the inmates under [the Facility's] care." (*Id.; see also* Dkt. No. 86, Suppl. Affid., ¶ 5 & Ex. 14.)

**1. Whether Defendant Paolano Was Personally Involved in Plaintiff's Treatment on August 17, 2000**

With respect to Plaintiff's first point (regarding Defendant Paolano's asserted "treatment" of Plaintiff on August 17, 2000), the problem with Plaintiff's argument is that the uncontroverted record evidence establishes that, as Defendants' assert, Defendant Paolano did not, in fact, treat Plaintiff on August 17, 2000 (or at any time when Plaintiff was incarcerated at Great Meadow C.F.). This was the fact asserted by Defendants in Paragraphs 38 of their Rule 7.1 Statement. (*See* Dkt. No. 78, Part 12, ¶ 38 [Defs.' Rule 7.1 Statement].) Defendants supported this

factual assertion with record evidence. (*Id.* [providing accurate record citations]; *see also* Dkt. No. 78, Part 12, ¶¶ 37-38 [Defs.' Rule 7.1 Statement, indicating that it was Defendant Nesmith, not Defendant Paolano, who treated Plaintiff on 8/17/00].) Plaintiff has failed to specifically controvert this factual assertion, despite having been given an adequate opportunity to conduct discovery, and having been specifically notified of the consequences of failing to properly respond to Defendants' motion (*see* Dkt. No. 78, Part 1), and having been granted *three* extensions of the deadline by which to do so (*see* Dkt. Nos. 79, 80, 83). Specifically, Plaintiff fails to cite any record evidence in support of his denial of Defendants' referenced factual assertion. (*See* Dkt. No. 85, Part 2, at 50 [Ex. N to Plf.'s Affid.].) As a result, under the Local Rules of Practice for this Court, Plaintiff has effectively "admitted" Defendants' referenced factual assertions. N.D.N.Y. L.R. 7.1(a)(3).

**\*6** The Court has no duty to perform an independent review of the record to find proof disputing this established fact. *See, supra,* Part III and note 9 of this Report-Recommendation. Moreover, I decline to exercise my discretion, and I recommend that the Court decline to exercise its discretion, to perform an independent review of the record to find such proof for several reasons, any one of which is sufficient reason to make such a decision: (1) as an exercise of discretion, in order to preserve judicial resources in light of the Court's heavy caseload; (2) the fact that Plaintiff has already been afforded considerable leniency in this action, including numerous deadline extensions and liberal constructions; and (3) the fact that Plaintiff is fully knowledgeable about the requirements of a non-movant on a summary judgment motion, due to Defendants' notification of those requirements, and due to Plaintiff's extraordinary litigation experience.

With regard to this last reason, I note that federal courts normally treat the papers filed by *pro se* civil rights litigants with special solicitude. This is because, generally, *pro se* litigants are unfamiliar with legal terminology and the litigation process, and because the civil rights claims they assert are of a very serious nature. However, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" that is normally afforded *pro se* litigants.[FN18] Generally, the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

rationale for diminishing special solicitude (at least in the Second Circuit) is that the *pro se* litigant's extreme litigiousness demonstrates his *experience,* the lack of which is the reason for extending special solicitude to a *pro se* litigant in the first place.[FN19] The Second Circuit has diminished this special solicitude, and/or indicated the acceptability of such a diminishment, on several occasions.[FN20] Similarly, I decide to do so, here, and I recommend the Court do the same.

FN18. *Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *3 & n. 17 (N.D.N.Y. Sept.26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

FN19. *Koehl,* 2007 WL 2846905, at *3 & n. 18 [citations omitted].

FN20. *See, e.g., Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n. 1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, at *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); *see also Raitport v. Chem. Bank,* 74 F.R.D. 128, 133 (S.D.N.Y.1977) [citing *Ackert v. Bryan,* No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring).

Plaintiff is no stranger to the court system. A review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") System reveals that Plaintiff has filed at least 15 other federal district court actions, [FN21] and at least three federal court appeals.[FN22] Furthermore, a review of the New York State Unified Court System's website reveals that he has filed at least 20 state court actions,[FN23] and at least two state court appeals.[FN24] Among these many actions he has had at least one victory, resulting in the payment of $20,000 to him in

settlement proceeds.[FN25]

FN21. *See Murray v. New York,* 96-CV-3413 (S.D.N.Y.); *Murray v. Westchester County Jail,* 98-CV-0959 (S.D.N.Y.); *Murray v. McGinnis,* 99-CV-1908 (W.D.N.Y.); *Murray v. McGinnis,* 99-CV-2945 (S.D.N.Y.); *Murray v. McGinnis,* 00-CV-3510 (S.D.N.Y.); *Murray v. Jacobs,* 04-CV-6231 (W.D.N.Y.); *Murray v. Bushey,* 04-CV-0805 (N.D.N.Y.); *Murray v. Goord,* 05-CV-1113 (N.D.N.Y.); *Murray v. Wissman,* 05-CV-1186 (N.D.N.Y.); *Murray v. Goord,* 05-CV-1579 (N.D.N.Y.); *Murray v. Doe,* 06-CV-0205 (S.D.N.Y.); *Murray v. O'Herron,* 06-CV-0793 (W.D.N.Y.); *Murray v. Goord,* 06-CV-1445 (N.D.N.Y.); *Murray v. Fisher,* 07-CV-0306 (W.D.N.Y.); *Murray v. Escrow,* 07-CV-0353 (W.D.N.Y.).

FN22. *See Murray v. McGinnis,* No. 01-2533 (2d Cir.); *Murray v. McGinnis,* No. 01-2536 (2d Cir.); *Murray v. McGinnis,* No. 01-2632 (2d Cir.).

FN23. *See Murray v. Goord,* Index No. 011568/1996 (N.Y. Sup.Ct., Westchester County); *Murray v. Goord,* Index No. 002383/1997 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002131/1998 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002307/1998 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002879/1998 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002683/2004 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002044/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. McGinnis,* Index No. 002099/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Sullivan,* Index No. 002217/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002421/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002495/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002496/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002888/2006 (N.Y. Sup.Ct., Chemung

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

County); *Murray v. LeClaire,* Index No. 002008/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. LeClaire,* Index No. 002009/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. LeClaire,* Index No. 002010/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. LeClaire,* Index No. 002011/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. Fisher,* Index No. 002762/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. New York,* Claim No. Claim No. 108304, Motion No. 67679 (N.Y.Ct.Cl.); *Murray v. New York,* Motion No. M-67997 (N.Y.Ct.Cl.).

FN24. *See Murray v. Goord,* No. 84875, 709 N.Y. S.2d 662 (N.Y.S.App.Div., 3d Dept.2000); *Murray v. Goord,* No. 83252, 694 N.Y.S.2d 797 (N.Y.S.App.Div., 3d Dept.1999).

FN25. *See Murray v. Westchester County Jail,* 98-CV-0959 (S.D.N.Y.) (settled for $20,000 in 2002).

I will add only that, even if I were inclined to conduct such an independent review of the record, the record evidence that Plaintiff cites regarding this issue in his Supplemental Memorandum of Law does not create such a question of fact. (*See* Dkt. No. 88, at 7-8 [Plf.'s Supp. Memo. of Law, citing Dkt. No. 86, Suppl. Affid., ¶ 5 & Ex. 14].) It appears entirely likely that Defendant Paolano had the ultimate responsibility for providing medical treatment to the inmates at Great Meadow C.F.FN26 However, this duty arose solely because of his supervisory position, i.e., as the Facility Health Services Director. It is precisely this sort of supervisory duty that does *not* result in liability under 42 U.S.C. § 1983, as explained above.

FN26. To the extent that Plaintiff relies on this evidence to support the proposition that Defendant Paolano had the "sole" responsibility for such health care, that reliance is misplaced. Setting aside the loose nature of the administrative decision's use of the word "sole," and the different context in which that word was used (regarding the review of Plaintiff's grievance about having had his prescription

discontinued), the administrative decision's rationale for its decision holds no preclusive effect in this Court. I note that this argument by Plaintiff, which is creative and which implicitly relies on principles of estoppel, demonstrates his facility with the law due to his extraordinary litigation experience.

**\*7** As for the other ways through which a supervisory official may be deemed "personally involved" in a constitutional violation under 42 U.S.C. § 1983, Plaintiff does not even argue (or allege facts plausibly suggesting) FN27 that Defendant Paolano *failed to remedy* the alleged deliberate indifference to Plaintiff's serious medical needs on August 17, 2000, after learning of that deliberate indifference through a report or appeal. Nor does Plaintiff argue (or allege facts plausibly suggesting) that Defendant Paolano created, or allowed to continue, *a policy or custom* under which the alleged deliberate indifference on August 17, 2000, occurred. Nor does Plaintiff argue (or allege facts plausibly suggesting) that Defendant Paolano had been *grossly negligent* in managing subordinates (such as Defendant Nesmith) who caused the alleged deliberate indifference. Nor does Plaintiff argue (or allege facts plausibly suggesting) that Defendant Paolano exhibited *deliberate indifference* to the rights of Plaintiff by failing to act on information indicating that Defendant Nesmith was violating Plaintiff's constitutional rights.

FN27. *See Bell Atl. Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (holding that, for a plaintiff's complaint to state a claim upon which relief might be granted under Fed.R.Civ.P. 8 and 12, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," or, in other words, there must be "plausible grounds to infer [actionable conduct]"), *accord, Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

original].

In the alternative, I reach the same conclusion (that Plaintiff's claim against Defendant Paolano arising from the events of August 17, 2000, lacks merit) on the ground that there was no constitutional violation committed by Defendant Nesmith on August 17, 2000, in which Defendant Paolano could have been personally involved, for the reasons discussed below in Part IV.B. of this Report-Recommendation.

**2. Whether Defendant Paolano Was Personally Involved in the Review of Plaintiff's Prescriptions in Early August of 2000**

With respect to Plaintiff's second point (regarding Defendant Paolano's asserted "final say" regarding what medications inmates shall be permitted to retain when they transfer into Great Meadow C.F.), there are three problems with this argument.

First, the argument regards a claim that is not properly before this Court for the reasons explained below in Part IV.E. of this Report-Recommendation.

Second, as Defendants argue, even if the Court were to reach the merits of this claim, it should rule that Plaintiff has failed to adduce evidence establishing that Defendant Paolano was personally involved in the creation or implementation of DOCS' prescription-review policy. It is an uncontroverted fact, for purposes of Defendants' motion, that (1) the decision to temporarily deprive Plaintiff of his previously prescribed pain medication (i.e., pending the review of that medication by a physician at Great Meadow C.F.) upon his arrival at Great Meadow C.F. was made by an "intake nurse," not by Defendant Paolano, (2) the nurse's decision was made pursuant to a policy instituted by DOCS, not by Defendant Paolano, and (3) Defendant Paolano did not have the authority to alter that policy. These were the facts asserted by Defendants in Paragraphs 6 through 9 of their Rule 7.1 Statement. (*See* Dkt. No. 78, Part 12, ¶¶ 6-9 [Defs.' Rule 7.1 Statement].) Defendants supported these factual assertions with record evidence. (*Id.* [providing accurate record citations].) Plaintiff expressly admits two of these factual assertions, and fails to support his denial of the remaining factual assertions with citations to record evidence that actually controverts the facts asserted. (Dkt. No. 85, Part 2, at

46-47 [Ex. N to Plf.'s Affid.].)

**\*8** For example, in support of his denial of Defendants' factual assertion that "[t]his policy is not unique to Great Meadow, but applies to DOCS facilities generally," Plaintiff says that, at an unidentified point in time, "Downstate CF honored doctors proscribed [sic] treatment and filled by prescriptions from Southport Correctional Facility .... Also I've been transferred to other prisons such as Auburn [C.F.] in which they honored doctors prescribe[d] orders." (*Id.*) I will set aside the fact that Defendants' factual assertion is not that the policy applies to every single DOCS facility but that it applies to them as a general matter. I will also set aside the fact that Plaintiff's assertion is not supported by a citation to independent record evidence. The main problem with this assertion is that it is not specific as to what year or years he had these experiences, nor does it even say that his prescriptions were immediately honored without a review by a physician at the new facility.

The other piece of "evidence" Plaintiff cites in support of this denial is "Superintendent George B. Duncan's 9/22/00 decision of Appeal to him regarding [Plaintiff's Grievance No.] GM-30651-00." (*Id.*) The problem is that the referenced determination states merely that Defendant Paolano, as the Great Meadow C.F. Health Services Director, had the "sole responsibility for providing treatment to the inmates under [the Facility's] care, and has the final say regarding all medical prescriptions." (Dkt. No. 86, at 14 [Ex. 14 to Plf.'s Suppl. Affid.].) For the sake of much-needed brevity, I will set aside the issue of whether an IGP Program Director's broadly stated *rationale* for an appellate determination with respect to a prisoner's grievance can ever constitute evidence sufficient to create proof of a genuine issue of fact for purposes of a summary judgment motion. The main problem with this "evidence" is that there is absolutely nothing inconsistent between (1) a DOCS policy to temporarily deprive prisoners of non-life-sustaining prescription medications upon their arrival at a correctional facility, pending the review of those medical prescriptions by a physician at the facility, and (2) a DOCS policy to give Facility Health Service Directors the "final say" regarding the review of those medical prescriptions.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

Because Plaintiff has failed to support his denial of these factual assertions with citations to record evidence that actually controverts the facts asserted, I will consider the facts asserted by Defendants as true. N.D.N.Y. L.R. 7.1(a)(3). Under the circumstances, I decline, and I recommend the Court decline, to perform an independent review of the record to find proof disputing this established fact for the several reasons described above in Part IV.A.1. of this Report-Recommendation.

Third, Plaintiff has failed to adduce evidence establishing that the policy in question is even unconstitutional. I note that, in his Supplemental Memorandum of Law, Plaintiff argues that "deliberate indifference to serious medical needs is ... shown by the fact that prisoners are denied access to a doctor and physical examination upon arrival at [Great Meadow] C.F. to determine the need for pain medications which aren't life sustaining ...." (Dkt. No. 88, at 10 [Plf.'s Supp. Memo. of Law].) As a threshold matter, Plaintiff's argument is misplaced to the extent he is arguing about the medical care other prisoners may not have received upon their arrival at Great Meadow C.F. since this is not a class-action. More importantly, to the extent he is arguing about any medical care that he (allegedly) did not receive upon his arrival at Great Meadow C.F., he cites no record evidence in support of such an assertion. (*Id.*) Indeed, he does not even cite any record evidence establishing that, upon his arrival at Great Meadow C.F. in early 2000, either (1) he asked a Defendant in this action for such medical care, or (2) he was suffering from a serious medical need for purposes of the Eighth Amendment. (*Id.*)

**\*9** If Plaintiff is complaining that Defendant Paolano is liable for recklessly causing a physician at Great Meadow C.F. to excessively delay a review Plaintiff's pain medication upon his arrival at Great Meadow C.F., then Plaintiff should have asserted that allegation (and some basic facts supporting it) in a pleading in this action so that Defendants could have taken adequate discovery on it, and so that the Court could squarely review the merits of it. (Dkt. No. 78, Part 11, at 53 [Plf.'s Depo.].)

For all of these reasons, I recommend that Plaintiff's claims against Defendant Paolano be dismissed with

prejudice.

**B. Whether Plaintiff Has Adduced Evidence Establishing that Defendant Nesmith Was Deliberately Indifferent to Plaintiff's Serious Medical Needs**

Generally, to state a claim for inadequate medical care, a plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious medical need; and (2) that the defendants were deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

Defendants argue that, even assuming that Plaintiff's broken wrist constituted a sufficiently serious medical condition for purposes of the Eighth Amendment, Plaintiff has not adduced evidence establishing that, on August 17, 2000, Defendant Nesmith acted with deliberate indifference to that medical condition. (Dkt. No. 78, Part 13, at 4-9 [Defs.' Memo. of Law].) In support of this argument, Defendants point to the record evidence establishing that Defendant Nesmith sutured lacerations in Plaintiff's forehead, ordered an x-ray examination of Plaintiff's wrist, and placed that wrist in a splint (with an intention to replace that splint with a cast once the swelling in Plaintiff's wrist subsided) within 24 hours of the onset of Plaintiff's injuries. (*Id.* at 7-9 [providing accurate record citations].) Moreover, argue Defendants, Plaintiff's medical records indicate that he did not first complain of an injury to his wrist until hours after he experienced that injury. (*Id.* at 8 [providing accurate record citation].)

Plaintiff responds that "[he] informed P.A. Nesmith that his wrist felt broken and P.A. Nesmith ignored plaintiff, which isn't reasonable. P.A. Nesmith didn't even care to do a physical examination to begin with[,] which would've revealed [the broken wrist] and is fundamental medical care after physical trauma." (Dkt. No. 88, at 11 [Plf.'s Supp. Memo. of Law].) In support of this argument, Plaintiff cites *no* record evidence. (*Id.* at 11-12.)

The main problem with Plaintiff's argument is that the uncontroverted record evidence establishes that, as Defendants have argued, Defendant Nesmith (1) sutured lacerations in Plaintiff's forehead within hours if not minutes of Plaintiff's injury and (2) ordered an x-ray

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

examination of Plaintiff's wrist, and placed that wrist in a splint (with an intention to replace that splint with a cast once the swelling in Plaintiff's wrist subsided) within 24 hours of the onset of Plaintiff's injuries. These facts were asserted by Defendants in Paragraphs 27 through 32 of their Rule 7.1 Statement. (*See* Dkt. No. 78, Part 12, ¶¶ 27-32 [Defs.' Rule 7.1 Statement].) Defendants supported these factual assertions with record evidence. (*Id.* [providing accurate record citations].) Plaintiff expressly admits most of these factual assertions, and fails to support his denial of the remaining factual assertions with citations to record evidence that actually controverts the facts asserted. (Dkt. No. 85, Part 2, at 48-50 [Ex. N to Plf.'s Affid.].)

**\*10** The only denial he supports with a record citation is with regard to when, within the referenced 24-hour period, Defendant Nesmith ordered his wrist x-ray. This issue is not material, since I have assumed, for purposes of Defendants' motion, merely that Defendant Nesmith ordered Plaintiff's wrist x-ray within 24 hours of the onset of Plaintiff's injury.[FN28] (Indeed, whether the wrist x-ray was ordered in the late evening of August 17, 2000, or the early morning of August 18, 2000, would appear to be immaterial for the additional reason that it would appear unlikely that any x-rays could be conducted in the middle of the night in Great Meadow C.F.)

FN28. Furthermore, I note that the record evidence he references (in support of his argument that the x-ray was on the morning of August 18, 2000, not the evening of August 17, 2000) is "Defendants exhibit 20," which he says "contains [an] 11/20/00 Great Meadow Correctional Facility Investigation Sheet by P. Bundrick, RN, NA, and Interdepartmental Communication from defendant Ted Nesmith P.A. that state [that the] X ray was ordered on 8/18/00 in the morning." (*Id.*) I cannot find, in the record, any "exhibit 20" having been submitted by Defendants, who designated their exhibits by letter, not number. (*See generally* Dkt. No. 78). However, at Exhibit G of Defendant Nesmith's affidavit, there is the "Investigation Sheet" to which Plaintiff refers. (Dkt. No. 78, Part 3, at 28 [Ex. G to Nesmith

Affid.].) The problem is that document does not say what Plaintiff says. Rather, it says, "Later that evening [on August 17, 2000] ... [a]n x-ray was ordered for the following morning ...." (*Id.*) In short, the document says that the x-ray was not ordered *on* the morning of August 18, 2007, but *for* that morning. Granted, the second document to which Plaintiff refers, the "Interdepartmental Communication" from Defendant Nesmith, does say that "I saw him the next morning and ordered an xray ...." (*Id.* at 29.) I believe that this is a misstatement, given the overwhelming record evidence to the contrary.

Moreover, in confirming the accuracy of Defendants' record citations contained in their Rule 7.1 Statement, I discovered several facts further supporting a finding that Defendant Nesmith's medical care to Plaintiff was both prompt and responsive. In particular, the record evidence cited by Defendants reveals the following specific facts:

(1) at approximately 10:17 a.m. on August 17, 2000, Plaintiff was first seen by someone in the medical unit at Great Meadow C.F. (Nurse Hillary Cooper);

(2) at approximately 10:40 a.m. on August 17, 2000, Defendant Nesmith examined Plaintiff; during that examination, the main focus of Defendant Nesmith's attention was Plaintiff's complaint of the lack of feeling in his lower extremities; Defendant Nesmith responded to this complaint by confirming that Plaintiff could still move his lower extremities, causing Plaintiff to receive an x-ray examination of his spine (which films did not indicate any pathology), and admitting Plaintiff to the prison infirmary for observation;

(3) at approximately 11:00 a.m. on August 17, 2000, Defendant Nesmith placed four sutures in each of two 1/4" lacerations on Plaintiff's left and right forehead;

(4) by 11:20 a.m. Plaintiff was given, or at least prescribed, Tylenol by a medical care provider;

(5) Plaintiff's medical records reflect no complaint by Plaintiff of any injury to his wrist at any point in time other than between 4:00 p.m. and midnight on August 17,

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

2000;

(6) at some point after 9:00 p.m. on August 17, 2000, and 9:00 a.m. on the morning of August 18, 2000, Defendant Nesmith ordered that Plaintiff's wrist be examined by x-ray, in response to Plaintiff's complaint of an injured wrist; that x-ray examination occurred at Great Meadow C.F. at some point between 9:00 a.m. on August 17, 2000, and 11:00 a.m. on August 18, 2000, when Defendant Nesmith personally performed a "wet read" of the x-rays before sending them to Albany Medical Center for a formal reading by a radiologist;

(7) at approximately 11:00 a.m. on August 18, 2000, Defendant Nesmith placed a splint on Plaintiff's wrist and forearm with the intent of replacing it with a cast in a couple of days; the reason that Defendant Nesmith did not use a cast at that time was that Plaintiff's wrist and forearm were swollen, and Defendant Nesmith believed, based on 30 years experience treating hundreds of fractures, that it was generally not good medical practice to put a cast on a fresh fracture, because the cast will not fit tightly once the swelling subsides;

**\*11** (8) on August 22, 2000, Defendant Nesmith replaced the splint with a cast;

(9) on August 23, 2000, Plaintiff was discharged from the infirmary at Great Meadow C.F.; and

(10) on August 30, 2000, Defendant Nesmith removed the sutures from Plaintiff's forehead. (*See generally* Dkt. No. 78, Part 2, ¶¶ 3-15 [Aff. of Nesmith]; Dkt. No. 78, Part 3, Exs. A-E [Exs. to Aff. of Nesmith].)

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," [FN29] one that is "equivalent to criminal recklessness." [FN30] There is no evidence of such criminal recklessness on the part of Defendant Nesmith, based on the uncontroverted facts before the Court, which show a rather prompt and responsive level of medical care given by Defendant Nesmith to Plaintiff, during the hours and days following the onset of his injuries.

FN29. *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

FN30. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *cf. Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

In his argument that his treatment in question constituted deliberate indifference to a serious medical need, Plaintiff focuses on the approximate 24-hour period that appears to have elapsed between the onset of his injury and his receipt of an x-ray examination of his wrist. He argues that this 24-hour period of time constituted a delay that was unreasonable and reckless. In support of his argument, he cites two cases. *See Brown v. Hughes,* 894 F.2d 1533, 1538-39 (11th Cir.), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Loe v. Armistead,* 582 F.2d 1291, 1296 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). However, the facts of both cases are clearly distinguishable from the facts of the case at hand.

In *Brown v. Hughes,* the Eleventh Circuit found a genuine issue of material fact was created as to whether a correctional officer knew of a prisoner's foot injury during the four hours in which no medical care was provided to the prisoner, so as to preclude summary judgment for that officer. *Brown,* 894 F.2d at 1538-39. However, the Eleventh Circuit expressly stated that the question of fact was created because the prisoner had "submitted affidavits stating that [the officer] was called to his cell because there had been a fight, that while [the officer] was present [the prisoner] began to limp and then hop on one leg, that his foot began to swell severely, that he told [the officer] his foot felt as though it were broken, and that [the officer] promised to send someone to look at it but never did." *Id.* Those are *not* the facts of this case.

In *Loe v. Armistead,* the Fourth Circuit found merely that, in light of the extraordinary leniency with which *pro se* complaints are construed, the court was unable to conclude that a prisoner had failed to state a claim upon which relief might be granted for purposes of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) (6) because the prisoner had alleged that the defendants-*despite being (at some point) "notified"* of the prisoner's injured arm-had inexplicably delayed for 22 hours in giving him medical treatment for the injury. *Loe,* 582 F.2d at 1296. More specifically, the court expressly construed the prisoner's

complaint as alleging that, following the onset of the plaintiff's injury at 10:00 a.m. on the day in question, the plaintiff was immediately taken to the prison's infirmary where a nurse, while examining the prisoner's arm, heard him complain to her about pain. *Id.* at 1292. Furthermore, the court construed the prisoner's complaint as alleging that, "[t]hroughout the day, until approximately 6:00 p.m., [the prisoner] repeatedly requested that he be taken to the hospital. He was repeatedly told that only the marshals could take him to a hospital and that they had been notified of his injury." *Id.* at 1292-93. Again, those are *not* the facts of this case.

**\*12** Specifically, there is no evidence in the record of which I am aware that at any time before 4:00 p.m. on August 17, 2000, Defendant Nesmith either (1) heard Plaintiff utter a complaint about a wrist injury sufficient to warrant an x-ray examination or (2) observed physical symptoms in Plaintiff's wrist (such as an obvious deformity) that would place him on notice of such an injury. As previously stated, I decline, and I urge the Court to decline, to tediously sift through the 262 pages of documents that Plaintiff has submitted in the hope of finding a shred of evidence sufficient to create a triable issue of fact as to whether Plaintiff made, and Defendant Nesmith heard, such a complaint before 4:00 p.m. on August 17, 2000.

I note that, in reviewing Plaintiff's legal arguments, I have read his testimony on this issue. That testimony is contained at Paragraphs 8 through 12, and Paragraph 18, of his Supplemental Affidavit. (*See* Dkt. No. 86, at ¶¶ 8-10, 18 [Plf.'s Supp. Affid., containing two sets of Paragraphs numbed "5" through "11"].) In those Paragraphs, Plaintiff swears, in pertinent part, that "[w]hile I was on the x-ray table I told defendant Ted Nesmith, P.A. and/or Bill Redmond RN ... that my wrist felt broken, and was ignored." (*Id.* at ¶ 9.) Plaintiff also swears that "I was [then] put into a room in the facility clinic[,] and I asked defendant Ted Nesmith, PA[,] shortly thereafter for [an] x-ray of [my] wrist[,] pain medication and [an] ice pack but wasn't given it [sic]." (*Id.* at ¶ 10.) Finally, Plaintiff swears as follows: "At one point on 8/17/00 defendant Nesmith told me that he didn't give a damn when I kept complaining that my wrist felt broken and how I'm going to sue him cause I'm not stupid

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

[enough] to not know he's supposed to do [a] physical examination [of me], [and not] to ignore my complaints about [my] wrist feeling broke and feeling extreem [sic] pain. He told me [to] stop complaining [and that] he's done with me for the day." (*Id.* at ¶ 18.)

This last factual assertion is important since a response of "message received" from the defendant appears to have been critical in the two cases cited by Plaintiff. It should be emphasized that, according to the undisputed facts, when Plaintiff made his asserted wrist complaint to Defendant Nesmith during the morning of August 17, 2000, Defendant Nesmith was either suturing up Plaintiff's forehead or focusing on Plaintiff's complaint of a lack of feeling in his lower extremities. (This complaint of lack of feeling, by the way, was found to be inconsistent with Defendant Nesmith's physical examination of Plaintiff.)

In any event, Defendant Nesmith can hardly be said to have, in fact, "ignored" Plaintiff since he placed him under *observation* in the prison's infirmary (and apparently was responsible for the prescription of Tylenol for Plaintiff).[FN31] Indeed, it was in the infirmary that Plaintiff was observed by a medical staff member to be complaining about his wrist, which resulted in an x-ray examination of Plaintiff's wrist.

> FN31. In support of my conclusion that this fact alone is a sufficient reason to dismiss Plaintiff's claims against Defendant Nesmith, I rely on a case cited by Plaintiff himself. *See Brown,* 894 F.2d at 1539 ("Although no nurses were present [in the hospital] at the jail that day, the procedure of sending [the plaintiff] to the hospital, once employed, was sufficient to ensure that [the plaintiff's broken] foot was treated promptly. Thus, [the plaintiff] has failed to raise an issue of deliberate indifference on the part of these defendants, and the order of summary judgment in their favor must be affirmed.").

**\*13** Even if it were true that Plaintiff made a wrist complaint directly to Defendant Nesmith (during Defendant Nesmith's examination and treatment of Plaintiff between 10:40 a.m. and 11:00 a.m. on August 17,

2000), and Defendant Nesmith heard that complaint, and that complaint were specific and credible enough to warrant an immediate x-ray examination, there would be, at most, only some *negligence* by Defendant Nesmith in not ordering an x-ray examination until 9:00 p.m. that night.

As the Supreme Court has observed, "[T]he question of whether an X-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice....." *Estelle,* 429 U.S. at 107.[FN32] For this reason, this Court has actually held that a *17-day* delay between the onset of the prisoner's apparent wrist fracture and the provision of an x-ray examination and cast did not constitute deliberate indifference, as a matter of law. *Miles v. County of Broome,* 04-CV-1147, 2006 U.S. Dist. LEXIS 15482, at \*27-28, 2006 WL 561247 (N.D.N.Y. Mar. 6, 2006) (McAvoy, J.) (granting defendants' motion for summary judgment with regard to prisoner's deliberate indifference claim).

> FN32. *See also Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) (prisoner's "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention [with regard to the treatment of his broken finger], are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted]; *cf. O'Bryan v. Federal Bureau of Prisons,* 07-CV-0076, 2007 U.S. Dist. LEXIS 65287, at \*24-28 (E.D.Ky. Sept. 4, 2007) (holding no deliberate indifference where prisoner wore wrist brace/bandage on his broken wrist for two months even though he had asked for a cast; finding that "the type of wrap would only go the difference of opinion between a patient and doctor about what should be done, and the Supreme Court has stated that a difference of opinion regarding the plaintiff's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

diagnosis and treatment does not state a constitutional claim.").

As I read Plaintiff's complaints about the medical care provided to him by Defendant Nesmith in this action, I am reminded of what the Second Circuit once observed:

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[ ] understandably seeks .... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution.... The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves ....

*Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) [internal quotations and citations omitted].

For all of these reasons, I recommend that Plaintiff's claims against Defendant Nesmith be dismissed with prejudice.

### C. Whether Defendant Nesmith Is Protected from Liability by the Doctrine of Qualified Immunity, As a Matter of Law

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " [FN33] In determining whether a particular right was *clearly established,* courts in this Circuit consider three factors:

> FN33. *Williams,* 781 F.2d at 322 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ).

*14 (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.[FN34]

> FN34. *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citations omitted).

Regarding the issue of whether *a reasonable person would have known* he was violating a clearly established right, this "objective reasonableness" [FN35] test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." [FN36] As the Supreme Court explained,

> FN35. See *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") (quoting *Harlow,* 457 U.S. at 819); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

> FN36. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) (citing cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law .... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

should be recognized.[FN37]

FN37. *Malley,* 475 U.S. at 341.

Furthermore, courts in the Second Circuit recognize that "the use of an 'objective reasonableness' standard permits qualified immunity claims to be decided as a matter of law."[FN38]

FN38. *Malsh,* 901 F.Supp. at 764 (citing *Cartier v. Lussier,* 955 F.2d 841, 844 [2d Cir.1992] [citing Supreme Court cases].)

Here, I agree with Defendants that, based on the current record, it was not clearly established that, between August 17, 2000, and August 22, 2000, Plaintiff possessed an Eighth Amendment right to receive an x-ray examination and casting of his wrist any sooner than he did. (Dkt. No. 78, Part 13, at 9-11 [Defs'. Memo. of Law].) I note that neither of the two decisions cited by Plaintiff (discussed earlier in this Report-Recommendation) were controlling in the Second Circuit. *See Brown v. Hughes,* 894 F.2d 1533, 1538-39 (11th Cir.), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Loe v. Armistead,* 582 F.2d 1291, 1296 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). I also note that what was controlling was the Supreme Court's decision in *Estelle v. Gamble,* holding that "the question of whether an X-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice....." *Estelle,* 429 U.S. at 107.

Furthermore, I agree with Defendants that, at the very least, officers of reasonable competence could have believed that Defendant Nesmith's actions in conducting the x-ray examination and casting when he did were legal.[FN39] In his memorandum of law, Plaintiff argues that Defendant Nesmith *intentionally* delayed giving Plaintiff an x-ray for 12 hours, and that the four-day delay of placing a hard cast on Plaintiff's wrist caused Plaintiff *permanent injury to his wrist.* (Dkt. No. 88, at 12-13 [Plf.'s Supp. Memo. of Law].) He cites no portion of the

record for either assertion. (*Id.*) Nor would the fact of permanent injury even be enough to propel Plaintiff's Eighth Amendment claim to a jury.[FN40] I emphasize that it is an undisputed fact, for purposes of Defendants' motion, that the reason that Defendant Nesmith placed a splint and not a cast on Plaintiff's wrist and arm on the morning of August 18, 2000, was that Plaintiff's wrist and forearm were swollen, and Defendant Nesmith's medical judgment (based on his experience) was that it was not good medical practice to put a cast on a fresh fracture, because the cast will not fit tightly once the swelling subsides.[FN41] Officers of reasonable competence could have believed that decision was legal.

FN39. (*Id.*)

FN40. This particular point of law was recognized in one of the cases Plaintiff himself cites. *Loe,* 582 F.2d at 1296, n. 3 ("[Plaintiff's] assertion that he suffered pain two and one-half weeks after the injury and that the fracture had not healed do not establish deliberate indifference or lack of due process. Similarly, his allegation that he has not achieved a satisfactory recovery suggests nothing more than possible medical malpractice. It does not assert a constitutional tort.").

FN41. (Dkt. No. 78, Part 12, ¶¶ 31-33 [Defs.' Rule 7.1 Statement]; *see also* Dkt. No. 78, Part 2, ¶¶ 11-13 [Affid. of Nesmith]; Dkt. No. 78, Part 3, Ex. C [Exs. to Affid. of Nesmith] )

**\*15** As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendant Nesmith based on the doctrine of qualified immunity.

**D. Whether Plaintiff Has Adduced Evidence Establishing that He Exhausted His Available Administrative Remedies with Respect to His Assault Claim**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

or other correctional facility until such administrative remedies as are available are exhausted." [FN42] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [FN43] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.[FN44]

> FN42. 42 U.S.C. § 1997e.

> FN43. *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

> FN44. 7 N.Y.C.R.R. § 701.7.

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure.[FN45] *First,* an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal. It is important to emphasize that *any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.* [FN46]

> FN45. 7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

> FN46. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g ., Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [FN47] However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[FN48] *First,* "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." [FN49] *Second,* if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." [FN50] *Third,* if the remedies were available and some of the defendants did not forfeit, and

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." [FN51]

> FN47. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

> FN48. *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

> FN49. *Hemphill,* 380 F.3d at 686 (citation omitted).

> FN50. *Id.* [citations omitted].

> FN51. *Id.* [citations and internal quotations omitted].

**\*16** Defendants argue that Plaintiff never exhausted his available administrative remedies with regard to his claim arising out of the assault that allegedly occurred on August 17, 2000. (Dkt. No. 78, Part 13, at 9-11 [Defs.' Memo. of Law].)

Plaintiff responds with four different legal arguments. First, he appears to argue that he handed a written grievance to an unidentified corrections officer but never got a response from the IGRC, and that filing an appeal under such a circumstance is merely optional, under the PLRA (Dkt. No. 86, at 23-25, 44 [Plf.'s Memo. of Law].) Second, he argues that Defendants "can't realistically show" that Plaintiff never sent any grievances or appeals to the Great Meadow C.F. Inmate Grievance Clerk since that facility did not (during the time in question) have a grievance "receipt system." (*Id.* at 25-29.) In support of this argument, he cites unspecified record evidence that, although he sent a letter to one "Sally Reams" at some point and received a letter back from her on May 5, 2003, she later claimed that she had never received a letter from Plaintiff. (*Id.* at 29.) Third, he argues that the determination he received from CORC (at some point) satisfied the PLRA's exhaustion requirement. (*Id.* at 30-38.) Fourth, he argues that Defendants rendered any

administrative remedies "unavailable" to Plaintiff, for purposes of the Second Circuit's above-described three-part exhaustion inquiry, by (1) failing to cause DOCS to provide proper "instructional provisions" in its directives, (2) failing to cause Great Meadow C.F. to have a grievance "receipt system," and (3) "trash [ing]" Plaintiff's grievances and appeals. (*Id.* at 39-45.) [FN52]

> FN52. I note that the breadth of Plaintiff's creative, thoughtful and well-developed legal arguments further demonstrates his extraordinary experience as a litigant.

For the reasons set forth below, I reject each of these arguments. However, I am unable to conclude, for another reason, that Plaintiff has failed to exhaust his administrative remedies as a matter of law, based on the current record.

**1. Plaintiff's Apparent Argument that an Appeal from His Lost or Ignored Grievance Was "Optional" Under the PLRA**

Plaintiff apparently argues that filing an appeal to CORC when one has not received a response to one's grievance is merely optional under the PLRA. (Dkt. No. 86, at 23-25, 44 [Plf.'s Memo. of Law].) If this is Plaintiff's argument, it misses the point.

It may be true that the decision of whether or not to file an appeal in an action is always "optional"-from a metaphysical standpoint. However, it is also true that, in order to satisfy the PLRA's exhaustion requirement, one *must* file an appeal when one has not received a response to one's grievance (unless one of the exceptions contained in the Second Circuit's three-party inquiry exists). *See, supra,* note 46 of this Report-Recommendation.

**2. Plaintiff's Argument that Defendants "Can't Realistically Show" that Plaintiff Never Sent any Grievances or Appeals to the Great Meadow C.F. Inmate Grievance Clerk**

Plaintiff also argues that Defendants "can't realistically show" that Plaintiff never sent any grievances or appeals to the Great Meadow C.F. Inmate Grievance Clerk since that facility did not (during the time in question) have a grievance "receipt system." (Dkt. No. 86,

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

at 25-29 [Plf.'s Memo. of Law].) This argument also fails.

**\*17** Plaintiff appears to misunderstand the parties' respective burdens on Defendants' motion for summary judgment. Even though a failure to exhaust is an affirmative defense that a defendant must plead and prove, once a defendant has met his initial burden of establishing the absence of any genuine issue of material fact regarding exhaustion (which initial burden has been appropriately characterized as "modest"),[FN53] the burden then shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial regarding exhaustion. *See, supra,* Part III of this Report-Recommendation.

> FN53. *See Ciaprazi v. Goord,* 02-CV-0915, 2005 WL 3531464, at \*8 (N.D.N.Y. Dec.22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord, Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at \*9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at \*17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).

Here, it is an uncontroverted fact, for purposes of Defendants' motion, that (1) grievance records at Great Meadow C.F. indicate that Plaintiff never filed a timely grievance alleging that he had been assaulted by corrections officers at Great Meadow C.F. in 2000, and (2) records maintained by CORC indicate that Plaintiff never filed an appeal (to CORC) regarding any grievance alleging that he had been so assaulted. (*See* Dkt. No. 78, Part 12, ¶¶ 39-40 [Defs.' Rule 7.1 Statement, providing accurate record citations].) Plaintiff has failed to properly controvert these factual assertions with specific citations to record evidence that actually creates a genuine issue of fact. (*See* Dkt. No. 85, Part 2, at 50-51 [Ex. N to Plf.'s Affid.].) As a result, under the Local Rules of Practice for this Court, Plaintiff has effectively "admitted" Defendants' referenced factual assertions. N.D.N.Y. L.R. 7.1(a)(3).

With respect to Plaintiff's argument that the referenced factual assertions are basically meaningless because Great Meadow C.F. did not (during the time in question) have a grievance "receipt system," that argument also fails. In support of this argument, Plaintiff cites unspecified record evidence that, although he sent a letter to Sally Reams (the IGP Supervisor at Great Meadow C.F. in May 2003) at some point and received a letter back from her on May 5, 2003, she later claimed that she had never received a letter from Plaintiff. (*Id.* at 29.) (*See* Dkt. No. 86, at 29 [Plf.'s Memo. of Law].) After examining Plaintiff's original Affidavit and exhibits, I located and carefully read the documents in question. (Dkt. No. 85, Part 1, ¶ 23 [Plf.'s Affid.]; Dkt. No. 85, Part 2 [Exs. F and G to Plf.'s Affid.].)

These documents do not constitute sufficient evidence to create a triable question of fact on the issue of whether, in August and/or September of 2000, Great Meadow C.F. did not have a grievance "receipt system." At most, they indicate that (1) at some point, nearly three years after the events at issue, Plaintiff (while incarcerated at Attica C.F.) wrote to Ms. Reams complaining about the alleged assault on August 17, 2000, (2) she responded to Plaintiff, on May 5, 2003, that he must grieve the issue at Attica C .F., where he must request permission to file an untimely grievance, and (3) at some point between April 7, 2003, and June 23, 2003, Ms. Reams informed Mr. Eagen that she did not "remember" receiving "correspondence" from Plaintiff. (*Id.*) The fact that Ms. Reams, after the passing of several weeks and perhaps months, did not retain an independent memory (not record) of receiving a piece of "correspondence" (not grievance) from Plaintiff (who was not an inmate currently incarcerated at her facility) bears little if any relevance on the issue of whether Great Meadow C.F. had, in April and/or May of 2003, a mechanism by which it recorded its receipt of *grievances.* Moreover, whether or not Great Meadow C.F. had a grievance "receipt system" in April and/or May of 2003 bears little if any relevance to whether it had a grievance "receipt system" in August and/or September of 2000.

**\*18** It should be emphasized that Defendants have adduced record evidence specifically establishing that, in August and September 2000, Great Meadow C.F. had a *functioning* grievance-recording process through which,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

when a prisoner (and specifically Plaintiff) filed a grievance, it was "assign[ed] a number, title and code" and "log[ged] ... into facility records." (Dkt. No. 78, Part 6, ¶¶ 7-9 [Bellamy Decl.]; Dkt. No. 78, Part 7, at 2 [Ex. A to Bellamy Decl.] Dkt. No. 78, Part 8, ¶ 4 [Brooks Decl.]; Dkt. No. 78, Part 9, at 6 [Ex. B to Brooks Decl.].)

Finally, even if Great Meadow C.F. did not (during the time in question) have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level. *See, supra,* note 46 of this Report-Recommendation.

**3. Plaintiff's Argument that the Determination He Received from CORC Satisfied the PLRA's Exhaustion Requirement**

Plaintiff argues that the determination he received from CORC (at some point) satisfied the PLRA's exhaustion requirement. (Dkt. No. 86, at 30-38 [Plf.'s Memo. of Law].) This argument also fails.

Plaintiff does not clearly articulate the specific portion of the record where this determination is located. (*See id.* at 30 [Plf.'s Affid., referencing merely "plaintiff's affidavit and exhibits"].) Again, the Court has no duty to *sua sponte* scour the 209 pages that comprise Plaintiff's "affidavit and exhibits" for proof of a dispute of material fact, and I decline to do so (and recommend the Court decline to do so) for the reasons stated above in Part IV.A.1. of this Report-Recommendation. I have, however, in analyzing the various issues presented by Defendants' motion, reviewed what I believe to be the material portions of the documents to which Plaintiff refers. I report that Plaintiff appears to be referring to a determination by the Upstate C.F. Inmate Grievance Program, dated June 20, 2003, stating, "After reviewing [your June 11, 2003, Upstate C.F.] grievance with CORC, it has been determined that the grievance is unacceptable. It does not present appropriate mitigating circumstances for an untimely filing." (Dkt. No. 85, Part 2, at 37 [Ex. J to Plf.'s Affid.]; *see also* Dkt. No. 85, Part 1, ¶¶ 22-34 [Plf.'s Affid.].)

There are two problems for Plaintiff with this document. First, this document does *not* constitute a written determination by *CORC* on a written appeal by

Plaintiff to *CORC* from an Upstate C.F. written determination. (*See* Dkt. No. 85, Part 2, at 37 [Ex. J to Plf.'s Affid.].) This fact is confirmed by one of Plaintiff's own exhibits, wherein DOCS IGP Director Thomas Eagen advises Plaintiff, "Contrary to the IGP Supervisor's assertion in his memorandum dated June 20, 2003, the IGP Supervisor's denial of an extension of the time frames to file your grievance from Great Meadow in August 2000 has not been reviewed by the Central Office Review Committee (CORC). The IGP Supervisor did review the matter with Central Office staff who is [sic] not a member of CORC." (*See* Dkt. No. 85, Part 2, at 39 [Ex. K to Plf.'s Affid.].) At best, the document in question is an indication by Upstate C.F. that the success of an appeal by Plaintiff to CORC would be unlikely.

**\*19** Second, even if the document does somehow constitute a written determination by CORC on appeal by Plaintiff, the grievance to which the determination refers is a grievance filed by Plaintiff on June 11, 2003, at Upstate C.F., not a grievance filed by Plaintiff on August 30, 2000, at Great Meadow C.F. (Dkt. No. 85, Part 2, at 32-35 [Ex. I to Plf.'s Affid.].) Specifically, Plaintiff's June 11, 2003, grievance, filed at Upstate C.F., requested permission to file an admittedly *untimely* grievance regarding the injuries he sustained during the assault on August 17, 2000. (*Id.*)

A prisoner has not exhausted his administrative remedies with CORC when, years after failing to file a timely appeal with CORC, the prisoner requests *and is denied* permission to file an untimely (especially, a two-year-old) appeal with CORC due to an unpersuasive showing of "mitigating circumstances." *See Burns v. Zwillinger,* 02-CV-5802, 2005 U.S. Dist. LEXIS 1912, at *11 (S.D.N .Y. Feb. 8, 2005) ("Since [plaintiff] failed to present mitigating circumstances for his untimely appeal to the IGP Superintendent, the CORC, or this Court, [defendant's] motion to dismiss on the grounds that [plaintiff] failed to timely exhaust his administrative remedies is granted."); *Soto v. Belcher,* 339 F.Supp.2d 592, 595 (S.D.N.Y.2004) ("Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies.") [collecting cases]. If the rule were to the contrary, then, as

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

a practical matter, no prisoner could ever be said to have failed to exhaust his administrative remedies because, immediately before filing suit in federal court, he could perfunctorily write to CORC asking for permission to file an untimely appeal, and whatever the answer, he could claim to have completed the exhaustion requirement. The very reason for requiring that a prisoner obtain permission before filing an untimely appeal presumes that the permitted appeal would be required to complete the exhaustion requirement. Viewed from another standpoint, a decision by CORC to refuse the filing of an untimely appeal does not involve a review of the merits of the appeal.

**4. Plaintiff's Argument that Defendants Rendered any Administrative Remedies "Unavailable" to Plaintiff**

Plaintiff also argues that Defendants rendered any administrative remedies "unavailable" to Plaintiff, for purposes of the Second Circuit's above-described three-part exhaustion inquiry, by (1) failing to cause DOCS to provide proper "instructional provisions" in its directives, (2) failing to cause Great Meadow C.F. to have a grievance "receipt system," and (3) "trash [ing]" Plaintiff's grievances and appeals. (Dkt. No. 86, at 39-45 [Plf.'s Memo. of Law].) This argument also fails.

In support of this argument, Plaintiff "incorporates by reference all the previously asserted points, Plaintiff's Affidavit in Opposition with supporting exhibits, as well as[ ] the entire transcripts of Defendants['] deposition on [sic] Plaintiff ...." (*Id.* at 40, 45.) Again, the Court has no duty to *sua sponte* scour the 265 pages that comprise Plaintiff's Affidavit, Supplemental Affidavit, exhibits, and deposition transcript for proof of a dispute of material fact, and I decline to do so (and recommend the Court decline to do so) for the reasons stated above in Part IV.A.1. of this Report-Recommendation. I have, however, in analyzing the various issues presented by Defendants' motion, reviewed the documents to which Plaintiff refers, and I report that I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.

**\*20** For example, Plaintiff has adduced no evidence

that he possesses any *personal knowledge* (only speculation) of any Defendant in this action having "trashed" his alleged grievance(s) and appeal(s),[FN54] nor has he even adduced evidence that it was *one of the named Defendants in this action* to whom he handed his alleged grievance(s) and appeal(s) for delivery to the Great Meadow C.F. Inmate Grievance Program Clerk on August 30, 2000, September 13, 2000, and September 27, 2000.[FN55] Similarly, the legal case cited by Plaintiff appears to have nothing to do with any Defendant to this action, nor does it even have to do with Great Meadow C.F.[FN56]

FN54. (*See* Dkt. No. 85, Part 1, ¶¶ 13-14, 16-17 [Plf.'s Affid., asserting, "Prison officials trashed my grievances and appeals since they claim not to have them despite [the] fact I sent them in a timely manner. It's [the] only reason they wouldn't have them.... Prison officials have a history of trashing grievances and appeals.... I've been subjected to having my grievances and appeals trashed prior to and since this matter and have spoken to alot [sic] of other prisoners whom [sic] said that they were also subjected to having their grievances and appeals trashed before and after this incident, in alot [sic] of facilities.... Suspecting foul play with respect to my grievances and appeals, I wrote, and spoke to[,] prison officials and staff that did nothing to rectify the matter, which isn't surprising considering [the] fact that it's an old problem ...."].)

FN55. (*See* Dkt. No. 85, Part 1, ¶ 6 [Plf.'s Affid., asserting only that "[o]n August 30th, 2000 plaintiff handed the correction officer collecting the mail in F Block SHU in the Great Meadow Correctional Facility an envelope addressed to the inmate grievance clerk ... which contained the grievances relative to this action at hand ...."]; Dkt. No. 85, Part 1, ¶ 9 [Plf.'s Affid., asserting only that "[o]n September 13, 2000, I appealed said grievances to [the] Superintendent by putting them in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail, in F-Block

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

SHU [at] Great Meadow CF ...."]; Dkt. No. 85, Part 1, ¶ 11 [Plf.'s Affid., asserting only that "[o]n September 27th, 2000, I appealed said grievance ... to C.O.R.C. by putting them [sic] in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail in F-Block SHU [at] Great Meadow CF ...."].)

FN56. (*See* Dkt. No. 85, Part 1, ¶ 15 [Plf.'s Affid., referencing case]; Dkt. No. 85, Part 2, at 16-17 [Ex. B to Plf.'s Affid., attaching a hand-written copy of case, which mentioned a prisoner's grievances that had been discarded in *1996* by an *unidentified* corrections officer at *Sing Sing Correctional Facility* ].)

**5. Record Evidence Creating Genuine Issue of Fact**

Although I decline to *sua sponte* scour the lengthy record for proof of a triable issue of fact regarding exhaustion, I have, while deciding the many issues presented by Defendants' motion, had occasion to review in detail many portions of the record. In so doing, I have discovered evidence that I believe is sufficient to create a triable issue of fact on exhaustion.

Specifically, the record contains Plaintiff's testimony that (1) on August 30, 2000, he gave a corrections officer a grievance regarding the alleged assault on August 17, 2000, but he never received a response to that grievance, (2) on September 13, 2000, he gave a corrections officer an appeal (to the Superintendent) from that non-response, but again did not receive a response, and (3) on September 27, 2000, he gave a corrections officer an appeal (to CORC) from that non-response, but again did not receive a response.[FN57]

FN57. (*See* Dkt. No. 85, Part 1, ¶ 6 [Plf.'s Affid., asserting only that "[o]n August 30th, 2000 plaintiff handed the correction officer collecting the mail in F Block SHU in the Great Meadow Correctional Facility an envelope addressed to the inmate grievance clerk in which contained [sic] the grievances relative to this action at hand ...."]; Dkt. No. 85, Part 1, ¶ 9 [Plf.'s Affid., asserting only that "[o]n September 13, 2000, I appealed said grievances to [the] Superintendent

by putting them in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail; in F-Block SHU [at] Great Meadow CF...."]; Dkt. No. 85, Part 1, ¶ 11 [Plf.'s Affid ., asserting only that "[o]n September 27h, 2000, I appealed said grievance ... to C.O.R.C. by putting them [sic] in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail in F-Block SHU [at] Great Meadow CF ...."].)

The remaining issue then, as it appears to me, is whether or not this affidavit testimony is so self-serving and unsubstantiated by other direct evidence that "no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." [FN58] Granted, this testimony appears self-serving. However, based on the present record, I am unable to find that the testimony is so wholly unsubstantiated by other direct evidence as to be incredible. Rather, this testimony appears corroborated by two pieces of evidence. First, the record contains what Plaintiff asserts is the grievance that he handed to a corrections officer on August 30, 2000, regarding the alleged assault on August 17, 2000. (Dkt. No. 85, Part 2, at 65-75 [Ex. Q to Plf.'s Affid.].) Second, the record contains two pieces of correspondence between Plaintiff and legal professionals *during or immediately following the time period in question* containing language suggesting that Plaintiff had received no response to his grievance. (Dkt. No. 85, Part 2, at 19-21 [Exs. C-D to Plf.'s Affid .].)

FN58. *See, supra,* note 12 of this Report-Recommendation (collecting cases).

Stated simply, I find that sufficient record evidence exists to create a genuine issue of fact as to (1) whether Plaintiff's administrative remedies were, with respect to his assault grievance during the time in question, "available" to him, for purposes of the first part of the Second Circuit's three-part exhaustion inquiry, and/or (2) whether Plaintiff has shown "special circumstances" justifying his failure to comply with the administrative procedural requirements, for purposes of the third part of the Second Circuit's three-part exhaustion inquiry.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

**\*21** As a result, I recommend that the Court deny this portion of Defendants' motion for summary judgment.

**E. Whether Plaintiff Has Sufficiently Alleged, or Established, that Defendants Were Liable for the Policy to Review the Non-Life-Sustaining Medical Prescriptions of Prisoners Upon Arrival at Great Meadow C.F.**

As explained above in Part II.A. of this Report-Recommendation, Defendants argue that, during his deposition in this action, Plaintiff asserted, for the first time, a claim that the medical staff at Great Meadow C.F. violated his rights under the Eighth Amendment by failing to honor non-life-sustaining medical prescriptions written at a former facility. (Dkt. No. 78, Part 13, at 3 [Defs.' Mem. of Law].) As a threshold matter, Defendants argue, this claim should be dismissed since Plaintiff never included the claim in his Second Amended Complaint, nor did Plaintiff ever file a motion for leave to file a Third Amended Complaint. (*Id.*) In any event, Defendants argue, even if the Court were to reach the merits of this claim, the Court should dismiss the claim because Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, that Defendants were personally involved in the creation or implementation of DOCS' prescription-review policy, nor has Plaintiff provided such allegations or evidence indicating the policy is even unconstitutional. (*Id.*)

Plaintiff responds that "[he] didn't have to get in particular [sic] about the policy [of] discontinuing all incoming prisoners['] non[-]life[-]sustaining medications without examination and indiscriminently [sic] upon arrival at [Great Meadow] C.F. in [his Second] Amended Complaint. Pleading[s] are just supposed to inform [a] party about [a] claim[,] and plaintiff informed defendant [of] the nature of [his] claims including [the claim of] inadequate medical care. And discovery revealed [the] detail[s] [of that claim] as [Plaintiff had] intended." (Dkt. No. 88, at 10 [Plf.'s Supp. Memo. of Law].) In addition, Plaintiff responds that Defendant Paolano must have been personally involved in the creation and/or implementation of the policy in question since he was the Great Meadow Health Services Director. (*Id.* at 10.)

I agree with Defendants that this claim is not properly

before this Court. Plaintiff's characterization of the notice-pleading standard, and of the contents of his Amended Complaint, are patently without support (both legally and factually). It has long been recognized that a "claim," under Fed.R.Civ.P. 8, denotes "the aggregate of operative facts which give rise to a right enforceable in the courts." [FN59] Clearly, Plaintiff's Second Amended Complaint alleges no facts whatsoever giving rise to an asserted right to be free from the application of the prescription-review policy at Great Meadow C.F. Indeed, his Second Amended Complaint-which asserts Eighth Amendment claims arising *solely* out of events that (allegedly) transpired on August 17, 2000-says nothing at all of the events that transpired immediately upon his arrival at Great Meadow C.F. in early August of 2000, nor does the Second Amended Complaint even casually mention the words "prescription," "medication" or "policy." (*See generally* Dkt. No. 10 [Second Am. Compl.].)

FN59. *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.,* 133 F.2d 187, 189 (2d Cir.1943); *United States v. Iroquois Apartments, Inc.,* 21 F.R.D. 151, 153 (E.D.N.Y.1957); *Birnbaum v. Birrell,* 9 F.R.D. 72, 74 (S.D.N.Y.1948).

**\*22** Furthermore, under the notice-pleading standard set forth by Fed.R.Civ.P. 8(a)(2), to which Plaintiff refers in his Supplemental Memorandum of Law, Defendants are entitled to *fair notice* of Plaintiff's claims. [FN60] The obvious purpose of this rule is to protect defendants from undefined charges and to facilitate a proper decision on the merits. [FN61] A complaint that fails to provide such fair notice "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN62] This fair notice does not occur where, as here, news of the claim first springs up in a deposition more than two years after the action was commenced, approximately seven months after the amended-pleading deadline expired, and approximately two weeks before discovery in the action was scheduled to close. (*Compare* Dkt. No. 1 [Plf.'s Compl., filed 8/14/03] *with* Dkt. No. 42, at 1-2 [Pretrial Scheduling Order setting amended-pleading deadline as 2/28/05] *and* Dkt. No. 78, Part 11, at 52-53 [Plf.'s Depo.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

Transcript, dated 9/30/05] *and* Dkt. No. 49 [Order setting discovery deadline as 10/14/05].)

FN60. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (the statement required by Fed.R.Civ.P. 8 [a][2] must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

FN61. *Ruffolo v. Oppenheimer & Co., Inc.,* 90-CV-4593, 1991 WL 17857, at *2 (S.D.N.Y. Feb.5, 1991); *Howard v. Koch,* 575 F.Supp. 1299, 1304 (E.D.N.Y.1982); *Walter Reade's Theatres, Inc. v. Loew's Inc.,* 20 F.R.D. 579, 582 (S.D.N.Y.1957).

FN62. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

Under the circumstances, the mechanism by which to assert such a late-blossoming claim was a motion to reopen the amended-pleading filing deadline (the success of which depended on a showing of cause), coupled with a motion for leave file a Third Amended Complaint (the success of which depended, in part, on a showing of lack of prejudice to Defendants, as well as a lack of futility). Plaintiff never made such motions, nor showed such cause.

I acknowledge that, generally, the liberal notice-pleading standard set forth by Fed.R.Civ.P. 8 is applied with even greater force where the plaintiff is proceeding *pro se.* In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are

generally construed with an *extra* degree of liberality. As an initial matter, I have already concluded, based on my review of Plaintiff's extensive litigation experience, that he need not be afforded such an extra degree of leniency since the rationale for such an extension is a *pro se* litigant's inexperience with the court system and legal terminology, and here Plaintiff has an abundance of such experience. *See, supra,* notes 21-25 of this Report-Recommendation. Moreover, even if he were afforded such an extra degree of leniency, his phantom prescription-review claim could not be read into his Second Amended Pleading, for the reasons discussed above. (I note that, even when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended.") FN63

FN63. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

Nor could Plaintiff's late-blossoming prescription-review claim properly be read into his papers in opposition to Defendants' motion for summary

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

(Cite as: 2008 WL 2522324 (N.D.N.Y.))

judgment. Granted, a *pro se* plaintiff's papers in opposition to a *motion to dismiss* may sometimes be read as effectively amending a pleading (e.g., if the allegations in those papers are consistent with those in the pleading). However, a *pro se* plaintiff's papers in opposition to a *motion for summary judgment* may not be so read, in large part due to prejudice that would inure to the defendants through having the pleading changed after discovery has occurred and they have gone through the expense of filing a motion for summary judgment.[FN64]

> FN64. *See Auguste v. Dept. of Corr.,* 424 F.Supp.2d 363, 368 (D.Conn.2006) ("Auguste [a *pro se* civil rights plaintiff] cannot amend his complaint in his memorandum in response to defendants' motion for summary judgment.") [citations omitted].

**\*23** Finally, in the event the Court decides to construe Plaintiff's Second Amended Complaint as somehow asserting this claim, I agree with Defendants that the Court should dismiss that claim, also for the reasons discussed above in Part IV.A.2. of this Report-Recommendation. Specifically, Plaintiff has failed to adduce evidence establishing that Defendant Paolano (or any named Defendant in this action) was personally involved in the creation or implementation of DOCS' prescription-review policy, nor has Plaintiff provided evidence establishing that the policy is even unconstitutional. *See, supra,* Part IV.A.2. of this Report-Recommendation.

**ACCORDINGLY,** it is

**ORDERED** that the Clerk's Office shall, in accordance with note 1 of this Order and Report-Recommendation, correct the docket sheet to remove the names of Defendants Englese, Edwards, Bump, Smith, Paolano, and Nesmith as "counter claimants" in this action; and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 78) be ***GRANTED* in part** (i.e., to the extent that it requests the dismissal with prejudice of Plaintiff's claims against Defendants Paolano and Nesmith) and ***DENIED* in part** (i.e., to the extent that it requests dismissal of Plaintiff's claims against the

remaining Defendants on the grounds of Plaintiff's failure to exhaust available administrative remedies) for the reasons stated above.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2008.

Murray v. Palmer
Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3825736 (S.D.N.Y.)
**(Cite as: 2010 WL 3825736 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.
Pedro RODRIGUEZ, Plaintiff,
v.
MOUNT VERNON HOSPITAL, Dr. Jonathan Holder, and Dr. J. Perilli, Defendants.

No. 09 Civ. 5691(GBD)(JLC).
Sept. 7, 2010.

*REPORT AND RECOMMENDATION*
JAMES L. COTT, United States Magistrate Judge.

**\*1 To the Honorable George B. Daniels, United States District Judge:**

**I. Introduction**

Plaintiff Pedro Rodriguez ("Plaintiff" or "Rodriguez"), proceeding *pro se,* brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, against defendants Dr. Jonathan Holder and Dr. John Perilli (collectively "State Defendants" or "Holder and Perilli") and Mount Vernon Hospital, alleging that State Defendants provided Plaintiff with inadequate medical treatment while Plaintiff was an inmate at Sing Sing Correctional Facility ("Sing Sing"). Specifically, he alleges that Holder and Perilli provided inadequate treatment during an initial surgery to correct problems with Plaintiff's knee and the follow-up physical therapy. Amended Complaint ("Am.Compl") ¶ II (Dckt.5). Plaintiff states that he never consented to the first surgery, and, combined with the inadequate physical therapy, he was forced to undergo a second surgery to correct the problems caused by the first. Am. Compl. ¶ III.

Before this Court is State Defendants' Motion to Dismiss and Plaintiff's Cross–Motion to File a Second Amended Complaint. For the reasons stated

below, I recommend that the Court grant Plaintiff's Cross–Motion to File a Second Amended Complaint, convert State Defendants' Motion to Dismiss to a Motion for Summary Judgment on the issue of exhaustion, grant in part and deny in part State Defendants' Motion for Summary Judgment, and dismiss part of Plaintiff's Second Amended Complaint with prejudice.

**II. Factual Background**

Plaintiff claims that on or about September 2004, while incarcerated at Rikers Island, he injured his knee. Am. Compl. ¶ II.D. In 2005, while Plaintiff was at Sing Sing, he consented to arthroscopic surgery. *Id.* Without consulting with or receiving authorization from Plaintiff, Dr. Perilli ordered an "ACL reconstructive knee procedure," which was performed by Dr. Holder at Mount Vernon Hospital on July 28, 2005. *Id.* As a consequence of the more comprehensive surgery, Plaintiff alleges that he suffered pain and an unresolved injury for three years following the initial procedure. Second Amended Complaint ("Second Am. Compl.") ¶ 13 (Dckt.22).[FN1] He alleges that he was left with a "ball" on his knee. Am. Compl. ¶ III. Plaintiff further alleges that upon being discharged from Mt. Vernon Hospital, he was made to walk to a New York State Department of Correctional Services ("DOCS") transport van handcuffed to his crutches. *Id.* ¶ II .D. The lingering effects required a second surgery in August 2008 to "repair damage that was missed or left undone," which, aside from removal of the ball, Plaintiff claims was unhelpful and left him unable to walk or play sports. *Id.* ¶ III. Plaintiff also alleges that Dr. Perilli approved and put him through physical therapy "which did nothing but [aggravate] the injury causing more pain, suffering, and damage." Second Am. Compl. ¶ 25. Plaintiff filed multiple grievances with prison authorities related to these allegations, as detailed further below.

FN1. As explained below, Plaintiff did not

file a Second Amended Complaint with his motion for leave to amend the complaint. Instead, he filed an "Affidavit in Support [sic] Second Amended Complaint," which we will refer to as the Second Amended Complaint. We note that the Second Amended Complaint contains an incomplete recitation of the facts that were alleged in the Amended Complaint. Therefore, we will refer to both documents in setting out the alleged facts of the case.

**\*2** On December 1, 2008, Plaintiff filed his initial complaint. See Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 (Dckt.2). Due to the insufficiency of the allegations within Plaintiff's initial Complaint, the Honorable Chief Judge Loretta A. Preska ordered that Plaintiff amend his complaint within 60 days. Order dated June 22, 2009 (Dckt.3). Plaintiff complied and filed his Amended Complaint on July 8, 2009. Am. Compl. (Dckt.5). In his Amended Complaint, Plaintiff seeks "injunctive relief against the defendant's [sic] in their individual capacities" for constitutional violations under the Eighth Amendment deliberate indifference standard and of his Fourteenth Amendment due process rights. *Id.* ¶ V.

On February 3, 2010, State Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Notice of Motion to Dismiss ("Mot. to Dismiss") (Dckt.12). State Defendants argue that the Amended Complaint should be dismissed for: (1) lack of subject matter jurisdiction where defendants are not in a position to act; (2) and failure to exhaust available administrative remedies. *Id.* at 1. In support of their motion, State Defendants rely on declarations from Chad Powell, an Administrative Assistant of the Human Resources Office at DOCS ("Powell Decl"), Frank Robinson, Supervisor of the Inmate Grievance Program ("IGP") ("Robinson Decl.") with attached exhibits, and Karen Bellamy, Director of IGP ("Bellamy Decl."). (Dckt.12.) Presumably because State Defendants filed these

three declarations with the Motion to Dismiss, they also filed and served a notice to Plaintiff explaining the possibility that the Motion to Dismiss could and likely would be converted into a Rule 56 Motion for Summary Judgment. Notice to Pro Se Litigant of Motion to Dismiss Treated As Motion for Summary Judgment ("Notice to Pltf.") (Dckt.14).

Rather than oppose the motion, Plaintiff responded by cross-moving for leave to file a Second Amended Complaint. *See* Permission to File Second Amended Complaint, dated April 16, 2010 ("Motion for Leave to Amend") (Dckt.22). Plaintiff attached an "Affidavit in Support [sic] Amended Complaint" to his Motion for Leave to Amend in lieu of a formal Second Amended Complaint. *Id.* In substance, however, the Affidavit appears to contain the amendments Plaintiff would have made to his Amended Complaint. Therefore, we will refer to this Affidavit as the proposed Second Amended Complaint. In his Second Amended Complaint, Plaintiff asserts essentially the same factual allegations, but replaces his request for injunctive relief with requests for punitive damages from all named defendants.FN2 *Id.* at ¶¶ 16–19. Plaintiff also attached additional evidentiary exhibits and a memorandum of law to his Motion for Leave to Amend. *Id.*

> FN2. Because we recommend that Plaintiff be granted leave to file a Second Amended Complaint, *see* discussion *infra* Section III.A ., we interpret his substitution of punitive damages for injunctive relief as Plaintiff's recognition that, for the reasons stated in State Defendants' Memorandum of Law in Support of their Motion to Dismiss, injunctive relief is unobtainable in this case. *See* Second Am. Compl. ¶ 16 ("Plaintiff would like to correct era [sic] in requesting injunctive relief against Defendants in thier [sic] individual capacities.").

Finally, State Defendants filed a reply in furtherance of their motion to dismiss (Dckt.25),

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

with a supplemental declaration of Frank Robinson ("Robinson Supp. Decl.") (Dckt.26), attaching an additional exhibit.[FN3]

> FN3. Mount Vernon Hospital answered the Complaint on January 20, 2010 (Dckt.11), but has filed no motions to date.

## III. Discussion

### A. The Court Should Grant Plaintiff Leave to File the Proposed Second Amended Complaint

**\*3** Rule 15(a) of the Federal Rules of Civil Procedure specifies that leave to amend is to be freely given when justice so requires." As explained by the Supreme Court, such leave is to be liberally granted:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). It is well settled that district courts have broad discretion to grant leave to amend. In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 404 (2d Cir.2005) (citing Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir.2000)), amended and superceded on other grounds by 466 F.3d 187 (2d Cir.2006). Moreover, "[t]rial courts have been directed to read pro se papers liberally, and to allow amendment of pro se complaints fairly freely." Augustus v. MSG Metro Channel, 217 F.Supp.2d 458, 463 (S.D.N.Y.2002) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir.1983)). "The most common reasons [why] courts have

denied leave to amend are that amendment will result in undue prejudice to the other parties, it is unduly delayed, or it is offered in bad faith or for a dilatory purpose." Id. at 464 (citations omitted).

In this case, no undue prejudice will result in granting Plaintiff's motion to amend his Amended Complaint. As noted above, the Amended Complaint and the Second Amended Complaint are substantively similar except that Plaintiff now seeks punitive damages instead of injunctive relief, and he has attached evidentiary materials to his Second Amended Complaint. Nor is the proposed Second Amended Complaint unduly delayed; in fact, it was filed in response to State Defendants' Motion to Dismiss, and it appears that the parties have not even engaged in discovery yet. Moreover, the proposed Second Amended Complaint is not offered in bad faith or for a dilatory purpose. To the contrary, Plaintiff, having reviewed State Defendants' Motion to Dismiss and the attachments thereto, has attempted to cure the asserted defects with the proposed amendment as well as provide evidence to counter the arguments and evidentiary support provided by State Defendants. A party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. In re Dobrayel, 287 B.R. 3, 21 (Bankr.S.D.N.Y.2002) (citing New York State Elec. & Gas Corp. v. Sec'y of Labor, 88 F.3d 98, 104 (2d Cir.1996)). Therefore, we find no prejudice to State Defendants in permitting Plaintiff to file a Second Amended Complaint that seeks punitive damages.

**\*4** State Defendants contend that Plaintiff "is not entitled to file a second amended complaint to add a claim for punitive damages because such a claim would be futile." State Defendants' Reply Memorandum ("State Defs.' Reply Mem.") at 1 (Dckt.25). They appear to support this statement by arguing that the Second Amended Complaint also fails to allege that Plaintiff exhausted his administrative remedies, or was otherwise justified in failing to do so. State Defs.' Reply Mem. at 1, 2, and 5. As discussed below in Section III.D,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff sufficiently exhausted one of his grievances to survive State Defendants' Motion for Summary Judgment, and therefore the proposed amendment would not be futile.

To the extent that State Defendants are arguing that Plaintiff's request for relief in the form of punitive damages would be futile, it is well-established that punitive damages may be sought as to persons acting under the color of state law in their individual capacities. *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers,* 442 F.3d 101, 122 (2d Cir.2006) ("Although a municipality itself is immune from a claim for punitive damages ..., that immunity does not extend to a municipal official sued in his individual capacity ...") (citations omitted). In the context of Section 1983 actions, "[p]ersonal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). According to the Human Resources Office at DOCS, Dr. Perilli was employed by DOCS from December 2, 1999 until December 1, 2008 and is no longer an employee of DOCS. Powell Decl. at ¶ 2. That Dr. Pirelli no longer works at Sing Sing Correctional Facility is no barrier to Plaintiff suing him in his individual capacity for past actions he took under color of state law which allegedly violated Plaintiff's civil rights. *See, e.g., Munyiri v. Maynard,* No. CCB–08–1953, 2009 WL 2848663 (D.Md. Sept.1, 2009) (denying motion to dismiss Section 1983 action brought by prisoner against former warden in his individual capacity because prisoner adequately alleged former warden established and implemented unconstitutional strip and cavity searches).

Whether Dr. Holder may be sued in his individual capacity is more difficult to determine based on the limited record before the Court. Dr. Holder is not an employee of DOCS, and upon information and belief, the Human Resources Office at DOCS states that he is "an outside physician who works for an outside hospital that DOCS has a contract with to render services to its inmates." Powell Decl. at ¶ 3. The Supreme Court held in *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), that "a physician employed by [a state] to provide medical services to state prison inmates ... act[s] under color of state law for purposes of § 1983 when undertaking his duties in treating [a prisoner's] injury." States have a constitutional duty under the Eighth Amendment to provide prisoners with adequate medical care. 487 U.S. at 54. As prisoners often may only seek medical help from physicians employed by the state, those physicians are thus both "authorized and obliged to treat prison inmates." *Id.* at 55. The Supreme Court therefore found that the physician in *West* could be held individually liable for Section 1983 violations even though his employment was based on a contractual arrangement, he was not required to work exclusively for the prison, and he was not a full-time, permanent member of the state prison medical staff. *Id.* at 55–56. Particularly important to the Supreme Court's analysis was the fact that the physician provided medical services for the state at the prison hospital within the prison itself. *Id.* at 57. While Dr. Holder did not treat Plaintiff in a prison hospital, other courts in this district have held that even under those circumstances, a doctor may still be considered a state actor as long as the doctor was obligated, even if indirectly, to provide medical services to state inmates. *See Garraway v. Artuz,* No. 01 Civ. 3126(DLC), 2002 WL 221584, at *6 (S.D.N.Y. Feb.13, 2002) (private physician a state actor because his employer is "a party to a contract that requires him to provide medical services to prisoners in the State of New York"); *Thomas v. Arevalo,* No. 95 Civ. 4704(SS), 1998 WL 427623, at *11 (S.D.N.Y. July 28, 1998) (private physician a state actor because his employer "was aware of the arrangement at St. Francis Hospital [, which had referred the plaintiff prisoner for specialist care,] to provide medical care to prisoners"). Therefore, we cannot say at this time that Plaintiff's proposed amendments to seek punitive damages from Dr.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Perilli or Dr. Holder would be futile.

**\*5** While it is possible to recover only punitive damages in a section 1983 case, we also construe Plaintiff's Second Amended Complaint liberally to request compensatory damages. *Smith v. Wade,* 461 U.S. 30, 55 n. 21, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury") (quoting *Carlson v. Green,* 446 U.S. 14, 22 n. 9, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)); *Stolberg v. Members of Bd. of Trustees for State Colleges of State of Connecticut,* 474 F.2d 485, 489 (2d Cir.1973) ("punitive damages may, in an appropriate case, be awarded for violation of 42 U.S.C. § 1983, even in the absence of actual damages") (citations omitted); *Uryevick v. Rozzi,* 751 F.Supp. 1064, 1072 (E.D.N.Y.1990) ("Punitive damages may be awarded even in the absence of compensatory damages.") (citations omitted). The liberal scheme of the Federal Rules of Civil Procedure with respect to pleading requirements, especially for *pro se* litigants, allows courts to grant Plaintiff any and all relief to which he is entitled, whether or not it was requested in his pleadings. *See* Fed.R.Civ.P. 8, 15(b) & 54(c); *Abdell v. City of New York,* No. 05 Civ. 8453(RJS)(JCF), 2009 WL 1270455, at \*5 (S.D.N.Y. May 5, 2009) (granting plaintiffs leave to file a fourth amended complaint seeking, among other things, injunctive relief because it "may be warranted by the facts alleged" and citing to Federal Rule of Civil Procedure 54(c) to support this proposition); *In re Dobrayel,* 287 B.R. at 19–21 ("the question is not how plaintiffs characterized the action, but whether plaintiffs are entitled to relief") (quoting *Oneida Indian Nation v. Cnty. of Oneida,* 434 F.Supp. 527, 547 (N.D.N.Y.1977); *New York State Elec. & Gas Co.v Sec'y of Labor,* 88 F.3d 98, 104 (2d Cir.1996) ("Under the Federal Rules, pleadings are not ends in themselves, but are simply the means by which a case is presented to a tribunal.") (citing *Usery v. Marquette Cement Mfg. Co.,* 568 F.2d 902, 906 (2d Cir.1977)). Here, it is reasonable to infer from Plaintiff's pleadings that he is seeking compensatory damages:

• "Plaintiff had pain and suffering for three year's [sic] due to the first botched surgery." Second Am. Compl. ¶ *13.*

• Dr. Pirelli allowed and approved the first surgery "that resulted in multiple operation[s] which caused Plaintiff substantial and unjustifiable pain." *Id.* ¶ 17.

• Dr. Holder's performing the wrong procedure "resulted in the need of [sic] multiple operations, as well as years of ph[y]sical therapy, which caused Plaintiff substantial and unjustifiable pain." *Id.* ¶ 18

• Dr. Pirelli "approved and provide[d] contin[u]ous physical therapy treatment to Plaintiff which did nothing but aggra[v]ate the injury causing more pain, suffering, and damage." *Id.* ¶ 25.

This language reflects Plaintiff's attempt to recover for pain and suffering, which are a form of compensatory damages. *Garland–Sash v. Lewis,* 348 Fed. Appx. 639, 642 (2d Cir.2009) ("The law generally construes the phrase 'compensatory damages' to include damages for pain, suffering, and other emotional harms.").

**\*6** Plaintiff's Second Amended Complaint is not futile in requesting compensatory damages against Drs. Pirelli and Holder in their individual capacities. Compensatory damages are at the heart of Section 1983 remedies. *Townes v. City of New York,* 176 F.3d 138, 147–48 (2d Cir.1999) ("The basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights ... The type and amount of such damages is ordinarily determined according to principles derived from the common law of torts.") (quoting *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)) (internal quotations omitted). A plaintiff may assert a Section 1983 claim "against each and every public employee who participated in the deprivation [of his or her constitutional rights] in his or her individual capacity seeking both compensatory and punitive damages." *Amenome v. Metropolitan Transp. Authority,* 419 F.Supp.2d 602, 604 (S.D.N.Y.2006) (citing *Smith,* 461 U.S. at 35).

Finally, the Second Amended Complaint attaches evidence necessary in considering State Defendants' Motion to Dismiss. Though State Defendants urge the Court to deny Plaintiff leave to file the Second Amended Complaint, their nonexhaustion defense relies extensively on materials outside of the pleadings. For all these reasons, we recommend that the Court grant leave for Plaintiff to file the Second Amended Complaint.

**B. The Court Should Convert Defendants' Motion to One for Summary Judgment**

Though State Defendants characterize and argue the motion in terms of a Rule 12(b)(6) Motion to Dismiss, their reliance on evidence outside of the pleadings makes the motion appropriate for conversion to a Rule 56 Motion for Summary Judgment.[FN4] In general, a court may only consider the pleadings when ruling on a Rule 12(b)(6) motion. *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) ("In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b) (6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.") (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)).

> FN4. State Defendants originally moved to dismiss under Rule 12(b) (1) for lack of subject matter jurisdiction where they were not in a position to act as per the injunctive relief that Plaintiff originally sought. This

argument is now moot, as Plaintiff has amended his complaint to substitute punitive damages for injunctive relief.

> However, some courts in this district have construed the requirement of exhaustion as an issue of subject matter jurisdiction. *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003) (collecting cases). The district court in *McCoy* noted that the Second Circuit has indirectly held that exhaustion is not a jurisdictional issue, but instead an affirmative defense for defendants to establish. *Id.* (collecting cases).

If a court considers materials outside of the pleadings, however, then it must convert the motion to dismiss or motion on the pleadings to a motion for summary judgment under Federal Rule 56. *Sahu v. Union Carbide Corp.,* 548 F.3d 59, 66 n. 1 (2d Cir.2008). Rule 12(d) provides in relevant part:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

> Fed.R.Civ.P. 12(d).

**\*7** "[A] district court ordinarily must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading." *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999) (citing *Kopec v. Coughlin,* 922 F.2d 152, 154–55 (2d Cir.1991)). However, this is "simply an application [ ] of the principle that parties are entitled to a reasonable opportunity to present material pertinent to a summary judgment motion." *Id.* Hence, "[c]ompliance ... is not an end in itself." *Id.* (quoting *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985)). The essential

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

inquiry is whether Plaintiff could have reasonably recognized the possibility that the motion might be converted into one for summary judgment. *Id.* In other words, the Court must determine whether Plaintiff would be taken by surprise and deprived of a reasonable opportunity to contest the facts presented outside the pleadings. *Id.*

Here, Plaintiff cannot claim surprise at this Court's conversion of the motion into a motion for summary judgment. Not only did Plaintiff know extraneous evidentiary materials were being considered and responded by supplementing his Second Amended Complaint with his own evidence, but at the time State Defendants filed their Motion to Dismiss, they provided written notice explaining to Plaintiff the possibility that the motion would be converted. Notice to Pltf. (Dkt 14). Moreover, in their notice to Plaintiff, State Defendants warned of the consequences of conversion: "[f]or this reason, THE CLAIMS YOU ASSERT IN YOUR AMENDED COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing sworn affidavits or other papers as required by Rule 56(e)." Notice to Pltf. at 1. Thus, requiring the Court to provide additional notice to the parties would have been redundant in these circumstances. Plaintiff has not objected to this Court's consideration of extraneous materials nor disputed the facts set out therein. Rather, Plaintiff has expressly relied on the exhibits he attached to his Second Amended Complaint to support his allegations. *See, e.g.,* Second Am. Compl. ¶¶ 8, 12, 15, 18, 22, 23, 24 (Dckt.22). In making a recommendation, we will therefore consider the pleadings and the additional materials under the applicable summary judgment standard on the issue of exhaustion.

## C. Summary Judgment Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a summary

judgment motion, the Court must construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is appropriate, therefore, where there is no way in which a reasonable trier of fact could find in favor of the non-moving party. *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1011 (2d Cir.1989) (citing *Anderson,* 477 U.S. at 248).

## D. Principles of Exhaustion

**\*8** Prisoners who file suit to recover for violations of their civil rights under 42 U.S.C. § 1983 must also fulfill the requirements of the Prison Litigation Reform Act of 1995 ("PLRA"). Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the PLRA is "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court." *Porter v. Nussle,* 534 U.S. 516, 528, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citing *Booth v. Churner,* 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Plaintiff must therefore exhaust his administrative remedies prior to filing a complaint. *Morales v. Dzurenda,* No. 09–4200–pr, 2010 WL 2640685, at \*1 (2d Cir. June 30, 2010) (summary order). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. "The Act requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so the agency addresses the issues on the merits)." *Morales,* 2010 WL 2640685, at \*1 (quoting

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Hernandez v. Cofey,* 582 F.3d 303, 305 (2d Cir.2009)) (citation and internal quotations omitted) (emphasis in original).

While exhaustion is mandatory, the Court must employ a three-part inquiry when an inmate plausibly seeks to challenge defendants' contention that the prisoner has failed to exhaust administrative remedies as required by the PLRA. *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). First, the Court must determine whether administrative remedies were in fact "available" to the prisoner. *Id.* (citing *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004)). If not, then the exhaustion requirement is inapplicable. *Id.* Second, if the exhaustion requirement applies, the Court must inquire as to whether "the defendants are estopped from raising the affirmative defense of non-exhaustion because their actions inhibited the inmate's exhaustion of remedies, or because they forfeited the defense by failing to raise or preserve it." *Andrews v. Cruz,* No. 04 Civ. 566(PAC)(RLE), 2010 WL 1142010, at *3 (S.D.N.Y. March 9, 2010) (citing *Hemphill,* 380 F.3d at 686). Finally, if administrative remedies were available to the inmate and the defendants are not estopped and have not forfeited their non-exhaustion defense, the Court should consider whether "special circumstances," such as a reasonable misunderstanding of grievance procedures, have been plausibly alleged to justify the prisoner's failure to exhaust his administrative remedies. *Hemphill,* 380 F.3d at 686 (citing *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004)).[FN5]

> FN5. As Magistrate Judge Ellis recently noted in *Andrews,* "[a]lthough it seemed unclear whether the Supreme Court decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), would change *Hemphill'* s applicability, 'the Court of Appeals still considers [ *Hemphill* ] good law.' " *Andrews,* 2010 WL 1142010, at *3 n. 2 (citation omitted).

**\*9** In this case, Plaintiff failed to exhaust his administrative remedies with respect to all of his grievances but one. Moreover, he has not demonstrated that State Defendants are estopped from claiming a non-exhaustion defense as to three of Plaintiff s grievances. Finally, as to his unexhausted grievances, Plaintiff has not shown that his actions were justified by "special circumstances." Therefore, as discussed further below, State Defendants' motion should be granted except as to one grievance.

**1. Administrative Remedies Were Available to Plaintiff in All Instances, Except One**

Before disposing of a claim filed under the PLRA for failure to exhaust, the Court must "establish the availability of an administrative remedy from a legally sufficient source." *Snider v. Melindez,* 199 F.3d 108, 114 (2d Cir.1999). "To be available under PLRA, a remedy must afford the possibility of some relief for the action complained of.... Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Abney,* 380 F.3d at 667 (internal punctuation omitted) (citing *Booth,* 532 U.S. at 738, 736 n. 4). When considering the availability of administrative remedies, "courts should be careful to look at the applicable set of grievance procedures ...." *Taylor v. New York State Dep't of Corrections,* No. 03 Civ.1929(PKC), 2004 WL 2979910, at *6 (S.D.N.Y. Dec.22, 2004) (citing *Abney,* 380 F.3d at 668).

In this case, the applicable administrative procedures which Plaintiff was required to properly exhaust are those established by DOCS. The relevant regulations are those that were in place between 2005 and 2008 when Rodriguez filed the grievances at issue. *Land v. Kaufman,* No. 07 Civ. 8070(GEL), 2009 WL 1106780, at *2 (S.D.N.Y. Apr.23, 2009) (determining whether prisoner exhausted administrative remedies by analyzing availability of administrative procedures in 2005 when alleged incident occurred) (citations omitted).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Inmate Grievance Program ("IGP") regulations in place during 2005 were repealed and new regulations were adopted in 2006. *See* N.Y. Comp. R. & Regs. tit. 7, § 701.1 *et seq.* (2010). For many of the major provisions, there are only "minor differences" between the former and current regulations. *Espinal v. Goord,* 558 F.3d 119, 125 (2d Cir.2009). To the extent that there are differences in the pre- and post–2006 regulations, however, we will note the disparities and determine their applicability to Plaintiff's individual grievances.

The IGP program includes a three-tiered administrative mechanism for prisoners to resolve complaints about their incarceration conditions. *Sloane v. Mazzuca,* No. 04 CV 8266(KMK), 2006 WL 3096031, at *6 (S.D.N.Y. Oct.31, 2006) (citing N.Y. Correct. Law § 139). The first tier requires that the inmate file a complaint within 21 calendar days of the alleged incident for review by the facility's Grievance Review Committee ("IGRC"). N.Y. Comp. R. & Regs. tit. 7, § 701.5(a) and (b) (2010).FN6 The second tier is an appeal to the facility Superintendent, which the inmate must make within seven calendar days. *Id.* § 701.5(c).FN7 The final tier requires that the inmate appeal to the DOCS Central Office Review Committee ("CORC"), which the inmate must also make within seven calendar days. *Id.* § 701.5(d).FN8 Until a prisoner goes through each tier of the grievance procedure, he has not exhausted his administrative remedies. *Hairston v. LaMarche,* No. 05 Civ. 6642(KMW)(AJP), 2006 WL 2309592, at *7 (S.D.N.Y. Aug. 10, 2006).

> FN6. This section outlining the three-tiered administrative process of the IGP used to be codified at N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7 (2004); the section on the IGRC was specifically found in N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7(a) (2004). We note that under the pre–2006 regulation, inmates had to file a grievance within 14 calendar days of an alleged

incident. *Id.* § 701.7(a) (1).

> FN7. Under the pre–2006 regulations, inmates only had four working days to appeal the IGRC's decision to the Superintendent. N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7(b) (2004).

> FN8. Under the pre–2006 regulations, inmates also only had four working days to appeal the Superintendent's decision to the CORC. N .Y. Comp.Codes R. & Regs., tit. 7, § 701.7(c) (2004).

**\*10** DOCS provides an expedited grievance procedure to inmates alleging harassment. N.Y. Comp. R. & Regs. tit. 7, § 701.8 (2010).FN9 Harassment includes "employee misconduct meant to annoy, intimidate or harm an inmate." *Id.* § 701.2(e).FN10 The expedited procedure requires an inmate to submit a formal grievance report as per the usual procedure. *Id.* § 701.8(a).FN11 It also encourages, but does not require, prisoners to report the incident to the immediate supervisor of the harassing DOCS employee. *Id.* Once the harassment report is filed, the expedited grievance procedure bypasses the IGRC and requires the Superintendent in the first instance to "promptly determine whether the grievance, if true, would represent a bona fide case of harassment." *Id.* § 701.8(c).FN12 If so, the Superintendent shall (1) initiate an in-house investigation by higher ranking personnel; (2) request an investigation by the Inspector General's Office; or (3) request an investigation by state police. *Id.* § 701.8(d).FN13 "Within 25 calendar days of receipt of the grievance, the Superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest." FN14 *Id.* § 701.8(f). To appeal the Superintendent's decision to CORC, the prisoner must file a Notice of Decision to appeal with the inmate's grievance clerk within seven calendar days of receiving the response.FN15 *Id.* § 701.8(h). Recognizing that delays are more than likely during this process, the regulations also

allow the grievant to appeal his grievance to CORC directly if the Superintendent fails to respond within the required 25 day limit. *Id.* § 701.8(g). FN16

> **FN9.** The section outlining the expedited grievance procedure used to be codified at N.Y. Comp.Codes R. & Regs., tit. 7, § 701.11 (2004).

> **FN10.** The definition of a "harassment grievance" used to be codified at N.Y. Comp. R. & Regs. tit. 7, § 701.11(a) (2004).

> **FN11.** This section used to be codified at N.Y. Comp.Codes R. & Regs ., tit. 7, § 701.11(b)(1) (2004).

> **FN12.** This section used to be codified at N.Y. Comp.Codes R. & Regs ., tit. 7, § 701.11(b)(3) (2004).

> **FN13.** This section used to be codified at N.Y. Comp.Codes R. & Regs ., tit. 7, § 701.11(b)(4) (2004).

> **FN14.** The pre–2006 version of the regulations allowed the Superintendent 12 working days to render a decision, as opposed to 25 calendar days under the current regulation. N.Y. Comp. R. & Regs. tit. 7, § 701.11(b)(5) (2004).

> **FN15.** The pre–2006 version of the regulations required that appeals be filed within four working days of receipt of the response, as opposed to seven working days under current law. N.Y. Comp. R. & Regs. tit. 7, § 701.11(b)(7) (2004).

> **FN16.** This section used to be codified at N.Y. Comp.Codes R. & Regs ., tit. 7, § 701.11(b)(6) (2004).

The current regulations allow an inmate to request an exception to the time limit for filing a grievance, an appeal to the Superintendent, or an appeal to CORC. *Id.* § 701.6(g)(1)(i). The IGP supervisor may grant an exception to the time limit for filing an appeal to the Superintendent or CORC based on mitigating circumstances. *Id.* However, no exception may be granted if the request was made more than 45 days after the date of the decision unless the late appeal asserts a failure to implement the decision. *Id.* The pre–2006 regulations also allowed an IGP supervisor to make exceptions to the time limit to file or appeal a grievance "based on mitigating circumstances (e.g., attempts to resolve informally by the inmate, etc.)." N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7(a)(1) (2004).

An inmate transferred to another facility may continue an appeal of any grievance, or if the grievant has not appealed but wishes do so, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt. *Id.* § 701.6(h)(2). Before 2006, prisoners also could continue to pursue grievances after they were transferred to another facility under certain circumstances. N.Y. Comp.Codes R. & Regs., tit. 7, § 701.3(k)(l) (2004) ("An inmate transferred to another facility may continue an appeal of a departmental grievance"); FN17 *id.* § 701.3(k)(4) ("An institutional grievance brought by an inmate who is thereafter transferred ... which is pending at the superintendent's level, is to be processed, ...").FN18

> **FN17.** A "departmental grievance" was defined as a "grievance which affects an inmate during his/her confinement at various facilities throughout the department." N.Y. Comp.Codes R. & Regs., tit. 7, § 701.2(b) (2004).

> **FN18.** An "institutional grievance" was defined as a "grievance in which the grievant is only affected as long as he/she remains a resident of the facility in which the grievance was filed." N.Y.

Comp.Codes R. & Regs., tit. 7, § 701.2(c) (2004).

**\*11** Plaintiff identifies three grievances in his Second Amended Complaint:

(1) Grievance SS # 40766/05, entitled "Harassment," which he alleges went unanswered by the Superintendent and CORC;

(2) Grievance SS # 40989/05, dated September 23, 2005, in which Plaintiff complained about his first surgery and his medical treatment at Mount Vernon Hospital and Sing Sing Medical Department; and

(3) Complaint, dated August 20, 2008, to Dr. Lester Wright, Medical Director, regarding the treatment he was receiving at Sing Sing.

Second Am. Compl., Exs. D, E, F. In addition, though not alleged by Plaintiff in either amended complaint, it appears from the grievance log books that he filed another grievance in November, 2006 with respect to his physical therapy and the actions of officers and staff. Robinson Deck, Ex. A (Grievance Log Sheets) ("unhappy with P.T. procedure") (SS # 41996/06); Robinson Decl., Ex. C (Sing Sing Memorandum from E. Hansen to F. Robinson, dated November 2, 2006).

**a. Grievance SS # 40766/05**

In his Second Amended Complaint, Plaintiff alleges that he appealed Grievance SS # 40766/05, which he filed due to harassment issues, but never received a response from the Superintendent or CORC. Second Am. Compl. ¶ 21. According to a file room grievance log sheet, Plaintiff filed the grievance on August 8, 2005.[FN19] *See* Robinson Supp. Decl., Ex. A. Because it was a harassment grievance, it bypassed the grievance committee and was considered in the first instance by the Superintendent. Robinson Supp. Decl. ¶ 6. Contrary to Plaintiff's contention, he received a response from the Superintendent and even attached it to his opposition papers as part of Exhibit E. The DOCS

grievance log sheet states that the Superintendent issued his response on September 6, 2005, and that is confirmed by the date in the Superintendent's Response. Robinson Supp. Decl. ¶ 6, Ex. A.

FN19. As explained in the Robinson Supplemental Declaration, "DOCS Directive # 4040 ("Directive") requires that grievance files and logs be maintained for at least the current year plus the previous four calendar years.... Pursuant to this directive, grievances and logs, dating 2005 and earlier have been purged." Robinson Supp. Decl. ¶ 2. However, the file room grievance log sheet recording grievances from 2005 still exists. *Id.* For each grievance, it lists the Grievance File Number, the Grievant's Name and Prison ID Number, the Code for the type of grievance, the date filed, and the date of when different stages of the IGP were completed. Robinson Supp. Decl. ¶ 2, and Ex. A.

The harassment allegations in the grievance are irrelevant to the present case. While neither party has provided the original grievance form, from the Superintendent's Response it is possible to deduce that the focus of this grievance was on the harassment Plaintiff allegedly received from prison officials. Second Am. Compl., Ex. E (DOCS Inmate Grievance Program, Superintendent's Response, dated September 6, 2005). Not only was the grievance entitled "Harassment," but it was filed against two correctional officers and not State Defendants. *Id.* While the Superintendent's Response notes that Plaintiff was not happy with his medical treatment, the other statements referred to Plaintiff's refusal to leave the hospital when directed, Plaintiff receiving assistance in getting dressed, and an officer denying that he had a cell phone on the trip to or from the hospital. *Id.* Here, Plaintiff complained mostly, if not entirely, about his treatment at the hands of certain correctional officers and not about his treatment at the hands of

any doctors.

**\*12** Even if this grievance were relevant, Plaintiff had the opportunity to appeal the Superintendent's Response to CORC and chose not to do so. At the bottom of the Superintendent's Response to his harassment grievance, there is a section entitled "Appeal Statement." Second Am. Compl., Ex. E (DOCS Inmate Grievance Program, Superintendent's Response, dated September 6, 2005). This section instructs the prisoner that if he or she wishes to refer the decision of the Superintendent, the prisoner must state why he or she is appealing the decision to CORC, sign below, and return the form to the Inmate Grievance Clerk within four days. *Id.* This section was left completely blank by Plaintiff. *Id.* The DOCS grievance log sheet shows no further action was taken in relation to Grievance SS # 40766/05. Robinson Supp. Decl., Ex. A. Also, the Director of IGP's review of the DOCS computer records indicates that Plaintiff has only appealed one grievance to CORC; it was filed in June 2008 and related to an entirely different Grievance, identified as # 44605/08.[FN20] Bellamy Decl. ¶ 5. Therefore, Plaintiff failed to exhaust this particular grievance as required by the PLRA.

> [FN20.] Grievance SS # 44605/08 arose from allegations of harassment made by Plaintiff against a specific corrections officer. Plaintiff alleged that the officer at issue denied him "chow and rec.," referred to Plaintiff using racial epithets, and expressed disregard for the grievance process, calling it a "joke." Robinson Decl., Ex. B (Grievance SS # 44605/08).

**b. Grievance Dated September 23, 2005—SS # 40989/05**

Plaintiff attaches the grievance that he filed concerning his first surgery and his subsequent treatment at Mount Vernon Hospital and Sing Sing Medical Department to his Second Amended Complaint. Second Am. Compl. ¶ 24, Ex. F. The file room grievance log sheet maintained by the

inmate grievance clerk shows that Plaintiff filed a grievance on September 30, 2005 regarding a medical matter, which is noted as grievance SS # 40989/05. Robinson Supp. Decl. ¶ 7, Ex. A. A hearing was conducted by the IGRC on October 11, 2005, at which the grievance was closed. *Id.*

There is no indication that Plaintiff ever appealed that decision to the Superintendent or CORC. There are no dates listed on the grievance log sheet under the categories of Appeal to Superintendent, Superintendent's Response, Appeal to CORC, or CORC Response. Robinson Supp. Decl., Ex. A. As noted above, the Director of IGP's review of the DOCS computer records reveals that Plaintiff only filed an appeal to CORC on an entirely unrelated grievance in June 2008. Bellamy Decl. ¶ 5.

By alleging that he was sent temporarily to Rikers Island and away from DOCS' custody shortly after he filed this grievance, however, Plaintiff appears to argue that he was unable to appeal the IGRC decision because his imprisonment at Sing Sing had been interrupted. Second Am. Compl. ¶ 24. This transfer may have rendered Plaintiff's administrative remedies unavailable. Along with his Second Amended Complaint, Plaintiff attached a Consultation Request form from the New York City Department of Health and Mental Hygiene ("NYCDOH"). Second Am. Complaint, Ex. C. The referring physician's signature on this form is dated October 11, 2005, the same date as the IGRC hearing for this grievance. *Id.* As Rikers Island is a New York City correctional facility, it is likely that Plaintiff was incarcerated there during the IGRC hearing. At a minimum, there is an issue of fact on this subject.

**\*13** If Plaintiff had been incarcerated at Rikers Island during the IGRC hearing and for a few days afterwards, then the pre–2006 regulations prevented Plaintiff from appealing the IGRC's decision. This was an "institutional grievance" in that the inadequate medical treatment Plaintiff allegedly received was a problem he encountered at Sing

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Sing, and by extension, Mt. Vernon Hospital, rather than it being a pervasive problem for him at all other DOCS facilities. N.Y. Comp.Codes R. & Regs., tit. 7, § 701.2(c) (2004). Even if a prisoner filed an institutional grievance but was then transferred from the facility, the pre–2006 regulations required an investigation of the grievance and the IGRC to hold a hearing. *Id .* § 701.3(k)(2). However, if the IGRC determined that the grievance was moot because it only affected the specific grievant, then it had to dismiss and close the grievance. *Id.* § 701.3(k) (2)(i). The pre–2006 regulations also provided transferred inmates who were awaiting a decision from the Superintendent with some redress in requiring the IGRC to provide a recommendation on how to resolve the matter and forward the case to the Superintendent for a determination. N.Y. Comp.Codes R. & Regs., tit. 7, § 701.3(k)(4) (2004). But the pre–2006 regulations did not provide transferred inmates with any mechanism to appeal an IGRC decision, just a procedure by which an already appealed grievance could be considered by the IGP. In *Land v. Kaufman,* Judge Lynch applied this same analysis to rule that these pre–2006 regulations rendered IGP administrative appeals unavailable to a transferred prisoner. 2009 WL 1106780, at *3–4 (denying state defendants' motion for summary judgment in section 1983 action because prisoner fully exhausted the remedies DOCS made available to him under its regulations).

The defendants in *Land* (as do State Defendants here, *see* Reply Mem. at 3) relied on the Second Circuit decision in *Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004), to argue that the transfer of an inmate from one facility to another did not excuse non-exhaustion if the inmate remained within "the custody of the agency against which he had grievances." *Land,* 2009 WL 1106780, at *4 (quoting *Berry,* 366 F.3d at 88). In *Berry,* the plaintiff was incarcerated three separate times for three separate offenses in the custody of the New York City Department of Corrections ("NYCDOC"). 366 F.3d at 86–87. The Second

Circuit found that the plaintiff could have exhausted a grievance that he had filed when he was first incarcerated during his later incarcerations because the plaintiff's "administrative remedies were available to him during three periods of his confinement in the custody of the NYCDOC." *Id.* at 88. The court in the *Land* case, however, distinguished *Berry* by noting that it "involved a different prison system (the New York City system)" and involved "a vastly different set of factual predicates." *Land,* 2009 WL 1106780, at *4. While Plaintiff in this case was eventually transferred back to Sing Sing from Rikers Island, [FN21] the pre–2006 regulations did not provide him with any opportunities to appeal the IGRC's denial of this grievance.

> FN21. According to Sing Sing's grievance log sheet, Plaintiff filed another grievance on May 19, 2006 disputing confinement. Robinson Decl., Ex. A. Plaintiff therefore must have been transferred back to Sing Sing by this time.

**\*14** The pre–2006 regulations require prisoners to appeal IGRC decisions within four working days after receipt of the IGRC's written response to the grievance. N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7(b)(1) (2004). It is not clear how long Plaintiff was incarcerated at Rikers Island, but the other physician signatures on the NYCDOH Consultation Request form are dated October 18, 2005 and October 25, 2005, more than four working days after the IGRC's hearing on October 11, 2005. Second Am. Complaint, Ex. C. From the record, we also cannot say whether Plaintiff received a copy of the IGRC's written response to the grievance as he may have still been at Rikers Island. However, in drawing all reasonable inferences in favor of Plaintiff, as the non-moving party, it is possible that Plaintiff was transferred to Rikers Island before or on the same day as the IGRC hearing, and that even if he received the IGRC's written response denying his grievance, the applicable DOCS regulations would have prevented him from appealing the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

decision. Therefore, Plaintiff exhausted all the administrative remedies made available to him with respect to this particular grievance.

### c. Grievance to Dr. Lester Wright

Plaintiff also claims that, following the second surgical procedure, he filed a complaint with Dr. Lester Wright, the Medical Director of DOCS, regarding the allegedly inadequate medical treatment he received. Second Am. Compl. ¶ 22, Ex. D (Letter to Dr. Wright). Plaintiff sent Dr. Wright a letter dated August 20, 2008, which is attached to his Second Amended Complaint. *Id.* In this letter, Plaintiff complains that he was discharged less than 24 hours after having arthroscopic knee surgery from Westchester Medical Center, did not see a doctor until a day and a half of waiting at Sing Sing's infirmary, was ignored by the infirmary's medical staff and the correctional officer on duty when he rang the "call" bell for pain medication, was left waiting for his pain medication when the nurse insisted on cleaning up the medication that he accidentally dropped on the floor, and was discharged from the infirmary without a supply of pain medication. *Id.* He alleges in the Second Amended Complaint that he never received a response from Dr. Wright, and the Legal Aid Society, which advocated for him to receive further medical treatment a year later, never received a response from prison officials in the Upstate Correctional Facility. Second Am. Compl. ¶ 22, Ex. E (Legal Aid Society letter to Superintendent Thomas Ricks at Upstate Correctional Facility, dated August 27, 2009).

Plaintiff does not allege, nor does he present any evidence, that he filed a formal grievance with IGP in either instance, nor does he argue that State Defendants or any prison official took any action which would limit his ability to do so. Giving notice of a grievance, such as writing a letter to Dr. Wright in this case, cannot be considered sufficient for exhaustion purposes. *See, e.g ., Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) (prisoner's giving notice of his grievance to prison staff through

informal complaints and filing administrative tort claims instead of following federal grievance procedures did not give the formal prison grievance system a fair opportunity to consider the grievance and thus does not constitute proper exhaustion of claims under PLRA) (citing *Woodford v. Ngo,* 548 U.S. 81, 94–95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In addition, we note that the letter from the Legal Aid Society addresses the medical problems Plaintiff experienced at the Upstate Correctional Facility, which would not have involved any conduct by State Defendants here. Plaintiff has failed to exhaust this particular grievance.

### d. Grievance SS # 41966/06

**\*15** Though Plaintiff does not allege that he filed this particular grievance in either of his amended complaints, upon review of the grievance log books, it appears that Plaintiff filed one grievance with respect to his physical therapy and the actions of officers and staff on November 1, 2006: Grievance SS # 41966/06, entitled "Unhappy with P.T. Procedure." Robinson Decl., Ex. A (Grievance Log Sheets). Plaintiff alleged that officers repeatedly disrupted his recovery by stopping his physical therapy sessions to request that he tuck in his shirt as required by Sing Sing Policy and Procedure 585. Robinson Deck, Ex. C (Rodriguez Grievance Form regarding Physical Therapy Treatment, received by Sing Sing IGP on November 1, 2006). The IGRC dismissed all relevant aspects of Plaintiff s grievance after a hearing and review of the allegations. *Id.* (Sing Sing Memorandum from E. Hansen to F. Robinson, dated November 2, 2006).

There is no evidence that Plaintiff appealed this ruling to the Superintendent or to CORC, despite the availability of an appeals process. On the IGRC's response sheet to this grievance, there are checkable boxes, in plain view, providing the option of further review of the decision. *Id.* (Response of IGRC dated November 9, 2006). There is also a notation on the grievance log sheet stating that Grievance SS # 41966/06 was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"closed/not appealed" following the hearing on November 9, 2006. Robinson Decl., Ex. A. Regardless, the connection of Grievance SS # 41966/06 to the alleged inadequate medical treatment provided by State Defendants is nonexistent. The interruption of his physical therapy was by correctional officers, not medical staff, and certainly not by, nor under the direction of, either State Defendant.

Plaintiff, in his Amended Complaint, makes another argument that his failure to appeal his grievances was due to being informed that it would be "futilit [sic] to continue." *See* Am. Compl. ¶ IV.E(3). Although Plaintiff may have been told by someone that it would be futile to appeal a grievance, he has not alleged or produced any evidence that the administrative remedies were unavailable to him as a result or that his efforts to utilize the IGP were frustrated by prison officials. Moreover, the Second Circuit has refused to find that administrative remedies were unavailable simply because a prisoner had been told that it was useless to appeal a grievance decision. *Yeldon v. Ekpe,* 159 Fed. Appx. 314, 316 (2d Cir.2005) (fact that prisoner was informed by sergeant that any appeal of his grievance would be futile did not render administrative remedies unavailable).

In sum, based on the parties' submissions, it is clear that administrative remedies were available to Rodriguez under the IGP for three of these four grievances. We therefore continue our exhaustion analysis with respect to the three grievances to determine if State Defendants should be estopped from asserting a non-exhaustion defense or if Plaintiff's failure to exhaust these grievances was justified by special circumstances.

**2. Defendants Are Not Estopped from Raising an Exhaustion Defense**

**\*16** The second part of the exhaustion test requires a determination as to whether State Defendants are estopped from raising exhaustion as a defense. State Defendants in this case have preserved the exhaustion defense by raising it in their memoranda in support of their Motion to Dismiss both the Amended Complaint and the Second Amended Complaint. *See Sloane,* 2006 WL 3096031, at *8 (defendants not estopped from raising exhaustion defense when asserted in motions to dismiss initial and amended complaints).

In some instances, a government defendant's behavior will render an administrative remedy unavailable. *See Hemphill,* 380 F.3d at 687. A prisoner may assert estoppel against government defendants "when prison officials inhibit an inmate's ability to utilize grievance procedures ... or fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies." *Taylor,* 2004 WL 2979910, at *7 (citing *Abney,* 380 F.3d at 667). There is no evidence that State Defendants or other prison officials prevented Plaintiff from pursuing the available administrative remedies, and Plaintiff has not argued otherwise. State Defendants have also responded to each of Plaintiff's grievances that are at issue in the present action, demonstrating that they have timely advanced Plaintiff's grievances. *See* discussion *supra* Section III.D.1.

Prison officials' threats to a prisoner can also constitute inhibiting conduct which may estop a government defendant from asserting a non-exhaustion defense. *Hemphill,* 380 F.3d at 688; *Andrews,* 2010 WL 1142010, at *8. Plaintiff has not alleged in his Second Amended Complaint that any prison official threatened him so as to prevent him from exhausting his grievances. Therefore, State Defendants are not estopped from arguing that Plaintiffs' claims should be dismissed for non-exhaustion.

**3. No Special Circumstances Have Been Plausibly Alleged to Justify Failure to Exhaust**

The Second Circuit has declined to make "any broad statement of what constitutes justification" for a prisoner's failure to exhaust administrative remedies. *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004). Justification "must be determined by looking at the circumstances which might

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Id.* Courts have found special circumstances to exist "primarily ... where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." *Andrews,* 2010 WL 1142010, at *8 (quoting *Winston v. Woodward,* No. 05 Civ. 3385(RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008)).

The Second Circuit found the plaintiff in *Giano* justified for failing to exhaust available administrative remedies based on his reasonable belief that he could not do so according to DOCS regulations.[FN22] *Giano,* 380 F.3d at 678. New York State prison regulations provide that "individual decisions or dispositions of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." N.Y. Comp. R. & Regs. tit. 7, § 701.3(e)(1).[FN23] DOCS Directive 4040 also states that

> FN22. While the Second Circuit has recognized that the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may alter the application of this rule that "a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter," it has so far declined to decide this question because such circumstances have not been at issue. *Macias v. Zenk,* 495 F.3d 37, 43 n. 1 (2d Cir.2007) (quoting *Hemphill,* 380 F.3d at 690); *see also Chavis v. Goord,* 333 Fed. Appx. 641, 643 (2d Cir.2009). In *Woodford,* the prisoner argued that his administrative remedies were unavailable because the prison dismissed his grievance for being untimely. 548 U.S. at 87. The Supreme Court rejected this argument, holding that *"[p]roper exhaustion*

*demands compliance with an agency's deadlines and other critical procedural rules,"* because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id.* at 90, 95 (emphasis added).

> FN23. This section of the DOCS regulations was not amended or replaced in 2006.

**\*17** "[t]he individual decisions or dispositions of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable. Specifically, the individual decisions or dispositions of the following are not grievable: ... disciplinary proceedings."

*Giano,* 380 F.3d at 678 (quoting DOCS Directive 4040). The Second Circuit found that the language of Section 701.3(e)(1) and Directive 4040 did not distinguish clearly between grievable and non-grievable matters. *Id.* at 679. Thus, the plaintiff's reading of DOCS regulations in *Giano,* though incorrect, was nonetheless reasonable and justified his failure to exhaust. *Id.*

The Second Circuit later opened the possibility that its holding in *Giano* could be applicable to the circumstances in *Hemphill,* where the prisoner argued that DOCS regulations regarding the expedited grievance procedure for employee misconduct claims were not clear. The prisoner in *Hemphill* had written a letter to the Superintendent of his correctional facility, alleging that certain correctional officers assaulted him, covered up the assault by failing to issue the appropriate reports, and deprived him of medical care. 380 F.3d at 684. The DOCS regulations at the time of the incident stated that inmates "should" report correctional officer misconduct to the offender's immediate supervisor and that in doing so, it would not "preclude the filing of a formal grievance." *Id.* at 683, 685, 689 (citing N.Y. Comp.Codes R. &

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Regs., tit. 7, § 701.3 (1998)). The prisoner argued that, based on this language, he believed he was complying with the DOCS regulations by addressing his grievances directly to the Superintendent. *Id.* at 689. The plaintiff also contended that DOCS' amendment of this language in 2006 to clarify that inmates must file a level 1 grievance and that complaining to the offender's immediate supervisor was "not a prerequisite for filing a grievance with the IGP" was evidence that the original regulations were confusing. *Id.* at 689–90. The Second Circuit found that the plaintiff's argument was not "manifestly meritless" and remanded the case for consideration of whether the plaintiff's failure to exhaust was justified by his belief that the expedited grievance procedure for employee misconduct claims allowed him to seek relief solely by contacting the Superintendent instead of formally filing a grievance. *Id.* at 690.

Unlike the plaintiffs in *Giano* or *Hemphill,* Plaintiff here does not argue that he mistakenly interpreted any administrative regulation to mean that he did not have any basis to appeal any of his grievances. While employee misconduct was at the heart of the plaintiff's lawsuit in *Hemphill,* the expedited grievance procedure appropriate for harassment claims (such as Plaintiff's Grievance SS # 40766/05) is not at issue here where Plaintiff alleges that State Defendants were deliberately indifferent to his medical needs.

**\*18** Moreover, as established above, Plaintiff's reasons for failing to exhaust his administrative remedies do not constitute special circumstances to excuse his failure. His writing a letter to Dr. Wright instead of filing a formal grievance and his allegedly being told that it would be futile to appeal his grievances do not excuse or preclude him from exhausting his administrative remedies. *See* discussion *supra* Section III.D.1.d. Finally, Plaintiff does not allege that he was prevented, or deterred by threats of retaliation, from filing a formal grievance or submitting any appeals. Thus, in the absence of any justification for not pursuing

available remedies, Plaintiff's failure to exhaust administrative remedies while they were available precludes his ability to advance this lawsuit as to three of his grievances.

**d. Dismissal with Prejudice Is Appropriate**

"Failure to exhaust administrative remedies is often a temporary, curable procedural flaw." *Berry,* 366 F.3d at 87 (quoting *Snider v. Melindez,* 199 F.3d 108, 111–112 (2d Cir.1999)). Hence, dismissal without prejudice is appropriate in circumstances where the prisoner may still timely exhaust his administrative remedies, since "a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit." *Id.* However, a case should be dismissed with prejudice for non-exhaustion when administrative remedies are no longer available, the prisoner had "ample opportunity to use them," and no special circumstances exist to justify the failure. *Id.* at 88.

In this case, all of these circumstances exist with respect to Plaintiff's three unexhausted grievances, warranting dismissal with prejudice of his claims in the Second Amended Complaint insofar as they rely on these three grievances. It is too late for Plaintiff to exhaust any of these three grievances: his administrative remedies are no longer available due to his transfer to a different facility. According to the August 27, 2009 letter from the Legal Aid Society to Superintendent Thomas Ricks, Plaintiff was transferred to Upstate Correctional Facility on July 31, 2009. *Id .,* Ex. E. Plaintiff confirmed his transfer to this new facility from Sing Sing when he notified the Southern District of New York's Pro Se Office that he had a change of address, which is entered onto the docket for this case on August 17, 2009. He has since been moved to Clinton Correctional Facility. (Dckt.6). With respect to Grievance SS # 40766/05 about officer harassment, as discussed above in Section II.D.1.b, there is no provision in the pre–2006 regulations that allows a transferred inmate to appeal a grievance regarding problems he or she

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

experienced at another facility. [FN24] With respect to the Letter he sent to Dr. Wright, dated August 20, 2008, Plaintiff never even filed a grievance. There is also no provision in the current DOCS regulations that allows an inmate to file a grievance regarding problems he or she experienced in another facility. [FN25] And lastly, with respect to Grievance SS # 41966/06 (the disruption of his physical therapy by the correctional officers), while the current regulations allow transferred inmates to appeal an IGRC decision from another facility, the provision requires that the prisoner do so within seven calendar days. N.Y. Comp. R. & Regs. tit. 7, § 701.6(h)(2) (2006). Plaintiff clearly missed this deadline, and there is no basis to extend his deadline so that he can appeal almost four years later. Plaintiff cannot claim that he was prevented from exhausting his administrative remedies, however, because he had "ample opportunity" during his time at Sing Sing to file a formal grievance with IGRC or to appeal any unfavorable decisions. *See, e.g., Richardson v. C.O. Darden,* No. 07 Civ. 6594(BSJ), 2009 WL 414045, at *1, *2 (S.D.N.Y. Feb.17, 2009) (dismissing prisoner's Section 1983 claim with prejudice for non-exhaustion because he had "ample opportunity to complete the full grievance process established by DOCS while in custody" when the incident from which claim originated occurred in August of 2006 and prisoner filed his lawsuit on July 23, 2007). And as established in Section III.D.3 *supra,* Plaintiff cannot argue that any special circumstances justify his failure to exhaust his administrative remedies. Therefore, I recommend that Plaintiff's Second Amended Complaint, to the extent that his claims rely on any of these three grievances, be dismissed with prejudice.

FN24. Under the pre–2006 regulations, the IGP only provided that a transferred inmate may only proceed with an already-filed grievance at the IGRC or an already-appealed grievance at the Superintendent's level. N.Y. Comp. R. & Regs. tit. 7, § 701.3(k) (2004)

FN25. Under the current regulations, inmates transferred to another DOCS facility may only appeal existing grievances that they have filed at prior facilities. At most, the current regulations provide the following to transferred inmates:

(h) Processing grievances and appeals after transfer.

(1) Any response to a grievance filed by an inmate who has been transferred shall be mailed directly to that inmate, via privileged correspondence, at his/her new facility or location.

(2) An inmate transferred to another facility may continue an appeal of any grievance. If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt. The IGP supervisor will refer it to the facility grievance clerk for processing.

N.Y. Comp. R. & Regs. tit. 7, § 701.6(h) (2006).

**E. Granting Plaintiff Leave to File His Second Amended Complaint Would Not Be Futile Based on His Remaining Claim**

**\*19** Plaintiff's only claim that survives stems from Grievance SS # 40989/05, in which Plaintiff alleges that he did not consent to reconstructive surgery and that he was either given inadequate (or completely denied) physical therapy. In his Amended Complaint, Plaintiff pled violations of both his Fourteenth Amendment and Eighth Amendment rights. Am. Compl. ¶ V. Though State Defendants did not argue any other grounds upon which leave for Plaintiff to file a Second Amended Complaint would be futile, other than for failure to exhaust, we note that Plaintiff has adequately pled

his Fourteenth Amendment claims as to State Defendants, but not his Eighth Amendment claims.[FN26] For Plaintiff to file his Second Amended Complaint would therefore not be altogether futile as to State Defendants.[FN27]

> FN26. Plaintiff's claim arising from Grievance SS # 40989/05 may be time-barred under New York State's three-year statute of limitations, which is applicable to Section 1983 claims. *Board of Regents of University of State of New York v. Tomanio,* 446 U.S. 478, 484 n. 4, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) ("The Court of Appeals for the Second Circuit established a number of years ago that New York's three-year time limitation for actions 'to recover upon a liability, penalty or forfeiture created or imposed by statute,' N.Y. Civ. Prac. Law § 214(2) (McKinney Supp.1979–1980), governs § 1983 actions brought in Federal District Court in New York.") (citations omitted); *see also Baez v. Kahanowicz,* 469 F.Supp.2d 171, 176 (S.D.N.Y.2007). The limitations period begins to run from when the plaintiff is aware of the injury on which the claim is based. *Baez,* 469 F.Supp.2d at 176 (citing *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 331–32 (2d Cir.1997)). Here, Plaintiff alleges that he only learned of the switch in procedures about two weeks after his surgery on July 28, 2005. Am. Compl. ¶ II.D; Second Am. Compl. ¶ 11. Based on the prison mailbox rule, Plaintiff "filed" his original complaint on the date that he swore that he delivered the complaint to the prison authorities for mailing, November 21, 2008. Compl. (Dckt.2). *Allen v. New York City Dep't of Correction,* No. 06 Civ. 7205(RJS)(MHD), 2010 WL 1644943, at *7 (S.D.N.Y. Mar. 17, 2010) (prisoner's complaint is deemed filed on the day it is handed to prison

officials for mailing) (citing *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)).

However, as State Defendants have not raised the statute of limitations affirmative defense in their moving papers and Plaintiff has not been given notice and an opportunity to be heard, we will not consider the issue *sua sponte. See Davis v. Bryan,* 810 F.2d 42, 44–45 (2d Cir.1987) (reversing district court's *sua sponte* ruling that prisoner's Section 1983 claim was barred by statute of limitations as an error of law where party failed to assert this affirmative defense in its motion to dismiss); *see also Abbas v. Dixon,* 480 F.3d 636, 640–42 (2d Cir.2007) (finding district court erred in dismissing claims sua sponte on statute of limitations grounds but error was harmless because Plaintiff had opportunity to make tolling arguments in litigating other claims); *but see Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980) (court may dismiss complaint on statute of limitations grounds *sua sponte* ); *Dennis v. Local 804, L.B.T. Union,* 07 Civ. 9754(HB), 2009 WL 1473484, at *3 n. 3 (S.D.N.Y. May 27, 2009) (collecting cases).

FN27. We have analyzed the adequacy of the pleadings solely in the context of whether granting Plaintiff leave to file his Second Amended Complaint would be futile. Although we conclude that he has failed to state a claim for violation of his Eighth Amendment rights, out of an abundance of caution, we recommend that Plaintiff be given a further opportunity to address this issue or amend his pleadings. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

1357 at 409 (3d ed. 2004) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

A complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In making its assessment, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in a plaintiff's favor. Id. at 1949–50.

The Supreme Court has stated that a "person has a constitutionally protected liberty interest in refusing unwanted medical treatment" under the Fourteenth Amendment. Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). Following Cruzan, the Second Circuit established a three-part test in which to determine if there has been a violation of the right to medical information in Pabon v. Wright, 459 F.3d 241, 246, 249 (2d Cir.2006). A plaintiff must "show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." Id. at 246.

In this case, Plaintiff alleged that he signed a consent form for arthroscopic surgery. Second Am. Compl. ¶ 8. Allegedly, Dr. Pirelli ordered, and Dr. Holder performed, "A.C.L. Reconstructive surgery" instead of "the Arth [r]oscopic procedure" without his consent. Am. Compl. ¶ II.D; Second Am. Compl. ¶¶ 9, 10, 11, 23. As a result, he experienced three years' worth of pain and developed a ball on

the knee. Am. Compl. ¶¶ II.D, III; Second Am. Compl. ¶¶ 13–15. Plaintiff was forced to have a second surgery "to correct and repair [the] damage done in the first botched surgery." Second Am. Compl. ¶¶ 14. Liberally construing Plaintiff's pleadings, it can be inferred from these allegations that had Plaintiff been informed of the consequences of reconstructive surgery, he would have refused to undergo the procedure. Plaintiff also alleges that both State Defendants knew that Plaintiff did not agree to the reconstructive knee surgery, implying that the failure to provide medical information was not inadvertent but a result of deliberate indifference. Second Am. Compl. ¶¶ 9, 23. Therefore, Plaintiff has adequately pled a violation of his Fourteenth Amendment right to medical information against both State Defendants.

**\*20** To establish an Eighth Amendment claim for denial of medical care, a plaintiff must adequately allege that prison officials acted with deliberate indifference to his serious medical needs. Alston v. Bendheim, 672 F.Supp.2d 378, 385 (S.D.N.Y.2009) (citing West v. Atkins, 487 U.S. 42, 46, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994)). To satisfy the definition of a "serious medical need," the allegation must be of "a deprivation reasonably likely to result in death, degeneration, or extreme pain." Sanchez v. Fischer, No. 03 Civ. 4433(GBD), 2005 WL 1021178, at \*4 (S.D.N.Y. May 2, 2005) (citing Hathaway, 37 F.3d at 66; Harrison v. Barkley, 219 F.3d 132, 136–37 (2d Cir.2000)). For "deliberate indifference," the pleading must allege that the prison officials acted "with a sufficiently culpable state of mind, i.e., that the defendant knew of and disregarded the excessive risk to the inmate's health arising from the deprivation of medical treatment." Sanchez, 2005 WL 1021178, at \*4 (quoting Hudson v. McMillan, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)) (internal quotations omitted). Alleging that prison officials denied an inmate

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

physical therapy will, in some cases, be enough to establish an Eighth Amendment claim. *See e.g., Stevens v. Goord,* 535 F.Supp.2d 373, 385–87 (S.D.N.Y.2008) (district court denied defendant physicians' and prison officials' summary judgment motion because genuine issue of material fact existed as to whether defendants failed to provide prisoner with prescribed physical therapy treatments).

Plaintiff has not adequately pled an Eighth Amendment claim as to either State Defendant. He does not allege that Dr. Holder had any decision-making authority or involvement with respect to his physical therapy. Dr. Pirelli's involvement with his physical therapy treatments is also unclear for different reasons. In his Amended Complaint, Plaintiff alleged that his "recommended rehabilitative physical therapy" had been denied and delayed by Dr. Pirelli after the surgery. Am. Compl. ¶¶ II.D., III. In his Second Amended Complaint, however, Plaintiff alleged that "Dr. Pereli [sic] approved and provide[d] continuous physical therapy treatment to Plaintiff which did nothing but aggra[v]ate the injury causing more pain, suffering, and damage." Second Am. Compl. ¶ 25. Plaintiff states in his complaints that the physical therapy, or perhaps lack thereof, caused him constant pain for three years. Am. Compl. ¶ II.D, III; Second Am. Compl. ¶¶ 13, 25.

Under either version of the events, Plaintiff has failed to plead sufficiently that Dr. Pirelli had the requisite culpable state of mind for an Eighth Amendment claim—that he was deliberately indifferent to Plaintiff's medical needs. Based on the allegations in both the Amended Complaint and the Second Amended Complaint, Plaintiff has only made out a claim for medical malpractice, and not a deprivation of his constitutional rights under Section 1983. If Dr. Pirelli did not knowingly disregard Plaintiff's need for physical therapy when he delayed or denied the treatment, then "mere negligence in providing medical care is insufficient to state [an Eighth Amendment] claim." *Alston,* 672

F.Supp.2d at 385 (citing *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000)). If Dr. Pirelli provided a physical therapy treatment that Plaintiff believes was the wrong kind, then "a difference of opinion over the type or course of treatment do[es] not support a claim of cruel and unusual punishment." *Id.* (citing *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998)). Plaintiff must at least allege that the physical therapy treatment that he received, if he indeed did receive any, was inadequate and that Dr. Pirelli knew it was, or that Dr. Pirelli knew that Plaintiff required physical therapy but chose to disregard this fact in denying him treatment.

**\*21** Therefore, while Plaintiff has adequately pled a violation of his Fourteenth Amendment right to medical information as to both State Defendants, he has failed to make any Eighth Amendment claims of deliberate indifference with respect to his physical therapy treatments. Because his Fourteenth Amendment claims against State Defendants would survive a motion to dismiss, we conclude that granting Plaintiff leave to file his Second Amended Complaint would not be futile.

**IV. Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Cross–Motion to Amend his Complaint be GRANTED; that State Defendants' motion to dismiss be converted into a Rule 56 Motion for Summary Judgment on the issue of exhaustion; that State Defendants' Motion be GRANTED with respect to Plaintiff's three unexhausted grievances; that part of Plaintiff's Second Amended Complaint be DISMISSED WITH PREJUDICE for failure to exhaust administrative remedies as to State Defendants with respect to these three grievances; and that State Defendants' motion be DENIED with respect to the grievance dated September 23, 2005 (SS # 40989/05).

***PROCEDURE FOR FILING OBJECTIONS***

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court and served on all the parties, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn.,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992), *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72. If Plaintiff does not have access to cases cited herein that are reported on LEXIS/WESTLAW, he should request copies from State Defendant's counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009) (noting that the Court may ask opposing counsel to provide, to a *pro se* litigant, copies of decisions that are available electronically).

S.D.N.Y.,2010.
Rodriguez v. Mount Vernon Hosp.
Not Reported in F.Supp.2d, 2010 WL 3825736 (S.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.